UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**METROPOLITAN LIFE**    )
**INSURANCE COMPANY,**   )
  One MetLife Plaza     )
  27-01 Queens Plaza North   )
  Long Island, NY 11101    )
              )
  **Plaintiff,**       )
              )
**v.**            )  Case No. _____
              )
**JENNIFER G. BARBOUR,**   )
  Serve: 901 6th Street, S.W. #606 )
    Washington, D.C. 20024   )
              )
**JULIAN P. STEPTOE,**    )
  Serve: 3010 Wilshire Boulevard  )
    #299           )
    Los Angeles, CA 90010   )
              )
**JAMILLA R. LANKFORD,**   )
  Serve: 5203 Woodlawn Place  )
    Bellaire, TX 77401     )
              )
**ADAM A.D. BARBOUR,**   )
  Serve: 901 6th Street S.W. # 606A )
    Washington, D.C. 20024   )
              )
**JACINTO A. RHINES,**    )
  Serve: 1764 W 24th Street   )
    Los Angeles, CA 90018   )
              )
**JOHN P. RHINES,**     )
  Serve: 5233 N Capital Street, N.E. )
    # 312          )
    Washington, D.C. 20011   )
              )
**JESSE A. RHINES,**     )
  Serve: 2122 Pico Boulevard #D  )
    Santa Monica, CA 20405   )
              )

**JEROME C. RHINES,**            )
     Serve: 11048 Anietem Drive    )
           Alta Loma, CA 91737       )


**CAROLYN C. STEPTOE,**          )
     Serve: 1257 Lawrence Street, N.E. )
           Washington, D.C. 20017   )
                                   )
**JULIE S. LEE,**                  )
     Serve: 607 Bridle Lane       )
           Birmingham, AL 35243    )
                                   )
**MARSHA S. CULLER,**            )
     Serve: 11519 Sequoia Lane    )
           Beltsville, MD 20705     )
                                   )
**VERONICA VERA,**              )
     Serve: 5203 Woodlawn Place   )
           Bellaire, TX 77401 ·     )
                                   )
AND                             )
                                   )
                                   )
                                   )
**JORDAN FUNERAL SERVICE, INC.** )
     Serve: David G. Jordan       )
           Registered Agent ·      )
           5021 Illinois Avenue, N.W.  )
           Washington, D.C. 20011   )
                                   )
                                   )
     **Defendants.**               )
                                   )

## **COMPLAINT IN INTERPLEADER**

Pursuant to 28 U.S.C. § 1335, 28 U.S.C. § 1331, 28 U.S.C § 1332, 5 U.S.C. §§

8701 et seq., and Rule 22 (a) of the Federal Rules of Civil Procedure, Plaintiff,

Metropolitan Life Insurance Company ("MetLife"), for its Complaint in Interpleader

against Defendants, alleges and states as follows:

2

1.      This action involves the claims for life insurance proceeds arising from the death of Julia W. Barbour ("Decedent"), a retiree of the United States Department of Labor, Office of Administrative Management and Litigation.    Jennifer G. Barbour (hereinafter "Jennifer G. Barbour"), one of twelve children of the deceased, has claimed entitlement to all of the proceeds of the Decedent's life insurance coverage arising from her federal employment as the sole beneficiary under a certain beneficiary designation form.      Several of Decedent's other children protest Jennifer G. Barbour's sole entitlement, and have claimed entitlement to a portion of the proceeds.

2.      The federal government, pursuant to the Federal Employees' Group Life Insurance Act, purchased a policy of group life insurance providing coverage for eligible civilian employees. The federal government obtained coverage from MetLife in the form of a group policy issued as MetLife Group Policy 17000-G. MetLife adjudicates claims brought under the Federal Employees' Group Life Insurance ("FEGLI") Policy (A copy of the Federal Employees' Group Life Insurance Policy is attached hereto as "Exhibit A.")

3.      Decedent was a civilian employee of the federal government and, as such was covered under the FEGLI Policy.   The Decedent had life insurance coverage in the amount of One Hundred Thirty Four Thousand Dollars ($134,000) (hereinafter "FEGLI Proceeds") under the FEGLI Policy at the time of her death.

4.      For the reasons discussed below, MetLife cannot determine the proper beneficiary of the FEGLI Proceeds, and is bringing this lawsuit for interpleader to avoid being vexed and harassed by conflicting and multiple claims.

3

## JURISDICTION AND VENUE

5.      Federal jurisdiction exists under 28 U.S.C. § 1331 (2006) and 5 U.S.C. § 8715 (2006), as this action is a federal question case involving life insurance coverage governed by the Federal Employees' Group Life Insurance Act, 5 U.S.C. §§ 8701, et seq., ("FEGLIA") and by the regulations promulgated pursuant to this statute by The United States Office of Personnel Management at Title 5 CFR, Part 870.

6.      This Court also has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 1335 and 28 U.S.C. § 1332.

7.      Furthermore, Rule 22 of the Federal Rules of Civil Procedure applies, as it provides that "a person having claims against the plaintiff may be joined as defendants when their claims are such that the plaintiff is or may be subject to double or multiple liability."

8.      Pursuant to 28 U.S.C. § 1391(b) (2006) and 28 U.S.C. § 1397 (2006), and upon information and belief, venue is proper in the District of Columbia, because one or more of the claimants reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

9.      Plaintiff MetLife is a life insurance company organized under the laws of the State of New York and having its principal place of business in the State of New York. MetLife is authorized to do business in the District of Columbia. The Office of Federal Employees' Group Life Insurance ("OFEGLI") is an administrative unit of

4

Plaintiff MetLife charged with the responsibility of administering all FEGLI claims pursuant to FEGLIA, 5 U.S.C. § 8701-8716 and the FEGLI Policy.

10.    Upon information and belief, Defendant Jennifer G. Barbour is an individual residing in Washington, D.C. Jennifer G. Barbour alleges that she is entitled to One Hundred percent (100%) of the FEGLI Proceeds as she was named the sole beneficiary "in trust" on the most recent beneficiary designation form signed by the Decedent. Jennifer G. Barbour is the daughter of Decedent.

11.    Upon information and belief, Defendant Julian P. Steptoe is an individual residing in Los Angeles, California. Julian Steptoe is the son of Decedent.

12.    Upon information and belief, Defendant Jamilla R. Lankford is an individual residing in Bellaire, Texas. Jamilla Lankford is the daughter of Decedent.

13.    Upon information and belief, Defendant Adam A.D. Barbour is an individual residing in Washington, D.C. Adam Barbour is the son of Decedent.

14.    Upon information and belief, Defendant Jacinto A. Rhines is an individual residing in Los Angeles, California. Jacinto Rhines is the son of Decedent.

15.    Upon information and belief, Defendant John P. Rhines is an individual residing in Washington, D.C. John Rhines is the son of Decedent.

16.    Upon information and belief, Defendant Jesse A. Rhines is an individual residing in Santa Monica, California. Jesse Rhines is the son of Decedent.

17.    Upon information and belief, Defendant Jerome C. Rhines is an individual residing in Alta Loma, California. Jerome Rhines is the son of Decedent.

18.     Upon information and belief, Defendant Carolyn C. Steptoe is an individual residing in Washington, D.C.  Carolyn Steptoe is the daughter of Decedent.

19.     Upon information and belief, Defendant Julie S. Lee is an individual residing in Birmingham, Alabama.  Julie Lee is the daughter of Decedent.

20.     Upon information and belief, Defendant Marsha S. Culler is an individual residing in Beltsville, Maryland.  Marsha Culler is the daughter of Decedent.

21.     Upon information and belief, Defendant Veronica Vera, (In Care Of Jamilla R. Lankford) is a minor individual residing in Bellaire, Texas.  Veronica Vera is the granddaughter of Decedent.

22.     Upon information and belief, Jordan Funeral Service, Inc. is a company that operates and has its principal place of business in Washington, D.C.

## FACTUAL BACKGROUND

23.     Decedent passed away on December 2, 2006.  Under the terms of the FEGLI Policy and on account of Decedent's death, MetLife became obligated to pay the FEGLI Proceeds to the person rightfully entitled to them.

24.     The FEGLI Proceeds are to be paid in accordance with the order of precedence set forth in 5 U.S.C. § 8705(a) which provides that "the amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death . . . **First, to the beneficiary or beneficiaries designated** by the employee in a signed and witnessed writing received before death in the employing office . . . Second, if there is no designated beneficiary, to the widow or

6

widower of the employee. Third, **if none of the above, to the child or children of the employee** and the descendants of deceased children by representation." (emphasis added).

25.      After the Decedent's death, MetLife received from OPM two beneficiary forms that were allegedly prepared by the Decedent. The most recent beneficiary designation, dated September 2, 1998, names Jennifer G. Barbour as the Decedent's beneficiary "in trust" for the full amount of the FEGLI Proceeds. (A copy of the September 2, 1998 beneficiary designation is attached hereto as "Exhibit B.") The other beneficiary designation, dated April 20, 1998, names all of the above Defendants as beneficiaries for various portions of the FEGLI Proceeds. (A copy of the April 20, 1998 beneficiary designation is attached hereto as "Exhibit C.") In accordance with 5 U.S.C. § 8705(a), a beneficiary designation signed by the Decedent and two witnesses that is received before death by the appropriate federal agency is valid and cancels the prior beneficiary designation.

26.      On December 5, 2006, Jennifer G. Barbour filed a Claim for Death Benefits as Decedent's sole beneficiary and completed a funeral assignment to Jordan Funeral Service, Inc., in the amount of $9,822.24. (A copy of the Assignment of Proceeds of Insurance is attached hereto as "Exhibit D.") Upon information and belief, as of July 6, 2007, Jordan Funeral Service, Inc. has not received payment.

27.      In order to consider Jennifer G. Barbour's claim, OFEGLI requested a copy of the Decedent's trust. On February 6, 2007, Jennifer G. Barbour sent a notarized letter to OFEGLI certifying that a trust was never created. Jennifer G. Barbour requested

that OFEGLI comply with Decedent's alleged intent and release 100% of the FEGLI proceeds to Jennifer G. Barbour. (A copy of the February 6, 2007 letter (date incorrectly marked as 2006) is attached hereto as "Exhibit E.")

28.    On February 20, 2007, OFEGLI sent Jennifer G. Barbour a letter explaining that under the FEGLI program, a person named as a trustee on a designation form when no trust has been created cannot be paid the FEGLI Proceeds and that the insurance benefits would be paid according to the Order of Payment. See 5 U.S.C. § 8705 (A copy of the February 20, 2007 letter is attached hereto as "Exhibit F.")

29.    The Decedent was not survived by a spouse. Therefore, the FEGLI Proceeds are payable under the order of precedence to the decedent's children.

30.    On March 5, 2007, Jennifer G. Barbour, by and through counsel, sent a certified letter to OFEGLI providing an affidavit from Mary Lomax, a co-worker of the Decedent who was present at the time the Decedent completed the September 2, 1998 beneficiary form. Ms. Lomax attested that the Decedent intended Jennifer G. Barbour to receive the full amount of FEGLI Proceeds.  On May 16, 2007, seven (7) of the named Defendants submitted affidavits on behalf of Jennifer G. Barbour, attesting under oath that the Decedent intended Jennifer G. Barbour to receive the full amount of the FEGLI Proceeds.  The attesting affidavits were submitted by Marsha Culler, Adam Barbour, John Rhines, Julian Steptoe, Jacinto Rhines, Jerome Rhines and Jamilla Lankford (A copy of the March 5, 2007 letter and subsequent affidavits are attached hereto as "Exhibit G.")  Despite her affidavit, Defendant Marsha Culler has also filed a claim for death

benefits requesting payment of her individual share of the FEGLI proceeds (A copy of the Claim for Death Benefits is attached hereto as "Exhibit H.").

31.     The statutory requirements for payment of the FEGLI Proceeds under 5 U.S.C. § 8705(a), cannot be replaced by extrinsic evidence of the insured's intent nor by personal or equitable factors that a claimant maintains entitles him or her to payment. See O'Neal v. Gonzalez, 653 F. Supp. 719 (S.D. Fla. 1987), aff'd 839 F.2d 1437 (11th Cir. 1988); Huff v. Metropolitan. Life Ins. Co., 675 F.2d 119 (6th Cir. 1982); Metropolitan Life Ins. Co. v. Manning, 568 F.2d 922 (2d Cir. 1977); Metropolitan Life Ins. Co. v. Trainor, 754 P.2d 427 (Colo. Ct. App. 1988).

32.     On June 5, 2007, OFEGLI sent nearly identical letters to Jerome Rhines, Julian Steptoe, John Rhines, Jacinto·Rhines and Adam Barbour inviting each of them to complete a certain form if he or she wished to release his individual shares to Jennifer G. Barbour. None of the defendants have returned a signed release form to OFEGLI. (Copies of the letters sent to the above named individuals are attached hereto as "Exhibit I.")

33.     Defendants Carolyn Steptoe and Julie Lee protest Jennifer G. Barbour's sole entitlement to the FEGLI Proceeds and have each filed an individual claim for a portion of the FEGLI Proceeds. (Attached hereto as "Exhibit J.")

## **INTERPLEADER**

34.     Paragraphs 1 through 33 are incorporated by reference as if fully set forth herein.

35.    MetLife has received conflicting claims for the FEGLI Proceeds and it is unclear which Defendants, if any, will release his or her shares to Jennifer G. Barbour.

36.    Conflicting issues of law and fact exist regarding entitlement to the FEGLI Proceeds.

37.    MetLife is and at all times has been ready, willing and able to pay the FEGLI Proceeds with applicable interest, if any, to the party (or parties) legally entitled to them and seeks to pay the FEGLI Proceeds into this Court.

38.    MetLife asserts no interest in the FEGLI Proceeds, does not dispute that they are due, and has no opinion as to which of the interpleader Defendants should be the beneficiary. MetLife is, therefore, a mere disinterested stakeholder to this action with no interest in the controversy between the Defendants.

39.    MetLife cannot make payment of the FEGLI Proceeds without the risk of being subjected to costs and expenses in a multiplicity of suits or the possibility of multiple payments of the amount due. MetLife seeks, by way of this interpleader, certainty regarding the parties' respective rights to the FEGLI Proceeds.

40.    Based on the foregoing, there is presently an actual, justiciable controversy as to the FEGLI Proceeds, and MetLife as a disinterested stakeholder is entitled to the relief requested herein.

41.    MetLife has not brought this action for any benefit of its own, and there is no fraud or collusion between MetLife and any of the Defendants. MetLife brings this action of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

42.     All conditions precedent to this action have occurred or been performed.

43.     MetLife makes no claim to the FEGLI Proceeds other than the payment of its costs and reasonable attorneys' fees in connection with this action.

WHEREFORE, MetLife prays that this Court take jurisdiction over this matter, and issue an order or orders:

(1)     granting MetLife's request for interpleader;

(2)     granting MetLife judgment for its reasonable fees and costs, to be paid from the FEGLI Proceeds and permitting and directing MetLife to deposit the FEGLI Proceeds into the Registry of the Court;

(3)     dismissing MetLife from this action with prejudice, and discharging MetLife from any further liability in connection with the FEGLI Proceeds, upon MetLife's deposit of the FEGLI Proceeds into the Registry of the Court;

(4)     granting MetLife an injunction barring Defendants and their successors and assigns, from instituting any action, prosecution, or proceeding, in any State or United States Court, against MetLife with respect to the FEGLI Proceeds;

(5)     requiring all Defendants to answer this Complaint in Interpleader, and to proceed to determine the proper disposition of the FEGLI Proceeds (less MetLife's reasonable attorneys' fees and costs); and

(6)     ordering such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of September, 2007.

Ronda Brown Esaw, Esq. (D.C. Bar No. 494516)
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia  22102-4215
Telephone:  (703) 712-5392
Facsimile:  (703) 712-5251
resaw@mcguirewoods.com
Attorney for Plaintiff, Metropolitan Life
Insurance Company

\4784964.1

12

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Metropolitan Life Insurance Company | Jennifer G. Barbour, et al. (See Attached) |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __88888__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __11001__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Ronda B. Esaw, D.C. Bar No. 494516, McGuireWoods LLP
1750 Tysons Blvd., Ste. 1800, McLean, VA 22102
703-712-5392, 703-712-5251(fax), resaw@mcguirewoods.com

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

### ☐ A. *Antitrust*

- ☐ 410 Antitrust

### ☐ B. *Personal Injury/ Malpractice*

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ☐ C. *Administrative Agency Review*

- ☐ 151 Medicare Act

**Social Security:**
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

**Other Statutes**
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ☐ E. *General Civil (Other)* OR ☐ F. *Pro Se General Civil*

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

American LegalNet, Inc.
www.USCourtForms.com

| ☐ **G. Habeas Corpus/ 2255**<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ **H. Employment Discrimination**<br><br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **I. FOIA/PRIVACY ACT**<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ **J. Student Loan**<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ☐ **K. Labor/ERISA (non-employment)**<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ **L. Other Civil Rights (non-employment)**<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☒ **M. Contract**<br><br>☒ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ **N. Three-Judge Court**<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ Multi district Litigation ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Complaint in Interpleader under the Federal Employee Group Life Insurance Act, 5 U.S.C. Sections 8701-8716 (2006)

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND $** 134,000.00 | Check YES only if demanded in complaint<br>**JURY DEMAND:** ☐ YES ☒ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instruction) ☐ YES ☒ NO If yes, please complete related case form.

DATE 9/20/07    SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

American LegalNet, Inc.<br>www.USCourtForms.com

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**

**I (a) Defendants:**

**JENNIFER G. BARBOUR**
**JULIAN P. STEPTOE**
**JAMILLA R. LANKFORD**
**ADAM A.D. BARBOUR**
**JACINTO A. RHINES**
**JOHN P. RHINES**
**JESSE A. RHINES**
**JEROME C. RHINES**
**CAROLYN C. STEPTOE**
**JULIE S. LEE**
**MARSHA S. CULLER**
**VERONICA VERA**
And
**JORDAN FUNERAL SERVICE, INC.**

Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.
Original Proceeding
Complaint in Interpleader
**Exhibit A-Part 1**
A copy of the Federal Employees' Group Life Insurance Policy (pp. 1-30)



(HEREIN CALLED THE INSURANCE COMPANY)

GROUP POLICY No. 17000-G.

## IN CONSIDERATION

of the application for this Policy made by

UNITED STATES CIVIL SERVICE COMMISSION

(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, a copy of which application is attached hereto and made a part hereof, and in consideration of the payment by the Policyholder, during the continuance of this Policy, of all premiums when they fall due as provided in this Policy,

### HEREBY AGREES

subject to the provisions of this Policy to pay the insurance benefits herein provided with respect to the several Employees insured hereunder.

This Policy shall take effect as of the 29th day of August, 1954, which date is the date of issue hereof.

The provisions hereinafter contained are part of this Group Policy as fully as if recited over the signatures hereto affixed.

In Witness Whereof, the Metropolitan Life Insurance Company has caused this Policy to be executed this __twenty-fourth__ day of __November, 1954__, to take effect as of the date of issue hereof.

W. J. Barrett
*Secretary*

C. G. Arlinghaus
*Registrar*

F. W. Ecker
*President*

Group Policy
Life Insurance
Insurance for Death or Dismemberment
by Accidental Means

SEE AMEND. 64

Contributory
Dividend, if any, Determined Annually

COPY

Form G.1985
Aug. 1954
PRINTED IN U.S.A.

EXHIBIT

A

tabbies

SEE AMEND. 11, 14, 18, 21, 28, 40, 41, 48, 49, 64.

**Section 1. DEFINITION OF CERTAIN TERMS USED IN THIS POLICY.**—The term "Employee" means an appointive or elective officer or employee in or under the executive, judicial, or legislative branch of the United States Government, including a United States Government owned or controlled corporation, and of the municipal government of the District of Columbia, excluding in any case any employee in any of the groups of employees specified in Schedule A attached hereto as a part hereof.

The term "Office" means the Office of Federal Employees' Group Life Insurance which is the administrative office established by the Insurance Company with respect to this Policy. The post office address of the Office is 330 Fourth Avenue, New York 10, N. Y. The Insurance Company shall have the right to change the address of the Office upon three months' notice in writing to the Policyholder.

SEE AMEND. 5, 46, 51

Section 2. EFFECTIVE DATES OF INSURANCE.—The effective date referred to in this Section 2 shall be the first day of the first pay period which begins after August 28, 1954, except that in the case of Employees in the employ of the Board of Governors of the Federal Reserve System, the "effective date" shall be the first day of the first pay period which begins after September 25, 1954.

The insurance hereunder on each Employee on the roll of his employing office on the day before the effective date specified in the first paragraph of this Section 2 shall become effective on such effective date if he is then in a pay status or is in a non-pay status which has not extended continuously for 12 months, provided that before that date he has not given written notice to his employing office that he desires not to be insured hereunder.

SEE AMEND. 2B

The insurance hereunder on each person who becomes an Employee as defined in Section 1 hereof on or after the effective date specified in the first paragraph of this Section 2 shall become effective on the first day he is in a pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given such a notice which remains uncancelled.

SEE AMEND. 13, 46, 49, 28

The insurance hereunder on each Employee who returns to a pay status, on or after the effective date specified in the first paragraph of this Section 2, after having been in a non-pay status which extended continuously for more than 12 months, shall become effective on the first day he is in such pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given such a notice which remains uncancelled.

An Employee who has given written notice to an employing office that he desires not to be insured hereunder may cancel such notice and become insured hereunder only if he makes written request to his employing office for such insurance prior to his 50th

birthday and not less than one year after the effective date of such notice, and furnishes at his own expense evidence of insurability satisfactory to the Office. The insurance on any such Employee shall become effective on the first day he is in a pay status following the date his request for insurance is approved provided he acquires such a pay status effective within 31 days following the date of such approval. Any Employee who must meet the requirements of this paragraph as a condition to becoming insured hereunder and who ceases to be an Employee as defined in Section 1 hereof without such requirements having been met shall continue to be subject to the same requirements if at any time he subsequently becomes an Employee as defined in said Section 1.

SEE AMEND. 31, 46

**Section 3. CESSATION OF INSURANCE.**—The insurance on any Employee insured hereunder shall automatically cease, except as specified in the next following paragraph, on the earliest of the following dates:

(1) The date of his separation from the service.

SEE AMEND. 1, 14, 46, 49.51

(2) The date of expiration of a period of twelve months of continuous non-pay status of the Employee.

(3) The day immediately preceding the date the Employer acquires indemnity coverage under the Servicemen's Indemnity Act of 1951 (65 Stat. 337) by reason of entering military service.

(4) The date the Employee ceases to be an Employee as defined in Section 1 hereof for any reason other than the happening of any of the events specified in items (1), (2) or (3) preceding.

(5) The last day of the pay period during which the employing office of the Employee receives written notice from him that he desires not to be insured hereunder.

(6) The date of discontinuance of this Policy.

However, if the insurance on any Employee insured hereunder would cease because of the happening of the event specified in either of items (1) or (2) of the preceding paragraph and the Employee meets the conditions for continuation of insurance after retirement specified in the next following sentence and does not exercise his right to have an individual policy issued to him in accordance with Section 6 hereof, his Life Insurance only, in the amounts for which he would be insured hereunder if he had not retired and his salary payment had continued at the same rate as on the date of his retirement, shall be continued or reinstated from the date he first meets such conditions until the date specified in the second following sentence. The conditions for continuation of insurance after retire-

Form G.1985
Aug. 1954

requirements for retirement on immediate annuity under any of the Retirement Systems listed in Schedule B attached to this Policy as a part hereof, and (b) the Employee must either be retired for disability or have had 15 years of creditable civilian service. The Life Insurance so continued or reinstated shall automatically cease on (i) the date of termination of the annuity of the retired Employee, (ii) the day preceding the first day the Employee is in a pay status under a subsequent appointment of the retired Employee to a position such that he again falls within the definition of the term "Employee" in Section 1 hereof, or (iii) the date of discontinuance of this ...

Section ... AMOUNT OF INSURANCE.—The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. Any increase or decrease in the amounts of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later. However, changes in annual compensation after the 65th birthday of any Employee shall not affect the amount of insurance on such Employee except to the extent provided in PART C of said Schedule for an Employee who again becomes insured hereunder after his 65th birthday.

## SCHEDULE OF INSURANCE
## PART A

APPLICABLE UP TO AND INCLUDING THE LAST DAY OF THE CALENDAR MONTH NEXT FOLLOWING THE CALENDAR MONTH IN WHICH THE 65TH BIRTHDAY OF THE EMPLOYEE OCCURS

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $1,000 | $1,000 | $1,000 |
| $1,000 | 2,000 | 2,000 | 2,000 |
| 2,000 | 3,000 | 3,000 | 3,000 |
| 3,000 | 4,000 | 4,000 | 4,000 |
| 4,000 | 5,000 | 5,000 | 5,000 |
| 5,000 | 6,000 | 6,000 | 6,000 |
| 6,000 | 7,000 | 7,000 | 7,000 |
| 7,000 | 8,000 | 8,000 | 8,000 |
| 8,000 | 9,000 | 9,000 | 9,000 |
| 9,000 | 10,000 | 10,000 | 10,000 |
| 10,000 | 11,000 | 11,000 | 11,000 |
| 11,000 | 12,000 | 12,000 | 12,000 |
| 12,000 | 13,000 | 13,000 | 13,000 |
| 13,000 | 14,000 | 14,000 | 14,000 |
| 14,000 | 15,000 | 15,000 | 15,000 |
| 15,000 | 16,000 | 16,000 | 16,000 |
| 16,000 | 17,000 | 17,000 | 17,000 |
| 17,000 | 18,000 | 18,000 | 18,000 |
| 18,000 | 19,000 | 19,000 | 19,000 |
| 19,000 | —— | 20,000 | 20,000 |

APPLICABLE SUBSEQUENT TO THE LAST DAY OF THE CALENDAR MONTH NEXT FOLLOWING THE CALENDAR MONTH IN WHICH THE 65TH BIRTHDAY OF THE EMPLOYEE OCCURS EXCEPT FOR ANY EMPLOYEE WHO FIRST BECOMES OR AGAIN BECOMES INSURED HEREUNDER AFTER HIS 65TH BIRTHDAY

Effective on the first day of the second calendar month next following the calendar month in which the 65th birthday of the Employee occurs, the amount of Life Insurance and the amount of Insurance for Death or Dismemberment by Accidental Means shall each be reduced by 2% of the amount of such insurance in effect on the immediately preceding day, and shall be further reduced by a like amount on the first day of each calendar month thereafter until the amount remaining in effect shall be equal to 25% of the amount of insurance in effect immediately before the first reduction.

## PART C

APPLICABLE TO ANY EMPLOYEE WHO FIRST BECOMES OR AGAIN BECOMES INSURED HEREUNDER AFTER HIS 65TH BIRTHDAY

The amount of Life Insurance and the amount of Insurance for Death or Dismemberment by Accidental Means applicable to any Employee who first becomes or again becomes insured hereunder after his 65th birthday shall be the amounts of such insurance that would be provided by PART A or PART B of this Schedule had the Employee been insured under PART A of this Schedule on his 65th birthday based on (1) the amount of his annual compensation on the latest date he becomes insured hereunder, or (2) the amount of his annual compensation on his 65th birthday if the Employee was eligible to be insured hereunder on his 65th birthday, whichever is the lesser.

Section 5. INSURING CLAUSES.—(A) Life Insurance.—Upon receipt by the Office of satisfactory proof, in writing, that any Employee shall have died while insured hereunder, the Office shall pay, subject to the terms hereof, the amount of Life Insurance, if any, in force hereunder on account of such Employee in accordance with Section 4 hereof, at the date of his death. Payment shall be made to the Beneficiary of record of the Employee or otherwise as provided in Section 11 hereof immediately after receipt of such proof and of proof that the claimant is entitled to such payment.

(B) Insurance for Death or Dismemberment by Accidental Means.—Upon receipt by the Office of notice and satisfactory proof, as required herein, that any Employee, while insured hereunder for Insurance for Death or Dismemberment by Accidental Means, shall have sustained bodily injuries solely through violent, external and accidental means, and within ninety days thereafter shall have suffered any of the losses specified in the Schedule of Losses of this subsection (B) as a direct result of such bodily injuries independently of all other causes, the Office shall pay, subject to the terms and limitations hereof, the amount of insurance specified for such loss in said Schedule, provided, however, that in no case shall any pay-

Form G 1938
Aug. 1954

ment be made for death or any other loss which is:

    (1) caused wholly or partly, directly or indirectly, by disease or bodily or mental infirmity, or by medical or surgical treatment or diagnosis thereof, or

    (2) caused wholly or partly, directly or indirectly, by ptomaine or by bacterial infection, except only septic infection of and through a visible wound sustained solely through violent, external and accidental means, or

    (3) caused wholly or partly, directly or indirectly, by hernia, no matter how or when sustained, or

    ~~(4) caused wholly or partly, directly or indirectly, by participation in or as a result of war, including, but not limited to, any war declared or undeclared, and armed aggression resisted by the armed forces of any country, international organization, or combination of countries, or~~

    ~~(5) caused by or resulting from intentional self-destruction or intentionally self-inflicted injury, while sane or insane.~~

Benefits for loss of life as specified in this subsection (B) are payable to the Beneficiary of record of the Employee or otherwise as provided in Section 11 hereof. Benefits for all other losses specified in the Schedule of Losses of this subsection (B) are payable to the Employee. These benefits will be paid immediately after receipt of the proof, specified in the preceding paragraph of this subsection (B) and of proof that the claimant is entitled to such payment.

SEE AMEND. 42, 44, 46, 49

~~Section 4.~~ The full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of such Employee at the date of the accident, in accordance with Section 4 hereof, shall be payable as provided in this subsection (B) if the Employee suffers any of the following losses:

Loss of Life

Total and Irrecoverable Loss of Sight of Both Eyes

Loss of Both Hands by severance at or above wrist-joints

Loss of Both Feet by severance at or above ankle-joints

Loss of One Hand and One Foot by severance at or above wrist- and ankle-joints respectively

Such loss of One Hand or of One Foot together with Total and Irrecoverable Loss of Sight of One Eye.

One-half the amount of Insurance for Death or Dismemberment by Accidental Means in force on account of such Employee at the date of the accident, in accordance with Section 4 hereof, shall be payable as provided in this subsection (B) if the Employee suffers any of the following losses:

Loss of One Hand by severance at or above wrist-joint

Loss of One Foot by severance at or above ankle-joint

Total and Irrecoverable Loss of Sight of One Eye.

If an Employee shall suffer more than one of the losses set forth in this subsection (B) as a result of any one accident, no more than the full amount of Insurance for Death or Dismemberment by Accidental Means shall be payable.

If any Employee has suffered prior to the date of issue hereof, or does thereafter suffer, the loss of one hand by severance at or above the wrist-joint, or of one foot by severance at or above the ankle-joint, or the total and irrecoverable loss of sight of one eye, the Insurance for Death or Dismemberment by Accidental Means here-under on such Employee shall be re...ed or continued for the to...

SEE AMEND. 3, 44

~~amount applicable to him in accordance with Section 4 hereof; pro-vided, however, that the amount of such insurance payable for the subsequent loss of one hand or one foot or the sight of one eye as provided in this subsection (B) shall be one-half of such full amount.~~

SEE AMEND. 35, 46

    *Section 6.* PRIVILEGE OF OBTAINING AN INDIVI-DUAL POLICY OF LIFE INSURANCE.—Any Employee whose Life Insurance hereunder shall cease in accordance with any one of items (1), (2), (3), or (4) of the first paragraph of Section 3 hereof, shall be entitled to have issued to him, without evidence of insurability, an individual policy of Life Insurance only, without Disability or Accidental Means Death Benefits, subject to the fol-lowing conditions and provisions:

    ~~(A) written application for such individual policy and payment of the first premium thereon shall be made within 31 days after such cessation (or within such longer period as the Office may allow) to the Insurance Company, or at the Employee's option to any other insurance company which has then been accepted by the Policyholder as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Employee will reside and which has agreed with the Policyholder to do so; and~~

    ~~(B) such individual policy shall be upon one of the forms then customarily issued by the insurance company selected by the Employee, except Term Insurance; and~~

    (C) the premium for such individual policy shall be the premi-um, as determined by the insurance company issuing such policy, applicable to the class of risk to which the Employee belongs and to the form and amount of the individual policy at the Employee's attained age (nearest birthday) at the date of issue of such individual policy, and

    (D) the amount of such individual policy shall be equal to (or at the option of the Employee less than) the amount of the Employee's Life Insurance hereunder on the date of such cessation.

If the Employee dies during the 31 days next following the date of such cessation of his Life Insurance hereunder, upon re-ceipt of proof of such death and entitlement to payment as specified in subsection (A) of Section 5 hereof the Office shall pay to his Beneficiary of record or otherwise as specified in Section 11 hereof, whether or not written application for such individual policy or pay-ment of the first premium therefor shall have been made, the ~~maxi-mum amount of Life Insurance for which an individual policy could have been issued under this Section 6~~, subject to the next two sentences. If the former Employee shall have again become insured hereunder in accordance with the provisions of Section 2 hereof, any payment made under the provisions of this paragraph shall be reduced by the amount of Life Insurance payable upon the death of such Employee under the other provisions of this Policy. If an individual policy has been issued in accordance with the foregoing provisions of this Section 6, any payment made under the provisions of this paragraph shall be reduced by the amount of insurance for which such individual policy was issued, unless such individual policy is surrendered without claim thereunder to the insurance company which issued such policy.

SEE AMEND. 35, 46

Form G 1985
Aug 1954

*Section 7.* NOTICE AND PROOF OF CLAIMS FOR IN-SURANCE FOR DEATH OR DISMEMBERMENT BY AC-CIDENTAL MEANS.—(A) Written notice of loss on which claim may be based must be given to the Office within twenty days after the date of the accident causing such loss. Proof of such loss must be furnished to the Office not later than ninety days after the date of such loss.

The Office, upon receipt of the notice required by this Policy, will furnish such forms as are usually furnished by it for filing proofs of claim. If such forms are not received by the claimant within fifteen days after the Office receives such notice, the claimant shall be deemed to have complied with the requirements of this Policy as to proof of claim upon submitting, within the time fixed in the Policy for filing proofs of claim, written proof covering the occurrence, character and extent of the loss for which claim is made.

Failure to furnish notice or proof within the time provided in this Policy shall not invalidate nor reduce any claim if it shall be shown not to have been reasonably possible to furnish such notice or proof and that such notice or proof was furnished as soon as was reasonably possible.

(B) The Office shall have the right and opportunity to have a physician designated by it examine the person of the Employee when and so often as it may reasonably require during the pendency of claim hereunder, and also the right and opportunity to have an autopsy made in case of death, where it is not forbidden by law.

(C) No action at law or in equity shall be brought to recover on this Policy prior to the expiration of sixty days after proof of claim has been filed in accordance with the requirements of this Policy, nor shall such action be brought at all unless brought within two years from the expiration of the time within which proof of claim is required by the Policy.

*Section 8.* ENTIRE CONTRACT: INCONTESTABILITY.—This Policy and the application of the Policyholder, a copy of which is attached hereto, constitute the entire contract between the parties.

The validity of this Policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from its date of issue. No statement made by any Employee insured hereunder relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such Employee's lifetime nor unless it is contained in a written instrument signed by him.

All statements made by the Policyholder or by insured Employees shall be deemed representations and not warranties, and no statement made by any insured Employee shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such Employee or his Beneficiary or to such other person to whom benefits may be payable as provided in Section 11 hereof.

*Section 9.* AGENTS : ALTERATIONS.—No Agent of the Insurance Company is authorized to alter or amend this Policy, to accept premiums in arrears or to extend the due date of any premium, to waive any notice or proof of claim required by this Policy, or to extend the date before which any such notice or proof must be submitted.

No change in this Policy shall be valid unless evidenced by amendment hereto signed by the Policyholder and by the Insurance Company.

*Section 10.* CERTIFICATES.—The Office will provide the Policyholder with certificates, for delivery to each Employee insured hereunder, setting forth the benefits to which such Employee is entitled under this Policy, to whom such benefits are payable, to whom notice and proof of claim should be submitted and summarizing the provisions of this Policy principally affecting the Employee.

*Section 11.* BENEFICIARIES. Any Employee insured hereunder may designate a Beneficiary and may, from time to time, change his designation of beneficiary, only by filing written notice thereof, signed and witnessed, with his employing office or, in the case of a retired Employee, with the Policyholder, whereupon an acknowledgment of such designation or change will be furnished the Employee. Consent of the Beneficiary shall not be requisite to any change of beneficiary. A witness to a designation or change of beneficiary shall be ineligible to receive payment as a Beneficiary. A designation or change of beneficiary shall take effect only if it is received by the employing office of the Employee or, in the case of a retired Employee, by the Policyholder, prior to the death of the Employee and shall be effective as of the date of receipt of said written notice. Any designation of beneficiary shall automatically cease to be effective on (i) the date the Employee is transferred to another agency, (ii) the date thirty-one days after the date of cessation of the Employee's insurance hereunder, or (iii) the date of retirement of the Employee, whichever first occurs.

If, at the death of any Employee insured hereunder, there shall be more than one designated Beneficiary, then, unless such Employee shall have specified the respective interests of such Beneficiaries, the interests of such Beneficiaries shall be several and equal. If any designated Beneficiary shall predecease the Employee, the rights and interest of such Beneficiary shall thereupon automatically terminate. If, at the death of the Employee, there be no designated Beneficiary as to all or any part of the insurance, then the amount of the insurance payable for which there is no designated Beneficiary shall be payable to the person or persons listed

Form G.1985
Aug. 1954

(4)

below surviving at the date of the Employee's death, in the following order of precedence:

(1) To the widow or widower of the Employee;

(2) If neither of the above, to the child or children of such Employee and descendants of deceased children by representation;

(3) If none of the above, to the parents of such Employee or the survivor of them;

(4) If none of the above, to the duly appointed executor or administrator of the estate of such Employee;

(5) If none of the above, to other next of kin of such Employee as may be determined by the Office to be entitled under the laws of domicile of such Employee at the time of his death.

If any person otherwise entitled to payment under this Section does not make claim therefor within one year after the death of the Employee, or if payment to such person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased the Employee. Payment to any person by virtue of the preceding sentence shall be a bar against any other person.

SEE AMEND. 36
SEE AMEND. 67

Section 12. ASSIGNMENT.—The Employee's certificate is non-assignable and the insurance and benefits are non-assignable prior to a loss.

Section 13. RECORDS—INFORMATION TO BE FURNISHED—DETERMINATION BY THE POLICYHOLDER.—The Policyholder shall maintain or cause to be maintained records from which may be determined the names of all Employees insured hereunder and the amount of insurance in force on each of such Employees. The Policyholder shall furnish or cause to be furnished to the Office such information concerning Employees insured hereunder as may reasonably be considered to have a bearing on the administration of the insurance hereunder. The records of the Policyholder as have a bearing on the insurance hereunder shall be open for inspection by the Office at any reasonable time.

For the purposes of this Policy, determination by the Policyholder of the following shall be conclusive:

(1) The classification of any person as being within the definition of the term "Employee" in Section 1 hereof.

(2) The fact and date of (i) separation of an Employee from the service, (ii) a pay status or non-pay status of an Employee, and (iii) cessation of an Employee's classification as an Employee as defined in Section 1 hereof.

(3) The "annual compensation" of any Employee as of any date.

(4) The fact (i) that any Employee is entitled to and has met all requirements for retirement on immediate annuity, (ii) that any such Employee is retired for disability or the number of years of creditable civilian service of any such Employee is at least fifteen, and (iii) that any such Employee's annuity has terminated and the date of such termination.

SEE AMEND. 2, 22, 51, 55

SEE AMEND. 5, 28

Section 14. PREMIUMS—GRACE PERIOD.—(A) *Basic Tables of Premium Rates*—The initial Schedules of Basic Bi-weekly Premium Rates for Life Insurance and for Insurance for Death or Dismemberment by Accidental Means are set forth in Section 21 hereof. Such Schedules are applicable to the first policy year, and shall be continued for subsequent policy years, except that they may be readjusted for any subsequent policy year, based on the experience under this Policy, such readjustment to be made by the Insurance Company on a basis determined by the Policyholder in advance of such year to be consistent with the general practice of life insurance companies under policies of group life insurance and group accidental death and dismemberment insurance issued to large employers.

Except as otherwise provided in subsection (B) of this Section, the Insurance Company shall compute an average basic bi-weekly Group Life Insurance premium rate per $1,000 of Life Insurance for the first and each subsequent policy year as of the first day of such policy year by applying the Schedule in Section 21 hereof applicable to such policy year to the distribution by age of the amounts of Life Insurance in force hereunder on the first day of such policy year.

The term "policy year" as used in this Policy means the period beginning with the date of issue of this Policy, or with a subsequent renewal date, and ending with the day immediately preceding the next following renewal date.

(B) *Tentative Average Group Life Insurance Premium Rate*—In the event the Policyholder determines that ascertaining the actual age distribution of the amounts of Life Insurance in force hereunder on the date of issue of this Policy or at the end of the first or any subsequent policy year would not be possible except at a disproportionately high expense, the Policyholder may approve the determination of a tentative bi-weekly average Group Life Insurance premium rate per $1,000 of Life Insurance for the first or any subsequent policy year, in lieu of using the actual age distribution. Such tentative premium rate shall then become the premium rate in effect hereunder per $1,000 of Life Insurance. Upon request by the Insurance Company the Policyholder shall redetermine the tentative average premium rate as of any premium due date during any policy year if experience indicates that the assumptions made in determining the tentative average premium for that policy year were incorrect.

(C) *Payment of Premiums*—Premiums under this Policy shall be due as of the date of issue hereof and bi-weekly thereafter on the same day of the week as the date of issue (herein called the due date). The premium payable on any due date shall be either

(1) The sum of (i) the amount of Life Insurance in force on such due date multiplied by the average bi-weekly basic Group Life Insurance premium rate computed in accordance with subsection (A) of this Section in effect on such due date and (ii) the amount of Group Insurance for Death or Dismemberment by Accidental Means in force on such due date multiplied by the bi-weekly premium rate for such insurance in effect on such due date, or

(2) If a tentative bi-weekly average Group Life Insurance premium rate has been determined in accordance with subsec-

Form G.1985
Aug. 1954

tion (B) of this Section, the amount of Life Insurance in force on such due date on the lives of Employees who are making contributions during the payroll period in which such due date falls, multiplied by the sum of such tentative bi-weekly average Group Life Insurance premium rate and the bi-weekly premium rate for Group Insurance for Death or Dismemberment by Accidental Means, such premium rates being those in effect on such due date.

In lieu of the exact calculation of the premium payable on either of such bases, an approximate method for determining the amount of the premium payable may be used by mutual agreement of the Insurance Company and the Policyholder.

All premiums falling due under this Policy, including adjustments thereof, if any, are payable by the Policyholder, on or before their respective due dates, direct to the Insurance Company. The payment of any premium shall not maintain the Insurance under this Policy in force beyond the day immediately preceding the next due date, except as provided in subsection (1) following.

(1) *Grace Period*—A grace period of thirty-one days or of such longer period as the Insurance Company may allow (with or without interest charge after the first thirty-one days as the Insurance Company may determine) shall be granted to the Policyholder for the payment of any premium due provided the Policyholder has not previously given written notice to the Insurance Company that this Policy is to be discontinued as of the due date of such premium, and during any such grace period this Policy shall continue in force.

If the Policyholder fails to pay any premium within the grace period, this Policy shall be discontinued at the end of the last day of such grace period, but the Policyholder shall, nevertheless, be liable to the Insurance Company for the payment of all premiums then due and unpaid, together with the premiums for the grace period. If, however, written notice is given by the Policyholder to the Insurance Company during the grace period, that this Policy is to be discontinued before the expiration of the grace period, this Policy shall be discontinued as of the date of receipt of such written notice by the Insurance Company or the date specified by the Policyholder for such discontinuance, whichever date is later, and the Policyholder shall be liable to the Insurance Company for the payment of all premiums then due and unpaid, together with the pro-rata premium for the period commencing with the last due date and ending with such date of discontinuance.

Section 15. ANNUAL ACCOUNTING AND CONTINGENCY RESERVE.—Not later than ninety days after the end of each policy year the Insurance Company shall prepare and furnish to the Policyholder a statement, in form approved by the Policyholder, setting forth the following:

(1) (a) The aggregate amounts of premiums actually accrued under this Policy under the provisions of Section 14 hereof from the date of issue to the end of such policy year, reduced by

(b) Any premiums returned to the Policyholder in accordance with the provisions of the second following paragraph.

(2) The aggregate amounts of interest for all policy years from the date of issue to the end of such policy year added to the Contingency Reserve held for this Policy in accordance with the provisions of the next following paragraph.

(3) The aggregate amounts of all mortality and other claim charges incurred under this Policy from the date of issue to the end of such policy year.

(4) The aggregate amounts of expense and risk charges incurred under this Policy from the date of issue to the end of such policy year.

(5) The algebraic sum of items (1) plus (2) minus (3) minus (4).

If item (5) is a positive amount, such amount shall be held by the Insurance Company as a Contingency Reserve to be used for charges under this Policy only. Such Contingency Reserve shall bear interest at a rate to be determined in advance of each policy year by the Insurance Company, which rate shall be approved by the Policyholder as being consistent with the rates generally used by the Insurance Company for similar funds held under other group life insurance policies. Such interest shall be computed as of the end of each policy year on the mean amount of the Contingency Reserve during that policy year at the rate applicable to that policy year, and the amount of interest so calculated shall be added to the amount of the Contingency Reserve as of the end of such policy year or upon the request of the Policyholder shall be paid to the Policyholder within ninety days after the end of such policy year for deposit in the Treasury of the United States for credit to the fund created by subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954.

If and when the Policyholder shall determine that such Contingency Reserve has attained an amount estimated by the Policyholder to make satisfactory provision for adverse fluctuations in future charges under this Policy and shall so notify the Insurance Company in writing, then the amount by which the Contingency Reserve computed as of the end of the policy year in which the Insurance Company receives such notice shall exceed the amount of the Contingency Reserve at the beginning of the policy year in which the Insurance Company receives such notice shall be paid to the Policyholder as a return of premium, for deposit in the Treasury of the United States for credit to said fund. Similarly, the amount by which the Contingency Reserve computed as of the end of each subsequent policy year shall exceed the amount of the Contingency Reserve at the beginning of the policy year in which the Insurance Company receives such notice shall also be so paid to the Policyholder. Any interest computed on the Contingency Reserve for the policy year in which the Insurance Company receives such notice and for all subsequent policy years shall also be paid to the Policyholder for such deposit. If and when this Policy shall be discontinued, and if after all charges accrued hereunder have been made, there is any positive balance remaining in the Contingency Reserve, such balance shall be paid to the Policyholder as a return of premium, for deposit in the Treasury of the United States for credit to said fund subject to the right of the Insurance Company to make such return in equal monthly installments over a period of not more than two years. Any return of premium to be

Form G.1985
Aug. 1954

SEE AMEND. 59
SEE AMEND. 60
SEE AMEND. 33,56
SEE AMEND. 29

made by the Insurance Company under the provisions of this paragraph shall be made only if all premiums then accrued under this Policy have actually been received by the Insurance Company.

In determining the aggregate amount of mortality and other claim charges for item (3) above, there shall be included all payments of claims made or approved by the Office in good faith, the amount of pending and unreported claims at the end of the policy year for which the statement is made, as estimated by the Insurance Company, and all charges on account of the excess mortality costs to be expected under individual policies issued pursuant to Section 6 hereof. The charges for such excess mortality costs shall be at the rate of $65 for each $1,000 of life insurance issued under any such policy, which rate may be changed by the Insurance Company, with the approval of the Policyholder, for any policy year after the first.

The aggregate amount of expense and risk charges to be included in item (4) above shall not exceed the maximum amounts specified in the Schedule below. Such maximum charges are applicable to the first policy year and shall be continued for subsequent policy years except that they may be redetermined by the Policyholder for any policy year either by agreement with the Insurance Company or upon written notice given to the Insurance Company at least one year in advance of the beginning of the policy year for which such redetermined maximum charges are to be effective.

SCHEDULE OF MAXIMUM EXPENSE AND RISK CHARGES



| Item | Maximum Charge |
|---|---|
| (a) Expense Charges | |
| (i) Taxes | The actual accrued amount of taxes directly attributable to the premiums, amounts of insurance in force, or reserves under this Policy, as determined by the Insurance Company. |
| (ii) Expense of maintenance and operation of the Office | The actual accrued amount of such expense, as determined by the Insurance Company, but not in excess of 0.8% of Premiums. |
| (iii) Other expenses | 0.33% of Premiums. |
| (b) Risk Charge | 0.4% of Premiums. |

"Premiums", as used in the foregoing Schedule, means the aggregate amount of premiums actually accrued under this Policy for a policy year under the provisions of Section 14 hereof. There shall be included as "Taxes", as used in the foregoing Schedule, Insurance Department fees which are directly attributable to this Policy, to the extent approved by the Policyholder.

The records of the Insurance Company as have a bearing on the annual accounting furnished to the Policyholder shall be open to inspection by the Policyholder at any reasonable time.

*Section 16.* DISCONTINUANCE OF THIS POLICY.—This Policy may be discontinued by the Policyholder at any time, subject to the provisions of subsection (D) of Section 14 hereof.

This Policy may be discontinued by the Insurance Company if

(a) the Insurance Company requests the Policyholder to redetermine the tentative average Group Life Insurance premium rate as provided in Section 14 hereof and a new tentative premium rate satisfactory to the Insurance Company is not agreed upon, in which event such discontinuance shall take effect as of the end of the day preceding any premium due date thereafter specified by the Insurance Company provided such premium due date is at least 60 days after receipt by the Policyholder of written notice of such discontinuance, or

(b) the Policyholder does not agree to any change proposed by the Insurance Company in accordance with Section 15 hereof in the rate of interest applicable to the Contingency Reserve or in the rate of charge for excess mortality costs under individual policies issued pursuant to Section 6 hereof, in which event such discontinuance shall take effect as of the end of the then current policy year, or

(c) the Insurance Company does not agree to the basis determined by the Policyholder in accordance with Section 14 hereof for readjustment of the Schedules of Basic Premium Rates, or the Insurance Company does not agree to any change in the maximum expense and risk charges proposed by the Policyholder in accordance with Section 15 hereof, in either of which events such discontinuance shall take effect as of the end of the policy year immediately preceding the policy year for which such readjusted Schedules of Basic Premium Rates or proposed maximum expense and risk charges were to be effective, or

(d) the Insurance Company gives written notice of such discontinuance to the Policyholder, at least 60 days prior to the end of any policy year, in which event such discontinuance shall take effect as of the end of such policy year, provided that, if notice of discontinuance is given because of a change in the Federal Employees' Group Life Insurance Act of 1954, such notice may be given no earlier than the date of enactment of the change in said Act, in which event such discontinuance shall take effect, unless otherwise mutually agreed between the Insurance Company and the Policyholder, on the effective date of the change in the Act or the date 60 days after receipt of such written notice by the Policyholder, whichever date is later.

*Section 17.* RENEWAL PRIVILEGE.—This Policy is issued for a period commencing with the date of issue and ending with the day immediately preceding the next following renewal date, on

(7)

SEE AMEND. 8, 15, 30, 45, 54, 56

SEE AMEND. 49

which renewal date and on each subsequent renewal date this Policy shall be renewed, subject to the terms of Section 16 hereof, for a further term extending through the day immediately preceding the next following renewal date, unless the Policyholder shall at least sixty days prior to said renewal date give the Insurance Company written notice that such renewal shall not be made. Renewal is conditioned upon the payment of the premiums then due as computed in the manner set forth in Section 14 hereof and based upon such Schedules of Premiums as may then be applicable. The same "renewal date" as used in this Policy shall mean the last premium due date in the month of November in any calendar year, commencing with the calendar year 1955.

Section 18. AGE.—In the event of the misstatement of the age of any Employee, there shall be an equitable adjustment of the premium. If the amount of insurance applicable to such Employee in accordance with Section 4 hereof would have been affected by such misstatement of age, the amount of insurance on such Employee shall be adjusted to the amount to which such Employee would have been entitled at his correct age.

Section 19. PARTICIPATION—DIVIDENDS.—This Policy is a participating contract and the Insurance Company shall determine annually the dividend, if any, to which this Policy may be entitled. Any such dividend shall be paid in cash to the Policyholder or, upon written request by the Policyholder, shall be applied toward the payment of premiums. In either event, an amount equal to the excess, if any, of the Employees' aggregate contributions toward the cost of the insurance provided hereunder over the net cost of such insurance shall be distributed or applied by the Policyholder for the sole benefit of the Employees.

Section 20. OPTIONAL MODES OF SETTLEMENT.—Upon written election after the death of the Employee by the Beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, made to and accepted by the Office, the whole or any part of the amount of insurance payable upon the death of any Employee insured hereunder will be retained by the Insurance Company and paid to such person in the following manner instead of in one sum:"

By payment of monthly or annual instalments over such specified number of years (shown in the following table) as may be elected, the first instalment being payable immediately upon the death of the Employee. The amount of such instalments shall be determined by the Schedule of Instalment Payments per $1,000 of Insurance in effect at the date of such election.

SEE AMEND. 29, 62

SEE AMEND. 43, 53

SEE AMEND. 43, 53

SEE AMEND. 43, 53

INITIAL SCHEDULE OF INSTALMENT PAYMENTS

PER $1,000 OF INSURANCE

| Number of Years Specified | Amount of Each Annual Instalment ( Per $1,000 of Insurance ) | Amount of Each Monthly Instalment ( Per $1,000 of Insurance ) |
|---|---|---|
| 1 | $1,000.00 | $84.79 |
| 2 | 505.61 | 42.86 |
| 3 | 340.84 | 28.89 |
| 4 | 258.39 | 21.73 |
| 5 | 208.97 | 17.39 |
| 10 | 110.37 | 9.29 |
| 15 | 77.58 | 6.53 |
| 20 | 61.30 | 3.16 |

The amounts payable under the foregoing Schedule are based upon an assumed interest earning of 2½ per centum per annum.

Upon any renewal of this Policy, or whenever the terms of this Policy are changed, the Insurance Company may substitute for the foregoing Schedule, a Schedule of Instalment Payments per $1,000 of Insurance based upon a different assumed interest earning, but such new Schedule shall not be applicable to elections made prior to the date of such substitution.

If the Insurance Company declares for any year, upon funds held by it for instalment payments elected under such options, a greater interest rate than that upon which instalment payments under any election were based, the excess amount of interest in accordance with such declaration shall be paid on the next anniversary of the commencement of instalment payments under such election.

If the payee of any optional mode of settlement so elected dies before all instalments for the period selected have been paid, the unpaid instalments shall, unless otherwise specified in the election of such instalment payments, be commuted at the rate of compound interest upon which was based the Schedule of Instalment Payments per $1,000 of Insurance used to determine such instalment payments, and such commuted sum shall be paid to the estate of such payee.

A mode of settlement other than one of those specified above may be arranged if the Beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, after the death of the Employee, and the Office mutually agree thereon. Information concerning such other possible modes of settlement will be furnished by the Office upon written request.

No instalment election shall be allowed under which the instalment payment is less than $10.00.

A payee may not assign, transfer, or encumber his rights under the optional mode of settlement elected, or any payment thereunder, and, to the extent permitted by law, the amount retained by the Insurance Company and the payments under the optional mode of settlement shall not be subject to claims of any creditor of any payee, nor to execution or other legal process on behalf of any creditor of any payee.

SEE AMEND. 43, 53

(8)

Form G.1985
Aug. 1954

~~Section 7. INITIAL SCHEDULES OF BASIC PREMIUM RATES.~~

INITIAL SCHEDULE OF BI-WEEKLY BASIC LIFE INSURANCE
PREMIUM RATES PER $1,000 OF LIFE INSURANCE

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.09 | 35 | $0.19 | 55 | $0.76 | 75 | $3.73 |
| 16 | .09 | 36 | .21 | 56 | .82 | 76 | 4.06 |
| 17 | .10 | 37 | .22 | 57 | .89 | 77 | 4.40 |
| 18 | .10 | 38 | .23 | 58 | .96 | 78 | 4.76 |
| 19 | .10 | 39 | .25 | 59 | 1.04 | 79 | 5.16 |
| 20 | .10 | 40 | .26 | 60 | 1.13 | 80 | 5.58 |
| 21 | .11 | 41 | .28 | 61 | 1.22 | 81 | 6.03 |
| 22 | .11 | 42 | .30 | 62 | 1.32 | 82 | 6.52 |
| 23 | .12 | 43 | .32 | 63 | 1.43 | 83 | 7.05 |
| 24 | .12 | 44 | .34 | 64 | 1.55 | 84 | 7.61 |
| 25 | .12 | 45 | .36 | 65 | 1.68 | 85 | 8.22 |
| 26 | .13 | 46 | .39 | 66 | 1.82 | 86 | 8.86 |
| 27 | .13 | 47 | .42 | 67 | 1.97 | 87 | 9.55 |
| 28 | .14 | 48 | .45 | 68 | 2.14 | 88 | 10.28 |
| 29 | .14 | 49 | .48 | 69 | 2.32 | 89 | 11.06 |
| 30 | .15 | 50 | .52 | 70 | 2.51 | 90 | 11.89 |
| 31 | .16 | 51 | .56 | 71 | 2.72 | 91 | 12.77 |
| 32 | .17 | 52 | .60 | 72 | 2.93 | 92 | 13.69 |
| 33 | .18 | 53 | .66 | 73 | 3.19 | 93 | 14.67 |
| 34 | .18 | 54 | .71 | 74 | 3.46 | 94 | 15.70 |

In computing the average basic bi-weekly Life Insurance premium rate pursuant to Section 14 hereof there shall be added to the average basic bi-weekly Life Insurance premium determined on the basis of the premiums shown above the smaller of (i) $3.19 divided by the total amount of Life Insurance in force under this Policy on the date of such computation expressed in thousands and fractions thereof, and (ii) $0.07.

The initial bi-weekly basic premium rate for Insurance for Death or Dismemberment by Accidental ~~Means shall be $0.0231 per $1,000 of the full amount of such Insurance.~~

SEE AMEND. 16, 34, 52

SEE AMEND. 6, 49

*Section 22.* REINSURANCE.—The Insurance Company shall reinsure portions of the total amount of insurance under this Policy under conditions determined by the Policyholder in accordance with Section 7 of the Federal Employees' Group Life Insurance Act of 1954.

~~*Section 23.* CONFORMITY WITH LAW.—If any provisions required by the Federal Employees' Group Life Insurance Act of~~

SEE AMEND. 7, 10, 25, 27, 37, 49

~~1954 (other than the provisions of Section 10 thereof), as constituted on the date of issue hereof, to be contained in this Policy are not specifically contained herein, then such provisions shall be deemed part of this Policy as though set forth herein at length. No amendment to said Act effective after the date of issue of this Policy shall have any effect on the rights or liabilities of the Policyholder or the Insurance Company under this Policy except pursuant to appropriate amendment to this Policy signed by the Policyholder and by the Insurance Company.~~

SEE AMEND. 32, 39, 48, 51

(9)

Form G.1985
Aug. 1954

SCHEDULE A

(Referred to in Section 1)

Officers and employees in the following groups are excluded from the definition of the term "Employee" in Section 1 hereof.

(1) Employees in any corporation under the supervision of the Farm Credit Administration of which corporation any member of the Board of Directors is elected or appointed by private interests.

(2) Noncitizen employees whose permanent duty station is located outside a State of the United States or the District of Columbia.

SEE AMEND. 14  (3) Commissioned officers and enlisted personnel on active duty in or with the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States.

SEE AMEND. 12  (4) Employees serving under appointments limited to one year or less, except, after November 2, 1954, acting postmasters.

SEE AMEND. 38  (5) Seasonal or emergency employees whose employment is of uncertain or purely temporary duration or who are employed for brief periods at intervals.

(6) Part-time, when-actually-employed, or intermittent employees having no regular tour of duty.

(7) Employees whose salary, pay or compensation on an annual basis is $12 a year or less.

(8) Member or patient employees in Government hospitals or homes.

(9) Employees paid on a contract or fee basis.

(10) Employees paid on a piecework basis, except those whose work schedule provides for regular or full-time service.

SEE AMEND. 5  (11) Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds.

(12) Employees whose duties involve the security of the United States and preclude their identification as employees of the Federal Government.

SEE AMEND. 20  (13) Retired employees reemployed under conditions not terminating their title to annuities.

SEE AMEND. 41

Form G.128
Aug. 1954

## SCHEDULE B

#### LIST OF RETIREMENT SYSTEMS REFERRED TO IN THE SECOND PARAGRAPH OF SECTION 3 HEREOF

(1) Civil Service Retirement System

(2) System for Board of Governors of the Federal Reserve System

(3) System for Public School Teachers of the District of Columbia

(4) Tennessee Valley Authority System

(5) System for Civilian Teachers at the Naval Academy

(6) Foreign Service Retirement System

(7) System for Policemen and Firemen of the District of Columbia

(8) Federal Judiciary Retirement System

(9) Judiciary of the Territories Retirement System

(10) System for Judiciary of the District of Columbia

(11) System for Judiciary of the Tax Court

(12) Old Age and Survivors Insurance System (Social Security)

(13) Coast and Geodetic Survey System

(14) System for Officers of the Public Health Service

(15) Lighthouse Retirement System

SEE AMEND. 4, 26

The Policyholder may, upon written notice to the Insurance Company, add to or eliminate from the foregoing list any System, provided that the elimination of any System from said list shall not operate to discontinue any insurance then being continued in force hereunder on any retired Employee in accordance with the provisions of the second paragraph of Section 3 hereof unless the Policyholder and the Insurance Company otherwise mutually agree.

Form G.198
Aug. 195

## APPLICATION

Pursuant to the Federal Employees' Group Life Insurance Act of 1954, application is hereby made to

### METROPOLITAN LIFE INSURANCE COMPANY

for the insurance provided by Group Policy No. 17000-G, the form of which has been prepared and designated by Metropolitan Life Insurance Company as "Form G.1985", the terms of which are hereby approved and accepted. A copy of such Form duly executed by Metropolitan Life Insurance Company together with a copy of this application duly executed by the Policyholder and attached to said copy of such Form shall constitute the Group Policy hereby applied for.

This application supersedes the preliminary application signed at Washington, District of Columbia, September 10, 1954.

Signed at Washington, District of Columbia, this _10th_ day of _November_, 1954.

### UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _____
          Chairman

Form G.4929-1
Sept. 1954

(12)

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION

(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 1**

Effective as of the date of issue of said Group Policy, by substituting for item (3) of the first paragraph of Section 3 thereof, the following:

"(3) The day immediately preceding the date the Employee enters on active duty in or with the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States."

**AMENDMENT 2**

Effective as of the date of issue of said Group Policy.

A. By substituting for the second sentence of the second paragraph of Section 3 thereof, the following:

"The conditions for continuation of insurance after retirement are: (a) the Employee must be entitled to and have met all requirements for retirement on immediate annuity under any of the Retirement Systems listed in Schedule B attached to this Policy as a part hereof, and (b) the Employee must either be retired for disability or have completed 15 years of creditable service, including as part of such creditable service, if the Employee at retirement has completed at least five years of creditable civilian service, periods of honorable active service in the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States."

B. By substituting for item (4) of the second paragraph of Section 3 thereof, the following:

"(4) The fact (i) that any Employee is entitled to and has met all requirements for retirement on immediate annuity, (ii) that any such Employee is retired for disability or has completed at least 15 years of creditable service, including as part of such creditable service, if the Employee at retirement has completed at least five years of creditable civilian service, periods of honorable active service in the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States, and (iii) that any such Employee's annuity has terminated and the date of such termination."

**AMENDMENT 3**

Effective as of the date of issue of said Group Policy, by substituting for the caption "Schedule of Losses" and for the provisions appearing under said caption in subsection (B) of Section 5 thereof, the following:

"SCHEDULE OF LOSSES

For loss of life, the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the Employee's death, or at the date of cessation of such insurance if his death occurs after such cessation, shall be payable as provided in this subsection (B).

Form G. 1985-1
Nov. 1955

For any of the following losses, the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the accident shall be payable as provided in this subsection (B):

Total and Irrecoverable Loss of Sight of Both Eyes
Loss of Both Hands by severance at or above wrist-joints
Loss of Both Feet by severance at or above ankle-joints
Loss of One Hand and of One Foot by severance at or above wrist- and ankle-joints
Such loss of One Hand or of One Foot together with Total and Irrecoverable Loss of Sight of One Eye.

For any of the following losses, one-half the amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the accident shall be payable as provided in this subsection (B):

Loss of One Hand by severance at or above wrist-joint
Loss of One Foot by severance at or above ankle-joint
Total and Irrecoverable Loss of Sight of One Eye.

If the Employee shall suffer more than one of the losses set forth in this subsection (B) as a result of any one accident, then the aggregate amount payable for all such losses, other than loss of life, shall not exceed the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the accident: and the amount payable for loss of life resulting from the same accident shall not exceed the excess, if any, of the full amount of Insurance for Death or Dismemberment by Accidental Means in force on account of the Employee, in accordance with Section 4 hereof, at the date of the Employee's death, or at the date of cessation of such insurance if his death occurs after such cessation, over the aggregate amount payable for all other losses suffered as a result of such accident. Any payment for loss of life made by the Office prior to receipt by the Office of claim by or on behalf of the Employee or his estate for any other losses suffered by the Employee as a result of the same accident shall discharge any liability of the Insurance Company with respect to all such other losses to the extent of the amount of payment made for loss of life.

If any Employee has sustained prior to the date of issue hereof, or does thereafter suffer, the loss of one hand by severance at or above the wrist-joint, or of one foot by severance at or above the ankle-joint, or the total and irrecoverable loss of sight of one eye, the Insurance for Death or Dismemberment by Accidental Means hereunder on such Employee shall be issued or continued for the full amount applicable to him in accordance with Section 4 hereof, provided, however, that the amount of such insurance payable for the subsequent loss of one hand or of one foot or the sight of one eye as provided in this subsection (B) shall be one-half of such full amount."

## AMENDMENT 4

Effective as of the date of issue of said Group Policy, by substituting for items (8), (9), (10), (11), (12), (13), (14) and (15) of Schedule B attached to said Group Policy as a part thereof, the following:

"(8) Old Age and Survivors Insurance System (Social Security)
(9) Coast and Geodetic Survey System
(10) System for Officers of the Public Health Service
(11) Lighthouse Retirement System"

## AMENDMENT 5

Effective July 16, 1955.

A. By substituting for item (11) of Schedule A attached to said Group Policy as a part thereof, the following:

"(11) Prior to July 16, 1955, Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds."

B. By substituting for the first paragraph of Section 2 thereof, the following:

"*Section 2.* EFFECTIVE DATES OF INSURANCE.—The 'effective date' referred to in this Section 2 shall be the first day of the first pay period which begins after August 28, 1954, except that in the case of Employees in the employ of the Board of Governors of the Federal Reserve System, the 'effective date' shall be the first day of the first pay period which begins after September 25, 1954, and except that in the case of Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds, the 'effective date' shall be the date or dates on or after July 16, 1955 prescribed by the Policyholder for any group of such employees."

C. By adding to the second paragraph of Section 13 thereof, the following item (5):

"(5) The 'effective date' referred to in the first paragraph of Section 2 hereof, for any group of Employees serving in cooperation with non-Federal agencies who are paid in whole or in part from non-Federal funds."

## AMENDMENT 6

Effective August 11, 1955, by adding to Section 22 thereof, the following:

", as amended August 11, 1955."

## AMENDMENT 7

Effective August 11, 1955, by substituting for Section 23 thereof, the following:

"*Section 23.* CONFORMITY WITH LAW.—If any provisions required by the Federal Employees' Group Life Insurance Act of 1954 (other than the provisions of Section 10 thereof), as amended August 11, 1955,—to be contained in this Policy are not specifically contained herein, then such provisions shall be deemed part of this Policy as though set forth herein at length. No amendment to said Act enacted after August 11, 1955 shall have any effect on the rights or liabilities of the Policyholder or the Insurance Company, under this Policy except pursuant to appropriate amendment to this Policy signed by the Policyholder and by the Insurance Company."

## AMENDMENT 8

Effective November 20, 1955, by substituting the figure "0.30%" for the figure "0.33%" in item (a) (iii) of the "Schedule of Maximum Expense and Risk Charges" in Section 15 thereof.

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at __WASHINGTON, D. C.__ this __Ninth__ day of __May__ 19.56

__Mary J. Anguin__
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By__Philip Young__

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at __New York, N. Y.__ this __Twenty-eighth__ day of __May__ 19.56

__C. G. Arlinghaus__
(Registrar)

METROPOLITAN LIFE INSURANCE COMPANY,

*W. F. Barrett*
Secretary.

COPY

Form G. 1985-1
Nov. 1955
PRINTED IN U.S.A.

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954, and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 9**

Effective as of the date of issue of said Group Policy,

A. By substituting for the second paragraph of Section 3 thereof, as amended, the following:

"However, if the insurance on any Employee insured hereunder would cease because of the happening of the event specified in either of items (1) or (2) of the preceding paragraph and the Employee meets the conditions for continuation of insurance after retirement or while receiving benefits under the Federal Employees' Compensation Act, as specified in items (A) and (B) of this paragraph, and does not exercise his right to have an individual policy issued to him in accordance with Section 6 hereof, his Life Insurance only shall be continued or reinstated, commencing with the date he first meets such conditions, for the amount of insurance and period of time specified in said items:

(A) The conditions for continuation of insurance after retirement are: (a) the Employee must be entitled to and have met all requirements for retirement on immediate annuity under any of the Retirement Systems listed in Schedule II attached to this Policy as a part hereof, and (b) the Employee must either be retired for disability or have completed 15 years of creditable service, including as part of such creditable service, if the Employee at retirement has completed at least five years of creditable civilian service, periods of honorable active service in the Army, Navy, Air Force, Marine Corps, or Coast Guard of the United States. The amount of his Life Insurance continued or reinstated as aforesaid shall be in the amounts for which he would have been insured hereunder if he had not retired and his salary payments had continued at the same rate as on the date of his retirement. Such Life Insurance shall automatically cease on (i) the date of termination of the annuity of the retired Employee, (ii) the day preceding the first day the Employee is in a pay status under a subsequent appointment of the retired Employee to a position such that he again falls within the definition of the term "Employee" in Section 1 hereof, or (iii) the date of discontinuance of this Policy, whichever first occurs.

(B) The conditions for continuation of insurance while an Employee is receiving benefits under the Federal Employees' Compensation Act are: the Employee must be receiving benefits under said Act because of disease or injury to himself and must be held by the United States Department of Labor to be unable to return to duty. The amount of his

Life Insurance continued or reinstated as aforesaid shall be in the amounts for which he would have been insured hereunder had his salary payments continued at the same rate as on the date insurance would otherwise have ceased. Such Life Insurance shall automatically cease on (i) the date of termination of the Employee's benefits under said Act, (ii) on the date of a finding by the said Department of Labor that he is able to return to duty, or (iii) the date of discontinuance of this Policy, whichever first occurs. The continuation of insurance provided by this item (B) shall be available to any Employee otherwise meeting the conditions of this paragraph and of this item (B) even though he exercises before May 28, 1956 his right to have an individual policy issued to him in accordance with Section 6 hereof."

B. By substituting for the first paragraph of Section 11 thereof, the following:

"Section 11. BENEFICIARIES.—Any Employee insured hereunder may designate a Beneficiary and may, from time to time, change his designation of beneficiary, only by filing written notice thereof, signed and witnessed, with his employing office or, in the case of (1) a retired Employee and (2) an Employee whose Life Insurance hereunder is continued while he is in receipt of benefits under the Federal Employees' Compensation Act, with the Policyholder, whereupon an acknowledgment of such designation or change will be furnished the Employee. Consent of the Beneficiary shall not be requisite to any change of beneficiary. A witness to a designation or change of beneficiary shall be ineligible to receive payment as a Beneficiary. A designation or change of beneficiary shall take effect only if it is received by the appropriate office prior to the death of the Employee and shall be effective as of the date of receipt of said written notice. Any designation of beneficiary shall automatically cease to be effective on (i) the date the Employee is transferred to another agency, (ii) the date thirty-one days after the date of cessation of the Employee's insurance hereunder, (iii) the date of retirement of the Employee, or (iv) the date the Employee qualifies for continuation of Life Insurance hereunder, as provided in item (B) of the second paragraph of Section 3 hereof, because he is in receipt of benefits under the Federal Employees' Compensation Act, whichever first occurs."

**AMENDMENT 10**

Effective August 2, 1956, by substituting the date "August 2, 1956" for the date "August 11, 1955" in the two places in which it appears in Section 23 thereof, as amended.

Form G. 1985-2
Sept. 1956

**AMENDMENT 11**

Effective on the first day of the first pay period which begins after August 11, 1956, by inserting the words "(including Gallaudet College)" immediately after the words "United States Government owned or controlled corporation" in the first paragraph of Section 1 thereof.

**AMENDMENT 12**

Effective October 17, 1956, by substituting for item (4) of Schedule A attached to said Group Policy as a part thereof, the following:

"(4) Employees serving under appointments limited to one year or less, except, after November 3, 1954, acting postmasters, and except, after October 16, 1956, employees so appointed for full-time employment, without break in service or after a separation of three days or less, following service in which they were insured hereunder."

**AMENDMENT 13**

Effective November 6, 1956.

A. By substituting for the third paragraph of Section 2 thereof, the following:

"The insurance hereunder on each person who becomes an Employee as defined in Section 1 hereof, after November 5, 1956 and on or after the effective date specified in the first paragraph of this Section 2 for the group of Employees of which he is a member, shall become effective at the time he actually enters on duty on his first day in a pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given such a notice which remains uncancelled.

The insurance hereunder on each Employee who transfers after November 5, 1956 from one employing office to another in which he remains an Employee shall become effective at the beginning of the effective date of his appointment by transfer, unless on or before that day he has given written notice to his new employing office that he desires not to be insured hereunder or had previously given such a notice to a former employing office which remains uncancelled."

B. By substituting for the fourth paragraph of Section 2 thereof, the following:

"The insurance hereunder on each Employee who returns to duty and is in a pay status, after November 5, 1956 and on or after the effective date specified in the first paragraph of this Section 2 for the group of Employees of which he is a member, after having been in a non-pay status which extended continuously for more than 12 months, shall become effective at the time he actually enters on duty on his first day in such pay status unless on or before such first day he has given written notice to his employing office that he desires not to be insured hereunder or had previously given such a notice which remains uncancelled."

**AMENDMENT 14**

Effective January 1, 1957.

A. By deleting item (3) of Schedule A attached to said Group Policy as a part thereof.

B. By inserting immediately after the word "hereof" at the end of the first paragraph of Section 1 thereof, as amended, the following:

", provided, however, that no person shall become an Employee hereunder by virtue of his status as a 'member of a uniformed service' as that term is defined in Section 102 of the Servicemen's and Veterans' Survivor Benefits Act"

C. By substituting for item (3) of the first paragraph of Section 3 thereof, as amended, the following:

"(3) The day immediately preceding the date the Employee enters on active duty or active duty for training as a member of a uniformed service, unless the period of such duty is covered by military leave with pay from his civilian position. This provision for cessation of insurance shall not apply with respect to any insurance effective hereunder prior to January 1, 1957 on commissioned officers of the Coast and Geodetic Survey or of the Regular or Reserve Corps of the Public Health Service. The terms 'active duty', 'active duty for training' and 'member of a uniformed service' shall have the meanings assigned to them by Section 102 of the Servicemen's and Veterans' Survivor Benefits Act."

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at   Washington, D. C.   this   Twentieth   day of   February   19 57

Mary J. Angluin   
(Witness)

**UNITED STATES CIVIL SERVICE COMMISSION**   
(Policyholder)

By   Philip Young

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at   New York, N. Y.   this   Twenty-ninth   day of   March   19 57

C. G. Arlinghaus   
(Reporter)

**METROPOLITAN LIFE INSURANCE COMPANY.**

W. J. Barrett   
Secretary

Form G. 1985-2   
Sept. 1956

C O P Y

## METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954, and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT  15

Effective for the policy year commencing November 30, 1958, by substituting for the figure "0.6%" in item (b) of the "Schedule of Maximum Expense and Risk Charges" in Section 15 thereof the figure "0.5%". This substitution shall remain in effect for subsequent policy years subject to further redetermination as provided in said Section 15, and subject to the following paragraph.

If a basic premium rate or tentative average premium rate shall be reduced for any policy year in accordance with Section 14 thereof, the said figure shall automatically revert to "0.6%" for that policy year, unless the Policyholder and the Insurance Company agree to the use of the figure "0.5%" or of some intermediate figure for that policy year, or unless the Policyholder shall have given written notice to the Insurance Company in accordance with said Section 15 at least one year in advance of the beginning of such policy year of a different Maximum Risk Charge to be applicable to that policy year.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ____Washington, D.C.____ this ____24th____ day of ____June____ 19 58

____Mary J. Angluin____
        (Witness)

UNITED STATES CIVIL SERVICE COMMISSION
                (Policyholder)

By ____Harris Ellsworth____

### (SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ____New York, New York____ this ____10th____ day of ____July____ 19 58

METROPOLITAN LIFE INSURANCE COMPANY,

W. J. Barrett
                Secretary

____C. G. Arlinghaus____
        (Registrar)

COPY

Form G.1985-3

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954, and issued to

## UNITED STATES CIVIL SERVICE COMMISSION

(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 16**

Effective for the policy year commencing November 30, 1958, by substituting for Section 21 thereof the following:

"*Section 21.* SCHEDULES OF BASIC PREMIUM RATES

SCHEDULE OF BI-WEEKLY BASIC LIFE INSURANCE
PREMIUM RATES PER $1,000 OF LIFE INSURANCE

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.08 | 35 | $0.18 | 55 | $0.69 | 75 | $3.41 |
| 16 | .08 | 36 | .19 | 56 | .75 | 76 | 3.69 |
| 17 | .09 | 37 | .20 | 57 | .81 | 77 | 4.00 |
| 18 | .09 | 38 | .21 | 58 | .87 | 78 | 4.33 |
| 19 | .09 | 39 | .22 | 59 | .95 | 79 | 4.69 |
| 20 | .09 | 40 | .24 | 60 | 1.02 | 80 | 5.07 |
| 21 | .10 | 41 | .25 | 61 | 1.11 | 81 | 5.48 |
| 22 | .10 | 42 | .27 | 62 | 1.20 | 82 | 5.93 |
| 23 | .10 | 43 | .29 | 63 | 1.30 | 83 | 6.41 |
| 24 | .11 | 44 | .31 | 64 | 1.41 | 84 | 6.92 |
| 25 | .11 | 45 | .33 | 65 | 1.52 | 85 | 7.47 |
| 26 | .12 | 46 | .36 | 66 | 1.65 | 86 | 8.05 |
| 27 | .12 | 47 | .38 | 67 | 1.79 | 87 | 8.68 |
| 28 | .12 | 48 | .41 | 68 | 1.94 | 88 | 9.35 |
| 29 | .13 | 49 | .44 | 69 | 2.10 | 89 | 10.06 |
| 30 | .14 | 50 | .48 | 70 | 2.28 | 90 | 10.81 |
| 31 | .14 | 51 | .51 | 71 | 2.47 | 91 | 11.61 |
| 32 | .15 | 52 | .55 | 72 | 2.68 | 92 | 12.45 |
| 33 | .16 | 53 | .60 | 73 | 2.90 | 93 | 13.33 |
| 34 | .17 | 54 | .64 | 74 | 3.15 | 94 | 14.27 |

The bi-weekly basic premium rate for Insurance for Death or Dismemberment by Accidental Means shall be $0.0231 per $1,000 of the full amount of such Insurance."

The foregoing Schedules of Basic Premium Rates shall remain in effect for policy years subsequent to the policy year commencing November 30, 1958 subject to further readjustment as provided in subsection (A) of Section 14 of said Group Policy.

In accordance with the second paragraph of Amendment 15 attached to said Group Policy as a part thereof, it is agreed that the foregoing reduction in Basic Life Insurance Premium Rates shall not of itself operate to change the figure used for the Maximum Risk Charge in the "Schedule of Maximum Expense and Risk Charges" in Section 15 of said Group Policy, and that otherwise the second paragraph of said Amendment 15 shall remain fully operative with respect to any future reduction or reductions in a basic premium rate or tentative average premium rate.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this ___25th___ day of ___August___ 1958.

Margaret E. Ringrose
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By   Frederick J. Layton

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at   New York, N. Y.   this   15th   day of   September   1958

METROPOLITAN LIFE INSURANCE COMPANY.

C. G. Arlinghaus
(Registrar)

Form G-1965-4—July 1958—PRINTED IN U.S.A.

COPY

W. J. Barrett
Secretary.

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 17**

Effective as of the date of issue of said Group Policy, by substituting for the second sentence of the first paragraph of Section 4 thereof, the following:

"Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change."

**AMENDMENT 18**

Effective August 28, 1957, by adding immediately after the first paragraph of Section 1 thereof, as amended, the following paragraph:

"The term 'Employee' shall also include any Presidential appointee or elected officer during such time as provision for coverage of such person under the Federal Employees' Group Life Insurance Act of 1954, as amended, is made under the provisions of Section 6(b) of the International Atomic Energy Agency Participation Act of 1957."

**AMENDMENT 19**

Effective March 15, 1958, by substituting for the last sentence of the first paragraph of Section 11 thereof, as amended, the following:

"Any designation of beneficiary shall automatically cease to be effective on (i) the date thirty-one days after the date of cessation of the Employee's insurance hereunder unless the Employee's Life Insurance is reinstated in accordance with the provisions of the second paragraph of Section 3 hereof, or (ii) the date the Employee is transferred to another agency, whichever first occurs."

**AMENDMENT 20**

Effective January 31, 1959, by substituting for item (13) of Schedule A attached to said Group Policy as a part thereof, the following:

"(13) Retired employees reemployed under conditions not terminating their title to annuities, except such reemployed retired employees serving from August 29, 1954 to January 31, 1959, without a break in service of more than 3 days."

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this 8th day of May 19 59

_____Mary J. Angluin_____  
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____Roger W. Jones_____

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at New York, New York this 17th day of June 19 59

METROPOLITAN LIFE INSURANCE COMPANY,

_____Clemens G. Arlinghaus_____  
(Registrar)

W. J. Barrett
Secretary

COPY

Form G. 1985-5  
Feb. 1959  
PRINTED IN U.S.A.

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION

(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 21

Effective May 18, 1959, by substituting "23 East 24th Street, New York 10, N. Y." for "330 Fourth Avenue, New York 10, N. Y." as the post office address of the Office of Federal Employees' Group Life Insurance appearing in the third paragraph of Section 1 thereof, as amended.

### AMENDMENT 22

Effective September 23, 1959, by substituting "15 years of creditable service in the case of an Employee whose retirement occurs prior to September 23, 1959, or 12 years of creditable service in the case of an Employee whose retirement occurs on or after September 23, 1959," for "15 years of creditable service," in the first sentence in item (A) of the second paragraph of Section 3 thereof, as amended, and in item (4) of the second paragraph of Section 13 thereof, as amended.

### AMENDMENT 23

Effective September 23, 1959, by substituting for the second sentence in item (A) of the second paragraph of Section 3 thereof, as amended, the following:

"The amount of his Life Insurance continued or reinstated as aforesaid shall be in accordance with Section 4 hereof."

### AMENDMENT 24

Effective September 23, 1959, by substituting for Section 4 thereof, as amended, the following:

"Section 4. AMOUNT OF INSURANCE.—(A) *Applicable Prior to the Employee's Retirement:*—The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change.

Form G. 1985-6
Sept. 1959

## SCHEDULE OF INSURANCE

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $1,000 | $1,000 | $1,000 |
| $1,000 | 2,000 | 2,000 | 2,000 |
| 2,000 | 3,000 | 3,000 | 3,000 |
| 3,000 | 4,000 | 4,000 | 4,000 |
| 4,000 | 5,000 | 5,000 | 5,000 |
| 5,000 | 6,000 | 6,000 | 6,000 |
| 6,000 | 7,000 | 7,000 | 7,000 |
| 7,000 | 8,000 | 8,000 | 8,000 |
| 8,000 | 9,000 | 9,000 | 9,000 |
| 9,000 | 10,000 | 10,000 | 10,000 |
| 10,000 | 11,000 | 11,000 | 11,000 |
| 11,000 | 12,000 | 12,000 | 12,000 |
| 12,000 | 13,000 | 13,000 | 13,000 |
| 13,000 | 14,000 | 14,000 | 14,000 |
| 14,000 | 15,000 | 15,000 | 15,000 |
| 15,000 | 16,000 | 16,000 | 16,000 |
| 16,000 | 17,000 | 17,000 | 17,000 |
| 17,000 | 18,000 | 18,000 | 18,000 |
| 18,000 | 19,000 | 19,000 | 19,000 |
| 19,000 | — | 20,000 | 20,000 |

(B) *Applicable After the Employee's Retirement:*—The amount of Life Insurance hereunder on any Employee after retirement shall be the basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement of 25% of the basic amount of Life Insurance. The terms 'basic amount of Life Insurance' and 'effective reduction date' are defined in the following paragraphs of this subsection (B).

With respect to an Employee whose retirement occurs on or after September 23, 1959, 'basic amount of Life Insurance' means the amount of Life Insurance in accordance with the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and 'effective reduction date' means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later.

**AMENDMENT 24 (Continued)**

With respect to an Employee whose retirement occurs prior to September 23, 1959, "basic amount of Life Insurance" means the amount of Life Insurance in accordance with the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on (a) the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (b) his 65th birthday, whichever is earlier (or in the case of any such Employee who first became or again became insured hereunder after his 65th birth-

day, based on (i) the amount of his annual compensation on the latest date he became insured hereunder, or (ii) the amount of his annual compensation on his 65th birthday if the Employee was eligible to be insured hereunder on his 65th birthday, whichever is the lesser); and "effective reduction date" means the first day of the second calendar month after his 65th birthday."

**AMENDMENT 25**

Effective September 23, 1959, by substituting the date "September 23, 1959" for the date "August 2, 1956" in the two places in which it appears in Section 23 thereof, as amended.

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ........Washington, D. C.......... this ............ fourth ............ day of ........ January ............ 19 60.

........................Mary J. Angluin........................  
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION  
(Policyholder)

By............ Roger W. Jones ....... Chairman ............

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ....New York, New York.... this ............ fourteenth ............ day of ........ January ............ 19 60.

..............C. G. Arlinghaus..............  
(Registrar)

METROPOLITAN LIFE INSURANCE COMPANY.

*W. J. Barrett*  
Vice-President & Secretary

COPY

Form G. 1985-6  
Sept. 1959  
PRINTED IN U.S.A.

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 26**

Effective as of the date of issue of said Group Policy, by substituting for the list of Retirement Systems in Schedule B attached to said Group Policy as a part thereof, the following list:

"(1) Civil Service Retirement System

(2) System for Board of Governors of the Federal Reserve System

(3) System for Public School Teachers of the District of Columbia

(4) Tennessee Valley Authority System

(5) System for Civilian Teachers at the Naval Academy

(6) Foreign Service Retirement System

(7) System for Policemen and Firemen of the District of Columbia

(8) Old Age and Survivors Insurance System (Social Security)

(9) Coast and Geodetic Survey System

(10) System for Officers of the Public Health Service

(11) Lighthouse Retirement System

(12) Federal Judiciary Retirement System (28 U.S.C. 371(a))

(13) Judiciary of the Territories Retirement System (28 U.S.C. 373)"

**AMENDMENT 27**

Effective July 1, 1960, by substituting "as amended to and including July 1, 1960" for "as amended September 23, 1950" and "after July 1, 1960" for "after September 23, 1959" in Section 23 thereof, as amended.

**AMENDMENT 28**

Effective July 10, 1960.

A. By adding immediately after the second paragraph of Section 1 thereof, as amended, the following paragraph:

"The term 'Employee' shall also include any person who, under conditions of eligibility prescribed by the Policyholder pursuant to subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended, comes within the purview of said Act."

The foregoing amendments are to be attached to and made part of said Group Policy.

B. By deleting the period at the end of the first paragraph of Section 2 thereof, as amended, and by adding to said paragraph, the following:

", and except that in the case of persons who, under conditions of eligibility prescribed by the Policyholder pursuant to subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended, come within the purview of said Act, the 'effective date' shall be the date or dates on or after July 10, 1960 prescribed by the Policyholder for any group of such persons."

C. By deleting the period at the end of item (5) of the second paragraph of Section 13 thereof, as amended, and by adding to said item, the following:

", and for any group of persons who, under conditions of eligibility prescribed by the Policyholder pursuant to subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended, come within the purview of said Act."

**AMENDMENT 29**

Effective November 27, 1960.

A. By substituting for the last sentence of Section 17 thereof, the following:

"The term 'renewal date' as used in this Policy shall mean the last premium due date in the month of November in each of the calendar years 1955 through 1960, both inclusive, and July 1st in the calendar year 1961 and in each subsequent calendar year."

B. By adding to Section 14 thereof, the following subsection (E):

"(E) Discontinuance of Policy—In the event of the discontinuance of this Policy in accordance with the provisions of Section 16 hereof, or by reason of non-renewal in accordance with the provisions of Section 17 hereof, the Policyholder shall be liable to the Insurance Company for the payment of the pro-rata premium accruing for any period this Policy continues in force and subsequent to the due date of the last due and unpaid premium, and the Insurance Company shall refund to the Policyholder the pro-rata premium for any period subsequent to the effective date of such discontinuance for which premiums were paid by the Policyholder."

Signed at ____Washington, D. C.____ this ___Twenty-ninth___ day of ___November___ 19 60

____Mary J. Angluin____
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ____Roger W. Jones____ Chairman

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ____New York, N. Y.____ this ___Twenty-ninth___ day of ___December___ 19 60

____C. G. Arlinghaus____
(Registrar)

METROPOLITAN LIFE INSURANCE COMPANY.

Form G. 1985-7
July 1960
PRINTED IN U.S.A.

COPY

____Walter E. Hollabeck____
Secretary

### METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
#### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 30

Effective as of the date of issue of said Group Policy, by substituting for the text in item (a) (ii) under the heading "Maximum Charge" in the "Schedule of Maximum Expense and Risk Charges" in Section 15 thereof, the following:

> "The actual accrued amount of such expense including expense for the reinsurance required by Section 22 hereof, as determined by the Insurance Company, but not in excess of 0.6% of Premiums."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___Sixth___ day of ___December___ 19 _60_

___Mary J. Angluin___
(Witness)

### UNITED STATES CIVIL SERVICE COMMISSION
#### (Policyholder)

By ___Roger V. Jones___

#### (Space Below For Use Of Metropolitan Life Insurance Company Only)

Signed at ___New York, N. Y.___ this ___Twenty-ninth___ day of ___December___ 19 _60_

### METROPOLITAN LIFE INSURANCE COMPANY,

___C. G. Arlinghaus___
(Registrar)

___Walter E. Hollenbeck___
Secretary

Form G.1985-8

COPY

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT   31

Effective February 14, 1961, by substituting for the second sentence of the last paragraph of Section 2 thereof, as amended, the following:

"The insurance on any such Employee shall become effective at the time he actually enters on duty on his first day in a pay status following the date his request for insurance is approved provided he acquires such a duty and pay status effective within 31 days following the date of such approval."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___Tenth___ day of ___April___ 19 61

___Mary V. Renzel___
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John I. Macy, Jr.___

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ___New York, New York___ this ___Twenty-eighth___ day of ___April___ 19 61

METROPOLITAN LIFE INSURANCE COMPANY,

___Milton E. Hollenbeck___
Secretary

___C. G. Arlinghaus___
(Registrar)

Form G.1985-9

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 32**

Effective on the date of execution of this amendment, by adding to said Group Policy, the following:

"In connection with the performance of work under this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to, the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this nondiscrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the said labor union or workers' representative of the contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The contractor will comply with all provisions of Executive Order No. 10925 of March 6, 1961, and of the rules,

regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(5) The contractor will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961, and by the rules, regulations, and orders of the said Committee or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Committee for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the contractor's non-compliance with the nondiscrimination clauses of this contract or with any of the said rules, regulations, or orders, this contract may be cancelled in whole or in part and the contractor may be declared ineligible for further government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961, and such other sanctions may be imposed and remedies invoked as provided in the said Executive order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(7) The contractor will include the provisions of the foregoing paragraphs (1) through (6) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for non-compliance: *Provided, however,* that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _____Washington, D. C._____ this _____ nineteenth _____ day of _____ December _____ 19 61

_____Mary V. Wenzel_____
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____ John W. Macy, Jr. _____

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at New York, New York this _____ Sixteenth _____ day of _____ January _____ 19 62

_____C. G. Arlinghaus_____
(Registrar)

METROPOLITAN LIFE INSURANCE COMPANY,

Form G 1085-10

Helen E. Hollenbeck
Secretary

© O P Y

### METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT   33

Effective December 15, 1961, by adding immediately after the third sentence of the third paragraph of Section 15 thereof, the following:

"If in any policy year it is anticipated that a payment for such deposit would be made at the end of that policy year in accordance with the provisions of the preceding sentences, partial instalments of such payment may be made by the Insurance Company during that policy year in such amounts and at such times as may be mutually agreed upon between the Insurance Company and the Policyholder."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___29th___ day of ___December___ 19 61

___Mary V. Wenzel___
(Witness)

### UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John W. Macy, Jr.___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N. Y.___ this ___17th___ day of ___January___ 19 62

METROPOLITAN LIFE INSURANCE COMPANY,

_Walter E. Hollenbeck_
Secretary

___C. G. Arlinghaus___
(Registrar)

Form G. 1985-11

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954, and issued to

## UNITED STATES CIVIL SERVICE COMMISSION

(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT 34

Effective for the policy year commencing July 1, 1962, by substituting for Section 21 thereof, as amended, the following:

"*Section 21.* SCHEDULES OF BASIC PREMIUM RATES.

SCHEDULE OF BI-WEEKLY BASIC LIFE INSURANCE PREMIUM RATES PER $1,000 OF LIFE INSURANCE

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.07 | 35 | $0.12 | 55 | $0.61 | 75 | $3.16 |
| 16 | .07 | 36 | .13 | 56 | .66 | 76 | 3.41 |
| 17 | .08 | 37 | .13 | 57 | .73 | 77 | 3.69 |
| 18 | .08 | 38 | .14 | 58 | .79 | 78 | 4.01 |
| 19 | .08 | 39 | .15 | 59 | .86 | 79 | 4.36 |
| 20 | .08 | 40 | .17 | 60 | .93 | 80 | 4.74 |
| 21 | .09 | 41 | .18 | 61 | 1.00 | 81 | 5.14 |
| 22 | .09 | 42 | .20 | 62 | 1.09 | 82 | 5.56 |
| 23 | .09 | 43 | .21 | 63 | 1.19 | 83 | 6.00 |
| 24 | .09 | 44 | .23 | 64 | 1.28 | 84 | 6.46 |
| 25 | .09 | 45 | .25 | 65 | 1.40 | 85 | 6.94 |
| 26 | .09 | 46 | .27 | 66 | 1.52 | 86 | 7.44 |
| 27 | .10 | 47 | .30 | 67 | 1.65 | 87 | 7.98 |
| 28 | .10 | 48 | .33 | 68 | 1.81 | 88 | 8.54 |
| 29 | .10 | 49 | .36 | 69 | 1.97 | 89 | 9.15 |
| 30 | .10 | 50 | .39 | 70 | 2.15 | 90 | 9.83 |
| 31 | .10 | 51 | .43 | 71 | 2.33 | 91 | 10.59 |
| 32 | .10 | 52 | .47 | 72 | 2.53 | 92 | 11.46 |
| 33 | .11 | 53 | .51 | 73 | 2.72 | 93 | 12.46 |
| 34 | .11 | 54 | .56 | 74 | 2.94 | 94 | 13.64 |

In computing the average basic bi-weekly Life Insurance premium rate pursuant to Section 14 hereof there shall be added to the average basic bi-weekly Life Insurance premium determined on the basis of the premiums shown above an amount equal to $2.95 divided by the total amount of Life Insurance in force under this Policy on the date of such computation expressed in thousands and fractions thereof.

The bi-weekly basic premium rate for Insurance for Death or Dismemberment by Accidental Means shall be $0.0231 per $1,000 of the full amount of such Insurance."

The foregoing Schedules of Basic Premium Rates shall remain in effect for policy years subsequent to the policy year commencing July 1, 1962 subject to further readjustment as provided in subsection (A) of Section 14 of said Group Policy.

In accordance with the second paragraph of Amendment 15 attached to said Group Policy as a part thereof, it is agreed that the foregoing reduction in Basic Life Insurance Premium Rates shall not of itself operate to change the figure used for the Maximum Risk Charge in the "Schedule of Maximum Expense and Risk Charges" in Section 15 of said Group Policy, and that otherwise the second paragraph of said Amendment 15 shall remain fully operative with respect to any future reduction or reductions in a basic premium rate or tentative average premium rate.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this ___14th___ day of ___June___ 19 62.

___Mary V. Wenzel___
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John W. Macy, Jr.___

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at ___New York, N. Y.___ this ___16th___ day of ___July___ 19 62.

METROPOLITAN LIFE INSURANCE COMPANY.

___C. G. Arlinghaus___
(Registrar)

Form G-1965-12—July 1962  PRINTED IN U.S.A.

COPY

*Nilan E. Hollenbeck*
Secretary.

### METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 35

Effective July 13, 1962,

A. By adding immediately after the words "Items (1), (2), (3), or (4) of the first paragraph of Section 3 hereof," in the first paragraph of Section 6 thereof, the following:

"and who shall not, within three calendar days next following the date of such cessation, return to a position in which he is an Employee as defined in Section 1 hereof,".

B. By substituting for the words "the maximum amount of Life Insurance for which an individual policy could have been issued under this Section 6," in the first sentence of the second paragraph of Section 6 thereof, the following:

"an amount equal to the amount of the Employee's Life Insurance hereunder on the date of such cessation,".

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D.C.___ this ___3rd___ day of ___October___ 19_62_

___Mary V. Wenzel___
(Witness)

### UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___John W. Macy, Jr.___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N. Y.___ this ___9th___ day of ___October___ 19_62_

METROPOLITAN LIFE INSURANCE COMPANY,

___C. G. Arlinghaus___
(Registrar)

___Walter E. Holbaback___
Secretary

Form G.1985-13

COPY

## METROPOLITAN LIFE INSURANCE COMPANY

**GROUP POLICY No. 17000-G** bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 36

Effective as of the date of issue of said Group Policy, by substituting for the last paragraph of Section 11 thereof, the following paragraphs:

"If any person otherwise entitled to payment under Section 5 hereof or this Section does not make claim therefor within one year after the death of the Employee, or if payment to such person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased the Employee. Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

If, within two years after the death of the Employee, no claim for payment has been filed by any person entitled thereto under Section 5 hereof or the order of precedence set forth in this Section, and neither the Policyholder nor the Office has received any notice that any such claim will be made, payment may be made to a claimant as may in the judgment of the Policyholder be equitably entitled thereto, and such payment shall be a bar to recovery by any other person. If, within four years after the death of the Employee, payment has not been made pursuant to Section 5 hereof or this Section and no claim for payment by any person entitled thereto under said Section 5 or this Section is pending, the amount payable shall escheat to the credit of the fund created by subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954."

### AMENDMENT 37

Effective August 28, 1962, by substituting the date "August 28, 1962" for the date "July 1, 1960" in the two places in which it appears in Section 23 thereof, as amended.

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___17th___ day of ___December___ 1962

___Helen D. Uhrin___
(Witness)

<u>UNITED STATES CIVIL SERVICE COMMISSION</u>
(Policyholder)

By ___John W. Macy, Jr.___
Chairman
(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___11th___ day of ___January___ 1963

METROPOLITAN LIFE INSURANCE COMPANY,

*Klaus E. Holthubeck*
Secretary

___C. G. Arlinghaus___
(Registrar)

Form G.1985-14

COPY

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**
Original Proceeding
Complaint in Interpleader
**Exhibit A-Part 2**
A copy of the Federal Employees' Group Life Insurance Policy (pp. 31-60)

METROPOLITAN LIFE INSURANCE COMPANY

Group Policy No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT 33

Effective _____ February 26, 1963 _____ by substituting for Item (5)
of Schedule A attached to said Group Policy as a part thereof, the following:

"(5) Seasonal or emergency employees whose employment is of uncertain
or purely temporary duration or who are employed for brief periods
at intervals, but this does not exclude employees having career-
conditional or career appointments who are employed under a cooper-
ative work-study program of at least one year's duration which
requires the employee to be in pay status during not less than one-
third of the total time required for the completion of the program."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___30th___ day of ___April___ 19 63

_____Helen D. Uhrin_____              UNITED STATES CIVIL SERVICE COMMISSION
(Witness)                                            (Policyholder)

By _____John W. Macy, Jr._____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___27th___ day of ___May___ 19 63

METROPOLITAN LIFE INSURANCE COMPANY,

_____C. G. Arlinghaus_____                    _Helen E. Hollenbeck_
(Registrar)                                              Secretary

Form G.1985-15

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
(HEREIN CALLED THE POLICYHOLDER)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

**AMENDMENT 39**

Effective on the date of execution of this amendment, by substituting for the provisions added to said Group Policy by Form G.1985-10 (Amendment 32), the following:

"During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of race, creed, color, or national origin. The contractor will take affirmative action to ensure that applicants are employed, and that employees are treated during employment, without regard to their race, creed, color, or national origin. Such action shall include, but not be limited to the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices to be provided by the contracting officer setting forth the provisions of this non-discrimination clause.

(2) The contractor will, in all solicitations or advertisements for employees placed by or on behalf of the contractor, state that all qualified applicants will receive consideration for employment without regard to race, creed, color, or national origin.

(3) The contractor will send to each labor union or representative of workers with which he has a collective bargaining agreement or other contract or understanding, a notice, to be provided by the agency contracting officer, advising the said labor union or workers' representative of the contractor's commitments under this section, and shall post copies of the notice in conspicuous places available to employees and applicants for employment.

(4) The contractor will comply with all provisions of Executive Order No. 10925 of March 6, 1961, as amended, and of the rules, regulations, and relevant orders of the President's Committee on Equal Employment Opportunity created thereby.

(5) The contractor will furnish all information and reports required by Executive Order No. 10925 of March 6, 1961, as amended, and by the rules, regulations, and orders of the said Committee, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Committee for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

(6) In the event of the contractor's noncompliance with the non-discrimination clauses of this contract, or with any of the said rules, regulations, or orders, this contract may be cancelled, terminated, or suspended in whole or in part and the contractor may be declared ineligible for further Government contracts in accordance with procedures authorized in Executive Order No. 10925 of March 6, 1961, as amended, and such other sanctions may be imposed and remedies invoked as provided in the said Executive Order or by rule, regulation, or order of the President's Committee on Equal Employment Opportunity, or as otherwise provided by law.

(7) The contractor will include the provisions of paragraphs (1) through (7) in every subcontract or purchase order unless exempted by rules, regulations, or orders of the President's Committee on Equal Employment Opportunity issued pursuant to section 303 of Executive Order No. 10925 of March 6, 1961, as amended, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the contracting agency may direct as a means of enforcing such provisions, including sanctions for noncompliance: *Provided, however,* that in the event the contractor becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a result of such direction by the contracting agency, the contractor may request the United States to enter into such litigation to protect the interests of the United States."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this 30th day of January 19 64

Mary V. Wenzel
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By John W. Macy, Jr.
(Chairman)

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at New York, New York this 24th day of February 19 64

Wm. E. Mayer, Jr.
(Reporter)

METROPOLITAN LIFE INSURANCE COMPANY,

Form G. 1985-16

COPY

Helen E. Hollenbeck
Secretary

SEE AMEND. 49

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT 40

Effective April 8, 1964, by substituting "4 East 24th Street, New York, New York 10010" for "25 East 24th Street, New York 10, N. Y." as the post office address of the Office of Federal Employees' Group Life Insurance appearing in the fourth paragraph of Section 1 thereof, as amended.

AMENDMENT 41

Effective January 1, 1965,

A. By substituting for the words "in any of the groups of employees specified in Schedule A attached hereto as a part hereof" in the first paragraph of Section 1 thereof, as amended, the following:

"excluded by section 870.202 of the Policyholder's regulations".

B. By deleting Schedule A attached to said Group Policy as a part thereof.

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this __22nd__ day of __December__ 19__65__

__Mary V. Wenzel__
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By __John W. Macy, Jr.__

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, N.Y.__ this __fourteenth__ day of __January__ 19__66__

METROPOLITAN LIFE INSURANCE COMPANY,

_Allen E. Hollenbeck_
Secretary

__Wm. H. Mayer, Jr.__
(Registrar)

Form G.1985-17

COPY

# METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

## UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

## AMENDMENT  42

Effective January 1, 1965, by substituting for items (4) and (5) in the first paragraph of subsection (B) of Section 5 thereof, the following items (4), (5), and (6):

"(4)  caused directly or indirectly by war (declared or undeclared), any act of war, or any aggression by armed forces, against the United States, in which nuclear weapons are actually being used, or

(5)  caused directly or indirectly by war (declared or undeclared), any act of war, armed aggression, or insurrection, in which the Employee is, at the time the bodily injuries are sustained, in actual combat, or

(6)  caused by or the result of intentional self-destruction or intentionally self-inflicted injury, while sane or insane."

## AMENDMENT  43

Effective January 1, 1965, by substituting for Section 20 thereof, the following:

"Section 20.  OPTIONAL MODES OF SETTLEMENT. — Upon written election after the death of the Employee by the Beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, made to and accepted by the Office, the whole or any part of the amount of insurance payable upon the death of any Employee insured hereunder will be retained by the Insurance Company and paid to such person in the following manner instead of in one sum:

By payment of monthly or annual instalments over such specified number of years (shown in the following table) as may be elected, the first instalment being payable immediately upon the death of the Employee. The amount of each such instalment shall be determined from time to time in accordance with the Insurance Company's declarations with respect to such instalments, but in no event shall such amount be less than the minimum amount specified in the following Schedule.

Form G.1985-18

-2-

AMENDMENT 43  (Continued)

### SCHEDULE OF MINIMUM INSTALMENT PAYMENTS
### PER $1,000 OF INSURANCE

| Number of Years Specified | Minimum Amount of Each Annual Instalment (Per $1,000 of Insurance) | Minimum Amount of Each Monthly Instalment (Per $1,000 of Insurance) |
|---|---|---|
| 1 | - - | $84.19 |
| 2 | $505.61 | 42.56 |
| 3 | 340.84 | 28.69 |
| 4 | 258.39 | 21.75 |
| 5 | 208.97 | 17.59 |
| 10 | 110.37 | 9.29 |
| 15 | 77.58 | 6.53 |
| 20 | 61.30 | 5.16 |

The Insurance Company shall have the right to change, as of any renewal of this Policy or whenever the terms of this Policy are changed, the Schedule of Minimum Instalment Payments, but any such change shall not be applicable to instalments payable on account of deaths occurring prior to the effective date of such change.

If the payee of any optional mode of settlement so elected dies before all instalments for the period selected have been paid, the unpaid instalments shall, unless otherwise specified in the election of such instalment payments, be commuted and paid in one sum to the estate of such payee. Such commuted sum shall be calculated on the basis of the amount of the instalment payable on or immediately prior to the date of death of the payee and the interest rate assumed in determining such amount.

A mode of settlement other than one of those specified above may be arranged if the beneficiary or other person entitled to receive payment of amounts due at the death of the Employee, after the death of the Employee, and the Office mutually agree thereon. Information concerning such other possible modes of settlement will be furnished by the Office upon written request.

No instalment election shall be allowed under which the first instalment payment is less than $20.00.

Form G.1935-18

-3-

<u>AMENDMENT 43</u>  (Continued)

A payee may not assign, transfer, or encumber his rights under the optional mode of settlement elected, or any payment thereunder, and, to the extent permitted by law, the amount retained by the Insurance Company and the payments under the optional mode of settlement shall not be subject to claims of any creditor of any payee, nor to execution or other legal process on behalf of any creditor of any payee."

The foregoing amendments are to be attached to and made part of said Group Policy.

Signed at _____ Washington, D. C. _____ this _____ 22nd _____ day of _____ December _____ 19 65

_____
Mary V. Wenzel
(Witness)

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _____ John W. Macy, Jr. _____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at _____ New York, N.Y. _____ this _____ fourteenth _____ day of _____ January _____ 19 66

METROPOLITAN LIFE INSURANCE COMPANY,

_Walter E. Holbenbeck_
Secretary

_____
Wm. H. Meyer, Jr.
(Registrar)

COPY

Form G.1985-18

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 44

Effective December 6, 1966, by adding to Section 5 thereof, the following subsection (C):

"(C) Special Provisions Applicable to Reemployed Retired Employees—If the Life Insurance on a retired Employee ceases because of appointment of the retired Employee to a position such that he again falls within the definition of the term "Employee" in Section 1 hereof, then at the subsequent death of the Employee while insured hereunder, the amount payable pursuant to the preceding subsection (A) on account of such death shall not be less than the amount that would have been payable hereunder had the Employee's Life Insurance hereunder as a retired Employee not ceased because of such appointment, or, in the event that such death results from bodily injuries and is thereby a loss for which benefits are payable pursuant to the preceding subsection (B), the total amount payable pursuant to said subsections (A) and (B) on account of such death shall not be less than the excess, if any, of (1) the amount that would have been payable hereunder had the Employee's Life Insurance hereunder as a retired Employee not ceased because of such appointment, over (2) the aggregate amount payable pursuant to said subsection (B) for all losses, other than loss of life, suffered as a result of such injuries."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D.C.___ this ___23rd___ day of ___February___ 19 68

___Helen R. Hill___
(Witness)

### UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By___John W. Macy, Jr.___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___twelfth___ day of ___March___ 1968

### METROPOLITAN LIFE INSURANCE COMPANY,

___Wm. H. Mayer, Jr.___
(Registrar)

_Klaus E. Hollabeck_
Secretary

Form G.1985-19

COPY

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

### AMENDMENT 45

Effective July 1, 1967, by substituting for the schedule following the fifth paragraph of Section 15 thereof, the following:

"Schedule of Maximum Expense and Risk Charges

| Item | Maximum Charge |
|---|---|
| (a) Expense Charges | |
| (i) Taxes | The actual accrued amount of taxes directly attributable to the premiums, amounts of insurance in force, or reserves under this Policy, as determined by the Insurance Company. |
| (ii) Expense of maintenance and operation of the Office | The actual accrued amount of such expense including expense for the reinsurance required by Section 22 hereof, as determined by the Insurance Company, but not in excess of 0.6% of Premiums. |
| (iii) Other expenses | For any policy year beginning prior to November 20, 1955 – 0.33% of Premiums; |
| | For any policy year beginning on or subsequent to November 20, 1955 but prior to July 1, 1967 – 0.30% of Premiums; |
| | For any policy year beginning on or subsequent to July 1, 1967 – 0.30% of that part of Premiums for the policy year which is not in excess of $190 million, plus 0.06% of that part of Premiums for the policy year which is in excess of $190 million. |

Form G.1985-20

-2-

AMENDMENT 45 (Continued)

Item

(b) Risk Charge

Maximum Charge

For any policy year beginning prior to November 30, 1958 – 0.6% of Premiums;

For any policy year beginning on or subsequent to November 30, 1958 but prior to July 1, 1967 – 0.5% of Premiums;

For any policy year beginning on or subsequent to July 1, 1967 – 0.4% of that part of Premiums for the policy year which is not in excess of $190 million, plus 0.2% of that part of Premiums for the policy year which is in excess of $190 million."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___first___ day of ___April___ 19 68

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By___John W. Macy, Jr.___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___fifth___ day of ___April___ 19 68

METROPOLITAN LIFE INSURANCE COMPANY,

___Wm. H. Mayer, Jr.___
(Registrar)

*Milton C. Hollenbeck*
Secretary

Form G.1985-20

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT   46

Effective December 16, 1967,

A.  By adding to Section 1 thereof, the following paragraph:

"Unless otherwise specified, any references in this Policy to insurance here-
under, Life insurance hereunder, or insurance for Death or Dismemberment by Ac-
cidental Means hereunder shall include, respectively, optional insurance, optional
Life insurance, and optional insurance for Death or Dismemberment by Accidental
Means."

B.  By inserting as the first sentence of the first paragraph of Section 2 thereof, the
following:

"The word 'insurance' as used in this Section 2 means insurance exclusive
of optional insurance hereunder."

C.  By adding to said Section 2, the following paragraph:

"If an Employee is not or would not become insured hereunder at the time he
actually enters on duty on his first day in a pay status on or after the first day of the
first pay period which begins on or after February 14, 1968, by reason of having
given written notice to an employing office, prior to the first day of the first pay
period which begins on or after February 14, 1968, that he desires not to be insured
hereunder, then the insurance on such Employee shall nevertheless become effective
at that time, irrespective of the Employee's age and insurability and notwithstanding
the provisions of the immediately preceding paragraph, provided that prior thereto
he has not again given written notice that he desires not to be insured hereunder."

D.  By adding immediately following said Section 2, the following Section 2A:

"Section 2A.  EFFECTIVE DATES OF OPTIONAL INSURANCE.-An Employee
on the roll of his employing office on February 14, 1968 shall become eligible for
optional insurance on February 14, 1968.  Any person who becomes an Employee as
defined in Section 1 hereof after February 14, 1968 shall become eligible for optional
insurance on the day he actually enters on duty on his first day in a pay status.

Form G.1985-21

- 2 -

AMENDMENT    46    (Continued)

An Employee may become insured for optional insurance only by making written election thereof to his employing office on a form furnished by the Policyholder. For the purposes of election of optional insurance, an Employee's limiting date is the later of (i) April 14, 1968, and (ii) the thirty-first day following the date he becomes eligible for optional insurance, or, if his employing office determines, within six months after an Employee becomes eligible for optional insurance, that he was unable, for cause beyond his control, to elect or decline optional insurance within thirty-one days following the date he became eligible for optional insurance, the thirty-first day following the date the Employee is advised of such determination.

The optional insurance hereunder on any Employee whose election is received by his employing office on or prior to the date he becomes eligible for optional insurance shall become effective on the date he becomes eligible for such insurance, provided he is then insured hereunder for insurance exclusive of optional insurance.

The optional insurance hereunder on any Employee whose election is received by his employing office after the date he becomes eligible for optional insurance and on or prior to the limiting date specified above, shall become effective on the date such election is received by his employing office, provided he is then insured for insurance exclusive of optional insurance.

If written election of optional insurance on behalf of any Employee is not received by his employing office on or prior to the limiting date specified above, or if the Employee has declined optional insurance, such Employee may become insured for optional insurance hereunder only if he makes written request therefor to his employing office prior to his 50th birthday and not less than one year after the effective date of his declination of optional insurance, and furnishes at his own expense evidence of insurability satisfactory to the Office. The optional insurance on any such Employee shall become effective at the time he actually enters on duty on his first day in a pay status following the later of (i) the date his request for optional insurance is approved, and (ii) the date written election of optional insurance on his behalf is received by his employing office, provided he acquires such a duty and pay status effective within thirty-one days following the date of such approval and provided he is then insured for insurance exclusive of optional insurance. Any Employee who must meet the requirements of this paragraph as a condition to becoming insured for optional insurance hereunder and who ceases to be an Employee as defined in Section 1 hereof without such requirements having been met shall continue to be subject to the same requirements if at any time he subsequently becomes an Employee as defined in said Section 1. In the case of an Employee who has made neither written election nor written declination of optional insurance, the 'effective date of his declination of optional insurance' shall be the limiting date specified above.

Form G.1985-21

- 3 -

<u>AMENDMENT    46</u>         (Continued)

If an Employee, on the date his optional insurance would otherwise become effective, is not insured for insurance exclusive of optional insurance, then such Employee shall not be insured for optional insurance until such time as he becomes insured for insurance exclusive of optional insurance."

E.  By deleting the word "continuous" from Item (2) in the first paragraph of Section 3 thereof.

F.  By adding the words "other than as specified in the third paragraph of said Section 6 with respect to optional Life Insurance," immediately after the words "does not exercise his right to have an individual policy issued to him in accordance with Section 6 hereof," appearing in the first sentence of the second paragraph of said Section 3.

G.  By substituting "work injury" for "disease or injury to himself" in the first sentence in Item (B) of the second paragraph of said Section 3.

H.  By substituting for the second sentence in Item (B) of the second paragraph of said Section 3, the following:

"The amount of his Life Insurance continued or reinstated as aforesaid shall be the amount of Life Insurance, exclusive of optional Life Insurance, for which he would have been insured hereunder had his salary payments continued at the same rate as on the date insurance would otherwise have ceased, and, in addition, so much of the amount of optional Life Insurance in force on his account on such date which had been in force for not less than

(a) the full period or periods of service during which optional insurance was available to him, or

(b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

whichever is shorter."

I.  By adding to said Section 3, the following paragraph:

"The optional insurance hereunder on any Employee shall automatically cease, in any event, on the last day of the pay period during which either (a) his employing office receives written notice from him that his optional insurance is to be canceled, or (b) his employing office determines that his periodic pay, annuity, or compensation for work injury is insufficient to cover his required contributions to the cost of such insurance."

J.  By substituting for the heading to the schedule in subsection (A) of Section 4 thereof, the following:

Form G.1985-21

- 4 -

AMENDMENT  46        (Continued)

"PART I—SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968",

and by adding immediately after said schedule, the following:

"PART II—SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $ 8,000 | $10,000 | $ 10,000 |
| $ 8,000 | 9,000 | 11,000 | 11,000 |
| 9,000 | 10,000 | 12,000 | 12,000 |
| 10,000 | 11,000 | 13,000 | 13,000 |
| 11,000 | 12,000 | 14,000 | 14,000 |
| 12,000 | 13,000 | 15,000 | 15,000 |
| 13,000 | 14,000 | 16,000 | 16,000 |
| 14,000 | 15,000 | 17,000 | 17,000 |
| 15,000 | 16,000 | 18,000 | 18,000 |
| 16,000 | 17,000 | 19,000 | 19,000 |
| 17,000 | 18,000 | 20,000 | 20,000 |
| 18,000 | 19,000 | 21,000 | 21,000 |
| 19,000 | 20,000 | 22,000 | 22,000 |
| 20,000 | 21,000 | 23,000 | 23,000 |
| 21,000 | 22,000 | 24,000 | 24,000 |
| 22,000 | 23,000 | 25,000 | 25,000 |
| 23,000 | 24,000 | 26,000 | 26,000 |
| 24,000 | 25,000 | 27,000 | 27,000 |
| 25,000 | 26,000 | 28,000 | 28,000 |
| 26,000 | 27,000 | 29,000 | 29,000 |
| 27,000 | 28,000 | 30,000 | 30,000 |
| 28,000 | 29,000 | 31,000 | 31,000 |
| 29,000 | — | 32,000 | 32,000 |

PART III—SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FEBRUARY 14, 1968

The amount of optional Life Insurance and the amount of optional Insurance for Death or Dismemberment by Accidental Means is the greater of (a) $10,000, and (b) the excess, if any, of the amount of the Employee's annual compensation over the amount of Life Insurance or the amount of Insurance for Death or Dismemberment by Accidental Means, respectively, in accordance with Part II above."

Form G.1985-21

- 5 -

<u>AMENDMENT   46   </u> (Continued)

K. By adding at the end of the first paragraph of subsection (B) of said Section 4, the following sentence:

"In the case of an Employee whose retirement occurs on or after December 16, 1967, the amount of Life Insurance at any time after retirement shall be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance, and (2) optional Life Insurance, if any."

L. By adding after the first paragraph of subsection (B) of said Section 4, the following paragraphs:

"With respect to an Employee whose retirement occurs on or after December 16, 1967, 'basic amount of Life Insurance' means, as to Life Insurance exclusive of optional Life Insurance, the amount of Life Insurance in accordance with Part II of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and 'effective reduction date' means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part II of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective.

With respect to an Employee whose retirement occurs on or after February 14, 1968, 'basic amount of Life Insurance' means, as to optional Life Insurance, so much of the amount of optional Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section, which had been in force for not less than

(a) the full period or periods of service during which optional insurance was available to him, or

(b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

whichever is shorter. For the purposes of this paragraph, in the case of an Employee who was on the roll of his employing office on February 14, 1968 and who was insured for optional insurance on April 14, 1968 or the date of his retirement, if earlier, such optional insurance shall be deemed to have been in force for the full period or periods of service during which optional insurance was available to him prior to such earlier date. If the Policyholder receives written notice from the Employee that optional Life

Form G.1985-21

- 6 -

## AMENDMENT   46      (Continued)

Life Insurance on his account is not to be continued after retirement, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement.

With respect to an Employee whose retirement occurs on or after December 16, 1967 but prior to February 14, 1968, 'basic amount of Life Insurance' means, as to optional Life Insurance, an amount of optional Life Insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of Items (1) or (2) of the first paragraph of Section 3 hereof.  The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part III of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective. The provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement, unless written election of optional Life Insurance by the Employee is received by the Policyholder on or prior to April 14, 1968."

M.  By substituting "on or after September 23, 1959 but prior to December 16, 1967," for "on or after September 23, 1959," in the next-to-last paragraph of subsection (B) of said Section 4.

N.  By substituting "Part I of the Schedule of Insurance in subsection (A)" for "the Schedule of Insurance in subsection (A)" in the last two paragraphs of subsection (B) of said Section 4.

O.  By adding to Section 5 thereof, the following subsection (D):

"(D) Special Provisions in Event of Death During the Period Beginning December 16, 1967 and Ending April 14, 1968:—As to insurance exclusive of optional insurance.  In the event that an Employee insured hereunder, other than a retired Employee, dies during the period beginning December 16, 1967 and ending immediately prior to the first day of the first pay period which begins on or after February 14, 1968, the amounts payable pursuant to the preceding subsections (A) and (B) on account of such death, exclusive of amounts of optional insurance, shall be determined as if Part II of the Schedule of Insurance in subsection (A) of Section 4 hereof had been in effect on the date of death of the Employee.

As to optional insurance.  In the event that an Employee insured hereunder, other than a retired Employee, dies during the period beginning December 16, 1967 and ending February 14, 1968, the amounts payable pursuant to the preceding subsections (A) and (B) on account of such death shall be determined as if the Employee were also insured, at the date of his death, for optional insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of Section 4 hereof, irrespective of whether the Employee was so insured. In the event that an Employee insured hereunder, other than a retired Employee, dies during the period beginning February 15, 1968 and ending April 14, 1968,

METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000–G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to the Federal Employees' Group Life Insurance Act of 1954, is hereby amended as follows:

AMENDMENT 47

Effective December 16, 1967, by adding to Section 15 thereof, the following paragraph:

"The statement required to be furnished by the Insurance Company to the Policyholder after the end of each policy year as specified in the preceding provisions of this Section, will also specify that part of each of the items of the statement which is attributable to optional insurance hereunder."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D.C.__ this __4th__ day of __June__ 19 68

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By____John W. Macy, Jr.____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, New York__ this __second__ day of __July__ 1968

METROPOLITAN LIFE INSURANCE COMPANY,

_Alex C. Hilbeck_
Secretary

__Wm. H. Mayer, Jr.__
(Registrar)

COPY

Form G.1985-22

METROPOLITAN LIFE INSURANCE COMPANY

_____

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 49

Effective August 1, 1968,

A. By substituting "chapter 87 of title 5, United States Code" for

(1) "the Federal Employees' Group Life Insurance Act of 1954" on the face page thereof and in Item (d) of the second paragraph of Section 16 thereof,

(2) "the Federal Employees' Group Life Insurance Act of 1954 (other than the provisions of Section 10 thereof), as amended to and including December 16, 1967" in the first sentence of Section 23 thereof, and

(3) "said Act enacted after December 16, 1967" in the second sentence of said Section 23.

B. By substituting for the first three paragraphs of Section 1 thereof, the following paragraph:

"The term 'Employee' means a person who is considered, under applicable laws and regulations, to be an employee for the purposes of chapter 87 of title 5, United States Code."

C. By substituting "the applicable provisions of chapter 87 of title 5, United States Code" for

(1) "subsection (d) of Section 2 of the Federal Employees' Group Life Insurance Act of 1954, as amended" in the first paragraph of Section 2 thereof and in Item (5) of the second paragraph of Section 13 thereof,

(2) "subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954" in the fourth paragraph of Section 11 thereof and in the second paragraph of Section 15 thereof, and

(3) "Section 7 of the Federal Employees' Group Life Insurance Act of 1954, as amended August 11, 1955" in Section 22 thereof.

Form G.15c5 .4

- 2 -

AMENDMENT 49 (Continued)

      D.  By deleting the last sentence in Item (3) of the first paragraph of Section 3 thereof.

      E.  By substituting "subchapter I of chapter 81 of title 5, United States Code" for "the Federal Employees' Compensation Act"

      (1)  In the first sentence of the second paragraph of Section 3 thereof,

      (2)  In the first sentence in Item (B) of the second paragraph of said Section 3, and

      (3)  In the first paragraph of Section 11 thereof.

      F.  By substituting "law" for "Act"

      (1)  In the first paragraph of Section 2 thereof,

      (2)  In the first and third sentences in Item (B) of the second paragraph of Section 3 thereof, and

      (3)  In two places in Item (d) of the second paragraph of Section 16 thereof.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _____Washington, D.C.____ this _____8th_____ day of ____October____ 19_68_.

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____John W. Macy, Jr._____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, New York__ this _____16th_____ day of ____October____ 19_68_

METROPOLITAN LIFE INSURANCE COMPANY,

_Keith E. Hollbeck_
Secretary

____Wm. E. Mayer, Jr.____
(Registrar)

Form G.1985-24

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT  50

Effective February 15, 1969,

A.  By substituting "PART II – SCHEDULE OF INSURANCE, EXCLUSIVE OF OP-
TIONAL INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON
OR AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS
ON OR AFTER FEBRUARY 15, 1969" for the caption in Part II of the Schedule of Insurance in
subsection (A) of Section 4 thereof.

B.  By adding immediately after Part II of the Schedule of Insurance in subsection (A)
of said Section 4, the following:

"PART IIA–SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE,
ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER
FEBRUARY 15, 1969

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| 0 | $ 8,000 | $10,000 | $10,000 |
| $ 8,000 | 9,000 | 11,000 | 11,000 |
| 9,000 | 10,000 | 12,000 | 12,000 |
| 10,000 | 11,000 | 13,000 | 13,000 |
| 11,000 | 12,000 | 14,000 | 14,000 |
| 12,000 | 13,000 | 15,000 | 15,000 |
| 13,000 | 14,000 | 16,000 | 16,000 |
| 14,000 | 15,000 | 17,000 | 17,000 |
| 15,000 | 16,000 | 18,000 | 18,000 |
| 16,000 | 17,000 | 19,000 | 19,000 |
| 17,000 | 18,000 | 20,000 | 20,000 |
| 18,000 | 19,000 | 21,000 | 21,000 |
| 19,000 | 20,000 | 22,000 | 22,000 |
| 20,000 | 21,000 | 23,000 | 23,000 |
| 21,000 | 22,000 | 24,000 | 24,000 |
| 22,000 | 23,000 | 25,000 | 25,000 |
| 23,000 | 24,000 | 26,000 | 26,000 |

Form G.1985-25

- 2 -

<u>AMENDMENT 50</u>   (Continued)

| Annual Compensation | | Life Insurance | Insurance for Death or Dismemberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Than | | |
| $24,000 | $25,000 | $27,000 | $27,000 |
| 25,000 | 26,000 | 28,000 | 28,000 |
| 26,000 | 27,000 | 29,000 | 29,000 |
| 27,000 | 28,000 | 30,000 | 30,000 |
| 28,000 | 29,000 | 31,000 | 31,000 |
| 29,000 | 30,000 | 32,000 | 32,000 |
| 30,000 | 31,000 | 33,000 | 33,000 |
| 31,000 | 32,000 | 34,000 | 34,000 |
| 32,000 | 33,000 | 35,000 | 35,000 |
| 33,000 | 34,000 | 36,000 | 36,000 |
| 34,000 | 35,000 | 37,000 | 37,000 |
| 35,000 | 36,000 | 38,000 | 38,000 |
| 36,000 | 37,000 | 39,000 | 39,000 |
| 37,000 | 38,000 | 40,000 | 40,000 |
| 38,000 | 39,000 | 41,000 | 41,000 |
| 39,000 | 40,000 | 42,000 | 42,000 |
| 40,000 | 41,000 | 43,000 | 43,000 |
| 41,000 | 42,000 | 44,000 | 44,000 |
| 42,000 | — | 45,000 | 45,000* |

C.  By substituting "PART III – SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 15, 1969" for the caption in Part III of the Schedule of Insurance in subsection (A) of said Section 4.

D.  By adding immediately after Part III of the Schedule of Insurance in subsection (A) of said Section 4, the following:

"PART IIIA-SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 15, 1969

The amount of optional Life Insurance and the amount of optional Insurance for Death or Dismemberment by Accidental Means is the greater of (a) $10,000, or  (b) the excess, if any, of the amount of the Employee's annual compensation (if not a multiple of $1,000, such annual compensation to be taken to the next lower multiple of $1,000) over the amount of Life Insurance or the amount of Insurance for Death or Dismemberment by Accidental Means, respectively, in accordance with Part IIA above."

Form G.1985- 25

- 3 -

AMENDMENT  50      (Continued)

E.  By substituting "Part II of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs prior to February 15, 1969, or Part IIA of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs on or after February 15, 1969, in either case" for "Part II of the Schedule of Insurance in subsection (A) of this Section" appearing in the first sentence of the second paragraph of subsection (B) of said Section 4.

F.  By substituting "Part III of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs prior to February 15, 1969, or Part IIIA of the Schedule of Insurance in subsection (A) of this Section as to any such Employee whose retirement occurs on or after February 15, 1969, which, in either case," for "Part III of the Schedule of Insurance in subsection (A) of this Section, which" appearing in the third paragraph of subsection (B) of said Section 4.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D.C.___ this ____10____ day of ___November___ 19 69

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___Robert E. Hampton___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___twenty-first___ day of ___November___ 19 69

METROPOLITAN LIFE INSURANCE COMPANY,

*Walter E. Hollenbeck*
Secretary

___Wm. H. Maier Jr.___
(Registrar)

Form G.1985-25

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 51

Effective ___March 1, 1970___ ,

A.  By substituting for Sections 2 and 2A thereof, the following section:

"Section 2.  EFFECTIVE DATES OF INSURANCE.—Eligibility of Employees
for Insurance hereunder and the effective dates of such insurance shall be determined
in accordance with regulations of the Policyholder made pursuant to chapter 87 of
title 5, United States Code.

In no event shall an Employee be insured for optional insurance prior to
the effective date of his insurance exclusive of optional insurance."

B.  By substituting for the second paragraph of Section 3 thereof, the following para-
graph:

"However, if the insurance on any Employee insured hereunder would cease
because of the happening of the event specified in either of items (1) or (2) of the
preceding paragraph and the Employee meets the conditions for continuation of insur-
ance after retirement or while receiving benefits under subchapter I of chapter 81 of
title 5, United States Code, as such conditions are specified in the regulations of
the Policyholder made pursuant to chapter 87 of title 5, United States Code, his Life
insurance only shall be continued or reinstated for the amount of insurance and period
of time specified in said regulations."

C.  By substituting "as specified in the second paragraph of Section 3 hereof" for
"as specified in item (A) of the second paragraph of Section 3 hereof" in the third paragraph of
Section 6 thereof.

D.  By substituting for items (4) and (5) in the second paragraph of Section 13 thereof,
the following:

"(4)  The conditions and specifications referred to in the second paragraph of
Section 3 hereof, as relating to continuation of insurance after retirement
or while the Employee is receiving benefits under subchapter I of chapter 81
of title 5, United States Code.

Form G.1983-24

- 2 -

AMENDMENT 51    (Continued)

(5) The effective dates of Employees' insurance in accordance with Section 2 hereof."

E. By deleting the second sentence in Section 23 thereof.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D.C.___ this ___23rd___ day of ___March___ 19_70_

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___Robert E. Hampton___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___ninth___ day of ___April___ 19_70_

METROPOLITAN LIFE INSURANCE COMPANY,

*Walter E. Hollenbeck*
Secretary

___Wm. R. Mayer, Jr.___
(Registrar)

Form G .1985- 26

COPY

METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 52

    Effective for the policy year commencing July 1, 1972, by substituting for Section 21 thereof, as amended, the following:

    "Section 21.   SCHEDULES OF BASIC PREMIUM RATES.

Schedule of Bi-Weekly Basic Life Insurance Premium Rates Per
$1,000 of Life Insurance - Males"

| Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium | Attained Age Nearest Birthday | Premium |
|---|---|---|---|---|---|---|---|
| 15 | $0.06 | 35 | $0.10 | 55 | $0.50 | 75 | $2.57 |
| 16 | .06 | 36 | .10 | 56 | .54 | 76 | 2.77 |
| 17 | .06 | 37 | .11 | 57 | .59 | 77 | 3.00 |
| 18 | .07 | 38 | .11 | 58 | .64 | 78 | 3.26 |
| 19 | .07 | 39 | .12 | 59 | .70 | 79 | 3.54 |
| 20 | .07 | 40 | .14 | 60 | .75 | 80 | 3.85 |
| 21 | .07 | 41 | .15 | 61 | .82 | 81 | 4.18 |
| 22 | .07 | 42 | .16 | 62 | .89 | 82 | 4.52 |
| 23 | .08 | 43 | .17 | 63 | .96 | 83 | 4.89 |
| 24 | .08 | 44 | .19 | 64 | 1.04 | 84 | 5.25 |
| 25 | .08 | 45 | .20 | 65 | 1.13 | 85 | 5.64 |
| 26 | .08 | 46 | .22 | 66 | 1.23 | 86 | 6.05 |
| 27 | .08 | 47 | .24 | 67 | 1.34 | 87 | 6.48 |
| 28 | .08 | 48 | .27 | 68 | 1.47 | 88 | 6.94 |
| 29 | .08 | 49 | .29 | 69 | 1.60 | 89 | 7.44 |
| 30 | .08 | 50 | .32 | 70 | 1.74 | 90 | 7.99 |
| 31 | .08 | 51 | .35 | 71 | 1.90 | 91 | 8.60 |
| 32 | .08 | 52 | .38 | 72 | 2.05 | 92 | 9.31 |
| 33 | .09 | 53 | .41 | 73 | 2.21 | 93 | 10.13 |
| 34 | .09 | 54 | .45 | 74 | 2.39 | 94 | 11.09 |

Form G.1985-27

- 2 -

AMENDMENT 52 _____ (Continued)

The bi-weekly basic Life insurance premium rate for a female life is 60% of the bi-weekly basic Life insurance premium rate specified above for a male life.

In computing the average basic bi-weekly Life insurance premium rate pursuant to Section 14 hereof there shall be added to the average basic bi-weekly Life insurance premium determined on the basis of the premiums shown above an amount equal to $2.40 divided by the total amount of Life insurance in force under this Policy on the date of such computation expressed in thousands and fractions thereof.

The bi-weekly basic premium rate for insurance for Death or Dismemberment by Accidental Means shall be $0.0231 per $1,000 of the full amount of such insurance."

The foregoing Schedules of Basic Premium Rates shall remain in effect for policy years subsequent to the policy year commencing July 1, 1972 subject to further readjustment as provided in subsection (A) of Section 14 of said Group Policy. ————

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___13th___ day of ___October___ 19 __72.___

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ___Robert E. Hampton___

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N. Y.___ this ___sixteenth___ day of ___November___ 19 __72___

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Vice-President and Secretary

___Myron Wechheizor___
(Registrar)

Form C.1985-27

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 53

Effective July 1, 1972, by substituting for Section 20 thereof, as amended, the following:

"Section 20.  OPTIONAL MODES OF SETTLEMENT.— After the death of an Employee, arrangements may be made whereby the amount of Insurance due at the death of the Employee will be paid in a manner other than in one sum to the Beneficiary or other person entitled to receive payment.  Information concerning such modes of settlement will be furnished by the Office upon written request."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at  Washington, D. C.  this  13th  day of  October  19 72.

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By  Robert E. Bampton

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at  New York, N. Y.  this  sixteenth  day of  November  19 72

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Vice-President and Secretary

Myron Hochheiser
(Registrar)

COPY

Form G.1985-28

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of Title 5, United States Code, is hereby amended as follows:

AMENDMENT 54

Effective July 1, 1972, by inserting "(1)  For Any Policy Year beginning Prior to July 1, 1972" as a caption immediately after the heading "Schedule of Maximum Expense and Risk Charges" in the schedule following the fifth paragraph of Section 15 thereof, as amended, and by adding to said schedule, the following:

"(2)  For Any Policy Year beginning on or Subsequent to July 1, 1972

| Item | | Maximum Charge |
|---|---|---|
| (a) | Expense Charges | |
| | (i)  Taxes | The actual accrued amount of taxes directly attributable to the premiums, amounts of insurance in force, or reserves under this Policy, as determined by the Insurance Company. |
| | (ii)  Expense of administration | The amount of all expenses incurred by the Insurance Company in administering this Policy, including the expense of maintenance and operation of the Office and all other expenses attributable to this Policy, as determined by the Insurance Company.  Subpart B of Part 15 of Chapter I of Title 32, Code of Federal Regulations, shall be used as a guide in the determination of types of expense which are acceptable as expenses of administration and if, on audit, any item of expense of administration is found to be based on a type of expense which under the above regulations is an unacceptable type of expense, an appropriate adjustment will be made in a subsequent contract term accounting statement. |
| (b) | Risk Charge | (i) The sum of 0.4% of that part of Premiums for the policy year which is not in excess of $125 million, and 0.2% of that part of Premiums for the policy year which is in excess of $125 million, or (ii) $850,000, whichever is less." |

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this _____2nd_____ day of ____November____ 19_73_

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____Robert E. Hampton_____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, New York__ this _____20th_____ day of ____November____ 19_73_

METROPOLITAN LIFE INSURANCE COMPANY,

____Wm. H. Maver, Jr.____
(Registrar)

Donald A. Odell
Vice-President and Secretary

Form G.1985-29

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 55

Effective _____ July 1, 1973 _____, by adding to Section 13 thereof, the following paragraph:

"Records and files which relate to the administration of the insurance under this Policy and are maintained by the Office, including claim files, shall be subject to such general disposal program as may be agreed upon by the Policyholder and the Office."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _Washington, D. C._ this _____ 25th _____ day of _October_ 1973

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____ Robert E. Hampton

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at _New York, New York_ this _____ 20th _____ day of _November_ 1973

METROPOLITAN LIFE INSURANCE COMPANY,

_Wm. H. Mayer, Jr._
(Registrar)

Donald A. Odell
Vice-President and Secretary

Form G.1985-30

COPY

METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 56

Effective July 1, 1973,

A.  By adding "(including adequate provision for adjustment, as specified in the next following paragraph, in charges previously made on account of excess mortality costs under individual policies issued pursuant to Section 6 hereof)" immediately following "all charges accrued hereunder" in the fifth sentence of the third paragraph of Section 15 thereof.

B.  By substituting for the last sentence of the fourth paragraph of said Section 15, the following:

"The charges for such excess mortality costs shall be as follows:

(1)  As to individual policies issued prior to July 1, 1973:

Such charge shall be at the rate of $65 for each $1,000 of life insurance issued under each such policy.

(2)  As to individual policies issued on or after July 1, 1973:

A tentative charge, differentiating between (i) life insurance issued under any such policy which is attributable to the Employee's Life Insurance hereunder exclusive of optional Life Insurance, and (ii) life insurance issued under any such policy which is attributable to the Employee's optional Life Insurance hereunder, will be made as of the date of issue of each such policy. Such tentative charge will be subject to periodic adjustment on the basis of actual and projected mortality experience under such individual policies during the ten years following issue of any such policy. The rates at which initial tentative charges are made, and the methods for subsequent adjustments in such tentative charges, will be determined from time to time by mutual agreement between the Policyholder and the Insurance Company.

C O P Y

Form G.1985-31

AMENDMENT 56     (Continued)

For the purposes hereof, in the case of the cessation of the total amount of an Employee's Life Insurance hereunder, the amount of life insurance issued under any such individual policy which is attributable to an Employee's optional Life Insurance hereunder is the excess, if any, of the amount of life insurance under such individual policy over the amount of the Employee's Life Insurance exclusive of optional Life Insurance on the date of such cessation."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at __Washington, D. C.__ this ____11th____ day of _____June_____ 19 _75_

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _____ROBERT E. HAMPTON_____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, New York__ this ____19th____ day of _____June_____ 19 75

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Cass
Senior Vice-President and Secretary

__Richard D. Zinke__
(Registrar)

Form G.1985-31     COPY

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**
Original Proceeding
Complaint in Interpleader
**Exhibit A-Part 3**
A copy of the Federal Employees' Group Life Insurance Policy (pp. 61-90)

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### UNITED STATES CIVIL SERVICE COMMISSION
### (Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 57

Effective January 1, 1975, by adding to said Group Policy, the following:

"During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat qualified handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment, upgrading, demotion or transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship.

(2) The contractor agrees that if a handicapped individual files a complaint with the contractor that he is not complying with the requirements of Section 503(a) of Title V, Public Law 93-112, the Rehabilitation Act of 1973, e will

(a) investigate the complaint and take appropriate action consistent with the rules and regulations of the Secretary of Labor in 20 CFR Ch VI, Part 741.29 and

(b) maintain on file for three years, the record regarding the complaint and the actions taken.

(3) The contractor agrees that if a handicapped individual files a complaint with the Department of Labor that he has not complied with the requirements of Section 503(a) of Title V, Public Law 93-112, the Rehabilitation Act of 1973, he will

(a) cooperate with the Department in its investigation of the complaint, and

(b) provide all pertinent information regarding his employment practices with respect to the handicapped.

Form G.1985-32

C O P Y

- 2 -

AMENDMENT 57 - (Continued)

(4) The contractor agrees to comply with the rules and regulations of the Secretary of Labor in 20 CFR Ch VI, Part 741.

(5) In the event of the contractor's noncompliance with the requirements of the nondiscrimination clauses of this contract or with any of such rules, regulations or orders, this contract may be cancelled, terminated or suspended in whole or in part.

(6) The nondiscrimination clauses of this contract shall be included in all subcontracts over $2,500.

(7) The contractor agrees

(a) to establish an affirmative action program, including appropriate procedures consistent with the guidelines and the rules of the Secretary of Labor, which will provide the affirmative action regarding the employment and advancement of the handicapped required by Section 503(a) of Title V of Public Law 93-112, the Rehabilitation Act of 1973,

(b) to publish the program in his employee's personnel handbook or otherwise distribute a copy to all personnel,

(c) to review his program on or before March 31st of each year and to make such changes as may be appropriate, and

(d) to designate one of his principal officials to be responsible for the establishment and operation of the program.

(8) The contractor agrees to permit the examination by appropriate contracting agency officials or the Assistant Secretary for Employment Standards or his designee of pertinent books, documents, papers and records concerning his employment and the advancement of the handicapped.

(9) The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices, in a form to be prescibed by the Assistant Secretary for Employment Standards, provided by the contracting officer stating the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants for employment and the rights and remedies available.

Form G.1985-32



- 3 -

AMENDMENT 57 - (Continued)

(10) The contractor will notify each labor union or representative of workers with which he has a collective bargaining agreement or other contract understanding, that the contractor is bound by the terms of Section 503(a) of Title V of Public Law 93-112, the Rehabilitation Act of 1973, and is committed to take affirmative action to employ and advance in employment physically and mentally handicapped individuals.

(11) The contractor agrees to submit a copy of his affirmative action program to the Assistant Secretary for Employment Standards within 90 days after the award to him of a contract or subcontract.

(12) The contractor agrees to submit a summary report to the Assistant Secretary for Employment Standards, by March 31st of each year during performance of the contract, and by March 31st of the year following completion of the contract, in the form prescribed by the Assistant Secretary, covering employment and complaint experience, accommodations made and all steps taken to effectuate and carry out the commitments set forth in the affirmative action program."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C. this 11th day of June 19 75

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By ROBERT E. HAMPTON

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at New York, New York this 19th day of June 19 75

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Senior Vice-President and Secretary

Richard D. Zinke
(Registrar)

Form G.1985-32

COPY

METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 58

Effective October 1, 1975, by substituting for Section 4 thereof, as amended, the following:

"Section 4. AMOUNT OF INSURANCE.-(A) Applicable Prior to the Employee's Retirement:--The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change.

Part I - SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968

| Annual Compensation | | Life Insurance | Insurance for Death or Dis-memberment by Accidental Means |
|---|---|---|---|
| Greater Than | But Not Greater Then | | |
| 0 | $1,000 | $1,000 | $1,000 |
| $1,000 | 2,000 | 2,000 | 2,000 |
| 2,000 | 3,000 | 3,000 | 3,000 |
| 3,000 | 4,000 | 4,000 | 4,000 |
| 4,000 | 5,000 | 5,000 | 5,000 |
| 5,000 | 6,000 | 6,000 | 6,000 |
| 6,000 | 7,000 | 7,000 | 7,000 |
| 7,000 | 8,000 | 8,000 | 8,000 |
| 8,000 | 9,000 | 9,000 | 9,000 |
| 9,000 | 10,000 | 10,000 | 10,000 |
| 10,000 | 11,000 | 11,000 | 11,000 |
| 11,000 | 12,000 | 12,000 | 12,000 |
| 12,000 | 13,000 | 13,000 | 13,000 |
| 13,000 | 14,000 | 14,000 | 14,000 |
| 14,000 | 15,000 | 15,000 | 15,000 |
| 15,000 | 16,000 | 16,000 | 16,000 |
| 16,000 | 17,000 | 17,000 | 17,000 |
| 17,000 | 18,000 | 18,000 | 18,000 |
| 18,000 | 19,000 | 19,000 | 19,000 |
| 19,000 | - | 20,000 | 20,000 |

Form G.1985-33

- 2 -

AMENCMENT 58  (Continued)

PART II - SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE,
ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER
FEBRUARY 14, 1968

#### Life Insurance

The amount of the Employee's Life
Insurance shall be an amount equal
to the sum of (a) $2,000, and (b)
the Employee's Annual Compensation
(as fixed by law or regulation).
Such amount of Life Insurance shall
be subject to (i) a minimum amount
of Life Insurance of $10,000 and (ii)
a maximum amount of Life Insurance
equal to the Annual Compensation
rate for positions at Level II of
the Executive Schedule under
section 5313 of title 5, United
States Code, as in effect from time
to time, plus $2,000.  If the Annual
Compensation referred to is not a
multiple of $1,000 it shall be taken
to the next higher multiple of $1,000
for the purpose of this provision.

#### Insurance for Death or Dismemberment by Accidental Means

The amount of the Employee's
Insurance for Death or Dismemberment
by Accidental Means shall be an
amount equal to the amount of
his Life Insurance.

PART III - SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER
FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER
FEBRUARY 14, 1968

The amount of optional Life Insurance and the amount of optional insurance
for Death or Dismemberment by Accidental Means is the greater of (a) $10,000,
or (b) the excess, if any, of the amount of the Employee's annual compensation
(if not a multiple of $1,000, such annual compensation to be taken to the next
lower multiple of $1,000) over the amount of Life Insurance or the amount of
Insurance for Death or Dismemberment by Accidental Means, respectively, in
accordance with Part II above.

Form G.1985-33



- 3 -

AMENDMENT 5B  (Continued)

(B) Applicable After the Employee's Retirement:—The amount of Life Insurance hereunder on any Employee after retirement shall be the basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement of 25% of the basic amount of Life Insurance. The terms "basic amount of Life Insurance" and "effective reduction date" are defined in the following paragraphs of this subsection (B). In the case of an Employee whose retirement occurs on or after December 15, 1967, the amount of Life Insurance at any time after retirement shall be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance, and (2) optional Life Insurance, if any.

With respect to an Employee whose retirement occurs on or after December 15, 1967, "basic amount of Life Insurance" means, as to Life Insurance exclusive of optional Life Insurance, the amount of Life Insurance in accordance with Part II of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and "effective reduction date" means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part II of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective.

With respect to an Employee whose retirement occurs on or after February 14, 1968, "basic amount of Life Insurance" means, as to optional Life Insurance, so much of the amount of optional Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section, which had been in force for not less than

(a) the full period or periods of service during which optional insurance was available to him, or

(b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

Form G.1985-33

COPY

- 4 -

AMENDMENT 58 (Continued)

whichever is shorter. For the purposes of this paragraph, in the case of an Employee who was on the roll of his employing office on February 14, 1968 and who was insured for optional Insurance on April 14, 1968 or the date of his retirement, if earlier, such optional insurance shall be deemed to have been in force for the full period or periods of service during which optional insurance was available to him prior to such earlier date. If the Policyholder receives written notice from the Employee that optional Life Insurance on his account is not to be continued after retirement, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement.

With respect to an Employee whose retirement occurs on or after December 16, 1967 but prior to February 14, 1968, "basic amount of Life Insurance" means, as to optional Life Insurance, an amount of optional Life Insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of Items (1) or (2) of the first paragraph of Section 3 hereof. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part III of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective. The provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement, unless written election of optional Life Insurance by the Employee is received by the Policyholder on or prior to April 14, 1968.

With respect to an Employee whose retirement occurs on or after September 23, 1959 but prior to December 16, 1967, "basic amount of Life Insurance" means the amount of Life Insurance in accordance with Part I of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of Items (1) or (2) of the first paragraph of Section 3 hereof; and "effective reduction date" means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later.

Form G.1985-33

COPY

- 5 -

AMENDMENT 58  (Continued)

    With respect to an Employee whose retirement occurs prior to
September 23, 1959, "basic amount of Life Insurance" means the amount
of Life Insurance in accordance with Part I of the Schedule of Insur-
ance in subsection (A) of this Section based on the amount of his annual
compensation on (a) the date his insurance would otherwise have ceased
because of the happening of the event specified in either of Items (1)
or (2) of the first paragraph of Section 3 hereof, or (b) his 65th birth-
day, whichever is earlier (or in the case of any such Employee who first
became or again became insured hereunder after his 65th birthday, based
on (I) the amount of his annual compensation on the latest date he became
insured hereunder, or (II) the amount of his annual compensation on his
65th birthday if the Employee was eligible to be insured hereunder on
his 65th birthday, whichever is the lesser); and "effective reduction
date" means the first day of the second calendar month after his 65th
birthday."

    The foregoing amendment is to be attached to and made part of said
Group Policy.

Signed at __Washington, D.C.__ this __twelfth__ day of __May__ 19_76_

                          UNITED STATES CIVIL SERVICE COMMISSION
                                      (Policyholder)

                          By ____Robert E. Hampton____
                                      Chairman
              (Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at __New York, N.Y.__ this __twenty-fifth__ day of __May__ 19_76_

                          METROPOLITAN LIFE INSURANCE COMPANY,

__Richard D. Zinke__
      (Registrar)

                          Donald A. Odell
                          Vice-President and Secretary

Form G.1985-33

                          C O P Y

METROPOLITAN LIFE INSURANCE COMPANY

---

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 59

Effective January 1, 1976,

A. By adding at the end of Section 4 thereof, the following:

"In addition to the amounts of Life Insurance and Insurance for Death or Dismemberment by Accidental Means, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the insurance Company to the Beneficiary of record or claimant, as specified in Section 11 hereof, on

(I) any delayed payment of claims paid in one sum from the date of death of the Employee to the date of the payment of such claims, and

(II) any delayed payment of optional modes of settlement, as specified in Section 20 hereof, from the date of death of the Employee to the effective date of the supplementary contract issued in connection with such optional modes of settlement,

provided, in either case, the Employee's death occurs on or after January 1, 1976, and provided further, that:

1. no interest shall be payable on delayed payment of claims under the Insurance for Death or Dismemberment by Accidental Means for any loss other than loss of life, and

2. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

3. no interest shall accrue for any period during which payment is delayed due to the inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of the Group Policy."

Form G.1985-34

COPY

AMENDMENT 59   (Continued)

- 2 -

B.  By substituting for the first sentence of subsection (A) of Section 5 thereof, the following:

"Upon receipt by the Office of satisfactory proof, in writing, that any Employee shall have died while insured hereunder, the Office shall pay, subject to the terms hereof, the amount of Life Insurance, if any (plus interest, if any, as determined by the Insurance Company) in force hereunder on account of such Employee in accordance with Section 4 hereof, at the date of his death."

C.  By substituting for the first sentence of the second paragraph of subsection (B) of said Section 5, the following:

"Benefits (plus interest, if any, as determined by the Insurance Company) for loss of life as specified in this subsection (B) are payable to the Beneficiary of record of the Employee or otherwise as provided in Section 11 hereof.

D.  By substituting for item (3) of Section 15 thereof, the following:

"(3) The aggregate amounts of all mortality and other claim charges, except interest charges, if any, for the delayed payment of death claims and accidental death claims, incurred under this Policy from the date of issue to the end of such policy year."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___thirtieth___ day of ___April___ 19 76

___UNITED STATES CIVIL SERVICE COMMISSION___
(Policyholder)

By ___Robert E. Hampton___
Chairman

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___seventeenth___ day of ___May___ 19 76

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Ooss
Senior Vice-President and Secretary

___Richard D. Zinke___
(Registrar)

Form G.1985-34

© O P Y

ET=OLITAN LIFE INSURANCE COMPAN

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of Title 5, United States Code, is hereby amended as follows:

AMENDMENT 60

Effective October 1, 1977, by substituting for the second paragraph of Section 15 Thereof, the following:

"If Item (5) is a positive amount, such amount shall be held by the Insurance Company as a Contingency Reserve to be used for charges under this Policy only. Such Contingency Reserve shall bear interest at a rate to be determined in advance of each policy year by the Insurance Company, which rate shall be approved by the Policyholder as being consistent with the rates generally used by the Insurance Company for similar funds held under other group life insurance policies. Such interest shall be computed as of the end of each policy year on the mean amount of the Contingency Reserve during that policy year at the rate applicable to that policy year. If the actual net investment income generated by the financial transactions under the Group Policy for the calendar year ending during the policy year is in excess of the interest that is credited on the Contingency Reserve at the rates previously guaranteed by the Insurance Company, the interest on the Contingency Reserve shall be increased by the Insurance Company to reflect such actual net investment income. If such actual net investment income is less than such interest at the rates previously guaranteed by the Insurance Company, the deficit will be carried forward to offset the actual net investment income generated in the following calendar year or years. The total amount of interest so calculated shall be added to the amount of the Contingency Reserve as of the end of such policy year or upon the request of the Policyholder shall be paid to the Policyholder within ninety days after the end of such policy year for deposit in the Treasury of the United States for credit to the fund created by subsection (c) of Section 5 of the Federal Employees' Group Life Insurance Act of 1954."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D.C. this _____ 9th _____ day of _____ November _____ 19 77

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By_____ Alan K. Campbell _____

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed at New York, N.Y. this twenty-second day of _____ November _____ 19 77

METROPOLITAN LIFE INSURANCE COMPANY,

Richard D. Zinke
(Registrar)

J. Austin Lyons, Jr.
General Counsel & Secretary

Form G.1985-35

COPY

 

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No. 17000-G bearing date of August 29, 1954 and Issued to

### UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of Title 5, United States Code, is hereby amended as follows:

AMENDMENT 61

Effective May 17, 1976, by substituting for the provisions added to said Group Policy by Form G.1985-32 (Amendment 57), the following:

"During the performance of this contract, the contractor agrees as follows:

(1) The contractor will not discriminate against any employee or applicant for employment because of physical or mental handicap in regard to any position for which the employee or applicant for employment is qualified. The contractor agrees to take affirmative action to employ, advance in employment and otherwise treat handicapped individuals without discrimination based upon their physical or mental handicap in all employment practices such as the following: employment, upgrading, demotion or transfer, recruitment, or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship.

(2) The contractor agrees to comply with the rules, regulations, and relevant orders of the Secretary of Labor issued pursuant to the Rehabilitation Act of 1973, Section 503(a) of Title V, Public Law 93-112, as amended by Public Law 93-516.

(3) In the event of the contractor's noncompliance with the requirements of the non-discrimination clauses of this contract, actions for noncompliance may be taken in accordance with the rules, regulations, and relevant orders of the Secretary of Labor in 20-CFR Ch VI, Part 741.

(4) The contractor agrees to post in conspicuous places, available to employees and applicants for employment, notices, in a form to be prescribed by the Director, Office of Federal Contract Compliance Programs, United States Department of Labor, provided by or through the contracting officer. Such notices shall state the contractor's obligation under the law to take affirmative action to employ and advance in employment qualified handicapped employees and applicants for employment, and the rights of applicants and employees.

Form G.1985-36

- 2 -

(5) The contractor will notify each labor union or representative of workers with which he has a collective bargaining agreement or other contract understanding, that the contractor is bound by the terms of section 503(a) of Title V of Public Law 93-112, as amended by Public Law 93-516, of the Rehabilitation Act of 1973, and is committed to take affirmative action to employ and advance in employment physically and mentally handicapped individuals.

(6) The contractor will include the provisions of the foregoing paragraphs (1) through (5) in every subcontract or purchase order of $2,500 or more unless exempted by rules, regulations, or orders of the Secretary of Labor in 20 CFR Ch VI, Part 741, so that such provisions will be binding upon each subcontractor or vendor. The contractor will take such action with respect to any subcontract or purchase order as the Director of the Office of Federal Contract Compliance Programs may direct to enforce such provisions, including action for noncompliance."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___19th___ day of ___October___ 19_76_

___UNITED STATES CIVIL SERVICE COMMISSION___
(Policyholder)

By____Robert E. Hampton____

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___1st___ day of ___November___ 19_76_

METROPOLITAN LIFE INSURANCE COMPANY,

Donald A. Odell
Senior Vice-President and Secretary

___Richard D. Zinke___
(Registrar)

Form G.1985-36

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY No.     17000-G bearing date of August 29, 1954 and issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 62

Effective January 1, 1977, by substituting for the last sentence of Section 17 thereof, as amended, the following:

"The term 'renewal date' as used in this Policy shall mean the last premium due date in the month of November in each of the calendar years 1955 through 1960, both inclusive, July 1st for the calendar years 1961 through 1976, both inclusive, and October 1st in the calendar year 1977 and each subsequent calendar year."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___fourth___ day of ___April___ 1977

UNITED STATES CIVIL SERVICE COMMISSION
(Policyholder)

By _Georgia H. Meldon_

(Space Below For Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, N.Y.___ this ___Twelfth___ day of ___April___ 19 77

METROPOLITAN LIFE INSURANCE COMPANY,

_J. Austin Lyone, Jr._
General Counsel & Secretary

_Richard D. Zaila_
(Registrar)

Form G.1985-37

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and Issued to

UNITED STATES CIVIL SERVICE COMMISSION
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 63

I.  Effective November 2, 1978,

A.  By substituting for the first paragraph of Section 4 thereof, as amended, the following:

" Section 4.  AMOUNT OF INSURANCE.-

(A) Applicable Prior to the Employee's Retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code:--The amount of insurance hereunder on any Employee shall be in accordance with the Schedule set forth below. -Any increase or decrease in the amount of such insurance due to change in annual compensation, in accordance with said Schedule, shall become effective (1) on the stated effective date of change in the Employee's annual compensation or the date such change in annual compensation is approved, whichever date is later, or (2) on the effective date of the change when a retroactive adjustment is actually the correction of an error, unless otherwise stipulated in a law providing for the change."

B.  By substituting for subsection (B) of Section 4 thereof, as amended, the following:

" (B) Applicable After the Employee's Retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code:--The amount of Life Insurance hereunder on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be the basic amount of Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the basic amount of Life Insurance.  The terms 'basic amount of Life Insurance' and 'effective reduction date' are defined in the following paragraphs of this subsection (B). )In the case of an Employee whose retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code occurs on or after November 2, 1978, the amount of Life Insurance at any time after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall

Form G.1985-32

COPY

- 2 -

AMENDMENT 63  (Continued)

be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance and (2) optional Life Insurance, if any.  In the case of an Employee whose retirement occurs on or after December 16, 1957 but prior to November 2, 1978, the amount of Life Insurance at any time after retirement shall be separately determined, as hereinafter specified, in respect of (1) Life Insurance exclusive of optional Life Insurance, and (2) optional Life Insurance, if any.

With respect to an Employee whose retirement occurs on or after December 16, 1957, or an Employee whose entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code occurs on or after November 2, 1978, 'effective reduction date' means the first day of the second calendar month after (1) the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (2) his 65th birthday, whichever is later.

With respect to an Employee whose retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code occurs on or after November 2, 1978, 'basic amount of Life Insurance' means, as to Life Insurance, so much of the amount of Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Parts II or III, whichever is applicable to the Employee, of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

> (a) the full period or periods of service during which such insurance was available to him or
>
> (b) the five years of service immediately preceding such date and during which such insurance was available to him,

whichever is shorter.  If the Policyholder receives written notice from the Employee that optional Life Insurance on his account is not to be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement or entitlement to such benefits.

With respect to an Employee whose retirement occurs on or after December 16, 1957 but prior to November 2, 1978, 'basic amount of Life Insurance' means, as to Life Insurance exclusive of optional Life Insurance, the amount of Life Insurance in accordance with Part II of the Schedule of Insurance in subsection (A) of this Section based on the amount of his

Form G.1985-38

C O P Y

AMENDMENT 63   (Continued)

annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part II of the Schedule of Insurance in subsection (A) of this Section relating to the period for which such schedule is effective.

With respect to an Employee whose retirement occurs on or after February 14, 1968 but prior to November 2, 1970. 'basic amount of Life Insurance' means, as to optional Life Insurance, so much of the amount of optional Life Insurance in force on his account on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section, which had been in force for not less than

    (a) the full period or periods of service during which optional insurance was available to him, or

    (b) the twelve years of service immediately preceding such date and during which the optional insurance was available to him,

whichever is shorter. For the purposes of this paragraph, in the case of an Employee who was on the roll of his employing office on February 14, 1968 and who was insured for optional insurance on April 14, 1968 or the date of his retirement, if earlier, such optional insurance shall be deemed to have been in force for the full period or periods of service during which optional insurance was available to him prior to such earlier date. If the Policyholder receives written notice from the Employee that optional Life Insurance on his account is not to be continued after retirement, the provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement.

With respect to an Employee whose retirement occurs on or after December 16, 1967 but prior to February 14, 1968, 'basic amount of Life Insurance' means, as to optional Life Insurance, an amount of optional Life Insurance in accordance with Part III of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof. The basic amount of Life Insurance for the purposes of this paragraph shall be determined as set forth above without regard to the specifications in Part III of the Schedule of Insurance in subsection (A) of this Section relating to the

Form G.1995-28

COPY

AMENDMENT 63  (continued)

period for which such schedule is effective. The provisions of this paragraph shall be null and void and of no effect and no optional Life Insurance shall be provided for the Employee after retirement, unless written election of optional Life Insurance by the Employee is received by the Policyholder on or prior to April 14, 1963.

With respect to an Employee whose retirement occurs on or after September 23, 1959 but prior to December 16, 1957, 'basic amount of Life Insurance' means the amount of Life Insurance in accordance with Part I of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof; and 'effective reduction date' means the first day of the second calendar month after (1) such date, or (2) his 65th birthday, whichever is later.

With respect to an Employee whose retirement occurs prior to September 23, 1959, 'basic amount of Life Insurance' means the amount of Life Insurance in accordance with Part I of the Schedule of Insurance in subsection (A) of this Section based on the amount of his annual compensation on (a) the date his insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (b) his 65th birthday, whichever is earlier (or in the case of any such Employee who first became or again became insured hereunder after his 65th birthday, based on (i) the amount of his annual compensation on the latest date he became insured hereunder, or (ii) the amount of his annual compensation on his 65th birthday if the Employee was eligible to be insured hereunder on his 65th birthday, whichever is the lesser); and 'effective reduction date' means the first day of the second calendar month after his 65th birthday.

In addition to the amounts of Life Insurance and Insurance for Death or Dismemberment by Accidental Means, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company to the Beneficiary of record or claimant, as specified in Section 11 hereof, on

(i) any delayed payment of claims paid in one sum from the date of death of the Employee to the date of the payment of such claims, and

(ii) any delayed payment of optional modes of settlement, as specified in Section 20 hereof, from the date of death of the Employee to the effective date of the supplementary contract issued in connection with such optional modes of settlement,

provided, in either case, the Employee's death occurs on or after January 1, 1976, and provided further, that:

Form G.1965-38

COPY

AMENDMENT 63 (Continued)

1. no interest shall be payable on delayed payment of claims under the Insurance for Death or Dismemberment by Accidental Means for any loss other than loss of life, and

2. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

3. no interest shall accrue for any period during which payment is delayed due to the inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of the Group Policy."

II. Effective January 1, 1979,

A. By substituting "Office of Personnel Management" for "United States Civil Service Commission" as the Policyholder under the Group Policy, it being understood and agreed that the Group Policy shall continue in full force.

B. By substituting "Office of Personnel Management" for "United States Civil Service Commission" or "Civil Service Commission" wherever the latter appear in either the certificate or the certificate supplements.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at _Washington. D.C._ this ___27th___ day of ___June___ 19_79_

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By ___Alan K. Campbell___

(SPACE BELOW FOR USE OF METROPOLITAN LIFE INSURANCE COMPANY ONLY)

Signed _New York, N.Y._ this _Thirty-First_ day of ___July___ 19_79_

METROPOLITAN LIFE INSURANCE COMPANY,

___Richard D. Zinke___
(Registrar)

J. Austin Lyons, Jr.
Secretary

Form G.1935-38

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as
follows:

AMENDMENT 64

1.   Effective December 9, 1980, by substituting for the first sentence
appearing in the first paragraph of subsection (B) entitled "Applicable after
the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of
Chapter 81 of Title 5, United States Code" of Section 4 thereof, as amended,
the following:

### Prior to December 9, 1980

The amount of Life Insurance hereunder on any Employee after retirement or
entitlement to benefits under subchapter 1 of chapter 81 of title 5,
United States Code shall be the basic amount of Life Insurance reduced by
2% thereof each month beginning with the effective reduction date, subject
to a minimum amount of Life Insurance after retirement or entitlement to
benefits under subchapter 1 of chapter 81 of title 5, United States Code
of 25% of the basic amount of Life Insurance.

### On or after December 9, 1980

The amount of Life Insurance hereunder on any Employee after retirement or
entitlement to benefits under subchapter 1 of chapter 81 of title 5,
United States Code shall be determined in accordance with Election 1,
Election 2, or Election 3 as elected by the Employee:

### Election 1

The Employee may elect to have his/her basic amount of Life Insurance
reduced by 2% thereof each month beginning with the effective reduction
date, subject to a minimum amount of Life Insurance after retirement or
entitlement to benefits under subchapter 1 of chapter 81 of title 5,
United States Code of 25% of the basic amount of Life Insurance.

### Election 2

The Employee may elect to have his/her basic amount of Life Insurance
reduced by 1% thereof each month beginning with the effective reduction
date, subject to a minimum amount of Life Insurance after retirement or
entitlement to benefits under subchapter 1 of chapter 81 of title 5,
United States Code of 50% of the basic amount of Life Insurance.

Form G.1985-39



- 2 -

AMENDMENT 64  (Continued)

Election 3

The Employee may elect to have his/her Basic amount of Life Insurance continued in full after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code.

If an Employee on the date of his/her retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, elects to have his/her Life Insurance determined in accordance with either Election 2 or Election 3, such Employee may, at a later date, cancel the amount of Life Insurance provided by either Election 2 or Election 3 and thereafter his/her Life Insurance will continue in the amount he/she would have had if he/she selected Election 1 on the date of his/her retirement.

II. Effective April 1, 1981,

A. By adding to the last paragraph of Section 1 thereof, as amended, the following:

"On and after April 1, 1981, unless otherwise specified any reference to

(a) insurance hereunder shall include:

Basic Life Insurance
Option A - Standard Life Insurance
Option B - Additional Life Insurance
Basic Insurance for Death or Dismemberment by Accidental Means
Option A - Standard Insurance for Death or Dismemberment by Accidental Means

(b) Life Insurance hereunder shall include:

Basic Life Insurance
Option A - Standard Life Insurance
Option B - Additional Life Insurance

(c) Insurance for Death or Dismemberment by Accidental Means shall include Basic Insurance for Death or Dismemberment by Accidental Means and Option A - Standard Insurance for Death or Dismemberment by Accidental Means.

(d) Option A - Standard Insurance shall include Option A - Standard Life Insurance and Option A - Standard Insurance for Death or Dismemberment by Accidental Means."

Form C.1985-39



- 3 -

<u>AMENDMENT 64</u> (Continued)

B. By substituting "Part II - SCHEDULE OF INSURANCE, EXCLUSIVE OF OPTIONAL INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981" for the caption in Part II of the Schedule of Insurance in subsection (A) of Section 4 thereof, as amended.

C. By adding immediately after Part II of the Schedule of Insurance in said subsection (A) of said Section 4, the following:

"PART IIA - SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A - STANDARD INSURANCE AND OPTION B - ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981

| Basic<br>Life<br>Insurance | Basic Insurance for Death<br>or Dismemberment by<br>Accidental Means |
| --- | --- |
| The amount of the Employee's Basic Life Insurance shall be an amount equal to the sum of (a) $2,000, and (b) the Employee's Annual Compensation (as fixed by law or regulation). Such amount of Basic Life Insurance shall be subject to (i) a minimum amount of Basic Life Insurance of $10,000 and (ii) a maximum amount of Basic Life Insurance equal to the Annual Compensation rate for positions at Level II of the Executive Schedule under section 5313 of title 5, United States Code, as in effect from time to time, plus $2,000. If the Annual Compensation referred to is not a multiple of $1,000 it shall be taken to the next higher multiple of $1,000 for the purpose of this provision. | The amount of the Employee's Basic Insurance for Death or Dismemberment by Accidental Means shall be an amount equal to the amount of his/her Basic Life Insurance." |

D. By substituting "PART III - SCHEDULE OF OPTIONAL INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER FEBRUARY 14, 1968 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981" for the caption in Part III of the Schedule of Insurance in said subsection (A) of said Section 4.

Form G.1985-39



- 4 -

AMENDMENT 64  (Continued)

E.  By adding immediately after Part III of the Schedule of Insurance in said subsection (A) of said Section 4, the following:

"PART IV - SCHEDULE OF OPTION A - STANDARD INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981

The amount of the Employee's Option A - Standard Life Insurance and the amount of the Employee's Option A - Standard Insurance for Death or Dismemberment by Accidental Means is the greater of (a) $10,000, or (b) the excess, if any, of the amount of the Employee's Annual Compensation (if not a multiple of $1,000. such Annual Compensation shall be taken to the next lower multiple of $1,000) over the amount of Basic Life Insurance or the amount of Basic Insurance for Death or Dismemberment by Accidental Means, respectively, in accordance with Part IIA above.

PART V - SCHEDULE OF OPTION B - ADDITIONAL LIFE INSURANCE ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981

The amount of Option B - Additional Life Insurance shall be an amount determined in accordance with Option 1, Option 2, Option 3, Option 4 or Option 5, as elected by the Employee.

| Option | Amount of Option B - Additional Life Insurance |
|--------|------------------------------------------------|
| 1 | 1 times the Employee's annual compensation |
| 2 | 2 times the Employee's annual compensation |
| 3 | 3 times the Employee's annual compensation |
| 4 | 4 times the Employee's annual compensation |
| 5 | 5 times the Employee's annual compensation |

The maximum Annual Compensation to be used is the Annual Compensation rate for positions at Level II of the Executive Schedule under Section 5313 of title 5, United States Code, as in effect from time to time.  If Annual Compensation is not a multiple of $1,000 it shall be taken to the next higher multiple of $1,000 for the purpose of this provision.

The conditions under which an Employee may acquire Option B - Additional Life Insurance in addition to Option A - Standard Life Insurance or change the option he/she has elected shall be determined in accordance with regulations of the Policyholder promulgated pursuant to chapter 87 of title 5, United States Code."

F.  By substituting for the heading to subsection (B) of said Section 4, the following:

"(B) Applicable After the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of Chapter 81 of Title 5, United States Code:

1.  With Respect to an Employee whose retirement or entitlement to benefits under Subchapter 1 of Chapter 81 of Title 5, United States Code occurs prior to April 1, 1981."

Form G.1985-39

- 5 -

AMENDMENT 64  (Continued)

G.  By adding to said subsection (3) of said Section 4, the following:

"2.  With Respect to an Employee whose retirement or entitlement to benefits under Subchapter 1 of Chapter 81 of Title 5, United States Code occurs on or after April 1, 1981.-

The amount of (1) Basic Life Insurance, exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance; (2) Option A - Standard Life Insurance; if any; and (3) Option B - Additional Life Insurance, if any, at any time after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be separately determined, as hereinafter specified.

'Effective reduction date' means the first day of the second calendar month after (1) the date his/her Life Insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, or (2) his/her 65th birthday, whichever occurs later.

The amount of Basic Life Insurance hereunder on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be determined in accordance with Election 1, Election 2, or Election 3 as elected by the Employee:

Election 1

The Employee may elect to have such amount of Basic Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Basic Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the amount of Basic Life Insurance.

Election 2

The Employee may elect to have such amount of Basic Life Insurance reduced by 1% thereof each month beginning with the effective reduction date, subject to a minimum amount of Basic Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 50% of the amount of Basic Life Insurance.

Election 3

The Employee may elect to have such amount of Basic Life Insurance continued in full after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code.

Form G.1985-39



- 6 -

AMENDMENT 64  (Continued)

If an Employee on the date of his/her retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, elects to have his/her Basic Life Insurance determined in accordance with either Election 2 or Election 3, such Employee may, at a later date, cancel the amount of Basic Life Insurance provided by either Election 2 or Election 3 and thereafter his/her Basic Life Insurance will continue in the amount he/she would have had if he/she selected Election 1 on the date of his/her retirement.

The amount of Option A - Standard Life Insurance hereunder, if any, on any Employee after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be the amount of Option A - Standard Life Insurance reduced by 2% thereof each month beginning with the effective reduction date, subject to a minimum amount of Option A - Standard Life Insurance after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code of 25% of the amount of Option A - Standard Life Insurance.

The amount of Option B - Additional Life Insurance hereunder, if any, after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be reduced by 2% thereof each month beginning with the effective reduction date and continuing for 50 months.

Life Insurance (exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance) means so much of the amount of such Life Insurance in force on his/her account on the date his/her insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part IIA* of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

(a)  the full period or periods of service during which such insurance was available to him/her, or

(b)  the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which such insurance ** was available to him/her,

whichever is shorter.

Option A - Standard Life Insurance means so much of the amount of Option A - Standard Life Insurance in force on his/her account on the date his/her insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Parts III and/or IV of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

* Parts IIA, or IIB, whichever is applicable to the Employee, - on and after the first day of the first pay period which begins on or after October 1, 1981.

** includes insurance set forth in Part II and/or Part II A .

Form G.1985-39



- 7 -

<u>AMENDMENT 64</u>  (Continued)

    (a)  the full period or periods of service during which such insurance was available to him/her, or

    (b)  the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which such insurance* was available to him/her,

whichever is shorter.

Option 3 - Additional Life Insurance means so much of the amount of Option 3 - Additional Life Insurance in force on his/her account, subject to the provisions of the next following sentence, on the date his/her Additional Life Insurance would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with Part V of the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

    (a)  the full period or periods of service during which such insurance was available to him/her, or

    (b)  the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which such insurance was available to him/her,

whichever is shorter.  The amount of Option 3 - Additional Life Insurance shall be based on the lowest multiple of such insurance, which the Employee had elected in accordance with the options specified in said Part V of the Schedule of Insurance, that was in effect for

    (a)  the five years of service immediately preceding the date of his/her retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, or

    (b)  the full period or periods of service during which such insurance was available to him/her, if he/she was insured for less than five years.

The Employee's Option A - Standard Life Insurance and/or Option 3 - Additional Life Insurance hereunder will be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, as specified above, only if the Employee's Basic Life Insurance, exclusive of Option A - Standard Life Insurance and Option 3 - Additional Life Insurance, is continued after retirement or entitlement to such benefits in accordance with the provisions hereof.

* includes insurance set forth in Part III and/or Part IV.

Form G.1985-39



- 8 -

AMENDMENT 64  (Continued)

If the Policyholder receives written notice from the Employee that Option A – Standard Life Insurance and/or Option B – Additional Life Insurance on his/her account is not to be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, the provisions of this paragraph shall be null and void and of no effect and no Option A – Standard Life Insurance and/or Option B – Additional Life Insurance shall be provided for the Employee after retirement or entitlement to such benefits."

B.  By adding to said Group Policy as a part thereof, the attached Group Life Insurance – Option C – Family Benefits Supplementary Agreement Form G.1985-A.

III.  Effective on the first day of the first pay period beginning on or after October 1, 1981,

A.  By adding to the first paragraph of subsection (A) of Section 4 thereof, as amended, the following:

"Any decrease in the amount of such insurance due to attainment of a specified age shall become effective upon the Employee's attainment of such specified age."

B.  By substituting "PART IIA – SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A – STANDARD INSURANCE AND OPTION B – ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER APRIL 1, 1981 BUT PRIOR TO FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER OCTOBER 1, 1981" for the caption in Part IIA of the Schedule of Insurance in said subsection (A) of said Section 4.

C.  By adding immediately after Part IIA of the Schedule of Insurance in said subsection (A) of said Section 4, the following:

Form G.1985-39

COPY

- 9 -

AMENDMENT 64  (Continued)

PART III - SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A - STANDARD INSURANCE AND OPTION B - ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY PERIOD WHICH BEGINS ON OR AFTER OCTOBER 1, 1981

### Basic Life Insurance

The amount of the Employee's Basic Life Insurance shall be determined as follows:
(1) Employees Age 45 and Over
An amount equal to the sum of (a) $2,000 and (b) the Employee's Annual Compensation* (as fixed by law or regulation). Such amount of Basic Life Insurance shall be subject to (i) a minimum amount of Life Insurance of $10,000, and (ii) a maximum amount of Basic Life Insurance equal to the Annual Compensation* rate for positions at Level II of the Executive Schedule under section 5313 of title 5, United States Code, as in effect from time to time, plus $2,000.

(2) Employees Age 44 and Under (See Note)
The amount of the Employee's Basic Life Insurance shall be an amount determined in accordance with (1) above, multiplied by the applicable factor determined from the following Table:

### Basic Insurance for Death or Dismemberment by Accidental Means

The amount of the Employee's Basic Insurance for Death or Dismemberment by Accidental Means shall be an amount equal to the sum of (a) $2,000, and (b) the Employee's Annual Compensation* (as fixed by law or regulation). Such amount of Basic Insurance for Death or Dismemberment by Accidental Means shall be subject to (i) a minimum amount of Basic Insurance for Death or Dismemberment by Accidental Means of $10,000, and (ii) a maximum amount of Basic Insurance for Death or Dismemberment by Accidental Means equal to the Annual Compensation* rate for positions at Level II of the Executive Schedule under section 5313 of title 5, United States Code, as in effect from time to time, plus $2,000.

Table

| Age of Employee | Factor | Age of Employee | Factor |
|---|---|---|---|
| 35 and under | 2.0 | 40 | 1.5 |
| 36 | 1.9 | 41 | 1.4 |
| 37 | 1.8 | 42 | 1.3 |
| 38 | 1.7 | 43 | 1.2 |
| 39 | 1.6 | 44 | 1.1 |

Form G.1985-39

COPY

- 10 -

AMENDMENT 64   (Continued)

PART III - SCHEDULE OF BASIC INSURANCE, EXCLUSIVE OF OPTION A - STANDARD INSURANCE
AND OPTION B - ADDITIONAL LIFE INSURANCE, ON AND AFTER FIRST DAY OF FIRST PAY
PERIOD WHICH BEGINS ON OR AFTER OCTOBER 1, 1981 - (CONTINUED)

Note: The increase in the amount of Basic Life Insurance set forth in item (2)
above shall also be applicable to an Employee, under age 45, who is retired
or is receiving compensation under subchapter 1 of chapter 81 of title 5,
United States Code provided such Employee elected to continue Basic Life
Insurance at the time he/she became eligible to continue such insurance
because of retirement or receipt of compensation benefits.

* If the Annual Compensation referred to is not a multiple of $1,000 it shall be
taken to the next higher multiple of $1,000 for the purpose of this provision."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D.C.                 this    21st               day of November    19 83

                                         OFFICE OF PERSONNEL MANAGEMENT
                                                  (Policyholder)

                                         By    Kevin J. Burns

            (Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at New York, New York               this    29th               day of November    19 83

                                    METROPOLITAN LIFE INSURANCE COMPANY,

                                    Harry P. Kamen
                                    Secretary

Sherman Williamson
       (Registrar)

Form G.1985-39

METROPOLITAN LIFE INSURANCE COMPANY
(Herein called the Insurance Company)

Group Life Insurance - Option C - Family Benefits

Supplementary Agreement attached to and made part of Group Policy No. 17000-G
issued to

OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, and in consideration of the
payment by the Policyholder of the premiums as hereinafter provided, the Insurance
Company hereby agrees, subject to the provisions of this Supplementary Agreement,
to pay the insurance benefits herein provided with respect to the Employees insured
hereunder.

Section 1.   DEFINITION OF CERTAIN TERMS USED IN THIS SUPPLEMENTARY AGREEMENT.—

The term "Employee" means a person who is considered, under applicable laws and
regulations, to be an Employee for the purposes of chapter 87 of title 5, United
States Code.

The term "Family Member" means a person who is considered under applicable laws and
regulations, to be a Family Member for the purposes of chapter 87 of title 5,
United States Code.

The term "Office" means the Office of Federal Employees' Group Life Insurance which
is the administrative office established by the Insurance Company with respect to
the Group Policy and this Supplementary Agreement.  The post office address of the
Office is 4 East 24th Street, New York, New York 10010.  The Insurance Company
shall have the right to change the address of the Office upon three months notice
in writing to the Policyholder.

The term "Option C - Family Life Insurance" (hereinafter referred to as Family Life
Insurance) means insurance providing benefits payable to an Employee, subject to
the terms, conditions, and limitations hereof, in the event of the death of any of
his/her Family Members.

The terms "hereof", "herein", "herefor", and "hereunder", as used in this
Supplementary Agreement, refer exclusively to this Supplementary Agreement and not
to the Group Policy.

Section 2.   EFFECTIVE DATES OF INSURANCE.—Eligibility of Employees for Family Life
Insurance hereunder and the effective dates of such insurance shall be determined
in accordance with regulations of the Policyholder made pursuant to chapter 87 of
title 5, United States Code.

Form G.1985-A

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**
Original Proceeding
Complaint in Interpleader
**Exhibit A-Part 4**
A copy of the Federal Employees' Group Life Insurance Policy (pp. 91-111)

- 2 -

Section 3.   CESSATION OF INSURANCE.—The Employee's Family Life Insurance hereunder with respect to any Family Member shall automatically cease, except as specified in the next following paragraph, on the earliest of the following dates:

(1)   The date of the Employee's separation from the service.

(2)   The date of expiration of a period of twelve months of non-pay status of the Employee.

(3)   The day immediately preceding the date the Employee enters on active duty or active duty for training as a member of a uniformed service, unless the period of such duty is covered by military leave with pay from his/her civilian position.

(4)   The date of the Employee's death.

(5)   The date the Employee ceases to be an Employee as defined in Section 1 hereof for any reason other than the happening of any of the events specified in items (1), (2), (3) or (4) preceding.

(6)   The day immediately preceding the date such person ceases to be a Family Member as defined.

(7)   The date of discontinuance of this Supplementary Agreement or of the Group Policy.

(8)   The last day of the pay period during which the employing office of the Employee receives written notice from the Employee that he/she desires not to be insured hereunder.

(9)   The last day of the pay period during which the employing office of the Employee determines that the Employee's periodic pay, annuity, or compensation for work injury is insufficient to cover his/her required contributions to the cost of the Family Life Insurance hereunder.

However, if the Employee's Family Life Insurance on account of his/her Family Members would cease because of the happening of the event specified in either of items (1) or (2) of the preceding paragraph and the Employee meets the conditions for continuance of his/her Family Life Insurance after retirement or while receiving benefits under subchapter 1 of chapter 81 of title 5, United States Code, as such conditions are specified in the regulation of the Policyholder promulgated pursuant to chapter 87 of title 5, United States Code, his/her Family Life Insurance shall be continued or reinstated for the amount of insurance and period of time specified in said regulation.

Form G.1985-A

- 3 -

Section 4.  AMOUNT OF INSURANCE.--(A) Applicable Prior to the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of Chapter 81 of Title 5, United States Code:--The amount of Family Life Insurance hereunder on account of any Family Member on whose account the Employee is insured hereunder shall be in accordance with the Schedule set forth below:

Schedule of Family Life Insurance On and
After April 1, 1981

| Family Member | Family Life Insurance |
|---|---|
| Spouse | $5,000 |
| Each Child | $2,500 |

(B) Applicable After the Employee's Retirement or Entitlement to Benefits Under Subchapter 1 of Chapter 81 of Title 5, United States Code:--The amount of Family Life Insurance hereunder on account of any Family Member on whose account the Employee is insured hereunder after the Employee's retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code shall be the basic amount of Family Life Insurance reduced by 2% thereof for each month beginning with the effective reduction date and continuing for 50 months.  The terms "basic amount of Family Life Insurance" and "effective reduction date" are defined in the following paragraphs of this subsection (B).

The term "basic amount of Family Life Insurance" means the amount of Family Life Insurance in force on account of each of the Employee's Family Members on the date Family Life Insurance on account of such Family Member would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof, in accordance with the Schedule of Insurance in subsection (A) of this Section which had been in force for not less than

(a) the full period or periods of service during which the Family Life Insurance hereunder was available to the Employee, or
(b) the five years of service immediately preceding the date of the Employee's retirement or the date of the Employee's entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code and during which the Family Life Insurance was available to the Employee,

whichever is shorter.

The Employee's Family Life Insurance hereunder will be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, as specified above, only if the Employee's Basic Life Insurance is continued after retirement or entitlement to such benefits in accordance with the provisions of the Group Policy.

Form G.1985-A

- 4 -

Section 4.  (Continued)

If the Policyholder receives written notice from the Employee that his/her Family Life Insurance hereunder is not to be continued after retirement or entitlement to benefits under subchapter 1 of chapter 81 of title 5, United States Code, the provisions of this paragraph shall be null and void and of no effect and no such insurance shall be provided for the Employee after retirement or entitlement to such benefits.

The term "effective reduction date" means the first day of the second calendar month after (1) the date the Employee's Family Life Insurance on account of his/her Family Members would otherwise have ceased because of the happening of the event specified in either of items (1) or (2) of the first paragraph of Section 3 hereof or (2) the Employee's 65th birthday, whichever occurs later.

(C) In addition to the amount of Family Life Insurance, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company, to the Employee or claimant, as specified in Section 11 of the Group Policy, on any delayed payment of claims paid in one sum from the date of death of any Family Member to the date of the payment of such claim, provided that:

1.  no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

2.  no interest shall accrue for any period during which payment is delayed due to inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of this Supplementary Agreement.

Section 5.  INSURING CLAUSE.--Upon receipt by the Office of satisfactory proof, in writing, that any Family Member shall have died while the Employee is insured hereunder for Family Life Insurance on account of such Family Member, the Office shall pay, subject to the terms hereof, the amount of Family Life Insurance, if any, (plus interest, if any, as determined by the Insurance Company) in force hereunder on account of such Family Member in accordance with Section 4 hereof, at the date of death of such Family Member.  Payment shall be made to the Employee immediately after receipt of such proof.  In the event of the death of the Employee after the death of an insured Family Member, but before such payment is made, such payment shall be made to the person or persons entitled to the Life Insurance (exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance) in force on account of the Employee as provided in Section 11 of the Group Policy.

Form G.1985-A

- 5 -

Section 6.  PRIVILEGE OF OBTAINING AN INDIVIDUAL POLICY OF LIFE INSURANCE.--Any Family Member on whose account the Family Life Insurance hereunder shall cease in accordance with any one of items (1), (2), (3), (4), (5) or (9) of the first paragraph of Section 3 hereof, shall be entitled to have issued to him/her, without evidence of insurability, an individual policy of Life Insurance, without Disability or Accidental Means Death Benefits, by directly applying for such individual policy, if the Employee does not apply for such individual policy on behalf of such Family Member, subject to the following conditions and provisions:

(A) written application for such individual policy and payment of the first premium thereon shall be made by the Employee, if living, or the Family Member within 31 days after such cessation (or within such longer period as the Office may allow) to the Insurance Company, or at such person's option to any other insurance company which has then been accepted by the Policyholder as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Family Member will reside and which has agreed with the Policyholder to do so, and

(B) such individual policy shall be upon one of the forms then customarily issued by the Insurance Company selected by such person, except Term Insurance, and

(C) the premium for such individual policy shall be the premium, as determined by the insurance company issuing such policy, applicable to the class of risk to which the Family Member belongs and to the forms and amount of the individual policy at the Family Member's attained age (nearest birthday) at the date of issue of such individual policy, and

(D) the amount of such individual policy shall be equal to (or at the option of the Family Member less than) the amount of the Family Life Insurance in force on account of the Family Member at the date of cessation of such insurance, subject to a minimum amount of $1,000, and

(E) if the age of any Family Member is such as to preclude direct application for such individual policy by the Family Member, then application for such individual policy on the life of such Family Member may be made by the Employee, if living, otherwise by the person who in the judgment of the insurance company issuing such policy is responsible for the support of such person.  The issuance of an individual policy on the life of any person shall be subject to the provisions and limitations of any applicable law relating to life insurance on the lives of minors.

If the Family Member dies during the 31 days next following the date of cessation of the Family Life Insurance in force hereunder on his/her account, upon receipt of proof of such death and entitlement to payment as specified in Section 5 hereof the Office shall pay to the Employee, whether or not written application for such individual policy or payment of the first premium therefor shall have been made, an amount equal to the amount of the Family Life Insurance in force on account of such Family Member at the date of cessation of such insurance.  In the event of the

Form G.1985-A

- 6 -

Section 6.  (Continued)

death of the Employee before payment shall be made, such payment shall be made to the person or persons entitled to the Life Insurance (exclusive of Option A - Standard Life Insurance and Option B - Additional Life Insurance) in force on account of the Employee as provided in Section 11 of the Group Policy.  If an individual policy has been issued in accordance with the foregoing provisions of this Section 6, any payment made under the provisions of this paragraph will be reduced by the amount of insurance for which such individual policy was issued, unless such individual policy is surrendered without claim thereunder to the insurance company which issued such policy.

Section 7.  AGENTS; ALTERATIONS.—No Agent of the Insurance Company is authorized to alter or amend this Supplementary Agreement or to waive any of its provisions.

No change in this Supplementary Agreement shall be valid unless evidenced by amendment hereto signed by the Policyholder and by the Insurance Company.

Section  8.    RECORDS—INFORMATION  TO  BE  FURNISHED—DETERMINATION  BY  THE POLICYHOLDER.—The Policyholder shall furnish or cause to be furnished to the Office such information concerning Employees and the Family Members on whose account such Employees are insured as may reasonably be considered to have a bearing on the administration of the insurance hereunder.  The records of the Policyholder as have a bearing on the insurance hereunder shall be open for inspection by the Office at any reasonable time.

For the purposes of this Supplementary Agreement, determination by the Policyholder of the following shall be conclusive:

    (1)  The classification of any person as being within the definition of the term "Employee" in Section 1 hereof.

    (2)  The effective dates of Employee's Family Life Insurance in accordance with Section 2 hereof.

    (3)  The fact and date of (i) separation of an Employee from the service, (ii) a pay status or non-pay status of an Employee, and (iii) cessation of an Employee's classification as an Employee as defined in Section 1 hereof.

    (4)  The conditions and specifications referred to in the second paragraph of Section 3 hereof, as relating to continuation of Family Life Insurance after retirement or while the Employee is receiving benefits under subchapter 1 of chapter 81 of title 5, United States Code.

Records and files which relate to the administration of the insurance under this Supplementary Agreement and are maintained by the Office, including claim files, shall be subject to such general disposal program as may be agreed upon by the Policyholder and the Office.

Form G.1985-A

- 7 -

Section 9.   DUE DATE, COMPUTATION, AND PAYMENT OF PREMIUMS.—The premiums due on and after the date of issue of this Supplementary Agreement for the insurance provided hereunder shall be determined and shall be payable in accordance with the provisions of the Group Policy, as specified in the applicable provisions of chapter 87 of title 5, United States Code.

In the computation of the aggregate premium due under this Supplementary Agreement on any due date, the Insurance Company may use average premium rates based on the premium rates then in effect.

Section 10.   INCORPORATION IN GROUP POLICY AND RENEWAL PRIVILEGE.—This Supplementary Agreement is attached to and made a part of the Group Policy for a period commencing with April 1, 1981 and ending with the day immediately preceding the next following renewal date of the Group Policy, on which renewal date and on each subsequent renewal date this Supplementary Agreement shall be renewed to continue in force as a part of the Group Policy for a further term extending through the day immediately preceding the next following renewal date, unless the Policyholder shall at least sixty days prior to said renewal date give the Insurance Company written notice that such renewal shall not be made.  Renewal is conditioned upon renewal of the Group Policy and upon the payment of the Family Life Insurance premiums then due as set forth in Section 9 hereof and based upon such premium rates as may then be applicable.

Section 11.   CONFORMITY WITH LAW.--If any provisions required by chapter 87 of title 5, United States Code, to be contained in this Supplementary Agreement are not specifically contained herein, then such provisions shall be deemed part of this Supplementary Agreement as though set forth herein at length.

IN WITNESS WHEREOF, the Metropolitan Life Insurance Company has caused this Supplementary   Agreement   to   be   executed   this_____29 th_____day of _November 89_ to take effect as of the _____first_____ day of April, 1981, which last date is the date of issue of this Supplementary Agreement.

Harry P. Kamen
Harry P. Kamen
Secretary

John J. Creedon
John J. Creedon
President and Chief Executive Officer

Countersigned_____19____

By_____
             Licensed Agent

Form G.1985-A

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G  bearing date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 65

Effective July 1, 1983,

A. By substituting for the last paragraph of Section 4 thereof, as amended, the following:

"(C) In addition to the amounts of Life Insurance and Insurance for Death or Dismemberment by Accidental Means, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company to the Beneficiary of record or claimant, as specified in Section II hereof, on

    (i) any delayed payment of claims paid in one sum; said interest shall accrue only from the thirty-first day following the date of death of the Employee to the date of the payment of such claims; and

    (ii) any delayed payment of optional modes of settlement, as specified in Section 20 hereof; said interest shall accrue only from the thirty-first day following the date of death of the Employee to the effective date of the supplementary contract issued in connection with such optional modes of settlement,

provided, in either case, the Employee's death occurs on or after July 1, 1983, and provided further, that:

1. no interest shall be payable on delayed payment of claims under the Insurance for Death or Dismemberment by Accidental Means for any loss other than loss of life, and

2. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

3. no interest shall accrue for any period during which payment is delayed due to the inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of the Group Policy."

Form G.1985-40

3. By substitut.  for the last paragraph of Sec  n 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, the following:

"(C) In addition to the amount of Family Life Insurance, if any, in accordance with the provisions of the preceding subsections (A) or (B), whichever is applicable, the Office shall pay interest, as determined by the Insurance Company, to the Employee or claimant, as specified in Section 11 of the Group Policy, on any delayed payment of claims paid in one sum; said interest shall accrue only from the thirty-first day following the date of death of any Family Member to the date of the payment of such claim, provided that:

1. no interest shall be payable for periods (a) in excess of two years or (b) when payment has been prevented pursuant to orders, regulations or advice of the United States Government, and

2. no interest shall accrue for any period during which payment is delayed due to inability to locate the claimant; however payment of interest will be considered when a proper claimant files proof of claim under the terms of this Supplementary Agreement."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D.C. this ___16th___ day of ___August___ 19_83_

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By _____

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at New York, N. Y. this ___31st___ day of ___August___ 19_83_

METROPOLITAN LIFE INSURANCE COMPANY

Harry P. Kamen
Secretary

_____
(Registrar)

Form G.1985-40

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1956 and issued to

### OFFICE OF PERSONNEL MANAGEMENT
### (herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 66

Effective January 1, 1983,

A.  By substituting for item (A) appearing in the first paragraph of Section 6 thereof, the following:

"(A) written application for such individual policy and payment of the first premium thereon shall be made within 31 days after such cessation (or within such longer period as the Policyholder may allow) to the Insurance Company, or at the Employee's option to any other Insurance Company which has then been accepted by the Insurance Company as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Employee will reside and which has agreed with the Insurance Company to do so, and

B.  By substituting for item (B) appearing in the first paragraph of said Section 6, the following:

"(B) such individual policy shall be upon one of the forms then customarily issued by the insurance company selected by the Employee, except Term Insurance, Universal Life Insurance and any other form of Life Insurance with an indeterminate premium, and"

C.  By substituting for item (A) appearing in the first paragraph of Section 6 of Group Life Insurance – Option C – Family Benefits Supplementary Agreement Form G.1985-A, attached to the Group Policy as a part thereof, the following:

"(A) written application for such individual policy and payment of the first premium thereon shall be made by the Employee, if living, or the Family Member within 31 days after such cessation (or within such longer period as the Policyholder may allow) to the Insurance Company, or at such person's option to any other insurance company which has then been accepted by the Insurance Company as eligible to issue individual policies in accordance with the provisions of this Section 6 in the jurisdiction in which the Family Member will reside and which has agreed with the Insurance Company to do so, and

Form G.1985-41

COPY

- 2 -

5. By substituting for item (B) appearing in the first paragraph of said Section 6 of said Supplementary Agreement form G.1985-m, the following:

> "(B) such individual policy shall be upon one of the forms then customarily issued by the insurance company selected by the person, except Term Insurance, Universal Life Insurance and any other form of Life Insurance with an indeterminate premium, and"

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___ this ___24th___ day of ___June___ 19 85

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By___Kevin J. Burns___

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___ this ___1st___ day of October 19 85

METROPOLITAN LIFE INSURANCE COMPANY,

___Sherron Williamson___
(Registrar)

*Harry P. Kamen*
Harry P. Kamen
Secretary

Form G.1985-41

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 67

Effective July 10, 1984, by substituting for Section 12 of said Group Policy, the following:

"Section 12. ASSIGNMENTS — The Employee's certificate is non-assignable and the insurance and benefits are non-assignable prior to a loss, except that a Judge may irrevocably assign the insurance and benefits with respect to the Basic Life Insurance, Option A-Standard Life Insurance and Option B-Additional Life Insurance under the Group Policy. No assignment is valid for any purpose unless it meets the following criteria:

A) For assignments signed before publication of the Policyholder's Final Regulations promulgated to implement section 208 of Public Law 98-353,

　　1. the assignment must be signed; and

　　2. the assignment must be received in the Judge's employing office before death; and

　　3. the assignment must convey ownership of all insurance: Basic Life Insurance, Option A — Standard Life Insurance and Option B — Additional Life Insurance, which the Judge may have; and

　　4. the assignment must not attempt to convey stated dollar amounts to any assignee or assignees.

B) For assignments signed after publication of the Policyholder's Final Regulations promulgated to implement section 208 of Public Law 98-353, the assignment must comply with such regulations and any applicable regulations which amend or modify or replace such Final Regulations.

'Judge' means an individual appointed as a Federal justice or judge under Article I and Article III of the Constitution.

Form G.1985-42

Administrative law judges, bankruptcy judges and magistrates are not judges for the purposes of assignment."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at ___Washington, D. C.___    this __20th__ day of ___February___    __1986__

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By___Jean McBarber___

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at ___New York, New York___    this __9th__ day of ___May___    __1986__

METROPOLITAN LIFE INSURANCE COMPANY

Sherron Williamson
(Registrar)

Harry P. Kamen
Secretary

Form G.1985-42

COPY

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 68

Effective November 17, 1986,

A.  By substituting for the last sentence of the first paragraph of Section 11 thereof, as amended, the following:

"Any designation of beneficiary shall automatically cease to be effective on the date thirty-one days after the date of cessation of the Employee's insurance hereunder unless the Employee's Life Insurance is reinstated in accordance with the provisions of the second paragraph of Section 3 hereof."

B.  By substituting for item (8) appearing in Section 3 of Group Life Insurance - Option C - Family Benefits Supplementary Agreement Form G.1985-A, attached to the Group Policy as a part thereof, the following:

"(8)  The last day of the pay period during which the employing office of the Employee receives written notice from the Employee that he/she desires not to be insured hereunder, except that at the request of the Employee and upon proof satisfactory to the employing office that there was no Family Member eligible for Family Life Insurance, the Employee's Family Life Insurance will cease on the last day of the pay period in which there was no eligible Family Member."

AMENDMENT 69

Effective January 1, 1987,

A.  By substituting for item (3) in the first paragraph of Section 3 thereof, as amended, the following:

"(3)  The date of expiration of a period of twelve months from the date the Employee enters on active duty or active duty for training as a member of a uniformed service."

Form C.1985-43



ML 0127

- 2 -

B.  By substituting for the second paragraph of Section 3 thereof, as amended, the following paragraph:

"However, if the insurance on any Employee insured hereunder would cease because of the happening of the event specified in any of the items (1), (2) or (3) of the preceding paragraph and the Employee meets the conditions for continuation of insurance after retirement or while receiving benefits under subchapter I of chapter 81 of title 5, United States Code, as such conditions are specified in the regulations of the Policyholder made pursuant to chapter 87 of title 5, United States Code, his/her Life Insurance only shall be continued or reinstated for the amount of insurance and period of time specified in said regulations."

C.  By substituting for item (3) appearing in the first paragraph of Section 3 of said Supplementary Agreement Form G.1985-A, the following:

"(3)  The date of expiration of a period of twelve months from the date the Employee enters on active duty or active duty for training as a member of a uniformed service."

D.  By substituting for the second paragraph of Section 3 of Group Life Insurance - Option C - Family Benefits Supplementary Agreement Form G.1985-A, attached to the Group Policy as a part thereof, the following paragraph:

"However, if the Employee's Family Life Insurance on account of his/her Family Members would cease because of the happening of the event specified in any of the items (1), (2) or (3) of the preceding paragraph and the Employee meets the conditions for continuance of his/her Family Life Insurance after retirement or while receiving benefits under subchapter 1 of chapter 81 of title 5, United States Code, as such conditions are specified in the regulation of the Policyholder promulgated pursuant to chapter 87 of title 5, United States Code, his/her Family Life Insurance shall be continued or reinstated for the amount of insurance and period of time specified in said regulation."

AMENDMENT 70

Effective October 1, 1987;

A.  By substituting "chapter 87 of title 5, United States Code, 5 CFR Part 870" for "chapter 87 of title 5, United States Code" wherever it appears in said Group Policy.

B.  By substituting "chapter 87 of title 5, United States Code, 5 CFR Part 873" for "chapter 87 of title 5, United States Code" wherever it appears in Supplementary Agreement Form G.1985-A.

Form G.1985-43



- 3 -

C.  By adding immediately following item (6) in the first paragraph of subsection (1) of Section 5 thereof, the following item (7):

"(7) caused by or results from the self administration of illegal or illegally obtained drugs."

D.  By adding immediately following the fourth paragraph of Section 11 thereof, the following paragraph:

"However, if the Beneficiary (either by designation or under the order of precedence) is a minor and the share of the amount of Life Insurance or Insurance for Death by Accidental Means to which he/she is entitled to receive under Sect 5 hereof has a net value of $10,000 or less, such amount will be paid to the minor's parent(s) on behalf of such minor rather than to a guardian appointed by the court, provided the parent(s) agree in writing to meet all of the following conditions:

(1) the parent(s) will hold such amount for the sole use and benefit of the minor until the minor reaches majority; and

(2) the parent(s) will account to the minor for such amount when the minor reaches majority; and

(3) the parent(s) will indemnify the Insurance Company in the event the minor, when he/she reaches majority, brings any legal action against the Insurance Company challenging in any way the Insurance Company's payment of such amount to the parent(s)."

E.  By adding immediately following Section 23 thereof, the following Sections 24 and 25:

"Section 24. TIME LIMIT ON STARTING LAW SUITS WITH RESPECT TO LIFE INSURANCE ONLY. - No action at law or in equity shall be brought to recover on the Policy unless brought within six years from the date of receipt by the Office of the written proof of claim required under the Policy.

Section 25. EXTRA-CONTRACT DAMAGES. - In any action at law or in equity, the Beneficiary of record or claimant, as specified in Section 11 hereof, shall be limited in the amount of recovery to the benefit claimed; plus reasonable attorney's fees as set by the court. The term "benefit claimed" is limited to:

(1) the amounts of Life Insurance and Insurance for Death or Dismemberment by Accidental Means, if any, in force hereunder on account of the Employee in accordance with Section 4 hereof, at the date of the Employee's death; and

(2) interest as specified in subsection C of Section 4 hereof; and

Form G.1985-43



COPY

ML 0129

- 4 -

(3) post-judgment interest at the statutory rate allowed on judgments in the applicable state."

F.  By adding immediately following Section 11 of said Supplementary Agreement Form G.1985-A the following Section 12:

"Section 12.  EXTRA-CONTRACT DAMAGES. - In any action at law or in equity the Employee or claimant, as specified in Section 5 hereof, shall be limited in the amount of recovery to the benefit claimed, plus reasonable attorney's fees as set by the court.  The term "benefit claimed" is limited to:

(1)  the amount of Family Life Insurance in force hereunder on account of such Family Member in accordance with Section 4 hereof, at the date of death of such Family Member; and

(2)  interest, as specified in subsection C of Section 4 hereof; and

(3)  post-judgment interest at the statutory rate allowed on judgments in the applicable state."

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at Washington, D. C.   this ____24 th____ day of ____May____ 19 88

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By____Carlos F. Esparza____

(Space Below for Use of Metropolitan Life Insurance Company Only)

Signed at ____New York, NY____ this ____20th____ day of ____October____ 19 88

METROPOLITAN LIFE INSURANCE COMPANY

*Richard M. Blackwell*
Richard M. Blackwell
Vice-President and Secretary

____Sherron Williamson____
(Registrar)

Form G.1985-43

COPY

ML 0130

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing date of August 29, 1954 and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

AMENDMENT 71

Effective on the date of execution of this amendment.

A. By redesignating subsections (C) and (D) of Section 5 thereof as subsections (D) and (E), and by inserting the following subsection (C):

"(C) Payment of Insurance Benefits With Respect to State Tax Laws.—Payment of the amount of Life Insurance or Insurance for Death by Accidental Means to any person entitled thereto under subsections (A) and (B) of this Section or the order of precedence set forth in Section 11 shall be made without regard to any State law relating to the collection of taxes by any State, except that the Office may comply with any State law requiring that the payor of the amount of Life Insurance or Insurance for Death by Accidental Means give notice of such payment to any State tax authority. Payment of the amount of Life Insurance or Insurance for Death by Accidental Means to any person entitled thereto under this Section or the order of precedence set forth in Section 11 shall in no event subject the Office to any liability under any tax law of any State. Notwithstanding the above, nothing herein shall be construed to relieve any person who receives the payment of the amount of Life Insurance or Insurance for Death by Accidental Means under this Section or the order of precedence set forth in Section 11 from compliance with any tax law of any State."

B. By adding immediately following the second paragraph of Section 11 thereof, the following paragraphs:

"Any Employee insured hereunder may designate as Beneficiary, his/her estate or an executor or administrator of his/her estate by filing written notice with the appropriate office as specified in the first sentence of the first paragraph of this Section. However, in no event will payment under Section 5 hereof be made to such designated Beneficiary, unless the Office receives either:

(a) a certified copy of an order of a court of competent jurisdiction appointing the executor or administrator of the estate, or

(b) proof that the requirements for payment under a Small Estate statute of the state of the Employee's domicile at date of his/her death have been met.

Form G.1985-46



ML 0131

## METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. __17000-G__ bearing the date of __August 29, 1954__ and issued to

### OFFICE OF PERSONNEL MANAGEMENT
(Herein called the Policyholder)

pursuant to chapter 87 of title 5, United States Code, is hereby amended as follows:

### AMENDMENT 72

Effective October 1, 1998,

A.    By replacing "only from the thirty-first day following the date of death" in paragraph (C)(i) and (C)(ii) of Section 4 thereof, as amended, with "from the date of death".

B.    By replacing "on or after July 1, 1983" in paragraph (C) of Section 4 thereof, as amended, with "on or after October 1, 1998".

C.    By adding "to be equal to the prevailing delayed settlement interest rate the Insurance Company pays on its other large group contracts. The Insurance Company shall consult with the Contracting Officer before any change to the interest rate becomes effective." after "as determined by the Insurance Company" in paragraph (C) of Section 4 thereof, as amended.

D.    By replacing "only from the thirty-first day following the date of death" in paragraph (C) of Section 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, as amended, with "from the date of death".

E.    By replacing the period after "Agreement" in paragraph (C)2 of Section 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, with ", and" and adding a new paragraph (C)3 as follows:

"3.   the Family Member's death occurs on or after October 1, 1998."

F.    By adding "to be equal to the prevailing delayed settlement interest rate the Insurance Company pays on its other large group contracts. The Insurance Company shall consult with the Contracting Officer before any change to the interest rate becomes effective." after "as determined by the Insurance Company" in paragraph (C) of Section 4 of Supplementary Agreement Form G.1985-A, attached to said Group Policy as a part thereof, as amended.

The foregoing amendment is to be attached to and made part of said Group Policy.

Signed at <u>Washington, D.C.</u> this 22nd day of <u>June</u>, 1998

OFFICE OF PERSONNEL MANAGEMENT
(Policyholder)

By _____

Frank D. Titus
Assistant Director
for Insurance Programs
Contracting Officer

Signed at <u>New York, N.Y.</u> this 6th day of <u>July</u>, 1998

METROPOLITAN LIFE INSURANCE COMPANY

By _____

Margery A. Brittain
Vice President
National Accounts

Page 2 of 2

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing the date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT

Pursuant to chapter 87 of title 5, United States Code, is amended as follows:

## AMENDMENT 73

Effective October 1, 2000,

A. By adding the phrase "or an equivalent loss as determined by the Insurance Company" after each phrase "severance at or above wrist- and ankle-joints respectively" in Section 5 and any and all other places this phrase appears in the contract.

B. By adding the phrase "or an equivalent loss as determined by the Insurance Company" after each phrase "severance at or above wrist-joint" in Section 5 and any and all other places this phrase appears in the contract.

C. By adding the phrase "or an equivalent loss as determined by the Insurance Company" after each phrase "severance at or above ankle-joint" in Section 5 and any and all other places this phrase appears in the contract.

Signed at Washington, D.C. this _18th_ day of _September_ , 2000

OFFICE OF PERSONNEL MANAGEMENT (Policyholder)

By _____
Frank D. Titus
Assistant Director for Insurance Programs
Contracting Officer

Signed at New York, NY this _22nd_ day of _September_ , 2000

METROPOLITAN LIFE INSURANCE COMPANY

By _____
Margery A. Brittain
Vice President
Group National Accounts

METROPOLITAN LIFE INSURANCE COMPANY

GROUP POLICY NO. 17000-G bearing the date of August 29, 1954 and issued to

OFFICE OF PERSONNEL MANAGEMENT

Pursuant to chapter 87 of title 5, United States Code, is amended as follows:

## AMENDMENT 74

Effective November 1, 2000,

By adding the following exclusion for payment to paragraph (B), Insurance for Death or Dismemberment by Accidental Means, in Section 5, INSURING CLAUSES:

(8)     caused by the Employee driving a vehicle while intoxicated as defined by the laws of the jurisdiction in which the Employee was operating the vehicle.

Signed at Washington, D.C. this 18th day of October , 2000

OFFICE OF PERSONNEL MANAGEMENT (Policyholder)

By _____

Frank D. Titus
Assistant Director for Insurance Programs
Contracting Officer

Signed at New York, NY this 26th day of October , 2000

METROPOLITAN LIFE INSURANCE COMPANY

By _____

Margery A. Brittain
Vice President
Group National Accounts

<u>**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**</u>
Original Proceeding
<u>Complaint in Interpleader</u>
**Exhibit B**
September 2, 1998 Designation of Beneficiary

**FEGLI**
Federal Employees
Group Life Insurance

**Designation of Beneficiary**

Form Approved
OMB No. 3206-013

*Federal Employees' Group Life Insurance Program*

**Warning**
Read instructions on back of
duplicate before filling in this for

**Information Concerning The Insured: If you have not assigned your insurance, YOU are "the Insured", as used throughout this form.**

| Name of Insured (Last, first, middle) | Date of birth of Insured (Month, day, year) | Social Security number of Insured |
|---|---|---|
| BARBOUR, JULIA W. | Redacted 23 | Redacted 3742 |

| The Insured is: | [X] An employee | [ ] Retired or an applicant for retirement | [ ] Receiving OWCP benefits or an applicant for OWCP benefits | If the Insured is retired or receiving Federal Employees' Compensation, give "CSA", "CSI", or OWCP claim number. |
|---|---|---|---|---|

*Place an "X" in the appropriate box.*

Department or agency in which the Insured is presently employed *(If retired, former department or agency):*

| Department or agency | Bureau OFFICE OF THE SOLICITOR | Division Office of Administrative Management and Litigation Support (OAMLS) | Location (City, state and ZIP code) |
|---|---|---|---|
| DEPARTMENT OF LABOR | | | Washington, D. C. 20210 |

I am canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and am now designating the beneficiary or beneficiaries named below to receive any amount of **Life Insurance and Accidental Death Insurance** due and payable at the Insured's death.

**I understand that if I have previously validly assigned my insurance, any designation completed by me is not valid and has no force and effect.**

I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled (see back of Part 2). If this designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

**Information Concerning The Beneficiary or Beneficiaries (See examples of designations on reverse side):**

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address (Including ZIP code) of each beneficiary | Relationship | Percent or fraction to be paid to each beneficiary |
|---|---|---|---|
| Jennifer G. Barbour Trustee | 901 6th Street, S.W., #606A Washington, D. C. 20024 | Daughter | 100% |
| | | | |
| | | | |

**Statement of Insured or Assignee**

Print or type your name and address *(Including ZIP code)*

Julia W. Barbour
901 6th Street, S.W.
Apt 606A
Washington, D.C. 20024-3836

| Please check: I: | Check only one: I am: | Please check: |
|---|---|---|
| [ ] have | [X] the Insured | [X] I have not assigned my insurance. |
| [X] have not | [ ] an Assignee | [X] I have signed this form in the presence of the two witnesses who have signed below. |
| [ ] elected Living Benefits. | | [X] Neither witness is named as a beneficiary. |
| | | If I designated shares to be paid to more than one beneficiary, the shares add up to 100%. *(Dollar amounts are not acceptable.)* |

For each type of insurance (Basic Life, Option A-Standard, and Option B-Additional): (1) I hereby direct, unless otherwise indicated above, that if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor.

(2) I understand that if none of the designated beneficiaries is living at the time of the Insured's death, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary(ies).

**Signature of Insured/Assignee** *(Only the Insured/Assignee may sign. Signatures by guardians, conservators or through a power of attorney are not acceptable.)*

*Julia W. Barbour*

Date of execution (Month, day, year)

Sept 2, 1998

**Witnesses To Signature (A witness is not eligible to receive payment as a beneficiary):**

| Signature of witness | Number and street | City, state and ZIP code |
|---|---|---|
| Mary H. Lomax | 200 Constitution Ave NW | Washington DC 20210 |
| Darlene L. Walton | 200 Constitution Avenue, N.W. | Washington, DC, 20210 |

| Receiving agency | Date of receipt | Signature of authorized agency official | Title |
|---|---|---|---|
| DOL/SOL | 9/2/98 | Mary H. Lomax | Personnel Mgmt Spe |

**See back of Part 2 for instructions on where to file this form. Do not file with the Office of Federal Employees' Group Life Insurance.**

U.S. Office of Personnel Management
The FEGLI Handbook for Personnel and Payroll Offices

NSN 7540-01-231-6228

**PART 1-Original**

2823-102

Previous editions not usable

Standard Form 2823
Rev. July 1995

<u>**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**</u>
Original Proceeding
<u>Complaint in Interpleader</u>
**Exhibit C**
April 20, 1998 Designation of Beneficiary

**FEGLI**
Federal Employees
Group Δfe Insurance

**Designation of Beneficiary**

Form Approved
OMB No. 3206-0136

*Federal Employees' Group Life Insurance Program*

**Warning**
Read instructions on back of
duplicate before filling in this form

## Information Concerning The Insured: If you have not assigned your insurance, YOU are "the Insured", as used throughout this form

| Name of Insured (Last, first, middle) | Date of birth of Insured (Month, day, year) | Social Security number of Insured |
|---|---|---|
| Barbour, Julia W. | Redacted 23 | Redacted -3742 |

| The Insured is: ➤ | X | An employee | | Retired or an applicant for retirement | | Receiving OWCP benefits or an applicant for OWCP benefits | If the Insured is retired or receiving Federal Employees' Compensation, give "CSA", "CSI", or OWCP claim number. |
|---|---|---|---|---|---|---|---|

*Place an "X" in the appropriate box.*

0

Department or agency in which the Insured is presently employed (If retired, former department or agency):

| Department or agency | Bureau Office of the Solicitor | Division Administrative Management and Litigation Support | Location (City, state and ZIP code) |
|---|---|---|---|
| Department of Labor | | | Washington, D. C. 202 |

I am canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and am now designating the beneficiary or beneficiaries named below to receive any amount of **Life Insurance** and **Accidental Death Insurance** due and payable at the Insured's death.

**I understand that if I have previously validly assigned my insurance, any designation completed by me is not valid and has no force and effect.**

I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled (see back of Part 2). If this designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

## Information Concerning The Beneficiary or Beneficiaries (See examples of designations on reverse side):

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address (Including ZIP code) of each beneficiary | Relationship | Percent or fraction to be paid to each beneficiary |
|---|---|---|---|
| Jennifer G. Barbour | 901 6th Street, S.W. #606 Washington, D.C. 20024 | Daughter | 46.7% |
| Julian P. Steptoe | 5203 Woodlawn Pl., Bellaire TX, 79401,% of Ms. J.Lankford | Son | 11.0% |
| Jamilla R. Lankford | 5203 Woodlawn Pl., Bellaire TX 79401 | Daughter | 7.8% |
| Adam A.D. Barbour | 901 6th St., S.W., #606 WDC. 20024, %of Ms. Jenny Barbour | Son | 6.6% |

## Statement of Insured or Assignee

| Print or type your name and address (Including ZIP code) | Please check: I: | Check only one: I am: | Please check: |
|---|---|---|---|
| Julia W. Barbour 901 6th St., S.W., #606A Washington, DC, 20024-3836 | have / X have not / elected Living Benefits. | X the Insured / an Assignee | X I have **not** assigned my insurance. / X I have signed this form in the presence of the two witnesses who have signed below. / X Neither witness is named as a beneficiary. / X If I designated shares to be paid to more than one beneficiary, the shares add up to 100%. (Dollar amounts are not acceptable.) |

For each type of insurance (Basic Life, Option A-Standard, and Option B-Additional): (1) I hereby direct, unless otherwise indicated above, that if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor.

(2) I understand that if none of the designated beneficiaries is living at the time of the insured's death, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary(ies).

## Signature of Insured/Assignee (Only the Insured/Assignee may sign. Signatures by guardians, conservators or through a power of attorney are not acceptable.)

| *Julia W. Barbour* (signature) | Date of execution (Month, day, year) 4-20-98 |
|---|---|

## Witnesses To Signature (A witness is not eligible to receive payment as a beneficiary):

| Signature of witness *Darlene G. Walton* | Number and street 200 Constitution Avenue, N.W. | City, state and ZIP code Washington, DC, 20210 |
|---|---|---|
| Signature of witness *Mary H. Lomax* | Number and street 200 Constitution Ave, NW | City, state and ZIP code Washington, DC 2021 |

| Receiving agency DOL/SOL | Date of receipt 4/20/98 | Signature of authorized agency official *Mary H. Lomax* | Title Personnel Mgmt |
|---|---|---|---|

**See back of Part 2 for instructions on where to file this form. Do not file with the Office of Federal Employees' Group Life Insurance.**

### PART 1-Original

U.S. Office of Personnel Management
The FEGLI Handbook for Personnel and Payroll Offices

NSN 7540-01-231-6228

2823-102    Previous editions not usable

Standard Form 2823
Rev. July 1995

**FEGLI**
Federal Employees
Group Life Insurance

**Designation of Beneficiary**

Form Approved
OMB No. 3206-0136

*Federal Employees' Group Life Insurance Program*

**Warning**
Read instructions on back of
duplicate before filling in this form

## Information Concerning The Insured: If you have not assigned your insurance, YOU are "the Insured", as used throughout this form.

| Name of Insured (Last, first, middle) | Date of birth of Insured (Month, day, year) | Social Security number of Insured |
|---|---|---|
| Barbour, Julia W. | Redacted-23 | Redacted-3742 |

| The Insured is: | | | If the Insured is retired or receiving Federal Employees' Compensation, give "CSA", "CSI", or OWCP claim number. |
|---|---|---|---|
| Place an "X" in the appropriate box. | [X] An employee | [ ] Retired or an applicant for retirement | [ ] Receiving OWCP benefits or an applicant for OWCP benefits |
| | | | O |

Department or agency in which the Insured is presently employed (If retired, former department or agency):

| Department or agency | Bureau | Division | Location (City, state and ZIP code) |
|---|---|---|---|
| Department of Labor | Office of the Solicitor | Administrative Management and Litigation Support | Washington, DC 20210 |

I am canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and am now designating the beneficiary or beneficiaries named below to receive any amount of Life Insurance and Accidental Death Insurance due and payable at the Insured's death.

I understand that if I have previously validly assigned my insurance, any designation completed by me is not valid and has no force and effect.

I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled (see back of Part 2). If this designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

## Information Concerning The Beneficiary or Beneficiaries (See examples of designations on reverse side):

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address (Including ZIP code) of each beneficiary | Relationship | Percent or fraction to be paid to each beneficiary |
|---|---|---|---|
| ✓ Jacinto A. Rhines | 1724 W. 24th Street Los Angeles, CA 90018 | Son | 5.6% |
| ✓ John P. Rhines | InCareOf: Jamilla R. Lankford 5203 Woodlawn Pl., Bellaire, TX 79401 | Son | 5.6% |
| ✓ Jesse A Rhines | InCareOf: Ms. J.R. Lankford 5203 Woodlawn Pl., Bellaire, TX 79401 | Son | 5.6% |
| ✓ Jerome C. Rhines | 10761 Ring Avenue, Rancho Cucamonga, CA 91701 | Son | 5.6% |

## Statement of Insured or Assignee

Print or type your name and address (Including ZIP code)

Julia W. Barbour
901 sth Street, S.W., #606A
Washington, D. C. 20024

| Please check: I: | Check only one: I am: | Please check: |
|---|---|---|
| [ ] have | [X] the Insured | [X] I have **not** assigned my insurance. |
| [X] have not | [ ] an Assignee | [X] I have signed this form in the presence of the two witnesses who have signed below. |
| [ ] elected Living Benefits. | | [X] Neither witness is named as a beneficiary. |
| | | [X] If I designated shares to be paid to more than one beneficiary, the shares add up to 100%. (Dollar amounts are not acceptable.) |

For each type of insurance (Basic Life, Option A-Standard, and Option B-Additional): (1) I hereby direct, unless otherwise indicated above, that if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor.

(2) I understand that if none of the designated beneficiaries is living at the time of the insured's death, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary(ies).

## Signature of Insured/Assignee (Only the Insured/Assignee may sign. Signatures by guardians, conservators or through a power of attorney are not acceptable.)

| | Date of execution (Month, day, year) |
|---|---|
| *Julia W. Barbour* | 4-20-98 |

## Witnesses To Signature (A witness is not eligible to receive payment as a beneficiary):

| Signature of witness | Number and street | City, state and ZIP code |
|---|---|---|
| *Darlene H. Walton* | 200 Constitution Avenue, NW | Washington D.C. 20210 |
| *Mary H. Lomax* | 200 Constitution Ave., NW | Washington, DC 20210 |

| Receiving agency | Date of receipt | Signature of authorized agency official | Title |
|---|---|---|---|
| DOL/SOL | 4/20/98 | *Mary H. Lomax* | Personnel Mgmt Sp |

See back of Part 2 for instructions on where to file this form. Do not file with the Office of Federal Employees' Group Life Insurance.

**PART 1-Original**

U.S. Office of Personnel Management          NSN 7540-01-231-6228
The FEGLI Handbook for Personnel and Payroll Offices

2823-102          Previous editions not usable

Standard Form 2823
Rev. July 1995

**FEGLI**
Federal Employees'
Group Life Insurance

## Designation of Beneficiary

### Federal Employees' Group Life Insurance Program

Form Approved
OMB No. 3206-0136

**Warning**

Read instructions on back of
duplicate before filling in this for

| Information Concerning The Insured: If you have not assigned your insurance, YOU are "the Insured", as used throughout this form. |
|---|

**Name of Insured** (Last, first, middle)
Barbour, Julia W.

**Date of birth of Insured** (Month, day, year)
Redacted -23

**Social Security number of Insured**
Redacted 3742

The Insured is: ➤ [X] An employee | [ ] Retired or an applicant for retirement | [ ] Receiving OWCP benefits or an applicant for OWCP benefits

*Place an "X" in the appropriate box.*

**If the Insured is retired or receiving Federal Employees' Compensation, give "CSA", "CSI", or OWCP claim number.**
0

**Department or agency in which the Insured is presently employed** (If retired, former department or agency):

| Department or agency | Bureau Office of the | Division Office of Ad- | Location (City, state and ZIP code) |
|---|---|---|---|
| Department of Labor | Solicitor | ministrative Mgmt and Litigation Support | Washington, D. C. 20210 |

I am canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and am now designating the beneficiary or beneficiaries named below to receive any amount of **Life Insurance and Accidental Death Insurance** due and payable at the Insured's death.

I understand that if I have previously validly assigned my insurance, any designation completed by me is not valid and has no force and effect.

I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled (see back of Part 2). If this designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

| Information Concerning The Beneficiary or Beneficiaries (See examples of designations on reverse side): | | | |
|---|---|---|---|
| **Type or print first name, middle initial, and last name of each beneficiary** | **Type or print address** (Including ZIP code) **of each beneficiary** | **Relationship** | **Percent or fraction to be paid to each beneficiary** |
| ✓ Carolyn C. Steptoe | 1801 16th Street, NW #709 Washington, DC 20010 | Daughter | 1.1% |
| ✓ Julie S. Lee | 2320 Good Hope Rd., #620 Washington, D.C. 20001 | Daughter | 1.1% |
| ✓ Marsha S. Culler | 11519 Sequoia Lane Beltsville, MD 20705 | Daughter | 1.1% |
| Delaware S. Barbour | 901 Sixth St., #606 Washington, DC 20024-3836 | Spouse | 1.1% |

| Statement of Insured or Assignee | | | |
|---|---|---|---|

**Print or type your name and address** (Including ZIP code)
Julia W. Barbour
901 Sixth Street, S.W. #606
Washington, D. C. 20024

**Please check:**
I:
[ ] have
[X] have not
elected Living Benefits.

**Check only one:**
I am:
[X] the Insured
[ ] an Assignee

**Please check:**
[X] I have **not** assigned my insurance.
[X] I have signed this form in the presence of the two witnesses who have signed below.
[X] Neither witness is named as a beneficiary.
[X] If I designated shares to be paid to more than one beneficiary, the shares add up to 100%. (Dollar amounts are not acceptable.)

For each type of insurance (Basic Life, Option A-Standard, and Option B-Additional): (1) I hereby direct, unless otherwise indicated above, that if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor.

(2) I understand that if none of the designated beneficiaries is living at the time of the insured's death, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary(ies).

**Signature of Insured/Assignee** (Only the Insured/Assignee may sign. Signatures by guardians, conservators or through a power of attorney are not acceptable.)

*Julia W. Barbour*

**Date of execution** (Month, day, year)
4-20-98

| Witnesses To Signature (A witness is not eligible to receive payment as a beneficiary): | | |
|---|---|---|
| **Signature of witness** *Darlene G. Walton* | **Number and street** 200 Constitution Avenue, N.W. | **City, state and ZIP code** Washington, D.C. 20210 |
| **Signature of witness** *Mary H. Lomax* | **Number and street** 200 Constitution Ave NW | **City, state and ZIP code** Washington, DC 20210 |

| **Receiving agency** DOL/SOL | **Date of receipt** 4/20/98 | **Signature of authorized agency official** *Mary H. Lomax* | **Title** Personnel Mgmt Spec |
|---|---|---|---|

**See back of Part 2 for instructions on where to file this form. Do not file with the Office of Federal Employees' Group Life Insurance.**

U.S. Office of Personnel Management
The FEGLI Handbook for Personnel and Payroll Offices

NSN 7540-01-231-6228

### PART 1-Original

2823-102   Previous editions not usable

Standard Form 2823
Rev. July 1995

FEGLI
Federal Employees'
Group Life Insurance

**Designation of Beneficiary**

*Federal Employees' Group Life Insurance Program*

Form Approved
OMB No. 3206-013

**Warning**
Read instructions on back of
duplicate before filling in this for

**Information Concerning The Insured: If you have not assigned your insurance, YOU are "the Insured", as used throughout this form.**

| Name of Insured (Last, first, middle) | Date of birth of Insured (Month, day, year) | Social Security number of Insured |
|---|---|---|
| Barbour, Julia W. | Redacted 23 | Redacted 3742 |

| The Insured is: [X] | An employee | Retired or an applicant for retirement | Receiving OWCP benefits or an applicant for OWCP benefits | If the Insured is retired or receiving Federal Employees' Compensation, give "CSA", "CSI", or OWCP claim number. |
|---|---|---|---|---|
| *Place an "X" in the appropriate box.* | | | | O |

Department or agency in which the Insured is presently employed (If retired, former department or agency):

| Department or agency | Bureau Office of the Solicitor | Division Administrative Management and Litigation Support | Location (City, state and ZIP code) |
|---|---|---|---|
| Department of Labor | | | Washington, D.C. 20210 |

I am canceling any and all previous Designations of Beneficiary under the Federal Employees' Group Life Insurance Program and am now designating the beneficiary or beneficiaries named below to receive any amount of Life Insurance and Accidental Death Insurance due and payable at the Insured's death.

**I understand that if I have previously validly assigned my insurance, any designation completed by me is not valid and has no force and effect.**

I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled (see back of Part 2). If this designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect. If no such prior form exists, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

**Information Concerning The Beneficiary or Beneficiaries (See examples of designations on reverse side):**

| Type or print first name, middle initial, and last name of each beneficiary | Type or print address (Including ZIP code) of each beneficiary | Relationship | Percent or fraction to be paid to each beneficiary |
|---|---|---|---|
| Veronica Vera | InCareOf: Ms. J.R. Lankford 5203 Woodlawn Pl., Bellaire, TX 79401 | Granddaughter | 1.1% |
| | | | |
| | | | |
| | | | |

**Statement of Insured or Assignee**

| Print or type your name and address (Including ZIP code) | Please check: I: | Check only one: I am: | Please check: |
|---|---|---|---|
| Julia W. Barbour 901 6th St., S.W. #606A Washington, D.. 20024 | [ ] have / [X] have not / elected Living Benefits. | [X] the Insured / [ ] an Assignee | [X] I have **not** assigned my insurance. [X] I have signed this form in the presence of the two witnesses who have signed below. [X] Neither witness is named as a beneficiary. [X] If I designated shares to be paid to more than one beneficiary, the shares add up to 100%. (Dollar amounts are not acceptable.) |

For each type of insurance (Basic Life, Option A-Standard, and Option B-Additional): (1) I hereby direct, unless otherwise indicated above, that if more than one beneficiary is named, the share of any beneficiary who may predecease me or become disqualified for any reason from receiving a share of the benefits shall be distributed equally among the surviving beneficiaries, or entirely to the survivor.

(2) I understand that if none of the designated beneficiaries is living at the time of the Insured's death, the proceeds will be distributed under the order of precedence, or, if the insurance has been assigned, to the assignee(s).

I hereby specifically reserve the right to cancel or change this designation of beneficiary at any time without knowledge or consent of the beneficiary(ies).

| Signature of Insured/Assignee (Only the Insured/Assignee may sign. Signatures by guardians, conservators or through a power of attorney are not acceptable.) | Date of execution (Month, day, year) |
|---|---|
| *Julia W. BARBOUR* | 4-20-98 |

**Witnesses To Signature (A witness is not eligible to receive payment as a beneficiary):**

| Signature of witness | Number and street | City, state, and ZIP code |
|---|---|---|
| *Darlene L. Walton* | 200 Constitution Avenue, NW. | Washington, D.C. 20210 |
| Signature of witness | Number and street | City, state and ZIP code |
| *Mary H. Lomax* | 200 Constitution Ave NW | Washington, DC 20 |

| Receiving agency | Date of receipt | Signature of authorized agency official | Title |
|---|---|---|---|
| DOL/SOL | 4/20/98 | *Mary H. Lomax* | Personnel Mgmt |

See back of Part 2 for instructions on where to file this form.   Do not file with the Office of Federal Employees' Group Life Insurance.

**PART 1-Original**

U.S. Office of Personnel Management   NSN 7540-01-231-6228
The FEGLI Handbook for Personnel and Payroll Offices
2823-102   Previous editions not usable   Standard Form 2823 Rev. July 1995

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**
Original Proceeding
Complaint in Interpleader
**Exhibit D**
A copy of the Assignment of Proceeds of Insurance

## ASSIGNMENT OF PROCEEDS OF INSURANCE

TO: Federal Employees' Group Life Insurance
(INSURANCE COMPANY)

PO Box 2627

Jersey City, NJ  07303-2627

I, JENNIFER G. BARBOUR , being entitled to receive benefits
(BENEFICIARY)

under Policy Number 17000G          SS# Redacted 3742

issued by Federal Employees' Group Life Insurance
(INSURANCE COMPANY)

on the life of JULIA W. BARBOUR , now deceased,

and having contracted with and being indebted to Jordan Funeral Service, Inc.
(FUNERAL HOME)

PO Box 60092 of Washington, DC  20039-0092
(CITY-STATE)

for funeral services and merchandise for the deceased in the amount of

NINETY EIGHT HUNDRED TWENTY TWO AND------24/100 Dollars ($ 9822.24****

do hereby set over, assign and transfer unto said Funeral Director the sum of

NINETY EIGHT HUNDRED TWENTY TWO AND------24/100 Dollars ($ 9822.24****)

out of the proceeds of said Insurance Policy; and I hereby authorize and direct said Insurance Company

to make its check payable to said Funeral Director for the assigned amount and to pay the remainder of

the proceeds of said Insurance Policy, if any, to me. A statement of charges for funeral expenses for the

deceased is attached hereto.

_____ (SEAL)
(BENEFICIARY)

Address 901 4th ST SW #606 WDC 20024

Date Signed 12-5-06

Sworn and subscribed before me

the 5th day of December, 2006

_____
NOTARY PUBLIC

My commission expires: _____

ANN ELAINE BURTON
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires May 1, 2008

FUNERAL DIRECTOR

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**
Original Proceeding
Complaint in Interpleader
**Exhibit E**
A copy of the February 6, 2007 Letter (Date incorrectly marked as 2006)

**VIA FAX**

February 6, 2006

To:   Ms. Linda at FEGLI
      Fax No. 1 866 205 2900
      Direct   1 201 395 7957

      Re: Claim No. 20061202987 Mrs. Julia W. Barbour DOB Redacted 1923

Dear Ms. Linda,

This is to say and certify that there is not a trust anymore.  It was nice talking to you and thanks for calling.  Thank you so much for everything.

Jennifer Barbour, Daughter
901 6th Street, SW #606
Washington, D.C. 20024
202 412 3994 cell

Notarized: February 6, 2007     ROSIE M. LETT
                                NOTARY PUBLIC DISTRICT OF COLUMBIA
                                My Commission Expires June 30, 2009

Notary

I Jennifer Barbour hereby certify
that this is a true and correct copy of the original document.
_____ Signatory
District of Columbia : SS
Subscribed and Sworn to before me
this 6th day of February 2007
Rosie M. Lett Notary Public, D.C.
My Commission Expires June 30, 2009

**ROSIE M. LETT**
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires June 30, 2009

**VIA FAX**
February 6, 2006

To:    Ms. Linda Rivera,
      Fax No. 1 866 205 2900
      Direct   1 201 395 7957

Mr. Dan Serrano, Supervisor

Re: Claim No. 20061202987 Mrs. Julia W. Barbour DOB *Redacted* 1923

Dear Ms. Rivera and Mr. Serrano,

Please consider further that my Mother wished and wrote that I receive her life insurance and she wrote on the form in total. She only has my name and under beneficiary to be paid she has 100% on the right hand side. Mommy wanted me to have those funds regarding her passing and expenses and everything. Mrs. Lomax must have mistakenly thought that 'trustee' would be ok with you guys and never said anything Mommy having to do anything else. Mommy and Mrs. Lomax were friends and Mommy trusted her and vice versa.

Ms. Rivera told me that if I sent the form saying that wasn't a trust account, that you all would honor the 100% and send it to me. But, you told me she was wrong to have told me that when you called me back. I understand that. When people are told answers by the staff people working, they believe them. I do and Mommy did. Too, Mrs. Lomax didn't know like Mrs. Rivera. As I mentioned Mr. Serrano, my Mom spoke at length with Mrs. Mary Lomax, the federal govt official who handles retirement etc. at her job, about filling out her forms. It was my Mother's understanding that the full amount would be paid to me because she told me directly last year that, "Jenny, I left it to you." Too, Mrs. Lomax told me last year when my Mom was retiring that my Mom left the "funds on this paper work for you, Jenny, that's it." At no time did my Mom know that if she had not set up a trust account, the insurance would be split up. My Mom *never ever intended for that to happen*. My Mom told me last year she did not want me to worry about having to pay federal taxes on these funds. She had no idea, I had no idea, and apparently Ms. Lomax did not know that putting trustee implied setting up an outside account, and if not the proceeds would be split up. That was not her wish. My Mom told me and so did Mrs. Lomax. If my Mom knew, she would have done that, easily. Mom was under the impression the funds would come directly to me. Even the other designation she completed in April 1998 does not divide the funds in equal parts, but at percentages from high to low and from my copy she put me at 49%. I'm am in the process of getting Mrs. Lomax contact information.

Mr. Serrano and FEGLI, and must ask that you reconsider this because my Mom had never filled out such paper work and relied on people helping her to do so. I have never dealt with this before, either. I know that she planned her decisions and how we lived around this decision as far as what I would pay and cover for her passing, etc. I have signed for those payments, exclusively. My Mother prepared the form with the belief I would receive the funds 100%, as she wrote it. No one ever told her she had to do anything else for this form to be effectuated. This is why I was able to sign for all the expense of her passing, because I knew that she had left me as I would pay for it all out of the insurance as Mother knew I would do. I have solely signed everything. Please allow me to respond before anything other than what my Mom is done. Thank you so much. *[signature]*

Jennifer Barbour ~ Daughter 202 412 3994
901 6th Street SW #606 Wash DC 20024

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**
Original Proceeding
Complaint in Interpleader
**Exhibit F**
A copy of the February 20, 2007 Letter

JANE MORETZ-EDMISTEN & ASSOCIATES, P.C.
SUITE 210
4530 WISCONSIN AVENUE, N.W.
WASHINGTON, D.C. 20016

To:

Mr. Rick Serrano, Supervisor
Office of Federal Employee's Group Life
Insurance
PO Box 2627
Jersey City, NJ 07303-2627

**OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE**
**P.O. BOX 2627**
**JERSEY CITY, NJ 07303-2627**

February 20, 2007

Ms. Jennifer G. Barbour
901 6th Street SW #606
Washington, DC 20024

Re:     Federal Employees' Group Life Insurance ("FEGLI")
        Insured – Julia W. Barbour
        Claim Number - 20061202987
        Amount of Insurance - $134,000

Dear Ms. Barbour:

I have received and reviewed your fax letter dated February 6, 2007 regarding the Federal Employees' Group Life Insurance (FEGLI) benefits due to the death of Julia W. Barbour.

Julia W. Barbour's designation of beneficiary form dated September 2, 1958, designates Jennifer G. Barbour Trustee to receive 100% of the FEGLI benefits. The FEGLI proceeds would be payable to Julia W. Barbour's Trust.

I had requested from you a copy of Julia W. Barbour's trust in order to proceed processing your claim. On February 6, 2007 you have stated in writing "This is to say and certify that there is not a trust anymore."

Since you have indicated that there is no longer a valid trust the FEGLI benefits would be payable under the enclosed Order of Payment. We regret to inform you that our office cannot consider paying the benefits to you as an individual since the insured did not indicated as such.

Kindly provide our office with the following:

- One copy of the certificate ending the insured's last marriage.

- The name(s) and address(es) of all Julia W. Barbour's surviving children and/or descendants of any deceased children.

1 of 3

Re: Insured – Julia W. Barbour

When I receive the claim form(s) from the other child(ren) and/or any required document(s), I will process your claim. Should you have any questions, feel free to reach me at (201) 395-7957.

Sincerely,

Linda Rivera
Case Management Specialist

2

# Order of Payment

*By law, the Office of Federal Employees' Group Life Insurance (OFEGLI) pays benefits in this order:*

A.  If the Insured **assigned ownership** of his/her insurance (usually by filing an RI 76-10 Assignment of Life Insurance) OFEGLI will pay:

  First, to the beneficiary(ies) the assignee(s) validly designated;

  Second, if none, to the assignee(s).

B.  If the Insured **did not assign ownership** and there is a **valid court order\*** on file with the agency or OPM, as appropriate, OFEGLI will pay benefits according to the court order.

C.  If the Insured **did not assign ownership** and there is **no valid court order\*** on file with the agency or OPM, as appropriate, then OFEGLI will pay:

  First, to the beneficiary(ies) the Insured validly designated;

  Second, if none, to the Insured's widow or widower;

  Third, if none of the above, to the Insured's child or children and the descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);

  Fourth, if none of the above, to the Insured's parents in equal shares, or the entire amount to the surviving parent;

  Fifth, if none of the above, to the court-appointed executor or administrator of the Insured's estate;

  Sixth, if none of the above, to the Insured's other next of kin entitled under the laws of the State where the Insured lived.

\*A valid court order is a court decree, court order or court-approved property settlement agreement incident to a decree of divorce, annulment or legal separation.  If the Insured was an employee or compensationer in the first 12 months of non-pay status at the time of death, his or her employing office must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.  If the Insured was retired, or was a compensationer who separated or completed 12 months of non-pay status, the Office of Personnel Management must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.

3 of 3

<u>**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**</u>
Original Proceeding
<u>Complaint in Interpleader</u>
**Exhibit G**
A copy of the March 5, 2007 Letter and subsequent Affidavits

# Jane Moretz-Edmisten and Associates, P.C.
*Counselors at Law*
4530 Wisconsin Avenue, Northwest
Suite 210
Washington, D.C. 20016

Jane Moretz-Edmisten

Telephone: 202-364-4220
Facsimile: 202-966-6988

Of Counsel
Christopher F. Huntley
Elizabeth L. Wildhack

March 5, 2007

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Mr. Rick Serrano, Supervisor
Office of Federal Employee's Group Life Insurance
PO Box 2627
Jersey City, NJ 07303-2627

Re: Claim of Jennifer Barbour, Claim Number 20061202987

Dear Mr. Serrano:

I am the attorney for Ms. Jennifer Barbour, the named beneficiary under the above-referenced FEGLI insurance policy on the life of Ms. Barbour's late mother, Mrs. Julia Barbour (hereafter "Mrs. Barbour" or "the late Mrs. Barbour"). I understand that you have declined to pay the policy proceeds to Ms. Barbour. I am somewhat unclear regarding your reasons, but I understand that the misgivings have to do with the manner in which the late Mrs. Barbour filled out the designation of benefit form. I am, however, familiar with the fact that one of your subordinates called Ms. Barbour twice on February 6, 2007 and in the second call she dictated a statement to be signed by Ms. Barbour that "there is not a trust any more." Ms. Barbour repeatedly informed that subordinate that there was never a trust, but the individual told her she needed the language referenced above so she could pay out the benefits to Ms. Barbour. Instead, that statement, signed under pressure and based upon misleading statements by the subordinate, has now been used to support a decline to pay out the benefits to Ms. Barbour as evidenced by the February 20, 2007 letter to Ms. Barbour from Ms. Linda Rivera. I attach that letter for your information. It seems that Ms. Rivera suggests that there is a statutory order of payment in situations like this one, but in fact, the "Order of Payment" document attached to Ms. Rivera's letter expressly says that where the insured has assigned ownership by filing an RI 76-10 Assignment of Life Insurance the payment will be made to the beneficiary so designated. The form signed by the late Mrs. Barbour is the predecessor to the form defined in the 'Order of Payment' document and there is no basis for concluding that it is not valid. I hope the following information will be persuasive to you and facilitate the prompt payment of the proceeds to Ms. Barbour.

The FEGLI insurance form filed by the late Mrs. Barbour in 1998 (copy attached) names Jennifer Barbour as the beneficiary, with the typewritten word "Trustee" following Jennifer's

Mr. Rick Serrano, Supervisor
March 5, 2007
Page 2

name. In fact, there was no Trust in existence then or later, and the government specialist who assisted Mrs. Barbour with her government benefits, Mrs. Mary Lomax, has a clear recollection of the events that transpired involving the late Mrs. Barbour's FEGLI insurance. Mrs. Lomax, whom we have contacted about the transaction, has told us her recollections, and has signed the enclosed affidavit regarding them. Mrs. Lomax indicates that Mrs. Barbour consistently indicated to her that she wanted her daughter Jenny to have all of her benefits, and those statements extended from their earliest discussions in 1998 until 2005 or 2006 shortly before Mrs. Barbour died.

In connection with filling out the FEGLI beneficiary form, Mrs. Lomax asked Mrs. Barbour about the "trustee" word, and she recalls having been told that Mrs. Barbour said that she "might" make a trust for Jenny since there was a lot of insurance money. That was in 1998; by 2006 when Mrs. Barbour died, Jenny was much older and Mrs. Barbour never made a trust. Even when she considered making a trust, it was for Jenny, not for someone else. Clearly Mrs. Barbour was not a lawyer and not sophisticated in the intricacies of the law. When she wrote that word "trustee," which at the time signified little other than her thought that she might later decide to make a trust to benefit her daughter Jenny, she was ignorant of the difficulties it would later cause.

There is not a scintilla of evidence that Mrs. Barbour ever formulated a present intent to make a trust or that she ever considered having anyone other than Jenny be the beneficiary of her insurance. To the contrary, all of the evidence is that Mrs. Barbour intended that only Jenny would receive her benefits, whether in or out of a trust she never created.

The insertion of that word by a lay person for reasons unrelated to any intent that third parties would have a beneficial interest in her policy certainly should not cause further delay in disbursing the funds in question to Ms. Jennifer Barbour.

We offer in support of this position the attached affidavit of Mrs. Lomax, and we expect to be supplementing this record with consistent affidavits from at least two of Mrs. Barbour's other children who acknowledge that their sister Jennifer, not themselves, was intended to have this money.

Please call me if you have questions to pose, but please process this claim and disburse the funds to Ms. Jennifer Barbour as the insured intended.

Sincerely yours,

Jane Moretz Edmisten

Enclosed: As indicated
cc: Ms. Jennifer Barbour

## AFFIDAVIT

**STATE OF MARYLAND**   )
**County of Prince Georges**  )ss:

I, Mary H. Lomax, affirm as follows:

1. I am an adult female resident in the State of Maryland, and I am competent to make statements under oath.
2. I served at the United States Department of Labor in the Office of the Solicitor in Washington, D.C. for over thirty years as the Human Resources Specialist.
3. In that position, I handled all benefits for employees until my retirement in 2006.
4. Up to the time of my retirement, I continued to certify all the FEGLI forms. In connection with those duties, I completed all such forms relating to deaths, retirements, terminations, resignations, and removals, and assisted employees with beneficiary designations. The FEGLI files contain my signature on hundreds of employee forms.
5. In connection with my work, I met with Mrs. Julia W. Barbour on numerous occasions. In 1998, I met with Mrs. Barbour and she told me that she wanted all of her assets to go to her daughter, Jennifer G. Barbour. In later meetings with her it was clear to me that her intention never changed. In 2005, Mrs. Barbour had serious health problems and when she returned to work she consulted me to review her file and make sure that everything was going to Jennifer, or Jenny as she called her. Mrs. Barbour told me that her daughter Jennifer was to be the beneficiary of all of her benefits from her employment with the Federal Government, including her life insurance policy with FEGLI. She stated to me directly and on more than one occasion that she wanted Jenny, and not any of her other children, to receive any money from this insurance.
6. When she came in to complete the FEGLI form, Mrs. Barbour had with her a typewritten form that contained the word "trustee" under Jenny's name on the portion of the form designating the beneficiary. I asked her why she had that word on the form and she said that she wanted to be sure that Jenny got all of the money and that she might make a trust for Jenny. To my knowledge she did not make a trust, but because I had not seen such a designation in the absence of an existing trust document, and where the creation of a trust was a possibility in the future, I called to be sure that the form would be acceptable and was told it would.
7. My interpretation of the reason why Mrs. Barbour put "trustee" after Jennifer's name on the forms was because she thought somehow that would assure that Jennifer and not the other children would receive the benefits.
8. Mrs. Barbour was very firm and I understood her wishes clearly. She wanted her daughter Jennifer, and only Jennifer, as the beneficiary from our first discussion in 1998 until our last in late 2005 or early 2006.
9. Mrs. Barbour did not write the name of a trust on the beneficiary line because she wanted not to limit Jennifer's interest, but because she wanted to assure it.

10. I have aided employees with these forms for thirty years and I have never been more sure of an employee's wishes than I am of Mrs. Barbour's. On every occasion when we talked, both before, when, and after she completed the form, she stated to me very firmly that her daughter, Jennifer, was to receive the FEGLI insurance as beneficiary. I know without a doubt that was Mrs. Barbour's wish, and I say this on my oath and against the background of my thirty years of federal government service in helping employees document such decisions. I am available to testify orally under oath regarding this matter if I should be needed.

*Mary H. Lomax*
Mary H. Lomax

*March 3, 2007*
Date

**STATE OF MARYLAND** )
**County of Prince Georges** )ss:

Subscribed, sworn and acknowledged before me by *Mary H. Lomax* this *3rd* day of March, 2007.

*Ernestine L Shanks*
Notary Public *Ernestine L Shanks*
*P.G. Co. Maryland*

[seal]

My Commission expires *2/1/08*

*FEL + leaves
Form
To the attach*

# Jane Moretz-Edmisten and Associates, P.C.
## *Counselors at Law*
4530 Wisconsin Avenue, Northwest
Suite 210
Washington, D.C. 20016

Jane Moretz-Edmisten

Telephone: 202-364-4220
Facsimile: 202-966-6988

Of Counsel
Christopher F. Huntley
Elizabeth L. Wildhack

May 16, 2007

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Mr. Dan Serrano, Supervisor
Office of Federal Employee's Group Life Insurance
PO Box 2627
Jersey City, NJ 07303-2627

Re: Claim of Jennifer Barbour, Claim Number 20061202987

Dear Mr. Serrano:

On March 14, 2007, I forwarded to you a letter and supplemental affidavits supporting the claim of Jennifer Barbour in the above-referenced case. I enclose herewith additional supplemental affidavits from several additional siblings of Ms. Barbour. I hope the fact that eight out of twelve of the late Mrs. Barbour's children have taken such a strong position on what were her intentions will persuade you to order the life insurance paid to Ms. Jennifer Barbour as her mother clearly intended.

I look forward to your early response.

Sincerely yours,

Jane Moretz Edmisten

Enclosed:  Affidavit of Marsha Turner Steptoe Culler, April 20, 2007
            Affidavit of Adam Barbour, March 21, 2007
            Affidavit of John P. Rhines, March 20, 2007
            Affidavit of Julian Pembroke Steptoe, May 10, 2007
            Affidavit of Jacinto A. Rhines, Jr., April 21, 2007

cc: Ms. Jennifer Barbour

# AFFIDAVIT

**PRINCE GEORGES COUNTY)**
**MARYLAND** )SS:

**I, MRS. MARSHA TURNER STEPTOE CULLER,** AFFIRM THE FOLLOWING:

1. I am a 42 years old and a resident of the state of Maryland.
2. Professionally, I am an entrepreneur with several ventures including non-profit organizations and a business venture entity for fellow entrepreneurs.
3. Mrs. Julia W. Barbour is my Mother and I am her daughter. I am competent to make statements under oath.
4. I know my Mother designated her youngest child and my sister, Jennifer G. Barbour as the 100% designated beneficiary of her life insurance. There is no doubt about this fact.
5. I do not have any reservations, complaints or objections to my sister, Jennifer G. Barbour receiving the full amount of funds our Mother left for her personal use.
6. As soon as humanly possibly, please honor my dearly departed Mother's wishes by sending the full amount to her youngest child Jennifer G. Barbour.
7. I know that my Mother would be horrified and upset to the utmost that the full life insurance funds which she designated to Jennifer have not yet been sent to Jennifer.
8. I know for a fact that my Mother would be extremely upset and ready to take action that her wishes have not yet been honored.
9. I know for a fact my Mother wanted her wishes, that Jennifer G. Barbour, receive her FEGLI insurance, in full, to be honored and respected. My Mother worked for almost 50 years for the federal government, a well-respected woman. My Mother made a clear decision that Jennifer G. Barbour receive her policy proceeds and to not honor her wishes, dishonors and disrespects her over 40 years of service.
10. I am available to testify orally under oath regarding this matter and I am available to speak to anyone regarding this matter at any time.

Thank you

_MARSHA TURNER STEPTOE CULLER_

_4/20/2007_
Date

**PRINCE GEORGES COUNTY)**
**MARYLAND** )SS:

Subscribed, sworn and acknowledged before me by affiant _Marsha Culler_, this _20th_ day of April, 2007.

Notary Public Name _____

My Commission expires _____

CHARLES I. HUDDLESTON
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY
STATE OF MARYLAND
MY COMMISSION EXPIRES
DECEMBER 1, 2009

# AFFIDAVIT

**THE DISTRICT OF COLUMBIA)**
**WASHNGTON, D.C.** ) SS:

I, Adam Barbour, AFFIRM AS FOLLOWS:

1.    I am an adult male resident of the District of Columbia.

2.    At my mother's home during one of my many visits to her, I asked her how she was getting along, this was after my father passed away, my mother's husband.

3.    I also asked my mother if she had any necessary papers in order as far as a will or insurance or anything and she told me that she had life insurance through her job and that my sister, Jennifer Barbour, my mother's youngest child, was the beneficiary.

4.    My mother said something such as, "Jenny is my beneficiary on my life insurance." My mother did not say anything else to me, except that she was taking care of her other papers and "don't you worry about it." She said it in a way for me to be quiet and to not ask her about her business. So, I kept quiet and didn't ask anything else. This was some time after 2002.

5.    My mother really did not discuss things with me, but she answered me that time, I asked her some time after my father had passed away.

6.    I expected that my mother left my sister Jennifer Barbour life insurance because my mother told me some time after my father passed away that she had done that for her youngest, my sister Jenny.

7.    I am available to testify orally under oath regarding this if I am needed.

8.    I am the youngest son of Mrs. Julia W. Barbour.

9.    I am competent to make statements under oath.

_Adam Barbour_ (signature)
Adam Barbour

_032107_
Date

**THE DISTRICT OF COLUMBIA)**
**WASHNGTON, D.C.** )SS:

Subscribed, sworn and acknowledged before me by affiant _Adam Barbour_,
this _21_ day of March in the year 2007.

_(signature)_ _____ Notary Public Name

My Commission expires _____

CHARLES I. HUDDLESTON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires July 31, 2008

# AFFIDAVIT

THE DISTRICT OF COLUMBIA)
WASHNGTON, D.C.              )ss:

I, JOHN P. RHINES, AFFIRM THE FOLLOWING:

1.    I am a 65 year old adult male resident of the District of Columbia.
2.    Mrs. Julia W. Barbour is my Mother and I am her son. I am competent to make statements under oath.
3.    I am a retired. I am still active, serving as an Editor of a local newsletter and as a museum consultant.
4.    I was formerly Director of Georgetown University's Upward Bound Program, prior to my graduation from the university. I served as Editor of "Patterns," a national educational magazine for migrant workers. I also served as Assistant to the Vice President of Fox Television in New York City. I am an opera singer who studied at The Metropolitan Opera at New York City's Lincoln Center and I have performed at the Kennedy Center with the National Symphony Orchestra on their Grammy winning album in 1996. I spent two summers in Berlin, Germany with the Deutsche Oper and two summers with the Vienna Symphony in Austria. I have traveled extensively throughout Europe and on a U.S. State Department sponsorship to South America.
5.    I am writing to affirm my mother's wishes as she expressed them verbally to me, more than once over the years that my youngest sister, Jennifer G. Barbour, was her designated beneficiary as to any funds she would leave through her life insurance and her retirement. Mother told me directly that she left her insurance and benefits to Jenny. My mother said to me, "Jenny is the beneficiary." I spoke to my mother regularly, almost daily and certainly weekly before her passing.
6.    I am available to testify orally under oath regarding this if I am needed. Thank you.

_John P. Rhines_
John P. Rhines

_3/20/07_
Date

THE DISTRICT OF COLUMBIA)
WASHNGTON, D.C.              )ss:
Subscribed, sworn and acknowledged before me by affiant _John P. Rhines_ , this _20_ day of March, 2007.

Notary Public Name

My Commission expires _____

CHARLES I. HUDDLESTON
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires July 31, 2008

# AFFIDAVIT

**County of Los Angeles)**
**California) SS:**

I, JULIAN PEMBROKE STEPTOE, AFFIRM AS FOLLOWS:

To All Whom It Concerns,

In the matter of life insurance made out by Julia Marie Watson Barbour, on her own life, which was ended December 2, 2006, and of which full value was assigned to her youngest daughter, Jennifer G. Barbour (noted as trustee), I demand that there be no interference in the payment due by the carrier of such insurance to Jennifer. As my mother's sixth child and fifth son, I am fully aware of the motivation and correctness of her decision to designate and arrange her posthumous affairs in the manner under which Jennifer makes her claim.

Jennifer is the one among us siblings who attended to our mother in her declining years prior to and after the purchase of the policy indicated. Jennifer endured the slow and inevitable heartbreak with much sacrifice of her time, energy, and earning potential, and provided companionship and vital assistance that extended our mother's life and comforted her demise.

Accepting the duty and cost related to appropriate funeral expenses, and after having borne so heroically under such strain, it is unfair in the extreme to force her to endure the stress of uncalled for negotiation in this matter. Doing so not only extends and deepens our grief as a family, but also interrupts its resolution, while exposing Jennifer to unfavorable and possibly ruinous consequences from her creditors.

I hereby assert that no other valid claim as beneficiary is made, and demand that appropriate payment be made, forthwith, to Jennifer G. Barbour.

I am competent to make statements and am available to testify about this matter if needed.

Julian Pembroke Steptoe
3010 Wilshire Boulevard #299
Los Angeles, California 90010

Date: Thursday, May 10, 2007

**County of Los Angeles)**
**California) SS:**

NOTARY SIGNATURE

MY COMMISSION EXPIRES:
SEAL

Posted to:

Ms. Jane Moretz-Edmisten & Associates
Counselors at Law
4530 Wisconsin Avenue, NW
Suite 210
Washington, DC 20016 (original)

Jennifer G. Barbour
PO Box 1006
Wash DC 20013
(copy)

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES
SUBSCRIBED AND SWORN TO BEFORE
ME THIS *10th* DAY OF *May 2007*
by Julian Pembroke Steptoe
PERSONALLY KNOWN TO ME OR PROVED
TO ME ON THE BASIS OF SATISFACTORY
EVIDENCE TO BE THE PERSON(S) WHO
APPEARED BEFORE ME.

*Soo Hee Han*

*Oct 11, 2010*

SOO HEE HAN
COMM. #1693529
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. Oct 11, 2010

**Nature's Hotline**

"FACING THE CHALLENGE TO EDUCATE OUR CHILDREN ...
ERASING THE SELF-HATE CHASING OF THE GUN!"

(WE OUTREACH TEACH TO THE STREET DOWN TO THE BEACH)

1764 W. 24th Street • Los Angeles • CA 90018
**(323) 294-3024 • Fax (323) 733-1395**

| Jacinto Aneille Rhines, Jr. | Alexis Watson-Rhines | Bobby Luckett | Kenneth Rhines | Megan Washington |
|---|---|---|---|---|
| Founder-Executive-Director | Administrative Assistant | Treasurer-Youth | University Coordinator | Youth Advisor-Beauty of |
| Wealth of Health Role Model | Mush Blush Role Model | Development Coordinator | Self-Respect Role Model | Self-Love Duty Role Model |

## AFFIDAVIT

Los Angeles County, State of California

Attention Dan Serrano and Linda Rivera for FEGLI,                4.20.2007

This affidavit is in reference to the insurance settlement of a recently deceased federal

employee Julia Watson Barbour. My name is Jacinto Aneille Rhines, Jr. the oldest

child of Julia Watson Barbour. What I say today represents the attitude and desires of her

other eleven children. To honor her wishes, her youngest daughter Jennifer Barbour is the

sole beneficiary of all insurance benefits. My mother served in the federal government for

44 consistent years receiving a certificate of recognition for 44 years of honorable service

to the Federal Government from the United States Secretary of Labor Elaine Chao on

January 31, 2006, sending her personal letter of appreciation on February 7th, 2006. My

mother put her desires in certified written form on September 2nd 1998. To hold back on

paying my sister my mother's insurance benefits is unacceptable and any statement to the

contrary of this letter is erroneous  Therefore these benefits should be forwarded to

Jennifer Barbour immediately.  We appreciate prompt expedition of this matter ASAP.

At 67, I am quite competent and available to testify in person regarding this matter.

Respectfully, Jacinto Aneille Rhines, Jr.

JAR/awr

My Signature _____ Notary Signature _____ Notarization Date 4/21/07

*See Attached Document*

**PARENT POWER – A DIVISION OF *NATURE'S HOTLINE***

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles }ss.

On 4/21/07, before me, Glen A. Taylor (Notary Public),
_Date_                     Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared Jacinto A. Rhines
Name(s) of Signer(s)

GLEN A. TAYLOR
Commission # 1648856
Notary Public - California
Los Angeles County
My Comm. Expires Mar 30, 2010

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

Place Notary Seal Above

—————— OPTIONAL ——————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: Affidavit

Document Date: April 21, 2007        Number of Pages: 2

Signer(s) Other Than Named Above: None

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☑ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| | |
| Signer Is Representing: Self | Signer Is Representing: _____ |

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

**AFFIDAVIT**

BEFORE ME, the undersigned Notary, _Loretta J. Hudson_ (Notary), on this _19th_ (day of the month) _February_ (month), 20_07_, personally appeared _Jerome C. Rhines_ (Affiant), known to me to be a credible person and of lawful age, who being by me first duly sworn, on her oath, deposes and says:

I certify that my name is Jerome C. Rhines (a resident of the state of California) and Mrs. Julia W. Barbour is my Mother. I live in Rancho Cucamonga, California. I work as a Supervisory Senior Piping Designer for a major company in Clairmont, California. I recall having conversations with my Mother, which she initiated, in and after the summer of 1998 about her federal life insurance. I recall my Mother telling me that she had life insurance. My Mother told me, most certainly, that she had left her life insurance to my youngest sister Jenny to have for her use. She said, "Jenny is the beneficiary and that is how I want it." In the years since then, I would call to talk to my Mother or she would call me just to talk and catch up. In those conversations and for no particular reason, other than simply talking about her life, that Jenny was to have the insurance and that is the way she wanted it, basically telling me that she had some things in order, sort of statements. I would say to Mother that that was fine. She made these statements, it seemed, just in my conversations with her and she would just talk about whatever she wanted. So, I knew when Mother passed away that Jenny was the beneficiary on the life insurance because my Mother had already mentioned that to me.

I declare under penalty of perjury that the foregoing is true and correct.

_(signature)_
Signature of Affiant

Jerome C. Rhines
Printed name of Affiant

_Jerome C. Rhines_
Address of Affiant line 1

_11048 Antietam Dr. Alta Loma Ca._
Address of Affiant line 2

Subscribed and sworn to before me, this _19th_ (day of the month) of _February_ (month), 20_07_

Notary Seal:

_(signature)_
Signature of Notary

_Loretta J. Hudson_
Printed Name of Notary

LORETTA J. HUDSON
Commission # 1609850
Notary Public - California
Los Angeles County
My Comm. Expires Oct 2, 2009

NOTARY PUBLIC

My Commission expires: _Oct. 2,_ (day and month), 20_09_

1 of 1

## AFFIDAVIT

HARRIS COUNTY)
STATE OF TEXAS )SS:

I, Jamilla Rhines Lankford, affirm as follows:

1. I am a 61-year old adult female resident in Bellaire, Texas, and I am competent to make statements under oath.
2. I am the eldest daughter of Mrs. Julia W. Barbour and I currently reside with my husband, Frank Lankford.
3. I am an electrical engineer by training and am now retired.  In my last position during my working years, I occupied the U.S. Secretariat of an international standards committee (IEC Technical Committee 72), headquartered in Geneva, Switzerland, where I served for twelve years, the first woman to have held that position. In my retirement I am pursuing a career as an author
4. Over the years, I had many conversations with my Mother, whom I dearly loved, as she was deciding how to arrange her affairs after her death.
5. The time came when my Mother phoned me and said she had decided to make my youngest sister, Jennifer Barbour, the sole beneficiary of her life insurance policy.
6. My Mother reconfirmed this decision to me more than once.
7. We spoke multiple times a week, often for hours at a time on weekends, and if she had changed her mind about her life insurance beneficiary, she would have told me.

Further affiant sayeth not.

_Jamilla Rhines Lankford_
Jamilla Rhines Lankford

Date _3/8/07_

HARRIS COUNTY )
TEXAS)SS:

Subscribed, sworn and acknowledged before me by _Jamilla Lankford_ this _8_ day of March, 2007.

_Stephanie J Perry_
Notary Public

STEPHANIE J PERRY
My Commission Expires
October 4, 2008

[seal]

My Commission expires _10/4/08_

**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**
Original Proceeding
Complaint in Interpleader
**Exhibit H**
A copy of the Claim for Death Benefits

Office of Federal Employees'
Group Life Insurance
P.O. Box 2627
Jersey City, NJ 07303-2627

**FEGLI**

# Claim for Death Benefits
Federal Employees' Group Life Insurance Program

Read the instructions carefully
before filling out this form.

## Part A. Information About the Deceased (Everyone must complete this part.)

**1. Deceased's full name** *(Last)* *(First)* *(Middle)*

Barbour    Julia    Watson

**2. Date of birth** *(mm/dd/yyyy)*

Redacted

**3. Date of death** *(mm/dd/yyyy)*

**4. Social Security Number**

☐☐  ☐☐  ☐☐☐☐

**5. Legal residence at time of death** *(City and state)*

Washington, D.C.

**6. Department or agency in which last employed,** including bureau or division

Department of Labor

**7. Location of last employment** *(City, state, ZIP code)*

**8. At the time of death, was the deceased retired and receiving a monthly annuity under any Federal civilian retirement system?**

Yes ☒    No ☐    Unknown ☐    If "Yes", provide the Claim number (CSA, CSF, CSI) _____

*Special Note: Social Security monthly payments are not Federal civilian retirement annuities.

**9. At the time of death, was the deceased receiving Federal Worker's Compensation benefits?**

Yes ☐    No ☒    Unknown ☐    If "Yes", provide the effective date of Federal Workers' Compensation benefits _____
*(mm/dd/yyyy)*

## Part B. Information About the Deceased's Family (Everyone must complete this part.)

| 1. How many times was the deceased married? | 2. Give the name of each spouse *(include ALL marriages)* | 3. How did the marriage end? *(Check one in each case)* | | 4. When did the marriage end? *(mm/dd/yyyy)* |
|---|---|---|---|---|
| 3 | John Rhines | ☒ Death | ☐ Divorce | |
| | Rexford Steptoe | ☐ Death | ☒ Divorce | |
| | Delaware Barbour | ☒ Death | ☐ Divorce | |

**5. Did the deceased have any living children on the date of his/her death?**

Yes ☒    No ☐    If Yes, how many? 2

**6. Did the deceased have any children who died before the date of his/her death?**

Yes ☐    No ☒    If Yes, how many? _____

## Part C. Information About You (Everyone must complete items 1, 2 and 3.)

**1. Your name** *(Last)* *(First)* *(Middle)*

Culler    Marsha    Turner

**2. Your relationship to the deceased**

daughter

**3. Your date of birth** *(mm/dd/yyyy)*

Redacted    1963

### Complete Items 4 through 13 only if you are the deceased's widow or widower.

**4. Date of marriage** *(mm/dd/yyyy)*

**5. Place of marriage** *(City and state)*

**6. Marriage was performed by:**
☐ Clergy or Justice of the Peace
☐ Other *(specify)*

**7. Were you living with the deceased at the time of death?**
Yes ☐    No ☐

**8. Were you divorced from the deceased at the time of death?**
Yes ☐    No ☐

**9. If you were divorced from the deceased, give the date** *(mm/dd/yyyy)* and place of the divorce.

| 10. How many times were you married? | 11. Give the name of each spouse *(include ALL marriages)* | 12. How did the marriage end? *(Check one in each case)* | | 13. When did the marriage end? *(mm/dd/yyyy)* |
|---|---|---|---|---|
| | | ☐ Death | ☐ Divorce | |
| | | ☐ Death | ☐ Divorce | |
| | | ☐ Death | ☐ Divorce | |

Form FE-6
Revised April 2004
OFEGLI Form in Adobe Acrobat PDF (04/04)

**Everyone must complete Parts D and E unless you are the deceased's widow or widower.**

## Part D. Information About the Deceased's Next of Kin

1. List below the name, age, relationship and address of :
   (a) Widow or widower;
   (b) If there is no surviving widow or widower, list the child or children of all the deceased's marriages (include adopted children and children born out-of-wedlock) and the descendants of any deceased child or children (use additional sheets if necessary);
   (c) If there are no children, list the parents; if one or both parents are deceased, so state and give the date of death;
   (d) If there are no survivors in (a) through (c), list the next of kin who may be capable of inheriting from the deceased (brothers, sisters, descendants of deceased brothers, sisters, etc.). (Use additional sheets if necessary).

| Name | Age | Relationship to the deceased | Full address |
|------|-----|------------------------------|--------------|
| Marsha Steptoe Culler | 42 | daughter | 11519 Sequoia Lane Beltsville Maryland 207( |

**Fill in items 2 and 3 only if any of the persons listed above are under age 18.**

2. If the court appointed a guardian for the estate of any minor children above, give the name and address of the guardian and attach a copy of the court appointment papers. **Natural parentage or custody as a result of a divorce do not constitute guardianship.**

Name
Address (Number, street, apt. no.)
City, state, ZIP code

3. If the court did not appoint a guardian for the estate of any minor children, will it appoint one later?
[ ] Yes  [ ] No

## Part E. Information About the Deceased's Estate

1. If the court appointed an executor or administrator to settle the deceased's estate, give his/her name and address and attach a copy of the court appointment papers.

Name
Address (Number, street, apt. no.)
City, state, ZIP code

2. If the court did not appoint an executor or administrator, will it appoint one later?
[ ] Yes  [X] No

## Part F. Your Certification (Everyone must complete this part.)

Are you claiming accidental death benefits (did the deceased die solely through violent, external, and accidental means)? If "Yes", submit coroners and police reports, news clippings, and any other available reports concerning the accident. OFEGLI cannot consider a claim for such benefits if the deceased separated or retired before the accident.
[ ] Yes  [X] No

If the amount payable to you is $5,000 or more, OFEGLI will open a money market account in your name, giving you complete control of and immediate access to all your funds. You may write checks for all or part of the money in your account when you receive your checkbook.

See page 2 for more information, and be sure you complete the information on page 2 under "Special Note".

If the amount payable to you is less than $5,000, OFEGLI will send you a check.

Your name (Please print) Marsha Turner Steptoe Cul
Address (Number, street, apt. no.) 11519 Sequoia Lane
City, state, ZIP code Beltsville, MD 20705
Your Social Security Number    Redacted  [ ][ ][ ][ ]
Estate or Trust ID Number  [ ][ ]-[ ][ ][ ][ ][ ][ ][ ]

Under penalty of perjury, I certify:

1. That the number shown on this form is my correct taxpayer identification number; and

2. That I am NOT subject to backup withholding because: (a) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends; or (b) the IRS has notified me that I am no longer subject to backup withholding.
If you are currently subject to backup withholding, check this box: [ ]

3. I am a U.S. citizen or a U.S. resident for tax purposes.   Check one [X] Yes  [ ] No
If you are not a U.S. citizen or resident for tax purposes, we will send you a W-8BEN that you are required to complete to certify your foreign status.

The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| My signature (Do not print) | Area Code | Daytime telephone no. | Area Code | Evening telephone no. |
|---|---|---|---|---|
| | (202) 637-7215 | | (301) 595-3950 | |

**Warning**—If you knowingly and willfully make any materially false, fictitious or fraudulent statement or representation on this form, or conceal any material fact related to the requests for information on this form, you may be subject to a monetary fine or imprisonment for not more than five years, or both, under 18 U.S.C. 1001.

Do not use previous editions.

Page 4

Form FE-6
Revised April 2004
OFEGLI Form in Adobe Acrobat (04/04)

# IMPORTANT INFORMATION ABOUT
# MONEY MARKET ACCOUNTS

## AUTOMATIC
- If we are paying you $5,000 or more, we will automatically open a money market account in your name and mail you the checkbook. If we are paying you less than $5,000, we will mail you a check.

## SAFE
- The account earns interest starting the first day we open it.
- Metropolitan Life Insurance Company guarantees the full amount in the account, including all interest.

## FREE
- You pay nothing for this account. There are no monthly service charges or charges for checks.
- You can write checks from $250 up to the full balance at any time.

## FLEXIBLE
- You can withdraw all or part of your money at any time, with no penalty.
- You can name a beneficiary for your funds, in case something happens to you.

We will send you detailed information about the account when we open one in your name.

---

# SPECIAL NOTE

Please complete, in ink, the information below and sign your name in the first box. We need this information to open a money market account. Even though you may be giving the same information elsewhere on this form, you must also give it here. We cannot process your claim without this information.

| | |
|---|---|
| Your signature (Do not print) | *Marsha S. Culler* |
| Your name (Please print) | *Marsha Culler* |
| Address (Number, street, apt. no.) | *11519 Sequoia Lane* |
| City, state, ZIP code | *Beltsville, MD 20705* |

| Your Social Security Number OR Estate/Trust Identification Number | Redacted | 6 0 6 8 |
|---|---|---|

| Date (mm/dd/yyyy) | Daytime telephone no. | Evening telephone no. |
|---|---|---|
| *5/1/2007* | (202) 637-7215<br>Area Code | (301) 595-3950<br>Area Code |



<u>**Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.**</u>
Original Proceeding
<u>Complaint in Interpleader</u>
**Exhibit I**
Letters from OFEGLI to Jerome Rhines, Julian Steptoe, John Rhines,
Jacinto Rhines and Adam Barbour

**OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE**
**P.O. BOX 2627**
**JERSEY CITY, NJ 07303-2627**
**(800) 633-4542**

June 5 2007

Mr Jerome C Rhines
11048 Antietam Drive
Alta Loma California 91737

Re:    Insured - Julia W  Barbour
       Claim Number - 20061202987
       Amount of Insurance - $134,000.00

Dear Mr Rhines

We received an affidavit signed by you regarding the Federal Employees' Group Life Insurance (FEGLI) benefits due to the death of Julia W. Barbour.

The Federal Employees' Group Life Insurance Benefits in this case would be payable to the children and descendants of any  deceased children in equal shares (please see the enclosed Order of Payment document.)

Please complete the enclosed claim form in detail. Pay particular attention to **Part B**, regarding Ms. Barbour's marital history and **Part D**, which asks for the names, ages and addresses of Ms. Barbour's children and descendants of any deceased children.

I have received a certified death certificate for Julia W  Barbour.  Another death certificate is not required.

Your affidavit indicates that the insured's intent was to have Jennifer G. Barbour receive the entire benefits. If you wish to release your share of the benefits to Jennifer G. Barbour please carefully review and complete the enclosed General Release and Renunciation of Rights form in the presence of a notary public.

If you do not wish to release your share of the benefits please let us know in writing and submitted with your claim form.

When I receive your completed claim form and any additional document requested on this letter, I will further review and process this case. Should you have any questions, feel free to contact me at 201 395-7957 or toll free at 800 633-4542.

Sincerely,

Linda Rivera/lr
Case Management Specialist
Enclosure(s)

1AM-Revised 3/05

# Order of Payment

*By law, the Office of Federal Employees' Group Life Insurance (OFEGLI) pays benefits in this order:*

A. If the Insured **assigned ownership** of his/her insurance (usually by filing an RI 76-10 Assignment of Life Insurance) OFEGLI will pay:

First, to the beneficiary(ies) the assignee(s) validly designated;

Second, if none, to the assignee(s).

B. If the Insured **did not assign ownership** and there is a **valid court order*** on file with the agency or OPM, as appropriate, OFEGLI will pay benefits according to the court order.

C. If the Insured **did not assign ownership** and there is **no valid court order*** on file with the agency or OPM, as appropriate, then OFEGLI will pay:

First, to the beneficiary(ies) the Insured validly designated;

Second, if none, to the Insured's widow or widower;

Third, if none of the above, to the Insured's child or children and the descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);

Fourth, if none of the above, to the Insured's parents in equal shares, or the entire amount to the surviving parent;

Fifth, if none of the above, to the court-appointed executor or administrator of the Insured's estate;

Sixth, if none of the above, to the Insured's other next of kin entitled under the laws of the State where the Insured lived.

*A valid court order is a court decree, court order or court-approved property settlement agreement incident to a decree of divorce, annulment or legal separation. If the Insured was an employee or compensationer in the first 12 months of non-pay status at the time of death, his or her employing office must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death. If the Insured was retired, or was a compensationer who separated or completed 12 months of non-pay status, the Office of Personnel Management must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.

1AM-Revised 3/05

## MetLife

Office of Federal Employees' Group Life Insurance
P.O. Box 2627
Jersey City, NJ  07303-2627

### RELEASE TO METLIFE

**Insured: JULIA W. BARBOUR**

**Claim Number: 20061202987**

**Metlife Group Policy No. 17000G**

The undersigned forever releases MetLife from any obligation whatsoever under the above policy, in consideration of the Company's payment or application of the amount due and under such policy as authorized below.

**"MetLife** means the Metropolitan Life Insurance Company.  The Office of Federal Employee's Group Life is an administrative unit of Metlife.  The FEGLI Policy is a federal contract issued pursuant to, and governed by, 5 U.S.C. Sections 8701-8716.

Each signature must be witnessed or notarized by a Notary Public.

Pay such amount to: Jennifer G Barbour  $10,307.68

Your Signature_____    Date_____

Witness Signature_____

Witness Signature_____

**OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE**
**P.O. BOX 2627**
**JERSEY CITY, NJ  07303-2627**
**(800) 633-4542**

June 5 2007

Mr Julian Pembroke Steptoe
3010 Wilshire Boulevard #299
Los Angeles California 90010

Re:    Insured - Julia W  Barbour
       Claim Number - 20061202987
       Amount of Insurance - $134,000.00

Dear Mr Steptoe

We received an affidavit signed by you regarding the Federal Employees' Group Life Insurance (FEGLI) benefits due to the death of Julia W. Barbour.

The Federal Employees' Group Life Insurance Benefits in this case would be payable to the children and descendants of any  deceased children in equal shares (please see the enclosed Order of Payment document.)

Please complete the enclosed claim form in detail. Pay particular attention to **Part B**, regarding Ms. Barbour's marital history and **Part D**,  which asks for the names, ages and addresses of Ms. Barbour's children and descendants of any deceased children.

I have received a certified death certificate for Julia W  Barbour.  Another death certificate is not required.

Your affidavit indicates that the insured's intent was to have Jennifer G. Barbour receive the entire benefits. If you wish to release your share of the benefits to Jennifer G. Barbour please carefully review and complete the enclosed General Release and Renunciation of Rights form in the presence of a notary public.

If you do not wish to release your share of the benefits please let us know in writing and submitted with your claim form.

When I receive your completed claim form and any additional document requested on this letter, I will further review and process this case. Should you have any questions, feel free to contact me at 201 395-7957 or toll free at 800 633-4542.

Sincerely,

Linda Rivera/lr
Case Management Specialist
Enclosure(s)

# Order of Payment

*By law, the Office of Federal Employees' Group Life Insurance (OFEGLI) pays benefits in this order:*

A. If the Insured **assigned ownership** of his/her insurance (usually by filing an RI 76-10 Assignment of Life Insurance) OFEGLI will pay:

First, to the beneficiary(ies) the assignee(s) validly designated;

Second, if none, to the assignee(s).

B. If the Insured **did not assign ownership** and there is a **valid court order\*** on file with the agency or OPM, as appropriate, OFEGLI will pay benefits according to the court order.

C. If the Insured **did not assign ownership** and there is **no valid court order\*** on file with the agency or OPM, as appropriate, then OFEGLI will pay:

First, to the beneficiary(ies) the Insured validly designated;

Second, if none, to the Insured's widow or widower;

Third, if none of the above, to the Insured's child or children and the descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);

Fourth, if none of the above, to the Insured's parents in equal shares, or the entire amount to the surviving parent;

Fifth, if none of the above, to the court-appointed executor or administrator of the Insured's estate;

Sixth, if none of the above, to the Insured's other next of kin entitled under the laws of the State where the Insured lived.

\*A valid court order is a court decree, court order or court-approved property settlement agreement incident to a decree of divorce, annulment or legal separation. If the Insured was an employee or compensationer in the first 12 months of non-pay status at the time of death, his or her employing office must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death. If the Insured was retired, or was a compensationer who separated or completed 12 months of non-pay status, the Office of Personnel Management must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.

# MetLife

Office of Federal Employees' Group Life Insurance
P.O. Box 2627
Jersey City, NJ  07303-2627

## RELEASE TO METLIFE

**Insured: JULIA W. BARBOUR**

**Claim Number: 20061202987**

**Metlife Group Policy No. 17000G**

The undersigned forever releases MetLife from any obligation whatsoever under the above policy, in consideration of the Company's payment or application of the amount due and under such policy as authorized below.

**"MetLife** means the Metropolitan Life Insurance Company.  The Office of Federal Employee's Group Life is an administrative unit of Metlife.  The FEGLI Policy is a federal contract issued pursuant to, and governed by, 5 U.S.C. Sections 8701-8716.

Each signature must be witnessed or notarized by a Notary Public.

Pay such amount to: Jennifer G Barbour  $10,307.68

Your Signature_____     Date_____

Witness Signature_____

Witness Signature_____

**OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE**
**P.O. BOX 2627**
**JERSEY CITY, NJ 07303-2627**
**(800) 633-4542**

June 5 2007

Mr John Rhines
5233 N Capital St NE #312
Washington DC 20011

Re:     Insured - Julia W  Barbour
        Claim Number - 20061202987
        Amount of Insurance - $134,000.00

Dear Mr Rhines:

We received an affidavit signed by you regarding the Federal Employees' Group Life Insurance (FEGLI) benefits due to the death of Julia W. Barbour.

The Federal Employees' Group Life Insurance Benefits in this case would be payable to the children and descendants of any  deceased children in equal shares (please see the enclosed Order of Payment document.)

Please complete the enclosed claim form in detail. Pay particular attention to **Part B**, regarding Ms. Barbour's marital history and **Part D**,  which asks for the names, ages and addresses of Ms. Barbour's children and descendants of any deceased children.

I have received a certified death certificate for Julia W  Barbour.  Another death certificate is not required.

Your affidavit indicates that the insured's intent was to have Jennifer G. Barbour receive the entire benefits. If you wish to release your share of the benefits to Jennifer G. Barbour please carefully review and complete the enclosed General Release and Renunciation of Rights form in the presence of a notary public.

If you do not wish to release your share of the benefits please let us know in writing and submitted with your claim form.

When I receive your completed claim form and any additional document requested on this letter, I will further review and process this case. Should you have any questions, feel free to contact me at 201 395-7957 or toll free at 800 633-4542.

Sincerely,

Linda Rivera/lr
Case Management Specialist
Enclosure(s)

1AM-Revised 3/05

# Order of Payment

*By law, the Office of Federal Employees' Group Life Insurance (OFEGLI) pays benefits in this order:*

A. If the Insured **assigned ownership** of his/her insurance (usually by filing an RI 76-10 Assignment of Life Insurance) OFEGLI will pay:

First, to the beneficiary(ies) the assignee(s) validly designated;

Second, if none, to the assignee(s).

B. If the Insured **did not assign ownership** and there is a **valid court order\*** on file with the agency or OPM, as appropriate, OFEGLI will pay benefits according to the court order.

C. If the Insured **did not assign ownership** and there is **no valid court order\*** on file with the agency or OPM, as appropriate, then OFEGLI will pay:

First, to the beneficiary(ies) the Insured validly designated;

Second, if none, to the Insured's widow or widower;

Third, if none of the above, to the Insured's child or children and the descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);

Fourth, if none of the above, to the Insured's parents in equal shares, or the entire amount to the surviving parent;

Fifth, if none of the above, to the court-appointed executor or administrator of the Insured's estate;

Sixth, if none of the above, to the Insured's other next of kin entitled under the laws of the State where the Insured lived.

\*A valid court order is a court decree, court order or court-approved property settlement agreement incident to a decree of divorce, annulment or legal separation.  If the Insured was an employee or compensationer in the first 12 months of non-pay status at the time of death, his or her employing office must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.  If the Insured was retired, or was a compensationer who separated or completed 12 months of non-pay status, the Office of Personnel Management must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.

# MetLife

Office of Federal Employees' Group Life Insurance
P.O. Box 2627
Jersey City, NJ  07303-2627

## RELEASE TO METLIFE

**Insured: JULIA W. BARBOUR**

**Claim Number: 20061202987**

**Metlife Group Policy No. 17000G**

The undersigned forever releases MetLife from any obligation whatsoever under the above policy, in consideration of the Company's payment or application of the amount due and under such policy as authorized below.

**"MetLife** means the Metropolitan Life Insurance Company.  The Office of Federal Employee's Group Life is an administrative unit of Metlife.  The FEGLI Policy is a federal contract issued pursuant to, and governed by, 5 U.S.C. Sections 8701-8716.

Each signature must be witnessed or notarized by a Notary Public.

Pay such amount to: Jennifer G Barbour  $10,307.68

Your Signature_____    Date_____

Witness Signature_____

Witness Signature_____

**OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE**
**P.O. BOX 2627**
**JERSEY CITY, NJ  07303-2627**
**(800) 633-4542**

June 5 2007

Mr Jacinto Aneille Rhines
1764 W 24th Street
Los Angeles California 90018

Re:    Insured - Julia W  Barbour
       Claim Number - 20061202987
       Amount of Insurance - $134,000.00

Dear Mr Rhines:

We received an affidavit signed by you regarding the Federal Employees' Group Life Insurance (FEGLI) benefits due to the death of Julia W. Barbour.

The Federal Employees' Group Life Insurance Benefits in this case would be payable to the children and descendants of any  deceased children in equal shares (please see the enclosed Order of Payment document.)

Please complete the enclosed claim form in detail. Pay particular attention to **Part B**, regarding Ms. Barbour's marital history and **Part D**,  which asks for the names, ages and addresses of Ms. Barbour's children and descendants of any deceased children.

I have received a certified death certificate for Julia W  Barbour.  Another death certificate is not required.

Your affidavit indicates that the insured's intent was to have Jennifer G. Barbour receive the entire benefits. If you wish to release your share of the benefits to Jennifer G. Barbour please carefully review and complete the enclosed General Release and Renunciation of Rights form in the presence of a notary public.

If you do not wish to release your share of the benefits please let us know in writing and submitted with your claim form.

When I receive your completed claim form and any additional document requested on this letter, I will further review and process this case. Should you have any questions, feel free to contact me at 201 395-7957 or toll free at 800 633-4542.

Sincerely,

Linda Rivera/lr
Case Management Specialist
Enclosure(s)

1AM-Revised 3/05

# Order of Payment

*By law, the Office of Federal Employees' Group Life Insurance (OFEGLI) pays benefits in this order:*

A.  If the Insured **assigned ownership** of his/her insurance (usually by filing an RI 76-10 Assignment of Life Insurance) OFEGLI will pay:

   First, to the beneficiary(ies) the assignee(s) validly designated;

   Second, if none, to the assignee(s).

B.  If the Insured **did not assign ownership** and there is a **valid court order\*** on file with the agency or OPM, as appropriate, OFEGLI will pay benefits according to the court order.

C.  If the Insured **did not assign ownership** and there is **no valid court order\*** on file with the agency or OPM, as appropriate, then OFEGLI will pay:

   First, to the beneficiary(ies) the Insured validly designated;

   Second, if none, to the Insured's widow or widower;

   Third, if none of the above, to the Insured's child or children and the descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);

   Fourth, if none of the above, to the Insured's parents in equal shares, or the entire amount to the surviving parent;

   Fifth, if none of the above, to the court-appointed executor or administrator of the Insured's estate;

   Sixth, if none of the above, to the Insured's other next of kin entitled under the laws of the State where the Insured lived.

\*A valid court order is a court decree, court order or court-approved property settlement agreement incident to a decree of divorce, annulment or legal separation.  If the Insured was an employee or compensationer in the first 12 months of non-pay status at the time of death, his or her employing office must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.  If the Insured was retired, or was a compensationer who separated or completed 12 months of non-pay status, the Office of Personnel Management must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.

1AM-Revised 3/05

# MetLife

Office of Federal Employees' Group Life Insurance
P.O. Box 2627
Jersey City, NJ  07303-2627

### RELEASE TO METLIFE

**Insured: JULIA W. BARBOUR**

**Claim Number: 20061202987**

**Metlife Group Policy No. 17000G**

The undersigned forever releases MetLife from any obligation whatsoever under the above policy, in consideration of the Company's payment or application of the amount due and under such policy as authorized below.

**"MetLife** means the Metropolitan Life Insurance Company.  The Office of Federal Employee's Group Life is an administrative unit of Metlife.  The FEGLI Policy is a federal contract issued pursuant to, and governed by, 5 U.S.C. Sections 8701-8716.

Each signature must be witnessed or notarized by a Notary Public.

Pay such amount to: Jennifer G Barbour  $10,307.68

Your Signature_____    Date_____

Witness Signature_____

Witness Signature_____

**OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE**
**P.O. BOX 2627**
**JERSEY CITY, NJ  07303-2627**
**(800) 633-4542**

June 5 2007

Mr Adam Barbour
901 6th Street SW #606A
Washington, DC  20024

Re:    Insured - Julia W  Barbour
       Claim Number - 20061202987
       Amount of Insurance - $134,000.00

Dear Mr Barbour:

We received an affidavit signed by you regarding the Federal Employees' Group Life Insurance (FEGLI) benefits due to the death of Julia W. Barbour.

The Federal Employees' Group Life Insurance Benefits in this case would be payable to the children and descendants of any  deceased children in equal shares (please see the enclosed Order of Payment document.)

Please complete the enclosed claim form in detail. Pay particular attention to **Part B**, regarding Ms. Barbour's marital history and **Part D**,  which asks for the names, ages and addresses of Ms. Barbour's children and descendants of any deceased children.

I have received a certified death certificate for Julia W  Barbour.  Another death certificate is not required.

Your affidavit indicates that the insured's intent was to have Jennifer G. Barbour receive the entire benefits. If you wish to release your share of the benefits to Jennifer G. Barbour please carefully review and complete the enclosed General Release and Renunciation of Rights form in the presence of a notary public.

If you do not wish to release your share of the benefits please let us know in writing and submitted with your claim form.

When I receive your completed claim form and any additional document requested on this letter, I will further review and process this case. Should you have any questions, feel free to contact me at 201 395-7957 or toll free at 800 633-4542.

Sincerely,

Linda Rivera/lr
Case Management Specialist
Enclosure(s)

1AM-Revised 3/05

# Order of Payment

*By law, the Office of Federal Employees' Group Life Insurance (OFEGLI) pays benefits in this order:*

A.  If the Insured **assigned ownership** of his/her insurance (usually by filing an RI 76-10 Assignment of Life Insurance) OFEGLI will pay:

First, to the beneficiary(ies) the assignee(s) validly designated;

Second, if none, to the assignee(s).

B.  If the Insured **did not assign ownership** and there is a **valid court order\*** on file with the agency or OPM, as appropriate, OFEGLI will pay benefits according to the court order.

C.  If the Insured **did not assign ownership** and there is **no valid court order\*** on file with the agency or OPM, as appropriate, then OFEGLI will pay:

First, to the beneficiary(ies) the Insured validly designated;

Second, if none, to the Insured's widow or widower;

Third, if none of the above, to the Insured's child or children and the descendants of any deceased children (a court will usually have to appoint a guardian to receive payment for a minor child);

Fourth, if none of the above, to the Insured's parents in equal shares, or the entire amount to the surviving parent;

Fifth, if none of the above, to the court-appointed executor or administrator of the Insured's estate;

Sixth, if none of the above, to the Insured's other next of kin entitled under the laws of the State where the Insured lived.

\*A valid court order is a court decree, court order or court-approved property settlement agreement incident to a decree of divorce, annulment or legal separation.  If the Insured was an employee or compensationer in the first 12 months of non-pay status at the time of death, his or her employing office must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.  If the Insured was retired, or was a compensationer who separated or completed 12 months of non-pay status, the Office of Personnel Management must have received a certified copy of the court order on or after July 22, 1998, and before the Insured's death.

1AM-Revised 3/05

# MetLife

Office of Federal Employees' Group Life Insurance
P.O. Box 2627
Jersey City, NJ 07303-2627

### RELEASE TO METLIFE

**Insured: JULIA W. BARBOUR**

**Claim Number: 20061202987**

**Metlife Group Policy No. 17000G**

The undersigned forever releases MetLife from any obligation whatsoever under the above policy, in consideration of the Company's payment or application of the amount due and under such policy as authorized below.

**"MetLife** means the Metropolitan Life Insurance Company. The Office of Federal Employee's Group Life is an administrative unit of Metlife. The FEGLI Policy is a federal contract issued pursuant to, and governed by, 5 U.S.C. Sections 8701-8716.

Each signature must be witnessed or notarized by a Notary Public.

Pay such amount to: Jennifer G Barbour  $10,307.68

Your Signature_____    Date_____

Witness Signature_____

Witness Signature_____

**<u>Metropolitan Life Insurance Company v. Jennifer G. Barbour, et al.</u>**
Original Proceeding
<u>Complaint in Interpleader</u>
**Exhibit J**
Claim for Death Benefits

Office of Federal Employees'
Group Life Insurance
P.O. Box 2627
Jersey City, NJ 07303-2627



**Claim for Death Benefits**
Federal Employees' Group Life Insurance Program

Read the instructions carefully
before filling out this form.

## Part A. Information About the Deceased (Everyone must complete this part.)

**1. Deceased's full name**   *(Last)   (First)   (Middle)*

BARBOUR, Julia Watson

**2. Date of birth** *(mm/dd/yyyy)*

Redacted   1923

**3. Date of death** *(mm/dd/yyyy)*

Dec. 2, 2006

**4. Social Security Number**

578 24 3742

**5. Legal residence at time of death—***(City and state)*

Washington, DC

**6. Department or agency in which last employed, including bureau or division**   Office of Solicitor
Dept. of Labor - Office of Admin. Mgmt

**7. Location of last employment** *(City, state, ZIP code)*

Washington DC 20210

**8. At the time of death, was the deceased retired and receiving a monthly annuity under any Federal civilian retirement system ?**

Yes ☐   No ☐   Unknown ☒   If "Yes", provide the Claim number *(CSA, CSF, CSI)* _____
*Special Note: Social Security monthly payments are not Federal civilian retirement annuities.*

**9. At the time of death, was the deceased receiving Federal Worker's Compensation benefits ?**

Yes ☐   No ☐   Unknown ☒   If "Yes", provide the effective date of Federal Workers' Compensation benefits _____
*(mm/dd/yyyy)*

## Part B. Information About the Deceased's Family (Everyone must complete this part.)

| 1. How many times was the deceased married? | 2. Give the name of each spouse *(include ALL marriages)* | 3. How did the marriage end? *(Check one in each case)* | | 4. When did the marriage end? *(mm/dd/yyyy)* |
|---|---|---|---|---|
| 3 | Jacinto Rhines   #1 | ☒ Death | ☐ Divorce | unknown |
| | Rexford G. Steptoe   #2 | ☐ Death | ☒ Divorce | unknown |
| | Delaware Barbour | ☒ Death | ☐ Divorce | unknown |

**5. Did the deceased have any living children on the date of his/her death?**   Yes ☐   No ☐   If Yes, how many? ___

**6. Did the deceased have any children who died before the date of his/her death?**   Yes ☐   No ☐   If Yes, how many? ___

## Part C. Information About You  (Everyone must complete items 1, 2 and 3.)

**1. Your name** *(Last)   (First)   (Middle)*

STEPTOE, CAROLYN CECELIA

**2. Your relationship to the deceased**

Daughter

**3. Your date of birth** *(mm/dd/yyyy)*

Redacted   59

### Complete Items 4 through 13 only if you are the deceased's widow or widower.

**4. Date of marriage** *(mm/dd/yyyy)*

**5. Place of marriage** *(City and state)*

**6. Marriage was performed by:**
Clergy or Justice of the Peace ☐
Other *(specify)*

**7. Were you living with the deceased at the time of death?**

Yes ☐   No ☐

**8. Were you divorced from the deceased at the time of death?**

Yes ☐   No ☐

**9. If you were divorced from the deceased, give the date** *(mm/dd/yyyy)* **and place of the divorce.**

**10. How many times were you married?**

**11. Give the name of each spouse** *(Include ALL marriages)*

| | 12. How did the marriage end? *(Check one in each case)* | | 13. When did the marriage end? *(mm/dd/yyyy)* |
|---|---|---|---|
| | Death ☐ | Divorce ☐ | |
| | Death ☐ | Divorce ☐ | |
| | Death ☐ | Divorce ☐ | |

**Everyone must complete Parts D and E unless you are the deceased's widow or widower.**

## Part D. Information About the Deceased's Next of Kin

1. List below the name, age, relationship and address of :
   (a) Widow or widower;
   (b) If there is no surviving widow or widower, list the child or children of all the deceased's marriages (include adopted children and children born out-of-wedlock) and the descendants of any deceased child or children (use additional sheets if necessary);
   (c) If there are no children, list the parents; if one or both parents are deceased, so state and give the date of death;
   (d) If there are no survivors in (a) through (c), list the next of kin who may be capable of inheriting from the deceased (brothers, sisters, descendants of deceased brothers, sisters, etc.). (Use additional sheets if necessary).

| Name | Age | Relationship to the deceased | Full address |
|---|---|---|---|
| See attached sheet | | | |

**Fill in items 2 and 3 only if any of the persons listed above are under age 18.**

2. If the court appointed a guardian for the estate of any minor children above, give the name and address of the guardian and attach a copy of the court appointment papers. Natural parentage or custody as a result of a divorce do not constitute guardianship.

Name

Address (Number, street, apt. no.)

City, state, ZIP code

NONE

3. If the court did not appoint a guardian for the estate of any minor children, will it appoint one later?
☐ Yes  ☒ No

## Part E. Information About the Deceased's Estate

1. If the court appointed an executor or administrator to settle the deceased's estate, give his/her name and address and attach a copy of the court appointment papers.

Name

Address (Number, street, apt. no.)

City, state, ZIP code

NONE

2. If the court did not appoint an executor or administrator, will it appoint one later?
☐ Yes  ☒ No

## Part F. Your Certification (Everyone must complete this part.)

Are you claiming accidental death benefits (did the deceased die solely through violent, external, and accidental means)? If "Yes", submit coroners and police reports, news clippings, and any other available reports concerning the accident. OFEGLI cannot consider a claim for such benefits if the deceased separated or retired before the accident.
☐ Yes  ☒ No

If the amount payable to you is $5,000 or more, OFEGLI will open a money market account in your name, giving you complete control and immediate access to all your funds. You may write checks for all or part of the money in your account when you receive your checkbook.

See page 2 for more information, and be sure you complete the information on page 2 under "Special Note".

If the amount payable to you is less than $5,000, OFEGLI will send you a check.

Your name (Please print)   CAROLYN CECELIA STEPTOE
Address (Number, street, apt. no.)   1257 Lawrence St. NE
City, state, ZIP code   Wash DC 2001

Your Social Security Number   -▨▨▨▨
Redacted   6420

Estate or Trust ID Number  ☐☐-☐☐☐☐☐☐☐

**Under penalty of perjury, I certify:**

1. That the number shown on this form is my correct taxpayer identification number; and

2. That I am NOT subject to backup withholding because: (a) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends; or (b) the IRS has notified me that I am no longer subject to backup withholding.

If you are currently subject to backup withholding, check this box: ☐

3. I am a U.S. citizen or a U.S. resident for tax purposes.   Check one ☒ Yes  ☐ No

If you are not a U.S. citizen or resident for tax purposes, we will send you a W-8BEN that you are required to complete to certify your foreign status.

The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.   6368191

| Carolyn Cecelia Steptoe | 202 | 2104141 | 202 | 6368191 |
|---|---|---|---|---|
| My signature (Do not print) | Area Code | Daytime telephone no. | Area Code | Evening telephone no. |

**Warning**—If you knowingly and willfully make any materially false, fictitious or fraudulent statement or representation on this form, or conceal a material fact related to the requests for information on this form, you may be subject to a monetary fine or imprisonment for not more than five years, or both, under 18 U.S.C. 1001.

Do not use previous editions.          Page 4          Form FE-6
Revised April 2004
OFEGLI Form in Adobe Acrobat (04/04)

# IMPORTANT INFORMATION ABOUT
# MONEY MARKET ACCOUNTS

## AUTOMATIC
- If we are paying you $5,000 or more, we will automatically open a money market account in your name and mail you the checkbook. If we are paying you less than $5,000, we will mail you a check.

## SAFE
- The account earns interest starting the first day we open it.
- Metropolitan Life Insurance Company guarantees the full amount in the account, including all interest.

## FREE
- You pay nothing for this account. There are no monthly service charges or charges for checks.
- You can write checks from $250 up to the full balance at any time.

## FLEXIBLE
- You can withdraw all or part of your money at any time, with no penalty.
- You can name a beneficiary for your funds, in case something happens to you.

We will send you detailed information about the account when we open one in your name.

# SPECIAL NOTE

Please complete, in ink, the information below and sign your name in the first box. We need this information to open a money market account. Even though you may be giving the same information elsewhere on this form, you must also give it here. We cannot process your claim without this information.

| Your signature (Do not print) |
| --- |
| *Carolyn C. Steptoe* |

| Your name (Please print) |
| --- |
| CAROLYN C. STEPTOE |

| Address (Number, street, apt. no.) |
| --- |
| 1257 Lawrence St., NE |

| City, state, ZIP code |
| --- |
| Wash DC 20017 |

| Your Social Security Number **OR** Estate/Trust Identification Number | Redacted | | | | | 6 | 4 | 2 | 0 |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Date (mm/dd/yyyy) | Daytime telephone no. | Evening telephone no. |
| --- | --- | --- |
| 4/29/07 | (202) 210-4141 Area Code | (202) 636 8191 Area Code |

GOVERNMENT OF THE DISTRICT OF COLUMBIA, DEPARTMENT OF HEALTH

Date Filed _____

**CERTIFICATE OF DEATH**    File number 108—    005673

| 1a. DECEDENT'S LEGAL NAME (First, Middle, Last) | 1b. DECEDENT'S AKA | 2. SEX | 3. DATE PRONOUNCED DEAD | 4. TIME PRONOUNCED DEAD |
|---|---|---|---|---|
| Julia         Barbour | | F | 12/2/2006 | 11:39 PM |

| 5. SOCIAL SECURITY NUMBER | 6a. AGE | 6b. < 1 YR | 6c. < 1 DAY | 7. DATE OF BIRTH (Mo/Day/Yr) | 8. BIRTHPLACE (City and state or foreign country) |
|---|---|---|---|---|---|
| Redacted -3742 | 83 | Mo. / Days | Hrs. / Min. | Redacted    1923 | New York, New York |

| 9a. RESIDENCE - STATE | 9b. COUNTY | 9c. CITY, TOWN, OR LOCATION |
|---|---|---|
| District Of Columbia | | Washington |

| 9d. STREET AND NUMBER AND QUADRANT | 9e. APT. NO. | 9f. ZIP CODE | 9g. INSIDE CITY LIMITS? |
|---|---|---|---|
| 901 6th Street, SW | 606 | 20024 | ☐ YES ☐ NO |

| 10. EVER IN U.S. ARMED FORCES? ☐ YES ☐ NO ☐ Unknown | 11. MARITAL STATUS AT TIME OF DEATH ☐ Married ☐ Married, but separated ☒ Widowed ☐ Divorced ☐ Never Married ☐ Unknown | 12. SURVIVING SPOUSE NAME (If decedent was married women, enter maiden name) Watson | 13. SURVIVING SPOUSE (if wife, give name prior to first marriage) |
|---|---|---|---|

| 14. FATHER'S NAME (First, Middle, Last) | 15. MOTHER'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last) |
|---|---|
| Charles      Watson | Pauline    Turner    Gears |

| 16a. INFORMANT'S NAME | 16b. RELATIONSHIP TO DECEDENT | 16c. MAILING ADDRESS (Street and Number and Quadrant, City, State, Zip Code) 20024 |
|---|---|---|
| Jennifer G. Barbour | Daughter | 901 6th Street, SW #606 Washington, DC |

17a. PLACE OF DEATH (Check only one)

| IF DEATH OCCURRED IN A HOSPITAL: ☐ Inpatient ☐ ER/Outpatient ☐ DOA | IF DEATH OCCURRED SOMEWHERE OTHER THAN HOSPITAL: ☐ Hospice Facility ☐ Nursing Home/Long Term Care Facility ☐ Decedent's Home ☐ Other (Specify) |
|---|---|

| 17b. FACILITY NAME (If not institution, give street and number) Medstar Georgetown University Hospital | 17c. CITY, TOWN, STATE WASHINGTON, D.C. | 17d. ZIP CODE 20007 |
|---|---|---|

| 18. METHOD OF DISPOSITION ☒ Burial ☐ Donation ☐ Removal from District of Columbia ☐ Cremation ☐ Entombment ☐ Other | 19. PLACE OF DISPOSITION (Name of cemetery or crematory, other place) Lincoln Memorial Cemetery | 19a. DATE OF DISPOSITION December 6, 2006 |
|---|---|---|

| 19b. LOCATION - CITY OR TOWN AND STATE Suitland, MD | 20. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY Jordan Funeral Service, Inc. 4001 Benning Road, NE  Washington, DC 20019 |
|---|---|

| 21. FUNERAL SERVICE LICENSEE (TYPE & SIGN) David G. Jordan | 22. LICENSE NUMBER 722 |
|---|---|

| 23. DECEDENT'S EDUCATION (Check the box that best describes the highest degree or level of school completed at the time of death) ☐ 8th grade or less (includes none) ☐ 9th - 12th grade, but no diploma ☐ High school graduate or GED completed ☒ Some college credit, but no degree ☐ Associate degree (e.g. AA, AS) ☐ Bachelor's degree (e.g., AB, BA, BS) ☐ Master's degree (e.g., MA, MBA, MEd, MS, MSW) ☐ Doctorate or professional degree (e.g., DDS, DO, DVM, EdD, JD, LLB, MD, PhD) ☐ Unknown | 24. DECEDENT OF HISPANIC ORIGIN? (Check one or more boxes to best describe whether the decedent is Spanish/Hispanic/Latino. check the "No" box if decedent is not Spanish/Hispanic/Latino) ☒ No, not Spanish/Hispanic/Latino ☐ Yes, Mexican, Mexican American, Chicano ☐ Yes, Puerto Rican ☐ Yes, Cuban ☐ Yes, other Spanish/Hispanic/Latino (specify) _____ ☐ Unknown | 25. DECEDENT'S RACE (Check one or more races to indicate what the decedent considered himself or herself to be) ☐ White ☒ Black or African American ☐ American Indian or Alaska Native (Name of enrolled or principal tribe) _____ ☐ Asian Indian ☐ Chinese ☐ Filipino ☐ Japanese ☐ Korean ☐ Vietnamese ☐ Other Asian (specify) _____ ☐ Native Hawaiian ☐ Guamanian or Chamorro ☐ Samoan ☐ Other Pacific Islander (specify) _____ ☐ Other (specify) _____ ☐ Unknown |
|---|---|---|

| 26. DECEDENT'S USUAL OCCUPATION (Indicate type of work done during most of working life. Do not use retired.) Editor |
|---|
| 27. KIND OF BUSINESS / INDUSTRY  Government |

**CAUSE OF DEATH** (See instructions and example)

28. PART I. Enter the chain of events - diseases, injuries, or complications - that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on a line.

| | | Approximate interval: Onset to death (include Min., Hr., Day, Yrs., etc.) |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a. Basal Ganglia Hemorrhage | |
| | DUE TO (or as a consequence of): | |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST. | b. Hypertension | |
| | DUE TO (or as a consequence of): | |
| | c. | |
| | DUE TO (or as a consequence of): | |
| | d. | |

PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in Part I.

| 29. WAS AN AUTOPSY PERFORMED? ☐ Yes ☐ No |
|---|
| 30. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☐ No |

| 31. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ Probably ☐ No ☐ Unknown | 32. IF FEMALE ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death | ☐ Not pregnant, but pregnant within 43 days to 1 year before death ☐ Unknown if pregnant within past year | 33. MANNER OF DEATH ☐ Natural ☐ Homicide ☐ Accident ☐ Pending Investigation ☐ Suicide ☐ Could not be determined |
|---|---|---|---|

| 34. DATE OF INJURY (Mo/Day/Yr) (Spell Month) | 35. TIME OF INJURY | 36. PLACE OF INJURY (Decedent's home, construction site, restaurant, wooded area, etc.) | 37. INJURY AT WORK? ☐ Yes ☐ No ☐ Unknown |
|---|---|---|---|

| 38. LOCATION OF INJURY: Street & Number: | | Apartment No.: |
|---|---|---|

| City or Town: | State: | Zip Code: |
|---|---|---|

| 39. DESCRIBE HOW INJURY OCCURRED: | 40. IF TRANSPORTATION ACCIDENT, SPECIFY: ☐ Driver/Operator ☐ Pedestrian ☐ Passenger ☐ Other |
|---|---|

| 41. NAME OF PERSON PRONOUNCING DEATH (If other than certifier) | 42. LICENSE NUMBER | 43. DATE SIGNED (Mo/Day/Yr) |
|---|---|---|

| 44a. WAS MEDICAL EXAMINER CONTACTED? ☐ Yes ☐ No | IF YES, TYPE NAME OF ME | 44b. DATE | 44c. ME CASE NUMBER |
|---|---|---|---|

| 45a. CERTIFIER (Check only one) | ☐ Certifying physician - To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated. ☒ Pronouncing and Certifying physician - To the best of my knowledge, death occurred at the time, date, and place, and due to the cause(s) and manner stated. ☐ Medical Examiner - On the basis of examination, and/or investigation, in my opinion, death occurred due to the cause(s) and manner stated. |
|---|---|
| Signature of Certifier | Type Name/Title: Christopher G. Kelhorn, M.D. |

| 45b. ADDRESS OF CERTIFIER (Type or print) 3800 Reservoir Road NW Washington, DC 20007 | 45c. LICENSE NUMBER MD32585 | 45d. DATE CERTIFIED (Mo/Day/Yr) December 2, 2006 |
|---|---|---|

| 46a. CREMATION AUTHORITY GRANTED BY (SIGNATURE & DATE) | 46b. STAMP |
|---|---|

47. REMARKS - IF DECEDENT UNDER 4 YEARS, ENTER PLACE OF BIRTH - HOSPITAL OR ADDRESS, IF NOT IN HOSPITAL

Form DOH15

**I CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE ORIGINAL CERTIFICATE FILED IN THE VITAL RECORDS DIVISION, DISTRICT OF COLUMBIA, DEPARTMENT OF HEALTH.**

**WARNING: IT IS UNLAWFUL TO MAKE A COPY OF THIS DOCUMENT AND PRESENT IT AS AN ORIGINAL CERTIFICATE OR COPY OF A VITAL RECORD.**

May 1, 2007

DATE ISSUED

JULIA DAVIDSON-RANDALL
REGISTRAR





GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF HEALTH

## CERTIFICATE OF LIVE BIRTH

### DISTRICT OF COLUMBIA DEPARTMENT OF PUBLIC HEALTH
### CERTIFICATE OF LIVE BIRTH

Redacted 1959  BIRTH NO. **59 15784**

**1. PLACE OF BIRTH**

| Washington, D.C. | Name of Hospital or Institution (If not in Hospital, give street address) FREEDMEN'S HOSPITAL |
|---|---|

**2. USUAL RESIDENCE OF MOTHER (Where does mother live?)**

| a. State | b. County | c. City, Town, or Location WASHINGTON DC |
|---|---|---|

| d. Street Address 3211-19TH ST. N.W. | e. Is Residence Inside City Limits? Yes ☑ No ☐ | f. Is Residence on a Farm? Yes ☐ No ☑ |
|---|---|---|

**CHILD**

| 3. CHILD'S NAME (Type or Print) (First) | (Middle) | (Last) |
|---|---|---|

| 4. SEX Male ☐ Female ☑ | 5a. THIS BIRTH Single ☑ Twin ☐ Triplet ☐ | 5b. IF TWIN OR TRIPLET (This child born) 1st ☐ 2nd ☐ 3rd ☐ | 6. DATE OF BIRTH (Month) (Day) (Year) Redacted 59 |
|---|---|---|---|

**FATHER OF CHILD**

| 7. NAME (First) REXFORD (Middle) GILBERT (Last) STEPTOE | 8. COLOR OR RACE NEGRO |
|---|---|

| 9. AGE (At time of this birth) 30 YEARS | 10. BIRTHPLACE (State or foreign country) WASH. DC | 11a. USUAL OCCUPATION EDITORIAL | 11b. KIND OF BUSINESS OR INDUSTRY ASSISTANT |
|---|---|---|---|

**MOTHER OF CHILD**

| 12. MAIDEN NAME (First) JULIA (Middle) MARIE (Last) WATSON | 13. COLOR OR RACE NEGRO |
|---|---|

| 14. AGE (At time of this birth) 36 YEARS | 15. BIRTHPLACE (State or foreign country) | 16. CHILDREN PREVIOUSLY BORN TO THIS MOTHER (Do NOT include this child) |||
|---|---|---|---|---|
| | | a. How many OTHER children are now living? 7 | b. How many OTHER children were born alive but are now dead? 0 | c. How many children were still born (born dead after 20 weeks pregnancy)? 0 |

| 17. INFORMANT (Full name) MRS. JULIA STEPTOE  Parent ☐ Other ☐ |
|---|

I hereby certify that this child was born alive on the date stated above at the hour of 7.48 A ☐M

| NAME MRS. JULIA STEPTOE | 18. SIGNATURE R.A. Drane M.D. |
|---|---|
| ADDRESS 3211-19TH ST. N.W. | 19. ADDRESS 1114 W. ST. N.W. |
| CITY WASHINGTON P.O. Zone STATE DC | 20. DATE SIGNED Redacted |

Name of child: CAROLYN CECELIA STEPTOE
Taken from supp. dated October 12, 1965

DC732270

This is to certify that this is a true and correct reproduction or abstract of the official record filed with the Vital Records Division, Department of Health, District of Columbia.

DATE ISSUED

May 1, 2007

*Julia E. Davidson-Randell*

Julia E. Davidson-Randall, Register

WARNING: IT IS UNLAWFUL TO MAKE COPIES OF THIS DOCUMENT AND PRESENT THEM AS AN OFFICIAL COPY OF AN ORIGINAL CERTIFICATE.