UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,  )<br>)<br>Plaintiff  )<br>)<br>V.  )<br>)<br>)<br>JENNIFER G. BARBOUR  )<br>JULIAN P. STEPTOE  )<br>JAMILLA R. LANKFORD  )<br>ADAM A.D. BARBOUR,  )<br>JACINTO RHINES,  )<br>JOHN P. RHINES,  )<br>JESSE A. RHINES,  )<br>JEROME C. RHINES,  )<br>CAROLYN C. STEPTOE,  )<br>JULIE S. LEE,  )<br>MARSHA S. CULLER,  )<br>VERONICA VERA, AND  )<br>JORDAN FUNERAL SERVICE, INC.  )<br>)<br>Defendants.  )<br>_____) | Case No. 1:07-cv-01665<br>Assisgned To : Kollar-Kotelly, Colleen<br>Assign Date : 9/20/2007<br>Description : Contract<br><br>**RECEIVED**<br>NOV 1 4 2007<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## ANSWER TO MOTION FOR INTERPLEADER RELIEF

I, JAMILLA R. LANKFORD, am a named Defendant in this case and this is my response to the Motion for Interpleader Relief cited above. Please note that in order to more correctly comply with court practices, this answer replaces my previously-dated letter. I am my mother's eldest daughter and my position remains as in my affidavit which is attached to the Motion in Exhibit G. I support my sister, Jennifer Barbour's, claim to 100% of the insurance and I ask the court to note that I, and six of my siblings, do so

against our own financial interests because we are personally aware of our mother's wishes. Since we loved her, we want to honor them. A seventh sibling, Marsha Culler, who filed a claim in response to MetLife's solicitation also verified my mother's intentions in an affidavit in Exhibit G.

I'd like to further advise the court that I knew my mother intended that all her final expenses be paid out of her life insurance proceeds. When she died, I asked Jennifer (who'd lived with our mother and was her caretaker) if she had the money to bury her. She said she didn't but the insurance would arrive shortly. Neither of us knew anything about life insurance at the time, but feeling secure because it was "government" insurance, I charged everything on my Amex, except costs for Jordan Funeral Home. Jordan accepted an assignment against the insurance, when OPM informed them Jennifer was the sole beneficiary. Receipts for other expenses include cemetery fees; funeral programs; airline tickets for myself and siblings who couldn't afford them; the repast in which we honored our mother with all siblings present but one who hadn't arrived yet (Julian Steptoe), their families, other relatives and friends; the clothes and fabrics in which she was buried. See the attached pages from my Amex bill, which was paid in cash in 30 days when it was due, a grand total of $11,702.26. I knew Jenny would repay me when the insurance arrived, but I told her to only give me $10,846.83 back. I didn't want to be repaid for my own airline ticket home to tell my mother goodbye. I didn't want to be reimbursed for the fabric my mother asked to be wrapped in. That is my last gift to her.

However, except in the unlikely event that Jennifer were to die before this matter is decided, I don't claim monies from my mother's life insurance. My mother left it all to Jenny and she had her reasons. Otherwise, I reserve all my rights against Metropolitan Life Insurance Company in the future.

I certainly had no idea I'd be out of pocket for such a sum for so long and it has altered my lifestyle, something I was prepared to endure. However, when I realized the money wasn't going to paid and this would prevent me from helping my grandson with his college fees to the extent that I'd planned, I took action and contacted my congressman.

I would also like to inform the court that I personally helped my mother calculate the percentages in her previous beneficiary form. I can prove this in a way. The percentages look odd, don't they? 1.1% and 5.9% and such. At the time, my mother thought her life insurance amounted to $88,000. Multiply that figure by the percentages and you will see that each result is a whole dollar amount – what she wanted. I helped her with several versions of this at different times before she filed the one dated April 1998. Note this form in its completeness is proof that my mother knew how to designate multiple beneficiaries if that's what she intended. My mother regularly called on me for help with percentages. She was a brilliant poet, but she didn't like math and since I'm an electrical engineer and good at math I was glad to help.

Ours was a friendship, as much as a mother-daughter bond. My mother and I spoke frequently, sometimes daily, and often for hours at a time, about everything in our lives.

