UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

METROPOLITAN LIFE
INSURANCE COMPANY,                    :
                                      :
                                      :
        Plaintiffs                    :        Case No. 1:07-cv-01665 (CKK)
                                      :
        v.                            :
                                      :
JENNIFER G. BARBOUR, et.al.,          :
                                      :
        Defendants.                   :
                                      :

## ANSWER OF CAROLYN C. STEPTOE TO COMPLAINT IN INTERPLEADER

Defendant Carolyn C. Steptoe (the "Defendant"), proceeding *Pro Se*, responds as follows to the Plaintiff's Complaint in Interpleader

## STATEMENT OF THE CASE

My Mother told me that she was leaving money for her children and her grandchildren. She indicated she was making Jennifer Conservator. My Mother did not make Jennifer G. Barbour, Esquire beneficiary and did not intend to make her the beneficiary. Defendant Jennifer G. Barbour, Esquire attempted to get me to sign an affidavit. I did not sign the affidavit because I did not trust the information she was giving me. Later, the Plaintiff told me that they had denied Jennifer Barbour's claim and they told me to file a claim and they would pay me in the order of precedence. They told me this repeatedly up until they filed this lawsuit. The Plaintiff's Request for Interpleader should be dismissed because it is inappropriate. (*See* Answer below).

1

**FIRST DEFENSE**

Plaintiff's Complaint in Interpleader fails to state a claim upon which relief can be granted.

**SECOND DEFENSE**

The Plaintiff is not entitled to interpleader relief because it does not have clean hands[1]. *Pan American Fire & Casualty Co. v. Revere*, (1960, ED La) 188 F.Supp 474, 3 FR Serv 2d 400; *Holcomb v. Aetna Life Ins. Co.*, (1955, CA10 Okla) 228 F.2d 75, *cert. denied* (1956) 350 U.S. 986, 100 L Ed 853, 76 S.Ct. 473, *re. denied* (1956) 350 U.S. 1016, 100 L.Ed 875, 76 S.Ct. 657. *Calloway v. Miles*, (1920, CA6 Ky) 30 F.2d 14[2] I first became aware of unsuccessful attempts by certain of my siblings to secure all my mother's life insurance proceeds for Jennifer Barbour, Esquire, in late May 2007; this information was not readily provided to me. On receipt of the information, I contacted the Plaintiff. The Plaintiff advised me verbally of the following:

(1) that in, or about, February 20, 2007, Plaintiff denied Jennifer Barbour's claim to the total amount of my mother's life insurance proceeds and committed to distributing the proceeds in the "order of precedence" (as set out in 5 U.S.C.S., Sec. 8705(a));

(2) that the "order of precedence" provided for an equal share of the proceeds to all of my mother's children;

(3) that I should immediately file a claim for payment; and

(4) that Plaintiff would distribute my share to me when it received my mother's

---

[1] *See* Exhibit 1: Answer of Defendant Carolyn C. Steptoe
[2] This defense incorporates by reference the facts and arguments contained in my other defenses and counterclaim.

last husband's death certificate, and as soon as its internal processes made distribution feasible.

After I filed a claim early June 2007 (four months after Plaintiff denied Jennifer Barbour's claim), the Plaintiff delayed payment to me. Plaintiff first attributed the delay to a need to determine the number of children my mother had, and then to a requirement that it receive claims from seven (7) of my mother's children. Plaintiff refused to identify any legal authority for its position, but continued to assert its intent to pay me on my claim. At the same time, Plaintiff continued to invite my siblings to file claims.

Plaintiff never paid my claim or any other claim; instead, Plaintiff filed this lawsuit.

On information and belief, the Plaintiff knowingly, intentionally, maliciously, recklessly and in bad faith lured me into a "false dispute" with my siblings by inviting me to file a claim it never intended to pay. Specifically, after Plaintiff denied Jennifer Barbour's claim for 100 percent of my mother's insurance proceeds, she submitted an affidavit by Mary Lomax stating that my mother intended that Jennifer Barbour receive all her life insurance proceeds. Contrary to the FEGLI statute and the Plaintiff's contractual and fiduciary duties, Ms. Lomax was both the Plaintiff's representative and witness on my mother's beneficiary designation. On information and belief she was, and is, an agent for Jennifer Barbour, a person with a fiduciary interest in my mother's insurance policy. The full extent of Ms. Lomax' conduct may be unknown at this time. However, once the Plaintiff discovered Ms. Lomax' improprieties and their implications,

it engaged on a course of conduct aimed at covering up and minimizing Ms. Lomax' actions and its liability.[3]

Plaintiff's true reason for seeking interpleader relief is not fear of multiple lawsuits generated by adverse claims.[4] Instead, Plaintiff seeks to extricate itself from the conflict created by the conduct of its employee/agent, minimize its legal exposure for her conduct, and avoid independent liability for her improper activities. While shifting this matter to the Court to avoid or minimize increased and/or independent liability for its misconduct may be in Plaintiff's best interest, it is not a basis for interpleader, it is improper and illegal, it is unfair to the Court and me, and it is being conducted in bad faith – with substantial harm flowing to me. The preceding militates against the grant of interpleader relief to the Plaintiff.

### THIRD DEFENSE

This defense incorporates by reference relevant facts and arguments contained in my other defenses and my counterclaim. The Plaintiff has sufficient remedy at law to pay my claim without interpleader relief. *Sanders V. Armour Fertilizer Works,* (1934) 292 U.S. 190, 78 L Ed. 1206, 54 S. Ct. 677, 91 ALR 950, reh.denied (1934), 202 U.S. 612, 78 L Ed. 1472, 54 S.Ct. 855; *See, Star Insurance Co. v Cedar Valley Express, LLC et. Al.,* 273 F. Supp. 38, 42 (D.C.D.C.2002*); MFA Mut. Ins. Co. v. Lusby* (1969, WD Va) 295 F. Supp 660. No party appears to dispute that my mother's most recent designation listed Jennifer Barbour as the trustee over her insurance policy, or that my

---

[3] The Plaintiff proffers, in paragraph 30, that Ms. Lomax was my mother's "co-worker." In fact, Ms. Lomax was the official charged with administering beneficiary designations on behalf of Plaintiff. She signed both designations in that capacity, but also signed as a witness. This, alone, might render both designation void and necessitating distribution by "order of precedence."

[4] In fact, Plaintiff denied Jennifer Barbour's claim on its own merit, without adverse claims having been raised. Plaintiff decided to distribute based on the "order of precedence" before and independent of any other claim.

mother set up a trust. Jennifer Barbour apparently advised the Defendant, with no

explanation, that a trust "no longer" existed. Moreover, the Plaintiff made its

determination to pay under the "order of precedence" before I even knew about the

insurance policy or the Plaintiff's dispute with Jennifer Barbour (and those of my siblings

with whom she conferred and/or entered into financial understandings). The FEGI

statute is clear as to how payment should be made if no beneficiary is designated, or if a

trustee is appointed, but no trust set up or maintained. The FEGLI statute is to be strictly

interpreted. *Thomas, et. al. v. Metropolitan Life Insurance Company*, 921 F.Supp. 810

(D.C.D.C. 1996). Interpleader relief should be denied because the Plaintiff has sufficient

remedy at law and has admitted that it does in paragraphs 23 – 31 of its complaint.[5]

### FOURTH DEFENSE

The defense incorporates by reference relevant facts and argument set forth

my other defenses and my counterclaim. The Plaintiff did not move for interpleader

relief in "good faith." [6]*Holcomb v. Aetna Life Ins. Co.,* (1955, CA10 Okla) 228 F.2d

75, *cert. denied* (1956) 350 U.S. 986, 100 L Ed 853, 76 S.Ct. 473, *re. denied* (1956)

350 U.S. 1016, 100 L.Ed 875, 76 S.Ct. 657. The Plaintiff supports its interpleader

action on the notion that it is (or may be) suffering "vexation and expense" and is

unable to made a determination on my claim without the risk of being subject to suit.

If Plaintiff was vexed and undergoing expense, that was because of its own actions:

duplicitous representations to the parties, misrepresentations of facts, and/or

---

[5] If the Court decides to entertain extrinsic evidence of my mother's intent, I reserve the right to offer evidence that my mother did not intend or desire to leave Jennifer Barbour all her insurance proceeds, and evidence of conduct that would cast doubt on the reliability of certain claims regarding my mother's intent. I offered such information to Plaintiff, but was directed against submission with promises that a decision already had been made and that I would be paid.

[6] This defense also is offered as an affirmative defense if this Court concludes that is it not an essential element of the interpleader claim.

impropriety or negligence on the part of its employees and/or agents. *Powers v. Metropolitan Life Insurance Company*, et al., 142 U.S. App. D.C. 95; 439 F.2d 605 (1971). Plaintiff has clear authority to pay my claim (as it has admitted to me and family member and to this Court in paragraphs 23-31 of its complaint). Moreover, Plaintiff's true intent for seeking interpleader relief is not fear of multiple lawsuits generated by adverse claims. Instead, Plaintiff seeks to use this Court to minimize its exposure and avoid and/or minimize its independent liability for its improper activities.

## FIFTH DEFENSE

I incorporate by reference relevant facts and argument set forth in my other defenses and my counterclaim. The Plaintiff is a central party and witness, rather than a disinterested stakeholder, on the question of payment of my mother's insurance proceeds. In fact, one of its employees and/or agents played a central role in my mother's beneficiary designations and efforts by certain of my siblings to obtain payment under the policy. On information and belief, other of the Plaintiff's employees (Linda Riveria, Steve Delucie, Nina Storck, among unknown others) knowingly, intentionally, recklessly, wrongfully and unnecessarily attempted to deprive me, or prolong payment of, my equitable share of my mother's insurance proceeds.[7] *Copanion Life Ins. v.. Schaffer*, (1977, DS NY) 442 F. Supp. 826. That issue, too, is before this Court.