We had our ups and downs like any two people, but we were never out of contact for a significant period in the entire 62 years of my life. This is why I can attest to her wants. As I state in my affidavit, the time came when my mother phoned to say she'd changed her beneficiary designation and left everything to Jennifer. She had considered this for some time and told me about it. My stepfather was still alive when she made this decision and my mother had not yet become ill. Years later Jennifer cared for him as he was dying. Her conscientious overall care of our mother during her long decline — monitoring her carefully during hospital stays and staying in her room overnight — prolonged our mother's life.

Not long before the stroke that left my mother unable to speak clearly in the last weeks of her life, she phoned me and during the conversation said these exact, or nearly-exact words. "I gave it all to Jenny." I said something like, "Yes, mother, you told me. That's good." Then she added, "I want Jenny to be okay. She's been great."

I want the court to know that I agree Jenny's been great. Not perfect. We flawed humans aren't allowed that, but Jenny was extraordinarily diligent in caring for our mother's health. I live in Houston but whenever I flew home to see my mother as she declined, Jenny was there — whether Mother was hospitalized or at home. There were so many hospitalizations, I lost count. So many times in critical care when I thought we'd lose her. Invariably, if Mother spent the night in the hospital, Jenny stayed all night, too.

On my last visits, I'd spend the night at the hospital to be near our mother and give Jenny a needed break, unless my own health prevented it.

Now she's gone. I can send no more flowers, can't soothe her brow, but I can tell the truth to the court on her behalf.

In this vein, I'd like to inform the court that Metropolitan Life has several untruths in its Interpleader:

**Item 2. in the Motion**: MetLife was not subjected to multiple claims. Metlife SOLICITED multiple claims after ignoring my mother's beneficiary designation and OPM's acceptance of it ( see OPM instructions to Jenny to apply for death benefits), even in the face of an affidavit from the Human Resources Specialist whose job it was to help my mother, and other Federal Employees, fill this form out. I am sure the court has or will receive the letter they sent to us stating our mother's beneficiary had died, of all things, and we should file claims. Nowhere did they mention that my mother actually had designated a perfectly living beneficiary on her form – Jennifer Barbour. Until that letter, no one but Jenny had filed a claim because none of the rest of us thought ourselves a beneficiary of our mother's life insurance.

**Item 3. in the Motion**: I have made no claim of entitlement to the Program Benefits and, to my knowledge, neither have the following: Julian P. Steptoe, Adam A.D.

Barbour, Jacinto A. Rhines, John P. Rhines, Jesse A. Rhines, Jerome C. Rhines, and Veronica Vera. We do not want to return the claim form and dishonor our mother's wishes that her life insurance be paid to Jennifer. If Julie S. Lee has made a claim, it wasn't attached. My granddaughter, Veronica Vera, has made no claim and doesn't understand why she's named as a defendant. She wants nothing to do with her grandmother's life insurance. I had to persuade her to even return the waiver of service and she refuses to let me mail her the rest of the package that MetLife sent to her at my address. She doesn't want to be involved in this. Also, none of us signed the "Release to MetLife" that OFEGLI sent us because it seems worded so as to absolve MetLife of any obligation to us even if Jennifer died before payment was made to her. Also, why ask us for permission to pay Jenny money that is hers to begin with? See attachment.

**Item 4. in the Motion:** To my legally untrained eyes, awarding MetLife any fees and costs whatsoever would be tantamount to rewarding them for causing almost an entire year of financial strain, to say nothing of the family strife their lies have caused. [See attached letter to Congressman John Culberson]. They solicited claims by making false or incomplete assertions to us and promising quick payment, knowing full well that no payment of any kind would be forthcoming soon if they succeeded in obtaining even one additional claim. I believe MetLife profits by delaying payment of the life insurance of federal employees when they can.

Finally, I am attaching correspondence to my congressman and a reply to him from OPM, as I attempted to determine if MetLife has the right to decide if an employee's beneficiary form is correctly filled out — given that my mother and no other Federal Employee is informed that MetLife has anything to do with their government life insurance, much less that they are the deciding party. That my mother should have worked for the federal government 44 years, paid this insurance, then be punished for not having consulted an outside company she didn't know existed, is inconceivable. She consulted the only party she was aware of, OPM, via her Human Resources Specialist, at least three different times about designating Jennifer as her sole beneficiary.