---

[7] Payment of attorney fees and other costs and amounts may be warranted as a sanction against the Plaintiff because it intentionally withheld relevant information from this Court. Notably missing from Plaintiff's exhibits and proffer of facts and argument are numerous pieces of email and other correspondence establishing that the Plaintiff repeatedly told me and other siblings that it would pay my claim in accord with the "order of precedence."

## BACKGROUND

1.      I admit my entitlement to a portion of the proceeds, and admit (on information and belief) that Jennifer Barbour claimed that she was my mother' sole beneficary.

2.      I lack sufficient information and knowledge to admit or deny the allegations contained in paragraph 2 of Plaintiff's complaint.

3.      I admit, on information and belief, the allegations contained in paragraph 3 of Defendant's complaint.

4.      I deny the allegations contained in paragraph 4 of Plaintiff's complaint.

## JURISDICTION AND VENUE

5.      I deny that the statutory authority alleged by Defendant in paragraph 5 of its complaint necessarily confers jurisdiction on this Court over all claims relevant to this action.

6.      I deny that the statutory authority alleged by Defendant in paragraph 6 of its complaint necessarily confers jurisdiction on this Court over all claims relevant to this action.

7.      I deny that that the statutory authority alleged by Defendant in paragraph 7 of its complaint necessarily renders joinder appropriate in the instant action.

8.      I deny that the statutory authority alleged by Defendant in paragraph 8 of its complaint necessarily renders venue in the District of Columbia appropriate.

## PARTIES

9.      Plaintiff's allegations contained in paragraph 9 of Plaintiff's complaint largely constitute legal conclusions or statements of the Plaintiff to which no response is required.

10.     The allegations contained in paragraph 10 of Plaintiff's complaint properly are addressed to Defendant Jennifer G. Barbour, Esquire. Moreover, I lack sufficient information and knowledge to admit or deny the residency allegations contained in paragraph 10 of Plaintiff's complaint.

11.     The allegations contained in paragraph 11 of Plaintiff's complaint properly are addressed to Defendant Julian P. Steptoe. Moreover, I lack sufficient information and knowledge to admit or deny the residency allegations contained in paragraph 11 of Plaintiff's complaint.

12.     The allegations contained in paragraph 12 of Plaintiff's complaint properly are addressed to Defendant Jamilla R. Lankford. Moreover, I lack sufficient information and knowledge to admit or deny the residency allegations contained in paragraph 12 of Plaintiff's complaint.

13.     The allegations contained in paragraph 13 of Plaintiff's complaint properly are addressed to Defendant Adam A.D. Barbour. Moreover, I lack sufficient information and knowledge to admit or deny the residency allegations contained in paragraph 13 of Plaintiff's complaint.

14.     The allegations contained in paragraph 14 of Plaintiff's complaint properly are addressed to Defendant Jacinto A. Rhines. Moreover, I lack sufficient information and knowledge to admit or deny the residency allegations contained in paragraph 14 of Plaintiff's complaint.

15.     The allegations contained in paragraph 15 of Plaintiff's complaint properly are addressed to Defendant John P. Rhines. Moreover, Defendant Carolyn Steptoe lacks sufficient information and knowledge to admit or deny the residency allegations contained paragraph 15 of Plaintiff's complaint

16.     The allegations contained in paragraph 16 of Plaintiff's complaint properly are addressed to Defendant Jesse A. Rhines, Phd.  Moreover, I lack sufficient information and knowledge to admit or deny the residency allegations contained in paragraph 16 of Plaintiff's complaint

17.     The allegations contained in paragraph 17 of Plaintiff's complaint properly are addressed to Defendant Jerome C. Rhines.  Moreover, I lack sufficient information and knowledge to admit or deny the residency allegations contained paragraph 17 of Plaintiff's complaint.

18.     Defendant Carolyn C. Steptoe admits the allegations contained in paragraph 19 of Plaintiff's complaint.

19.     The allegations contained in paragraph 18 of Plaintiff's complaint properly are addressed to Defendant Julie S. Lee..  Defendant Carolyn Steptoe admits, on information and belief, that Julie S. Lee is a resident of Birmingham, Alabama.

20.     The allegations contained in paragraph 20 of Plaintiff's complaint properly are addressed to Defendant Marsha S. Culler.  I admit, on information and belief, the residency allegations contained in paragraph 20 of Plaintiff's complaint.

21.     The allegations contained in paragraph 21 of Plaintiff's complaint properly are addressed to Veronica Vera.  I lack sufficient information and knowledge to admit or deny the residency allegations contained in paragraph 21 of Plaintiff's complaint, but deny that Veronica Vera is a minor individual.

9

22.    I lack sufficient information and knowledge to admit or deny the principal place of business of Jordan Funeral Services, Inc.

## FACTUAL BACKGROUND

23.    I admit that Julia W. Barbour died on December 2, 2006. The remaining allegation contained in paragraph 23 of Plaintiff's complaint is a statement of Plaintiff's legal conclusion to which no response is required.

24.    The allegation contained in paragraph 24 of Plaintiff's complaint is a statement of legal authority and Plaintiff's legal conclusion to which no response is required.

25.    I admit, on information and belief, the factual allegations contained in paragraph 25 of Plaintiff's complaint. The remaining allegation is a statement of Plaintiff's legal conclusion to which no response is required.

26.    I admit, on information and belief, the allegations contained in paragraph 26 of Plaintiff's complaint.

27.    I admit, on information and belief, the allegations contained in paragraph 27 of Plaintiff's complaint.

28.    I admit, on information and belief, the allegations contained in paragraph 28 of Plaintiff's complaint.

29.    Defendant Carolyn C. Steptoe admits that Julia W. Barbour was not survived by a spouse. The remaining allegation contained in paragraph 29 of Plaintiff's complaint is a statement of Plaintiff's legal conclusion to which no response is required.

30.    I admit, on information and belief, the allegations contained in paragraph thirty 30 of Plaintiff's complaint, except that I deny that Mary Lomax was my mother's mere "co-worker.

10

31.     I admit, on information and belief, the legal conclusions stated in paragraph 31 of Plaintiff's complaint.

32.     I admit, on information and belief, the allegations contained in paragraph 32 of Plaintiff's complaint,

33.     I admit the allegations in paragraph 33 of Plaintiff's complaint regarding her individual FEGLI claim.  The allegation regarding a claim by Carolyn Steptoe properly is addressed to her.

## INTERPLEADER

34.     My responses to paragraphs one 1 through 33 of Plaintiff's complaint are incorporated by reference into my responses to paragraphs 35 through 43 of Plaintiff's complaint.

35.     I deny Plaintiff's allegations contained in paragraph 35 of Plaintiff's complaint.

36.     I deny Plaintiff's allegations contained in paragraph 36 of Plaintiff's complaint.

37.     I deny Plaintiff's allegations contained in paragraph 37 of Plaintiff's complaint.

38.     I deny Plaintiff's allegations contained in paragraph 38 of Plaintiff's complaint.

39.     I deny Plaintiff's allegations contained in paragraph 39 of Plaintiff's complaint.

40.     I deny Plaintiff's allegations contained in paragraph 40 of Plaintiff's complaint.

41.     I deny Plaintiff's allegations contained in paragraph 41 of Plaintiff's complaint.

42.     Plaintiff's allegations contained in paragraph 42 of Plaintiff's complaint are Plaintiff's statement of its claim and legal conclusions to which no response is required.

43.     Plaintiffs allegations contained in paragraph 43 of Plaintiff's complaint is Plaintiff's statement of its claim to which no response is required.

## PLAINTIFF'S REQUEST FOR RELIEF

1 – 6.    The allegations contained herein represent Plaintiff's request for relief to which no response is required.

## AFFIRMATIVE DEFENSES

1.    The Plaintiff has waived its right to interpleader relief by representing directly to me, other persons and/or to the Court, that payment should be made to me. In fact, the Plaintiff has gone beyond a mere belief of my entitlement, but has admitted in paragraphs 23 through 33 of its complaint that I should be paid a share under the statutory scheme set out in the "order of precedence." The Plaintiff states, in essence, that because Jennifer G. Barbour was listed as a "trustee" on the most recent beneficiary designation, and because a trust no longer existed (Jennifer G. Barbour apparently told them that a trust "no longer" existed at the time of my mother's death), I should paid in accord with the statutory "order of precedence." The Defendant offers that the "order of precedence" cannot be replaced by "extrinsic evidence of the insured's intent nor by personal or equitable factors that a claimant maintains entitle him or her to payment."

3.    The Plaintiff should pay interest on my claim because it knowingly, intentionally, maliciously, recklessly, unnecessarily and unreasonably delayed payment of my claim. *Powers v. Metropolitan Life Insurance Company*, et al., 142 U.S. App. D.C. 95; 439 F.2d 605 (1971).

4.    The Plaintiff, and/or its agents and employees, may have committed fraud and/or colluded with others to deprive me of my entitlement to my  share of my mother's life insurance proceeds.

5.    The Plaintiff made material misrepresentation of fact and rule in order to deprive me of my entitlement to my share of my mother's life insurance proceeds.

6.     The Plaintiff lured the parties into a "dispute" for the purpose of denying payment to me of her share of proceeds to my mother's life insurance proceeds.