Whether or not I, or anyone, agrees with my mother's beneficiary designation, my mother had a right to designate whomever she chose, as we all do. I ask the Court to honor her wishes.

I am grateful for the chance to put my response before the Court and trust in justice.

This 7TH day of November, 2007.

Respectfully submitted,

Jamilla R Lankford
5203 Woodlawn Place
Bellaire, TX 77401
Telephone: (713) 668 9936
jrlankford@earthlink.net

Encl:  OPM instruction to Jennifer Barbour to Apply for Death Benefits
       Amex charges of Jamilla R Lankford
       Release to MetLife
       July 11, 2007 Fax to Congressman John Culberson
       August Reply to Culberson from Ronald Ostrich at OPM

Summary of relevant charges to Jamilla R Lankford American Express bill, December, 2006

| | |
|---|---|
| Willard repast | $7455.19 |
| Neiman's slip & underwear | 88.84 |
| G Street Fabrics | 317.63 |
| Lincoln Memorial Cemetery | 2329.00 |
| Capital Expl(funeral programs) | 562.50 |
| Jamilla's ticket | 537.80 |
| Chico's ticket | 269.20* |
| Mickey's ticket | 142.10* |
| **TOTAL** | **$11,702.26** |

After deducting my own ticket, Mother's clothes and fabric: $10,846.83.

Excerpt from Jamilla R Lankford American Express bill, December, 2006

11/30/2006
 CONTINENTAL AIRLINES HOUSTON TX
TKT# 0052179242195 11/30
CONTINENTAL AIRLINES
From : To : Carrier : Class :
HOUSTON TX IAH WASHINGTON NAT'L D CO H1
Ticket Number : 00521792421953 Date of Departure : 11/30
Passenger Name : LANKFORD/JAMILLARHIN
Document Type : PASSENGER TICKET
More Detail

527.80
11/30/2006
 CONTINENTAL AIRLINES HOUSTON TX
TKT# 0052922859892 11/30
CONTINENTAL AIRLINES
From : To : Carrier : Class :
HOUSTON TX IAH WASHINGTON NAT'L D CO H1
Ticket Number : 00529228598920 Date of Departure : 11/30
Passenger Name : LANKFORD /TICKETING
Document Type : SPECIAL SERVICE TICKET
More Detail

10.00
11/29/2006
 ANGELOS PIZZA #1 028HOUSTON TX
235000030 7136657400 11/29/
7136657400
FOOD/BEVERAGE 25.32
TIP 2.68
More Detail

28.00
12/04/2006

TRAVELOCITY.COM 800-256-9089 TX
24004629100 8002569089 12/04/
More Detail

5.00
12/04/2006
COAST INTERNET SOLUT8662004678 NJ
033908368 COMPUTER NETWORK/INFO/O 12/04/
COMPUTER NETWORK/INFO/O
COMPUTER NETWORK/INFO/ONLINE SERVICES
More Detail

4.95
12/04/2006
AIRTRAN AIRWAYS ATLANTA GA
TKT# 3320013164613 12/04
AIRTRAN AIRWAYS
From : To : Carrier : Class :
LOS ANGELES CA ATLANTA GA FL RX
 WASHINGTON NAT'L D FL
 ATLANTA GA FL
 LOS ANGELES CA FL
Ticket Number :  33200131646130 Date of Departure :  12/05
Passenger Name :  STEPTOE/J
Document Type :  PASSENGER TICKET
More Detail

264.20
12/05/2006
NEIMAN-MARCUS #8 000WASHINGTON DC
080259074 DEPARTMENT STORE 12/05/
DEPARTMENT STOR
LONG GOWN  0.00
BRIEF  0.00
More Detail

88.84
12/05/2006
G STREET FABRICS #1 ROCKVILLE MD
SEWING & FABRIC STORE 12/05/
More Detail

317.63
12/05/2006
LINCOLN MEMORIAL CMESUITLAND MD
932000003 5 3015688410 12/05/
3015688410
FUNERAL SRVC/CREMAT 1 2,329.00
More Detail