7.     The Plaintiff's request for interpleader is barred on the ground of laches.

11.    The Plaintiff is not entitled to costs or attorney's fees. *Continental Trust Co. v. Corbin*, 80 F. Supp 394 (DC Dist. Col. 1924)(attorney fees not warranted in interpleader action where Defendant is seeking court assistance in carrying out it business responsibilities); *Unum Life Ins. Co. Am v. Kelling* (2001) MD Tenn) 170 F. Supp 792. Moreover, any choice or need to seek interpleader relief is the Plaintiff's sole fault, or that of third-parties. I am innocent and proceeding in good faith. My claim was made at the invitation of the Plaintiff after it made a unilateral determination not to pay the Jennifer Barbour's claim. My subsequent communications with the Plaintiff merely were to obtain the payment promised.[8]

12.    I reserve the right to assert any and all defenses which are supported by facts learned through discovery or at trial or hearing.

## DEFENDANT'S REQUEST FOR RELIEF

I request the following:

1.     Deny Plaintiff's request for interpleader relief, deny Plaintiff's request for discharge, order the Plaintiff to distribute my mother's insurance proceeds in the "order of precedence" to each of my mother's children (including interest), and decide my counterclaim;

---

[8] The Defendant notes that Jennifer Barbour's claim for my mother's insurance proceeds, the insurance company's denial, and Jennifer Barbour's continued attempts to secure the proceeds after denial by the insurance company, were not known to me until late May 2007. I do not know whether other persons who signed affidavits did so with full knowledge of what was going on; I initially was not fully advised.

2.    In the alternative,[9] deny Plaintiffs request for discharge, offer immediate mediation[10] to attempt resolution of the proper distribution of my mother's life insurance proceeds and Defendant's counterclaim, and issue a scheduling order and set a trial date aimed at determining all matters if mediation fails;

3.    Award costs, attorney fees and other monies as sanctions against the Plaintiff for providing misleading and incomplete information to the Court;

4.    Do not grant payment by Jamilla Lankford of her alleged costs and expenses without a hearing or obtaining additional evidence. I reserve the right to dispute her entitlement to these costs and assert (among other things) that the costs and expenses were unilaterally (by her and Jennifer Barbour) incurred in blatant disregard of my stated and known interests and/or desires.

Respectfully submitted,

Carolyn C. Steptoe
Proceeding Pro Se
1257 Lawrence Street, NE
Washington, DC  20017
(202) 636-8191
carolynsteptoe@aol.com

---

[9] Assuming the Court concludes interpleader is appropriate.
[10] Given the large number of *pro se* defendants, and the limited amount of insurance proceeds, the Defendant asks for a streamlined process to ensure the insurance proceeds are not eaten up by attorney fees and litigation costs.

## DEFENDANT CAROLYN C. STEPTOE'S COUNTERCLAIM
## AGAINST METROPOLITAN LIFE INSURANCE COMPANY

Pursuant to Rule 22 (a) of the Federal Rule of Civil Procedure, the Federal Rule of Civil Procedure governing counterclaims and in reliance on *Star Insurance Co. v Cedar Valley Express, LLC et. Al.*, 273 F. Supp. 2d 38 (D.C.D.C. 2002), I seek a finding of liability and compensatory and punitive damages against Metropolitan Life Insurance Company. In support of the my claim, I state the following:[11]

(1) On or about February 2007, the Plaintiff denied Jennifer Barbour's claim for 100 percent of the proceeds of my mother's life insurance policy; thereafter, Plaintiff engaged in a dispute with her and other of my siblings regarding its decision;

(2) Notably, in subsequent support of her claim, Jennifer Barbour relied on an affidavit submitted by one of Plaintiff's former or present employees and/or agents, Mary Lomax. Mary Lomax is both the Plaintiff's signing official and a witness on each of my mother's beneficiary designations.

(3) Plaintiff, through its employee and/or agent negligently and/or intentionally breached its contractual and fiduciary duty to Julia W. Barbour and me (one of her actual or natural beneficiaries), and violated the FEGLI statute to my detriment, by acting as a witness to Ms. Barbour's beneficiary designation and acting as an agent for a person with a direct financial interest in payment under the policy;

(4) In or about early June 2007, the Plaintiff invited me to file a claim for a share of my mother's insurance proceeds; Plaintiff assured me I would be paid in the

---

[11] For purposes of this counterclaim, I incorporate by reference the facts and argument contained in my defenses and affirmative defenses.

"order of precedence" set out in the FEGLI statute;  I filed a claim in or about July 2007;

(5) From that point until the instant complaint was filed, the Plaintiff (through employees and/or agents, Linda Rivera, Steve Delucie) knowingly, intentionally, willfully, maliciously and recklessly misled me into thinking they Defendant would pay me my share of the insurance proceeds

(6) On information and belief, the Plaintiff never intended to pay me my share of the insurance proceeds;

(7) On information and belief, the Plaintiff knowingly, intentionally, maliciously, recklessly and in bad faith lured me into a "false dispute" with my siblings by inviting me to file a claim it never intended to pay;

(8) The Plaintiff, who was engaged in a dispute with Jennifer Barbour, created this "false dispute" to extricate itself from liability for the negligent and/or intentionally wrongful actions of its employee and/or agent, Mary Lomax. Contrary to the FEGLI statute and the Plaintiff's contractual and fiduciary duties, Ms. Lomax acted as both an official and witness on my mother's beneficiary designation, and as an agent for Jennifer Barbour, a person with a fiduciary interest in my mother's insurance policy.

(9) While the full extent and motive of Ms. Lomax' conduct is unknown to me at this time, it was improper and/or illegal and potentially exposed the Plaintiff to direct and increased liability if it made a determination on the claim.  Seeking to avoid exposure and increased liability for its misconduct, the Plaintiff created a "false dispute" that it could shift to this Court for resolution.

(10)The foregoing actions by the Plaintiff (Ms. Lomax' actions and Plaintiff's actions in relation to my request for payment) were negligent and/or knowing, intentional, willful, wanton reckless, malicious and engaged in bad faith, and, among other things, constituted intentional infliction of emotional distress, material misrepresentation, fraud, and tortuous interference with and breach of contract, and breach of fiduciary duty.

(11) I suffered emotional distress, including anger, stress, confusion, sadness, embarrassment, humiliation, anxiety, isolation, despair alienation of affection and inconvenience as a result of Plaintiff's actions; I should be compensated. I also incurred costs, expenses and loss of valuable time, and suffered financial burden and hardship. The Plaintiff should be punished monetarily because of its conduct and to deter such action in the future

For the foregoing reasons, I seek damages in the amount of $750,000.00 against the Defendant Metropolitan Life Insurance Company, and an award of reasonable costs and attorney fees.

Respectfully submitted,

Carolyn C. Steptoe
Proceeding Pro Se
1257 Lawrence Street, NE
Washington, DC 20017
(202) 636-8191
carolynsteptoe@aol.com

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this date, November 26, 2007, the foregoing *Answer Of Carolyn C. Steptoe To Complaint In Interpleader* and *Defendant Carolyn C. Steptoe's Counterclaim Against Metropolitan Life Insurance Company* were filed, via hand delivery, with the U.S. District Court for the District of Columbia in the above-captioned case.

I further certify that a copy of both documents was served, via first class mail on the following :

Marsha S. Culler
11519 Sequoia Lane
Beltsville, MD 20705


Adam A.D. Barbour
901 6th Street, SW, #606
Washington, DC 20024

Jerome C. Rhines
11048 Anietem Drive
Alta Loma, CA 91737

Veronica Vera
5203 Woodlawn Place
Bellaire, TX 77401

Barry McCoy Tapp
TAPP & ASSOCIATES
14662 Cambridge Circle
Laurel, MD 20707-3733
*Attorney for Defendant Jordan Funeral*

Jacinto A. Rhines
1764 W. 24th Street
Los Angeles, CA 90018

Jennifer Barbour
901 6th Street, SW, #606
Washington, DC 20024

Julie S. Lee
607 Bridle Lane
Birmingham, AL 35243

Julian P. Steptoe
3010 Wilshire Boulevard, #299
Los Angeles, CA 90010

Jesse A. Rhines
2122 Pico Boulevard, #D
Los Angeles, CA 20024

Carolyn C. Steptoe
1257 Lawrence Street, NE
Washington, DC 20017

Ronda B. Esaw, Esq.
McGuire Woods LLP
1750 Tysons Boulevard, Suite 1800
McLean, VA 22102
*Attorney for Plaintiff MetLife*

John P. Rhines
5233 N. Capitol Street, #312
Washington, DC 20011

Jamilla R. Lankford
5203 Woodlawn Place
Bellaire, TX 77401

Carolyn C. Steptoe, *Pro Se*

## EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE
### Page 1 of 23

**VERBATIM TRANSCRIPTION --**    **VOICEMAIL MESSAGE FROM STEVE DELUCIE TO CAROLYN C. STEPTOE**
RECEIVED - Sept. 25, 1:21PM -- HOME PHONE

"Hi -- this message is for Carolyn Steptoe. Uh, This is Steve DeLucie calling from Federal Employees Group Life Insurance returning your phone call. Um, as you do know, um, we are Interpleading this case file, which means the court will determine who is entitled to the proceeds, um, you did receive that letter as you indicated, uh, and I spoke to our attorneys as they said that actually, that you should be getting notice I would think early this week or, you know, definitely during this week cause the notices from the courts have gone out so you should be hearing something any day now concerning this matter, uh, (cough) excuse me.

And I never did receive any emails concerning the status of the follow-up to my letter of August 2 but, as I did say, they did get the Complaint out so, you know, it's just a matter of you're dealing with attorneys now and the courts, so, so, that's really it, that's the next step.

So that's really it.  Thank you."