2,329.00
12/05/2006
BARNES & NOBLE 2673 WASHINGTON DC
00001206 BOOK STORE 12/05/
More Detail

5.17
12/06/2006
CAPITAL EXPLOSION GRUPPER MARLBOR MD
38480001 3012707170 12/06/
3012707170
PROFESSIONAL S  0.00

More Detail

562.50
12/06/2006
 WOMEN FOR WOMEN INTE202-7377705 DC
016025092SZ CHARITABLE ORG 12/06/
More Detail

27.00
12/07/2006
 WILLARD INTERCONTINE202-6289100 DC
089120700 HOTEL/LODGING 12/07/
More Detail

8,000.00
12/06/2006
 COAST INTERNET SOLUT8662004678 NJ
034130000 COMPUTER NETWORK/INFO/O 12/06/
COMPUTER NETWORK/INFO/O
COMPUTER NETWORK/INFO/ONLINE SERVICES
More Detail

4.95
12/07/2006
 TRAVELOCITY.COM 800-256-9089 TX
24004665688 8002569089 12/07/
More Detail

5.00
12/07/2006
 WILLARD INTERCONTINE202-6289100 DC
090120800 HOTEL/LODGING 12/07/
More Detail

-544.81
12/07/2006
 US AIRWAYS SAN ANTONIO TX
TKT# 4017802541450 12/07
US AIRWAYS
From : To : Carrier : Class :
WASHINGTON NAT'L D LAS VEGAS NV HP UA
 LOS ANGELES CA US RA
Ticket Number : 40178025414505 Date of Departure : 12/12
Passenger Name : RHINES/JACINTO
Document Type : PASSENGER TICKET
More Detail

137.10
12/08/2006
 VNU EMEDIA WEB SITES866-890-8541 NY
6396272 10003 12/08/
10003
SUBSCRIPTION
More Detail

9.95

July 11, 2007

TO: Congressman John Culberson
FROM: Mrs. Jamilla R. Lankford (a constituent)

RE: FEGLI Claim Number - 2006120202987, Insured Julia W. Barbour

Dear Congressman Culberson -

We have tried, unsuccessfully, to have our mother's Federal life insurance in the amount of $134,000 paid to her beneficiary and we hope you can help.

My mother, Julia W. Barbour, retired in January 2006 and died on December 2 of 2006, **less than a year later, having worked for the federal government for over 44 years.** She completed a Designation of Beneficiary Life Insurance form in 1998, consulting with the Human Resources Specialist whose job it was to certify FEGLI forms for federal employees in the Labor Department's Office of the Solicitor where my mother worked.

My mother designated my youngest sister, Jennifer Barbour, as her 100% beneficiary and added the word "Trustee" beneath her name, indicating to Mary Lomax, the Human Resource Specialist, that she might set up a trust for Jenny. After checking, Mary advised my mother that the form would accomplish her wishes whether there was a trust or not. My mother checked again with Mary Lomax in 2005 as she was preparing to retire and also in 2006 before she left and she relied upon Mary Lomax's advice that the form was correct. Ms. Lomax says she has a clear memory of these events and is willing to speak to whomever regarding this matter. I have her home number if needed.

My mother never did set up a trust and I'm certain she had no idea of what a trust really was in specific legal or financial terms. She definitely didn't know that the presence of the word "trustee" beneath my sister's name could negate her beneficiary designation. I know because my mother reiterated to me as recently as weeks before her death that Jenny was the sole beneficiary of her life insurance, a decision with which I agreed, as do the majority of my siblings. Naturally, no agreement is actually required of us, since any person may do as they please regarding their beneficiary.

Immediately after our mother's death, OPM told the funeral home that Jenny was the sole beneficiary and sent her forms to apply for death benefits. On the strength of this information, she signed the funeral home's contract and, except for $600, I paid for all other expenses associated with my mother's funeral, knowing Jenny would pay me back when the insurance came.

Subsequently MetLife, one of the firms from which OPM purchases life insurance policies in bulk, rejected OPM's certification alerting them that my sister, Jennifer Barbour, is the sole beneficiary of my mother's insurance policy. They said the form was invalid because of the word "Trustee" below her name.