End message

-----Original Message-----
**From:**  carolynsteptoe@aol.com
**To:**  sdelucie@metlife.com; lrivera@metlife.com; nstorck@metlife.com; carolynsteptoe@aol.com; ccsteptoe@cs.com
**Sent:**  Thu, 13 Sep 2007 12:03 pm
Subject: STATUS: COURT PROCEEDING- Barbour, Julia W. - Claim # 2006 12 02987

Hello Metlife Reps DeLucie, Rivera and Storck -- What please is the status of this Court proceedings?

I have still not received any subsequent notification about the Court determination since receiving letter dated August 2, 2007 from Steve DeLucie.

I would appreciate hearing back regarding Court proceeding status.

Thank you and kind regards,

Carolyn C. Steptoe
Daughter of Julia W. Barbour

**Subj:**  Barbour, Julia W. - Claim # 2006 12 02987
**Date:**  8/20/2007 4:09:26 P.M. Eastern Standard Time
**From:**  Carolynsteptoe
**To:**  sdelucie@metlife.com, lrivera@metlife.com, nstorck@metlife.com
**CC:**  Carolynsteptoe, Ccsteptoe@cs.com

DHello -

I am in receipt of the letter from Steve DeLucie dated August 2, 2007 regarding above insurance benefits.

The letter indicates "We have determined that the claimants disagreed as to the meaning to the phrase on the designation of beneficiary form..."  and "we will interplead the proceeds of the insured's coverage... court of law will determine who is entitled to receive payment."

1)  When can I expect to hear from the Court about proceedings in this determination?

Let me say straightway that I am not confused one iota as to the meaning to the phrase on the designation of beneficiary form.  I have worked in law firms over 25 years; "Trustee" means just that; "beneficiary" is an completely different meaning altogether.

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
Page 2 of 23

My Mother had no designated "beneficiary."  Metlife recognized my Mother had no designated beneficiary.  This is clearly stated on the attached letter from case worker Ms. Linda Riveria to my brother Jesse Rhines, PhD/

Further, Metlife Unit Manager, Mr. Steve DeLucie's subsequent explanation to me as to delay in payment makes no reference whatsoever to any issue of beneficiary (see below).  Rather, this Unit Manager's sole focus dealt with Metlife's efforts to verify the exact number of survivors (children and descendants of deceased children).

I am puzzled that now, that Metlife asserts the delay is based on "claimants disagreed as to the meaning to the phrase on the designation of beneficiary form."  This is contrary to previously stated and inferred statements; Metlife certainly asserted in writing that my Mother had no designated beneficiary.  Rather, based on emails from both Ms. Riveria and Mr. DeLucie (and various phone conversations with other children), Metlife's sole criteria to paying was to receive claims from "half/7" of my Mother's children.  To my knowledge and based on documentation I possess, Metlife never asserted to us their issue with beneficiary designation.

I was told by Ms. Riveria and Mr. DeLucie there were only 4 claims filed by my Mother's children (Jennifer Barbour, Marsha Steptoe Culler, Julie Steptoe Lee and Carolyn C. Steptoe).  Of these 4 claims, I understand only 1 indicated a beneficiary; others indicated no beneficiary.

Metlife indicated my Mother designated no beneficiary.

With that, when can I expect to hear about the next step in Court proceedings involving this payout.  I am also very interested in understanding what happened whereby Metlife shifted focus on its original "no beneficiary designation determination" in this claim.

Very kind regards,

Carolyn C. Steptoe
Daughter of Julia Watson Barbour
202-636-8191


| | |
|---|---|
| **Subj:** | **Nina Pollan/Ins/MetLife/US is out of the office.** |
| **Date:** | **8/3/2007 3:13:22 P.M. Eastern Standard Time** |
| **From:** | nstorck@MetLife.com |
| **To:** | Carolynsteptoe@aol.com |

*Sent from the Internet (Details)*


I will be out of the office starting  08/03/2007 and will not return until 08/06/2007.

I will respond to your message when I return.


Forwarded Message:

| | |
|---|---|
| **Subj:** | **Barbour, Julia Cl#2006 12 02987** |
| **Date:** | **7/30/2007 1:30:47 P.M. Eastern Standard Time** |
| **From:** | Carolynsteptoe |
| **To:** | nstorck@metlife.com, sdelucie@metlife.com, lrivera@metlife.com |
| **CC:** | Ccsteptoe@cs.com, Carolynsteptoe |

Good afternoon -- I wanted to check on the status of the equitable distribution payout proceedings by Metlife/FEGLI against my Mother's insurance benefits to her 12 legally entitled children.

Specifically please, if you do not mind

1) To date, what are the total # of formally claims received?

## EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE
### Page 3 of 23

2) Has FEGLI/MetLife determined that personally submitted "affidavits and/or letters" from some of my Mother's children asserting who they believe my Mother "intended" as beneficiary - are invalid/null and void -- or valid?

3) Does Metlife/FEGLI have the right and/or authority to determine, conclude and/or interpret the beneficiary "intention" of an employee?  If so, how and by what standard?

4) As mentioned previously, is FEGLI/MetLife still waiting to receive 7 claims form 7 (half) of my Mother's children before even
consider paying beneifts?

5) When might I/we expect to receive "determination" notice?  I formally filed my claim in May 2007; my Mother passed December 2006.

Thank you and best regards.


Carolyn C. Steptoe
Daughter of Julia Watson Barbour



Subject: Re: Barbour, Julia Cl#2006 12 02987
To:        "        Ccsteptoe" <Ccsteptoe@cs.com>
From:         "Nina Storck" <nstorck@metlife.com>
Date:         Fri, 20 Jul 2007 10:00:39 -0400

Ms. Steptoe,

There is no other information we are requesting from you at this time.
Nina Storck, Director


          Ccsteptoe@cs.com
          07/20/2007 09:04                    To
          AM              nstorck@metlife.com
                                  cc
                               Subject
                  Re: Barbour, Julia Cl#2006 12 02987



Thank you Ms. Storck.

Yes, I am aware of certain "affidavits/letters" sent by some siblings that indicate their belief my Mother "intended" youngest sister Jennifer Barbour as beneficiary.

Jennifer Barbour might be considered "Trustee" - however, she is certainly NOT the legitimate or legal beneficiary.  If you need supporting documentation from me, I am happy to provide.

Further, according that what was told and written to me by Ms. Riveria – I also understand such "affidavits/letters" in themselves considered invalid by MetLife/FEGLI.

My understanding from Ms. Riveria was that if appropriately determined payees want their payments assigned to someone else, they are to still submit claims and it is their responsibility to give money to that person, not FEGLI's.

Please let me know what information I can provide in order to expedite final determination of this process and equitable distribution of my portion of the monies.

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 4 of 23**

Thank you again.  Very kind regards,

Carolyn C. Steptoe
(pardon typos)

| | |
|---|---|
| Subj: | Re: Claims Filed to date - Re: Barbour, Julia Cl#2006 12 02987 |
| Date: | 7/12/2007 9:28:51 A.M. Eastern Standard Time |
| From: | Carolynsteptoe |
| To: | sdelucie@metlife.com |
| CC: | Ccsteptoe@cs.com, JLee179319, lrivera@metlife.com |

Thank you very much.

-----Original Message-----

| | |
|---|---|
| From: | sdelucie@metlife.com |
| To: | carolynsteptoe@aol.com |
| Cc: | Carolynsteptoe@aol.com; Ccsteptoe@cs.com; JLee179319@aol.com; lrivera@metlife.com |
| Sent: | Thu, 12 Jul 2007 10:23 am |

Subject: Re: Claims Filed to date - Re: Barbour, Julia Cl#2006 12 02987

We have received four claim forms.

Steven DeLucie

carolynsteptoe@aol.com

| | | |
|---|---|---|
| carolynsteptoe@aol.com 07/12/2007 09:42 AM | To | Carolynsteptoe@aol.com, sdelucie@metlife.com |
| | cc | Ccsteptoe@cs.com, JLee179319@aol.com, lrivera@metlife.com |
| | Subject | Claims Filed to date - Re: Barbour, Julia Cl#2006 12 02987 |

Hello Ms. Rivera and/or Mr. deLuci -- Would you mind pls. confirm how many claims you have received to date?

Thank you and kind regards,

Carolyn C. Steptoe
Daughter Julia Watson Barbour

EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE
Page 5 of 23

----------------
Forwarded Message:
Subj:     **Linda Rivera/Sales/Ind/MetLife/US is out of the office.**
Date:     **7/11/2007 9:06:28 A.M. Eastern Standard Time**
From:     **lrivera@MetLife.com**
To:       **Carolynsteptoe@aol.com**
Sent from the Internet (Details)


I will be out of the office starting  07/11/2007 and will not return until
07/12/2007.

I will respond to your message when I return.



----------------
Subj:     Re: 2ND request: please respond --- Re: Barbour, Julia Cl#200612 02987
Date:     7/10/2007 3:06:07 P.M. Eastern Standard Time
From:     ccsteptoe@cs.com
To:       sdelucie@metlife.com, carolynsteptoe@aol.com, carolynsteptoe@aol.com, ccsteptoe@cs.com,
          jlee179319@aol.com, lrivera@metlife.com
Sent from the Internet (Details)

Dear Mr. deLucie -- Thank you for this email.  My email preference is because it is easier and clearer to address such
a serious process in writing.  As you can appreciate, even this written response remains very vague and non-
procedural to me.  Frankly, too much definitive information is lost is a telephone conversation versus written
communiques.

Would you mind at least providing me the full contact information of your immediate supervisor?  I would appreciate
receiving it.