This in spite of an affidavit from the Human Resources Specialist, Mary Lomax, who certified my mother's form and who checked with OPM before doing so. This in spite of

affidavits from 6 of her 12 children (in addition to Jenny), attesting to what our mother told us her intentions were.

Instead, OFEGLI (MetLife) SOLICITED claims from all of my mother's children, though she had no intention of splitting her life insurance among us. Three have now submitted a claim for 1/12th of the insurance.

My request is twofold:

1) Can you assist us in having my mother's wishes honored? 7 months have passed since her death and the absence of the insurance money that is due is causing difficulty.

2) Did Congress, in establishing this program in USC 5 8701-10 (I believe) really intend that *outside subcontractors, in this case MetLife, make the final determination on whether a form is filled out correctly when federal employees don't even know MetLife is involved and certainly have no opportunity to consult them?* Did Congress not intend that OPM itself do this since they exclusively advise employees on how to fill out these forms and they and only they confirm to the employee whether it's correct?

I doubt it, because this leaves all federal employees -- not just my mother -- with no recourse while alive. If you or any other of the thousands who work for our government consult the designated Human Resources person in filling out the FEGLI form, the advice you receive could ultimately be judged irrelevant by the insurance company, to which you never had access. It's really egregious that after the death of a person with clear mind and clear intentions, a party that she never knew existed could usurp her wishes. Given this situation, employees should be consulting MetLife directly while they are alive because OPM has been rendered irrelevant. Should this be the subject of clarifying legislation to protect those who serve us as federal employees?

I was told on Friday by Laura Lawrence, (202) 606 1433, director of the OPM office that handles life insurance and other matters, that there are only 2 options:

a) OPM can transfer *"this week"* a 1/12ths share of the insurance money to Jenny for each of us who believes our mother left the money to her instead of us, and pay 1/12th to each of the other 3 claimants that MetLife solicited. Ms. Lawrence also indicated she would pay the funeral home out of Jenny's "share" since only Jenny signed at the funeral home! But Jenny did this only after OPM confirmed to the funeral director that she was the sole beneficiary. This would leave Jenny with virtually nothing unless other siblings chose to give her money — absolutely not the result my mother intended because Jenny was her caregiver and an extraordinarily diligent one. Note: I do not seek a "share" of my mother's insurance, only to be reimbursed from the insurance for the funeral expenses I paid – close to $11,000, for which I have receipts. My mother definitely didn't want any of us to pay for her to be buried.

[I'm not sure this payment mentioned above would even happen because OFEGLI (MetLife) promised Jenny they'd send her a check for the whole thing if she sent a letter stating there was no trust. They didn't. Then they promised a sister that they'd pay her 1/12th in 10 days if she submitted a claim. They didn't. Then they told a

brother they'd need 7 claims before they could disburse money, but they already have 7 affidavits, which isn't going to change. Then they asked those who submitted affidavits to sign a form releasing them of any obligation to us, and the language didn't tie that release to having paid Jenny her money. We didn't sign it. By the way, two of the adult children have yet to respond in writing: one brother who finds all this very confusing and another brother, Philip, who is institutionalized. Jenny is his guardian per my mother's will.]

b) Or we can go to court via an inter pleader that OPM or MetLife will file, which will involve our hiring an attorney and also paying MetLife's attorney fees!

We prefer that our mother's clear wishes be honored immediately. Can you help?

I am your constituent:

Mrs. Jamilla R. Lankford
5203 Woodlawn Place
Bellaire, TX 77401
713 668 9936

P.S. I love your stance on terrorism. Yes, it is spreading but if we practiced the golden rule, talked more and killed less, as you suggest, we'd be better off. (Other issues that most concern me: our $9 trillion debt and getting out of Iraq).

Thanks in advance for your assistance.

Sincerely,

Included are the following:

1) Designation of Beneficiary 2) OPM Notification to Jennifer Barbour to Apply for Death Benefits, 3-4) Affidavit of Mary H. Lomax, Human Resource Specialist who certified FEGLI forms, 5-10) Affidavits of 6 adult children 11) Privacy Release