Thank you and kind regards,

Carolyn C. Steptoe
Daughter of Julia Watson Barbour



Original Message:
----------------
From:     sdelucie@metlife.com
Date:     Tue, 10 Jul 2007 15:52:24 -0400
To:       carolynsteptoe@aol.com, carolynsteptoe@aol.com, ccsteptoe@cs.com,
          JLee179319@aol.com, lrivera@metlife.com
Subject:  Re: 2ND request: please respond --- Re: Barbour, Julia Cl#200612
          02987

Dear Carolyn,

I apologize that you are still unclear with my previous response.  Our procedure is just as I said: when this office is
making payment to children and descendants of deceased children it is necessary that we have confirmed the exact
number of survivors.  If we do not confirm the number of children and descendants of deceased children of each
insured when making payments we could subject ourselves to numerous incorrect payments.

It is for this reason that we wait to "receive the majority of the claim forms" when making payments to children and
descendants of deceased children.  This is done so that one child's information is consistent with another and so on.
This is our standard procedure to ensure proper distribution.

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 6 of 23**

Rather then the two of us keep sending E-mails back and forth, I suggest that you call me at 201-395-7920.  Maybe verbally I can clear up any questions you have.

Steven DeLucie

| | | |
|---|---|---|
| carolynsteptoe@aol.com | | |
| 07/10/2007 01:26 PM | **To** carolynsteptoe@aol.com, sdelucie@metlife.com, JLee179319@aol.com, ccsteptoe@cs.com | |
| | **cc** lrivera@metlife.com | |
| | **Subject** 2ND request: please respond --- Re: Barbour, Julia Cl#2006 12 02987 | |

Dear Mr. DeLucie --

With the holiday weekend, I am sure you are likely busy catching up but, if you do not mind please, I am still kindly waiting for your response to my last 2 emails asking for definitive FEGLI procedure as relates to your statements concerning receipt of "consistent information."

If you would not mind pls. taking a moment to review the last 2 emails, and respond therein, I would greatly appreciate it.  The last 2 emails are below this message.

As a second request, would you mind pls. provideing me the full contact information of your superior; what is his/her full name, address, email and direct dial?

Thank you and very kind regards,

Carolyn C. Steptoe
Daughter of Julia Watson Barbour

-----Original Message-----
**From:**    carolynsteptoe@aol.com
**To:**        sdelucie@metlife.com; JLee179319@aol.com; ccsteptoe@cs.com
**Cc:**        lrivera@metlife.com; ccsteptoe@cs.com
**Sent:**      Fri, 6 Jul 2007 3:16 pm
Subject: Re: Barbour, Julia Cl#2006 12 02987

Dear Mr. DeLucie --

Thank you for your email to both my sister, Julie Steptoe Lee, and myself.

However, if you don't mind and as relates to my specific email to you regarding definitive FEGLI procedure, I would prefer please that you kindly respond to the questions I posed.

Unfortunately for me, your email response reads more as a general overview rather than a definitive FEGLI procedure.  Based on this email response, I am still very unclear what are FEGLI procedure as to your previous statements that "information must be consistent from each child or descendant" and "This office is not going to make any payments until we receive additional claim forms providing consistent information so that we can determine who the proper payees are."

## EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE
### Page 7 of 23

As Unit Manager, given your previous statements, it is clear you are comfortable with certain procedural knowledge involving disbursing (or not disbursing) monies.  It also appears you understand how FEGLI handles inconsistent information from claimants.

However, the vagueness of your email still does not provide definitive FEGLI procedural clarity.  Rather, it keeps me in limbo as to what to expect or not expect.

With that, I am left with the sense that equitable distribution is more subjective than based on definitive FEGLI procedure.  Again, as a Unit Manager, I am certain whatever is the established FEGLI procedure as to determining "consistent information"  and the subsequent handling therein,
can be easily accessed and outlined more clearly in your answers to me.

With that, if  you would kindly respond directly to my previously submitted questions, I believe your answers will help me understanding what is the definitive FEGLI process as relates to this matter.

I simply seek to specifically understand what and when I/we might expect, (or not expect), equitable distribution of monies among my Mother's 13 children.  As you state, 1 child born to my Mother was adopted and therefore not entitled.

I look forward to receiving your response to my questions.  Thank you and kind regards,

Carolyn C. Steptoe
Daughter of Julie Watson Barbour

********


**Dear Mr. deLucie** -- Thank you for your email response.  This information was helpful.  I have a few followup responses to 3 statements please:

YOUR 3 STATEMENTS OF CONCERN:

(1) - "await the majority of the claim forms will provide the consistent information to ensure proper distribution"

(2) "The information must be consistent from each child or descendant"

(3) "This office is not going to make any payments until we receive additional claim forms providing consistent information so that we can determine who the proper payees are."


QUESTION #1:  Does this statement mean if "a majority of the claim forms" list 12 children, and 1 or 2 children list 13, then FEGLI will not pay?

I myself listed 13 in direct response to Part D (b) "If there is no surviving widow or widower, list the child or children of all the deceased's marriages (included adopted children and children born out-of-wedlock."  I did not include a parenthetical that the 13th child, Victoria, was adopted since, as a law firm legal administrator, the language of this statement reads ambiguously and vaguely to me.  With that, and to avoid the appear of deliberate omission, I provided the answer as straightforwardly as possible.

QUESTION #2:  What is the meaning of "adopted children" in this statment, children my Mother adopted or children my Mother placed up for adoption?

QUESTION #3:  If the majority of claims do not list 13 children, rather 12 -- presumably given their understanding that a child born to my Mother but later adopted is not legally entitled to benefits, what is the inconsistency if 2 or 3 claims list 13 children?

Can not FEGLI still equitably distribute to 13 children and hold the unclaimed monies in reserve?

I pose these because given your statement #2 "The information MUST be consistent from each child or descendant" the claims you have received to date appear inconsistent.

QUESTION #4:  With that, is there a likelihood and/or probability FEGLI will never equitably distribute benefit payments?

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 8 of 23**

YOU STATE: "We have received 4 claim forms. Out of the 4 only 3 told us how many children the insured had. However out of the 3 that did inform us two said there was 12 children and one indicated there is 13. Of the 4, one informed us that the 13th child was adopted away from the insured."

QUESTION #5:  What "consistent [specific] information" parameters are you looking at to "ensure proper distribution?"

QUESTION #6:  Again, I am unclear why FEGLI cannot still equitably distribute to 13 children and hold the unclaimed monies in reserve?  Would not the same process be done if all claims reflect 12 children, yet only 5 claims are submitted, the remaining monies would be held in reserve for specific period, correct?

I look forward to hearing back from you.

Thank you and kind regards,

Carolyn C. Steptoe
Daughter of Julia Watson Barbour
(pardon typos)


-----Original Message-----
| | |
|---|---|
| From: | sdelucie@metlife.com |
| To: | JLee179319@aol.com; carolynsteptoe@aol.com; ccsteptoe@cs.com |
| Cc: | lrivera@metlife.com |
| Sent: | Fri, 6 Jul 2007 11:25 am |
| Subject: | Barbour, Julia Cl#2006 12 02987 |

Dear Julie and Carolyn,

I am writing to the both of you at the same time as you both seem to be raising the same issues. I hope to clarify your concerns.

As you both know, when this office is making payment to children and descendants of deceased children it is necessary that we have confirmed the exact number of survivors. If we did not confirm the number of children and descendants of deceased children of each insured when making payments we could subject ourselves to numerous incorrect payments.

It is for this reason that we wait to "receive the majority of the claim forms" when making payments to children and descendants of deceased children. This is done so that one child's information is consistent with another and so on. This is our standard procedure to ensure proper distribution.

In your particular case, from the few claims we have received, there was some question about whether the insured had 12 or 13 children. It appears that your mother did have 13 children but the 13th child was adopted away from your mother. If that is the case that child would not be entitled to FEGLI benefits.

We need to make sure that other children will not come forward and list on their claim form a different number of children (11, 14, 15, etc.) or indicate that the insured had a deceased child with descendants. That is the reason why we await a majority of the claim forms.

Please be assured that we are looking to make payment to those entitled as expeditiously as possible. I hope this clears up your questions.

Steven DeLucie
Unit Manager

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 9 of 23**

-----Original Message-----
| From: | jlee179319@aol.com |
| To: | sdelucie@metlife.com |
| Sent: | Thu, 5 Jul 2007 1:04 pm |
| Subject: | Fwd: PLS. RESPOND - FEGLI Case # 20061202987, Julia Watson Barbour |

I submitted my claim form. 5th one you received, or should received shortly.  I think FEGLI's form is ambiguous as to whether children given up for adoption should be included.  I, for one, did not think Victoria should be included, but my sister Carolyn Steptoe thought she should be.  Others apparently thought she should not be included.  In an exercise of caution, and given the ambiguity, I included Victoria.  In short, I do not think you have an inconsistency as to whether Victoria existed or was adopted -- only whether we were required to list her.  I agree with Carolyn's suggestions that you should distribute based on 13 -- if you have a question.  Otherwise, distribute based on 12.   I sent you an email last week to a different address -- at OPM.  I'll forward it to you later.  Thanks, Julie Lee.

-----Original Message-----
| From: | ccsteptoe@cs.com <ccsteptoe@cs.com> |
| To: | sdelucie@metlife.com; carolynsteptoe@aol.com; carolynsteptoe@aol.com; ccsteptoe@cs.com; lrivera@metlife.com; lrivera@metlife.com |
| Sent: | Thu, 5 Jul 2007 1:15 pm |
| Subject: Re: | PLS. RESPOND - FEGLI Case # 20061202987, Julia WatsonBarbour |

Dear Mr. deLucie -- Thank you for your email response.  This information was helpful. I have a few followup responses to 3 statements please:

YOUR 3 STATEMENTS OF CONCERN:

(1) - "await the majority of the claim forms will provide the consistent information to ensure proper distribution"

(2) "The information must be consistent from each child or descendant"

(3) "This office is not going to make any payments until we receive additional claim forms providing consistent information so that we can determine who the proper payees are."

QUESTION #1:  Does this statement mean if "a majority of the claim forms" list 12 children, and 1 or 2 children list 13, then FEGLI will not pay?

I myself listed 13 in direct response to Part D (b) "If there is no surviving widow or widower, list the child or children of all the deceased's marriages (included adopted children and children born out-of-wedlock."  I did not include a parenthetical that the 13th child, Victoria, was adopted since, as a law firm legal administrator, the language of this statement reads ambiguously and vaguely to me.  With that, and to avoid the appear of deliberate omission, I provided the answer as straightforwardly as possible.

QUESTION #2:  What is the meaning of "adopted children" in this statment, children my Mother adopted or children my Mother placed up for adoption?

QUESTION #3:  If the majority of claims do not list 13 children, rather 12 -- presumably given their understanding that a child born to my Mother but later adopted is not legally entitled to benefits, what is the inconsistency if 2 or 3 claims list 13 children?

Can not FEGLI still equitably distribute to 13 children and hold the unclaimed monies in reserve?
I pose these because given your statement #2 "The information MUST be consistent from each child or descendant" the claims you have received to date appear inconsistent.

**EXHIBIT 1: ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 10 of 23**

QUESTION #4: With that, is there a likelihood and/or probability FEGLI will never equitably distribute benefit payments?

YOU STATE: "We have received 4 claim forms. Out of the 4 only 3 told us how many children the insured had. However out of the 3 that did inform us two said there was 12 children and one indicated there is 13. Of the 4, one informed us that the 13th child was adopted away from the insured."

QUESTION #5: What "consistent [specific] information" parameters are you looking at to "ensure proper distribution?"

QUESTION #6: Again, I am unclear why FEGLI cannot still equitably distribute to 13 children and hold the unclaimed monies in reserve? Would not the same process be done if all claims reflect 12 children, yet only 5 claims are submitted, the remaining monies would be held in reserve for specific period, correct?

I look forward to hearing back from you.

Thank you and kind regards,

Carolyn C. Steptoe
Daughter of Julia Watson Barbour
(pardon typos)


Original Message:
------------------
| From: | sdelucie@metlife.com |
| Date: | Thu, 5 Jul 2007 10:52:57 -0400 |
| To: | carolynsteptoe@aol.com, carolynsteptoe@aol.com, ccsteptoe@cs.com, lrivera@metlife.com, lrivera@metlife.com |
| Subject: | Re: PLS. RESPOND - FEGLI Case # 20061202987, Julia WatsonBarbour |

This is in response to your questions below. When this office is making payment to children and descendants of deceased children it is necessary that we have confirmed the exact number of survivors. If we did not confirm the number of children and descendants of deceased children of each insured when making payments we could subject ourselves to numerous incorrect payments. Therefore, we will not start releasing payments to children and descendants of deceased children until we are sure who is entitled. As a general rule we await the majority of the claim forms to be received before we begin making any payments to ensure proper distribution. The information must be consistent from each child or descendant. Unfortunately in your particular case we do not have consistent information yet. We have received 4 claim forms. Out of the 4 only 3 told us how many children the insured had. However out of the 3 that did inform us two said there was 12 children and one indicated there is 13. Of the 4, one informed us that the 13th child was adopted away from the insured.

This office is not going to make any payments until we receive additional claim forms providing consistent information so that we can determine who the proper payees are. I hope this information is helpful.

Steven DeLucie
Unit Manager

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 11 of 23**

carolynsteptoe@ao
l.com

To

07/03/2007 10:10
AM

sdelucie@metlife.com,
lrivera@metlife.com,
ccsteptoe@cs.com,
carolynsteptoe@aol.com

cc

Subject

PLS. RESPOND - FEGLI Case #
20061202987, Julia Watson Barbour

Dear Mr. DeLucie -- I understand Ms. Rivera is on vacation.  As Unit
Manager, would you kindly review and respond this this email, specifically
the first 2 paragrapha

Thank you and best regards.

Carolyn C. Steptoe
Daughter of Julia Watson Barbour
(202) 636-8191 - home
(202) 589-2569 - office

----Original Message----
**From:**      Carolynsteptoe@aol.com
**To:**        Carolynsteptoe@aol.com; lrivera@metlife.com; Ccsteptoe@cs.com
**Sent:**      Fri, 29 Jun 2007 5:25 am
**Subject:**   PLS. RESPOND - FEGLI Case # 20061202987, Julia Watson Barbour

(CORRECTED COPY; DISREGARD PREVIOUS SUBMISSION)

Dear Ms. Rivera --

I need to know please why you must wait for at least 7 claims to be filed before paying my portion?

I would like to receive a full explanation as to why, when no beneficiary is designated nor a surviving spouse, that insurance
benefits will not be paid to children and descendants of any deceased children UNTIL AT LEAST SURVIVING
CHILDREN HAVE FILED CLAIMS????

Given that maybe 7 siblings will not file claims; or even if they do; why should payment to me be delayed because half of my
Mother's children have not filed claims?  I saw nothing on the claims form that said benefits will not be paid to children or
descendants of surviving children UNTIL AT LEAST HALF HAVE FILED CLAIMS.

My receiving my portion has nothing to do with what the other siblings will do.  Since filing my claim in May 2007, I've
understood that, since my mother has no beneficiary, her children are entitled to equitable distribution of her insurance benefits.

FEGLI rightfully concludes that my Mother did not designate a beneficiary.  My Mother does not have a surviving spouse.  With
that, FEGLI must pay the insurance benefits to the children and descendants of any deceased children.

**There is nothing that states in FEGLI language that, given the number of surviving children, before processing a claim, at
least half of the total number of children's claims must be received.**

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 12 of 23**

In this case, Metlife has at least 3 claims from my Mother's children.  Each of the 3 children's claim is required to provide information.  Presumably, all contact information needed to corroborate and match the names of Mother's children are on the 3 claims you've already received.

My Mother passed in January 2007; I completed my claim in May, you and I spoke in June, and still, in July, my equitable distribution has not been paid.

Since FEGLI will not pay except in equitable distributable, my portion is 1/12th or 1/13th of the total policy.  That portion should be immediately aid.  Me receiving my portion should not be based on you have not processing payment until at least 7 claims are received..  Where is that language stated?  If that's the case, FEGLI likely would never process insurance claims.

**And of course -- that just makes no sense whatsoever.  FEGLI indicates the money will just sit until claimed; well, I am claiming, therefore, my portion should not just sit - my portion should be paid to me immediately!**

**And after that, if there remains is money left because no siblings claimed their portion, then those remaining benefits too are to be equitably distributed among those that filed claims.**

**The notion that insurance benefits will not be paid to children UNTIL at least half filed claims is ridiculous and unfair.**

I would like to receive a full explanation as to why, when no beneficiary is designated nor a surviving spouse, that insurance benefits will not be paid to children and descendants of any deceased children UNTIL AT LEAST HALF HAVE FILED CLAIMS????

Very truly yours,

Carolyn C. Steptoe
Daughter of Julia Watson Barbour

P.S.  Please provide me the full name, address, telephone number and email of your supervisor and his/her supervisor.

I would appreciate too if you would kindly forward this letter to:

C. Robert Henrikson, Chairman of the Board,
President and Chief Executive Officer of MetLife, Inc.

-----Original Message-----
From:        carolynsteptoe@aol.com
To:          lrivera@metlife.com
Sent:        Thu, 28 Jun 2007 5:11 pm
Subject:     Re: P.S. - Re: FEGLI Case # 20061202987, Julia Watson Barbour

Ms. Rivera – 2 questions please

1) What happens if 7 claims are not received?

2) Is there a certain amount of time that, by law, has to lapse before you release my portion if 7 claims from siblings not received (6 months, 1 year, 5 years)?

EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE
Page 13 of 23

-----Original Message-----
From:        Linda Rivera <lrivera@metlife.com>
To:          carolynsteptoe <carolynsteptoe@aol.com>
Sent:        Thu, 28 Jun 2007 4:36 pm
Subject:     Re: P.S. - Re: FEGLI Case # 20061202987, Julia Watson Barbour

The 10 day period is after I recieve the 7 claims, then I can begin to
process this claim.

Linda M. Rivera
Case Management Specialist
201-395-7957

                    carolynsteptoe@ao
                    l.com
                                                                    To
          06/28/2007 11:55         lrivera@metlife.com
          AM                                                        cc

                                                               Subject
                              P.S. - Re: FEGLI Case #
                              20061202987, Julia Watson Barbour


Ms. Rivera - Trying again to understand this process.  How much time pls. will you let
pass if not only a few of us actually file a claum, and at least 7 never file?

Will those of us who filed, not receive our portion, regardless of how much time
lapses, if others don't file?  I thought there was a 10 day period you indicated in
your letter to others?

Or, is there something else you will do?  Pls. advise what I can expect as a next step
given the 10 day period and if others delay or simply do not file a claim?

Thank you.

Carolyn C. Steptoe


-----Original Message-----
From:        Linda Rivera <lrivera@metlife.com>
To:          carolynsteptoe <carolynsteptoe@aol.com>
Sent:        Thu, 28 Jun 2007 10:53 am
Subject:     Re: FEGLI Case # 20061202987, Julia Watson Barbour

As of today, I have not recieve more claims forms,

Linda M. Rivera
Case Management Specialist
201-395-7957

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 14 of 23**

carolynsteptoe@ao
l.com

                                                                To

06/28/2007 10:07         carolynsteptoe@aol.com,
AM                       lrivera@metlife.com

                                                                cc

                                                        Subject
                         FEGLI Case # 20061202987, Julia
                         Watson Barbour

Hello Ms. Rivera -- I wanted to check pls. on the status of the money distribution
from my Mother's insurance policy.  Have you rec'd the req'd 7 claims yet in order to
distribute me my portion?

Please let me know.

Thank you and kind regards,

Carolyn C. Steptoe
Daughter of Mrs. Julia Watson Barbour
(202) 636-8191
(202) 589-2569 - work


-----Original Message-----
From:         carolynsteptoe@aol.com
To:           lrivera@metlife.com
Sent:         Thu, 14 Jun 2007 4:31 pm
Subject:      Re: FEGLI Case # 20061202987, Julia Watson Barbour

Thank you very much Ms. Rivera.  Hopefully, more will come in soon.  I am looking
forward to receiving my equitable portion.

Very kind regards,

Carolyn Cecelia Steptoe



----Original Message-----

From:         Linda Rivera
To:           carolynsteptoe
Sent:         Thu, 14 Jun 2007 4:09 pm
Subject:      Re: FEGLI Case # 20061202987, Julia Watson Barbour

so far I have yours, Marsha  and Jennifer

Linda M. Rivera
Case Management Specialist
201-395-7957

**EXHIBIT 1: ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 15 of 23**

| carolynsteptoe@aol.com | | |
|---|---|---|
| | | **To** |
| 06/14/2007 12:26 PM | lrivera@metlife.com | |
| | | **cc** |
| | | **Subject** |
| | Re: FEGLI Case # 20061202987, Julia Watson Barbour | |

Ms. Rivera -- Thank you for your reply.  May I ask pls., besides mine, how many claims do you have?

-----Original Message-----
From:       **Linda Rivera**
To:         **carolynsteptoe**
Sent:       **Thu, 14 Jun 2007 12:16 pm**
Subject:    Re: FEGLI Case # 20061202987, Julia Watson Barbour

Yes, I did tell Julie that I must have at least 7 out of the 12 claims before I can process this case. Please talk to the other siblings and see if they can send their claims in. I mail out all the claims forms to all the silbings about 2 weeks ago.

Linda M. Rivera
Case Management Specialist
201-395-7957

| carolynsteptoe@aol.com | | |
|---|---|---|
| | | **To** |
| 06/14/2007 10:04 AM | lrivera@metlife.com | |
| | | **cc** |
| | | **Subject** |
| | FEGLI Case # 20061202987, Julia Watson Barbour | |

Hello Ms. Rivera -- My sister, Julie Steptoe Lee, told me she spoke with you yesterday.  She said you and she spoke about specifics as to payment distribution, namely that those who have filed claims should receive their distribution now.

Since it has been over a month that I have filed my claim and over 2 weeks since I faxed to you my statement that I want to receive my portion directly, would you mind please confirming when I should receive my portion?

My sister, Julie Steptoe Lee, said you mentioned to her about awaiting receipt of about 7 claims from other siblings.  But, she also said, she mentioned to you, she did not believe any such rules or regulations exist. You may know Julie Steptoe Lee is a practicing attorney.

I certainly would like to receive my portion expeditiously.  Please let me know.

In terms of filing their own claims, must I wait the other children filing their claims or am I entitled to get my portion now?

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 16 of 23**

I look forward to hearing back from you.  Thank you and very kind regards.

Carolyn Cecelia Steptoe
(Daughter of Julia Watson Barbour)
1257 Lawrence Street, NE
Washington, D.C.  20017
(202) 636-8191/home
(202) 462-4260, x4/work
---------------


Forwarded Message:

| | |
|---|---|
| Subj: | Fwd: Respone from MetLife Pres |
| Date: | 7/2/2007 9:43:48 P.M. Eastern Standard Time |
| From: | JLee179319 |
| To: | steven.delucie@OPM.gov |

Mr. Delucie. I am Julia Barbour's ninth child.  Middle daughter.  Last week, I sent a claim for payment on insurance proceeds associate with her death.  I have this to say about my brother Jesse's letter to you and your response. One, his letter does not speak for me.  Up until your response, I had no real issue with FEGLI's actions regarding my mother's insurance -- to the degree I know FEGLI's actions.  I do, however, want payment of my claim immediately. One, I am aware that some members may, or may not, file a claim.  My share should not be tied up, in the absence of a court order, by the whether anyone else files a claim.  If there is a rule or law supporting the "7 claimant" delay, please cite it to me.  That simply is unfair.  Moreover, My share should not be tied up for housekeeping or workload management interests of FEGLI employees.  I am comfortable with any delay attributable to a statute, regulation and/or a reasonable time to process.  Two, I am aware that an issue exists regarding Victoria.  It seems to me, and I assume the rules bear this out, that you can distribute based on 13 children while you resolve the Victoria question as well as any other matters related to individual claims.  The reality is no one in the family will be able to tell you anything about this because Victoria was put up for adoption as newborn.

I have no idea what has been going on except to say that FEGLI needs to stay as close to process as possible and not give in to bullying or threats.  The reality is most of my mother's children know how to find their way to the courthouse and courts know how to handle their business.  No one, to my knowledge, has filed a court action.  In the absence of instruction by a court to do otherwise, please pay the claims asap.  This is my request.

I have no problem with FEGI's decision re distribution.  I understand that my mother did not set up a trust.  The law provides for what to do when this happens, and I am satisfied that the rule of law should govern this issue.

My mother was a remarkable woman and each of us loved her very much in our own way.

Thanks, Julie Lee.

---------------------------

EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE
Page 17 of 23

OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE
P.O. BOX 2627
JERSEY CITY, NEW JERSEY 07303-2627

June 20, 2007

Mr. Jesse A. Rhines Ph. D.
2122 Pico Blvd #D
Santa Monica, CA  90405

Re:    Insured – Barbour, Julia W.
       Claim Number – 2006 12 02987
       Amount of Insurance - $134,000

Dear Mr. Rhines:

This is in response to your recent telephone call on June 14, 2007 to Robert Henrikson, Chief Executive Officer, MetLife, regarding the benefits payable under the Federal Employee's Group Life Insurance (FEGLI) policy due to the death of Julia Barbour.

The FEGLI program is governed by the Federal Employees' Group Life Insurance Act, 5 U.S.C. §§8701 et seq. ("FEGLIA"), the regulations at 5 C.F.R., Part 870 and the FEGLI Policy.  The Office of Federal Employees' Group Life Insurance ("OFEGLI") is an administrative unit of MetLife, responsible for administering the claims process of the FEGLI program.  All record keeping for the FEGLI program is done by agencies of the federal government (for active employees) or by the policyholder, the United States Office of Personnel Management ("OPM") (for compensationers and retired employees).  OFEGLI becomes involved only following the death of an insured when documents from the deceased's personnel file that are relevant to adjudication of claims for his or her life insurance benefits are forwarded to MetLife.

This office has on file a designation of beneficiary form completed by Julia Barbour dated September 2, 1998, where she designated Jennifer Barbour as trustee.  We have been informed that there is no trust of Julia Barbour, therefore the FEGLI benefits would be payable under the order of precedence (copy enclosed) to the insured's children.

Some of the insured's children have indicated that they want their share of the proceeds to go to their sister, Jennifer Barbour.  We are currently waiting receipt of claim forms from all the children and release forms from those children wishing to release their share of the benefits.  In addition, we are trying to determine the number of children the insured had, twelve or thirteen.

Once we are able to determine the number of children of the insured, and we receive the majority of claim forms (seven), we will start to release the payments.

Whether you submit a claim form or not doesn't effect this office in making payment to the other children.  However, if after one year from the date of the insured's death you do not submit a claim we may divide your share of the benefits to the other children.  The benefits would not revert back to the Federal government.  Around the one year anniversary of the insured's death we would send you a letter informing you of our intentions.

Should you have any further questions or concerns, please do not hesitate to contact me at 201-395-7920.

Exhibit 1: Answer of Defendant CAROLYN C. STEPTOE

Page 17 a of 23

**OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE**
**P.O. BOX 2627**
**JERSEY CITY, NEW JERSEY 07303-2627**

June 20, 2007

Mr. Jesse A. Rhines Ph. D.
2122 Pico Blvd #D
Santa Monica, CA  90405

Re:    Insured – Barbour, Julia W.
       Claim Number – 2006 12 02987
       Amount of Insurance - $134,000

Dear Mr. Rhines:

This is in response to your recent telephone call on June 14, 2007 to Robert Henrikson, Chief Executive Officer, MetLife, regarding the benefits payable under the Federal Employee's Group Life Insurance (FEGLI) policy due to the death of Julia Barbour.

The FEGLI program is governed by the Federal Employees' Group Life Insurance Act, 5 U.S.C. §§8701 et seq. ("FEGLIA"), the regulations at 5 C.F.R., Part 870 and the FEGLI Policy.  The Office of Federal Employees' Group Life Insurance ("OFEGLI") is an administrative unit of MetLife, responsible for administering the claims process of the FEGLI program.  All record keeping for the FEGLI program is done by agencies of the federal government (for active employees) or by the policyholder, the United States Office of Personnel Management ("OPM") (for compensationers and retired employees).  OFEGLI becomes involved only following the death of an insured when documents from the deceased's personnel file that are relevant to adjudication of claims for his or her life insurance benefits are forwarded to MetLife.

This office has on file a designation of beneficiary form completed by Julia Barbour dated September 2, 1998, where she designated Jennifer Barbour as trustee.  We have been informed that there is no trust of Julia Barbour; therefore the FEGLI benefits would be payable under the order of precedence (copy enclosed) to the insured's children.

Some of the insured's children have indicated that they want their share of the proceeds to go to their sister, Jennifer Barbour.  We are currently waiting receipt of claim forms from all the children and release forms from those children wishing to release their share of the benefits.  In addition, we are trying to determine the number of children the insured had, twelve or thirteen.

Once we are able to determine the number of children of the insured, and we receive the majority of claim forms (seven), we will start to release the payments.

Whether you submit a claim form or not doesn't effect this office in making payment to the other children.  However, if after one year from the date of the insured's death you do not submit a claim we *may* divide your share of the benefits to the other children.  The benefits would not revert back to the Federal government.  Around the one year anniversary of the insured's death we would send you a letter informing you of our intentions.

Should you have any further questions or concerns, please do not hesitate to contact me at 201-395-7920.

Sincerely,

Steven DeLucie
Unit Manager, OFEGLI

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 18 of 23**

**JESSE ALGERON RHINES, Ph. D.**
**2122 PICO BLVD. #D**
**SANTA MONICA, CA 90405**
**310.399.7842**
**filmshorts@att.net**

June 13, 2007

**C. Robert Henrikson**, Chairman of the Board,
President and Chief Executive Officer of MetLife, Inc.

Re: FEGLI Case # 20061202987, Julia W. Barbour

Dear Mr. Henrikson,

My mother, Mrs. Barbour, died in November 2006 leaving an insurance policy with your company's
Office of Federal Employee's Group Life Insurance (FEGLI) that has caused some confusion among her
children.  I have attached relevant documents.

1.      How and by what means, legal or otherwise, was the determination made that Mrs.
        Barbour left no beneficiary?
2.      Eight (8) of Mrs. Barbour's Twelve (12) children have sent to FEGLI affidavits attesting
        that Mrs. Barbour's intention was for 100% of insurance payments go to only one (1) of
        her children.
3.      Ms. Linda Rivera of FEGLI sent me an email stating that once seven (7) claims were made
        she would begin equally distributing funds to Mrs. Barbour's twelve (12) children.  This is
        impossible, however, since 8 of the 12 forwarded affidavits.

Mr. Henrikson, I am not a lawyer and cannot figure out all of this but it has caused great
consternation within the family.  Will you please forward to me official documents showing how
MetLife will handle this case.

Thank you,


Jesse RHINES


----- Original Message -----

**From: Linda Rivera**
**To: jrhines@worldnet.att.net**
**Sent: Wednesday, June 13, 2007 5:41 AM**
**Subject: Re: case: 20061202987**


This benefits are payable to  all the children, the monies will be split evenly among all the children. If you do not claim
the your share of the benefits, your share will be return to the Federal Gov't.

As soon I recieve at least 7 claims forms, I will start to process this claim.

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 19 of 23**

If you have anymore questions, please feel free to call me at 201 395 7957 or 1 800 633 4542 ext 7957 or you can E-Mail me again.


Thank You

Linda M. Rivera
Case Management Specialist
201-395-7957

**EXHIBIT 1: ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 20 of 23**

OFFICE OF FEDERAL EMPLOYEES' GROUP LIFE INSURANCE
PO BOX 2627
JERSEY CITY, NJ 07303-2627
Telephone (800) 633-4542

June 1, 2007

Mr Jesse Algeron Rhines
2122 Pico Blvd #D
Santa Monica Ca ,  20405

Re:    Insured - Julia W Barbour
       Claim Number - 20061202967

Dear Mr Rhines:

This is about the Federal Employees' Group Life Insurance (FEGLI) benefits of Julia W Barbour.

We want you to know that we are sorry for your loss and will do everything we can to help you

Since Ms Barbour did not designate a beneficiary, and does not have a surviving spouse, we must pay the insurance benefits to the children and descendants of any deceased children (please see the enclosed Order of Payment document).

Please complete the enclosed claim form in detail.  Pay particular attention to Part B, regarding Ms Barbour's marital history and Part D, which asks for the names, ages and addresses of Ms Barbour's children and descendants of any deceased children.

We also need the following document(s) and/or statement to process your claim:

* One copy of your Birth Certificate.

When we receive the completed claim form and any required document(s), we will process your claim.  If your case requires no additional follow-up and/or documentation, the process takes about 10 business days. If you have any questions please feel free to call me at 201 395 7967

Sincerely,

Linda Rivera
Case Management Specialist

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 21 of 23**

"Jesse Rhines" <jrhines@worldnet.att.net>                    To lrivera@metlife.com
                                                             cc
06/12/2007 04:13 PM                                          Subject case: 20061202987

Ms. Rivera,

I received a claim form from you regarding Julia W. Barbour, my mother.

I have been in Spain the past 4 months and don't understand the significance of filing a claim, since my mother never gave me specific information about any of her financial arrangements.  What will happen if I do not file a claim?

I understand that some of my siblings filed claims as much as one month ago.  Since your letter seems to imply that one should receive money from my mother's insurance policy within 10 days of filing a claim, when did or will these siblings' claims be fully satisfied?

Thank you,


Jesse RHINES, Ph. D




----- Original Message -----
From:        **Linda Rivera**
To:          **jrhines@worldnet.att.net**
Sent:        **Wednesday, June 13, 2007 5:41 AM**
Subject:     Re: case: 20061202987


This benefits are payable to  all the children, the monies will be split evenly among all the children. If you do not claim the your share of the benefits, your share will be return to the Federal Gov't.

As soon I recieve at least 7 claims forms, I will start to process this claim.

If you have anymore questions, please feel free to call me at 201 395 7957 or 1 800 633 4542 ext 7957 or you can E-Mail me again.

Thank You

Linda M. Rivera
Case Management Specialist
201-395-7957




"Jesse Rhines" <jrhines@worldnet.att.net>                    To lrivera@metlife.com
                                                             cc
06/12/2007 04:13 PM                                          Subject case: 20061202987

Ms. Rivera,

I received a claim form from you regarding Julia W. Barbour, my mother.

I have been in Spain the past 4 months and don't understand the significance of filing a claim, since my mother never gave me specific information about any of her financial arrangements.  What will happen if I do not file a claim?

I understand that some of my siblings filed claims as much as one month ago.  Since your letter seems to imply that one should receive money from my mother's insurance policy within 10 days of filing a claim, when did or will these siblings' claims be fully satisfied?

EXHIBIT 1: ANSWER OF DEFENDANT CAROLYN C. STEPTOE
Page 22 of 23

Thank you,

Jesse RHINES, Ph. D

Forwarded Message:
| | |
|---|---|
| Subj: | **Today's letter to FEGLI** |
| Date: | **6/1/2007 2:31:23 P.M. Eastern Standard Time** |
| From: | **Carolynsteptoe** |
| To: | **JLee179319, Ccsteptoe@cs.com, Carolynsteptoe** |

Julie - I called FEGLI again today. I spoke to the specialist handling the case - Ms. Linda Rivera. I was in the midst of talking about the affidavit, and she stopped me and said, only people who want their money to go to Jenny will get an affidavit.

She said Jenny was Trustee. I told her I know that but she is not beneficiary and not entitled to get all the money. She laughed and said, I know.

I told Ms. Rivera I want my portion of the money and that I do not want my money to go to Jenny.

She laughed and said ok, could you put that in writing and fax it to me. I did. (fax attached). She said it might take a minute to get my portion because since some say they want Jenny to have their money, she wants to wait until at least half of the siblings write back (SEND YOURS IN).

She said it was a mess but my money has nothing to do with their mess.

I told them it would be quicker if they just got their claim and gave it to Jenny. She laughed and said, Jenny wouldn't get it once folks got their money.

Anyway, send yours in and fax over the letter.

You can reach her on the 1-800 FEGLI #; xHer name is Linda Rivera (x7757) - fax # 866-205-2900

**EXHIBIT 1:  ANSWER OF DEFENDANT CAROLYN C. STEPTOE**
**Page 23 of 23**

Carolyn Cecelia Steptoe
1257 Lawrence Street, NE
Washington, DC  20017
(202) 636-8191
(202) 210-4141

June 1, 2007

**Fax # - 1 866-205-2900**

Ms. Linda Rivera
FEGLI Specialist
x7757

RE:      Claim # 20061202987
         **Claim of Insurance Benefit:**
         **Deceased – JULIA WATSON BARBOUR**

Dear Ms. Rivera:

Thank you for speaking with me today.  This letter will memorialize what I stated to you:

Since my mother did not designate anyone beneficiary of her life insurance, as one of her children,

1)       I want to receive my portion of the insurance benefit money from my mother's life insurance policy.

2)       I do not want my portion to go to anyone except me.

3)       I look forward to receiving my portion of the money as soon as possible.

Please feel free to contact me anytime if you need to speak to me.

Sincerely,

Carolyn Cecelia Steptoe
Daughter of Julia Watson Barbour

-----Original Message-----
From:      jlee179319@aol.com
To:        JRhines@technlp.com; jultoe@yahoo.com
Cc:        Dcjonjon@aol.com; fusion@prodigy.net; jilla1@earthlink.net; jrhines@att.net;
           MC5292@aol.com
Sent:      Fri, 27 Apr 2007 9:49 AM
Subject:   Re: You Know

I spoke with FEGLI.  They are not going to pay Jenny as beneficiary.  They concluded that mother left the money in trust, but did not set up a trust before or after death.    For these reasons, they will distribute the money in "order of precedence," split evenly between mother's children.  Anyone wishing to can file a claim.  There is a provision on the claim form for claimants to identify and provide addresses for children of the deceased.  I do not know whether Jenny provided this information as to anyone or everyone.  FEGLI will contact those children whose addresses they have.  If anyone wants me to provide FEGLI with his or her address, please lend me your address by private email and I will do that.  Otherwise, you can contact FEGLI yourself.  FEGLI needs a certified copy of Delly's death certificate before it will distribute anything.
....(redacted)

Julie.