UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

METROPOLITAN LIFE )
INSURANCE COMPANY, )
 )
  Plaintiff ) Case No. 1:07-cv-01665
 ) Assigned To : Kollar-Kotelly, Colleen
V. ) Assign Date : 9/20/2007
 ) Description : Contract
JENNIFER G. BARBOUR )
JULIAN P. STEPTOE )
JAMILLA R. LANKFORD )
ADAM A.D. BARBOUR, )
JACINTO RHINES, )
JOHN P. RHINES, )
JESSE A. RHINES, )
JEROME C. RHINES, )
CAROLYN C. STEPTOE, )
JULIE S. LEE, )
MARSHA S. CULLER, )
VERONICA VERA, AND )
JORDAN FUNERAL SERVICE, INC. )
 )
  Defendants. )
         )

RECEIVED

DEC - 4 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## RESPONSE TO ANSWERS OF JULIE LEE AND CAROLYN STEPTOE TO COMPLAINT FOR INTERPLEADER RELIEF

  I, JAMILLA LANKFORD, a named Defendant, submit the following responses to the identically-worded Second Defense of the above-named Defendants in their Answers, to Paragraphs 4 of the above-named Defendants' identically-worded Requests for Relief, the identically worded Note 7 to the above-named Defendants' Fourth Defense, and to the second Paragraph of Defendant Carolyn Steptoe's Answer:

  1. Julie Lee and Carolyn Steptoe attempt to discredit Mary H. Lomax — a career federal employee — and her thirty honorable years of service in her official capacity as Human Resource Specialist in order to negate clear legal precedents and undo the wishes of the

Decedent. On information and belief, the entire relationship between the Decedent and Mary H. Lomax occurred in the work place in the context of Mary H. Lomax's official duties. On information and belief, the entire relationship between Jennifer G. Barbour and Mary H. Lomax occurred after the Decedent's death in order to gather facts about the Decedent's life insurance forms. Notwithstanding the above, Mary H. Lomax's — any person's — truthful testimony does not equate to their being an "agent" of a party to a dispute. Mary H. Lomax does not deserve such vilifying statements, made on the basis of pure speculation. Also, USC 5 8705 does not require that beneficiary designations be certified, only that they be signed, witnessed and turned in before the death, so the presence or absence of a certification is of no legal consequence.

2. I would have greatly welcomed an inquiry from my sisters Julie Lee and Carolyn Steptoe about what they refer to as the "unilateral" decisions that were made and "alleged costs" I incurred incident to our mother's death — if it had come. I, and I alone, have suffered a daunting financial burden that for the past year due to Metropolitan Life Insurance Company's many false representations to the Decedent's 12 children. I pray the Court's indulgence as I explain. Julie Lee was present at my mother's deathbed as were Jennifer and I and most of our other siblings. Carolyn Steptoe was nearby in the hospital but refused to be present when our mother was disconnected from life support. After our mother died, Julie and Carolyn chose to leave the hospital. They could have remained. No one forced them to leave. Having seen our mother die they knew her body needed to be taken care of. They knew someone had to be called and someone had to be paid. Who did they think would arrange everything, the "funeral fairy" as one TV judge called it in a recent similar case where a defendant made the same assertion: "I was not consulted"? No one prevented them from participating as we tried to figure out what to do next. Perhaps Julie and Carolyn believe I should have pointed the obvious out to them, but I didn't and don't believe I had a

duty to remind my siblings on that night, and in the ensuing days, of their duty to their

mother. They are adults. My thoughts were not on their "rights," which they did not state, but

on the fact that our mother had died.  Jennifer, the youngest daughter, and I, the eldest

daughter, remained when they had gone.  We bathed our mother's body.  We helped the

nursing staff put her in the body bag.  Even non-family members who loved our mother,

helped escort her body down to the hospital morgue. Nothing precluded Carolyn and Julie

from staying and participating.  Nothing precluded them for asking how they could help.

Nothing precluded them from offering a financial contribution to embalm and bury our

mother and say goodbye to her in the way she wished and asked.  Within an hour of our

mother's death, a nurse took my blood pressure, found it to be 187 over something, and

strongly urged me to go to the emergency room. I was admitted and kept for two nights, the

doctor's fearing I'd had, or was on the verge of, a heart attack or a stroke from stress and lack

of sleep.  Once admitted, I was satisfied to stay in the hospital because I knew my mother

was downstairs in the morgue. It was comforting to be there while she was. By chance I was

discharged on the same day her body left the hospital morgue for the funeral home Jenny

arranged and I will always be grateful for having kept her company in a way. When I got out

of the hospital, everyone was at Carolyn's house, as I recall.  I don't now of my own

knowledge what happened in the two days I was hospitalized.  Perhaps Carolyn and Julie

think I should have gotten out of my hospital bed and seen to their rights.  Unlike Carolyn

and Julie, I didn't wait to be solicited about my interests and options and rights and

participation in burying our mother.  I asked Jenny if she needed help, if she had the money

to pay for things until the insurance arrived.  Carolyn or Julie could have done this as well.  It

was no secret that Jennifer was the sole beneficiary of Mother's life insurance, that the

money couldn't possibly have arrived yet, but that Mother wanted her final expenses paid

from the insurance.  In fact, this was said out loud multiple times by various siblings,

including Carolyn and Julie as they reminded Jenny that she wasn't paying for any of this,

Mother's insurance money ultimately would. Though I was still feeling tired and stressed (I

am 62 and my sisters are many years younger), I went with Jennifer to the funeral home, to

the cemetery, to fabric and clothes shops, to the Willard Hotel for the sole purpose of paying

for things our mother needed and had requested. Anyone who wanted to could have asked to

come and participate in the decision-making and the paying. No one did. Anyone who

wanted to could have asked Jennifer if she needed help. I gagged no one's mouth and barred

no one's way. Nor did Jennifer. Both Julie Lee and Carolyn Steptoe were perfectly willing to

allow me to undertake all costs, incurring the attendant financial risk. However this in no

way absolves them of equal responsibility for the costs incident to our mother's death that we

ALL assumed would be reimbursed by the life insurance they now want a part of. Carolyn

Steptoe did offer to intercede with the minister at her church but even there it was my sister,

Jennifer, who opened her purse and made a substantial contribution to the church, not

Carolyn. While I drove around with Jennifer on December 5, paying for things, Carolyn,

Julie and Marsha designed the funeral programs at Carolyn's house. One or both of them

could have driven around with us, if they chose. I later learned Marsha had made

arrangements for the programs to be done quickly by a printer she knew. When the programs

were delivered to Carolyn's house, the bill was handed to me for payment in front of Carolyn

and Julie, who made no attempt to offer to help me pay it. They both participated in ALL

arranged events, including the repast held at our mother's favorite hotel, The Willard. They

both attended the funeral. They and those they brought with them took funeral programs

away. They saw my mother wrapped in the fabrics she requested and that I paid for. They

went to the cemetery and looked down into the hole I paid to be dug for her coffin. Both

Carolyn and Julie attended the repast at the Willard for as long as they chose, along with

whatever family and assorted friends and acquaintances they chose to bring. Julie and her

children stayed the entire time, drinking the "alleged" champagne, eating the "unilaterally"

catered food, taking turns at the "alleged" microphone to recite whenever they chose,

listening to those of us who sang and played the "unilateral" piano, singing themselves,

dancing on the floor of the "alleged" private function room, viewing the "unilaterally"

ordered and paid for display posters celebrating our mothers life and her poetry career. Our

mother wanted and asked for such a party. If one of us had died, she would have done the

same for us. She urged that we get together after her funeral, eat and drink all night, dance,

play music, sing, recite and tell stories. During Carolyn and Julie's participation in all of

these activities, they offered not one objection to me.

3. Attached are details of the Willard Hotel charges on my Amex bill which was attached to my

   Answer. I don't have details at hand for Lincoln Memorial Cemetery, Capitol Explosion

   Grupper who printed the funeral programs, Neiman Marcus where we bought the clothing

   she wore in her coffin or G Street Fabrics where we bought the chiffon she asked to be

   wrapped in, but they can be made available should the Court request. However, I don't

   understand why Carolyn and Julie include Paragraph 4 in their Answer to begin with. I have

   not asked the Court to grant payment of them. I did and do think they should be part of the

   record — otherwise the Court would not have complete facts. I reiterate my original plea that

   the Court honor my mother's wishes and pay 100% of her life insurance to Jennifer G.

   Barbour, including interest. Were Carolyn or Julie the 100% beneficiary, I would support

   their claim with equal vigor from the duty I feel to keep faith with my mother. She told me

   repeatedly what she wanted, and I promised her I would speak up on her behalf if a dispute

   arose after her death. She sought my assurance on this point and I gave it. Mother also

   instructed Jennifer to pay everything from the insurance money — the funeral, the burial, and

   all other costs, including the celebratory repast she told us to have — and Jennifer assured

   her, and later assured me, she will do exactly that.

4. Regarding Carolyn Steptoe's assertion in the second Paragraph of her Answer and the identical Notes 7 to the above-named Defendants' Fourth Defense, Carolyn and Julie would have the Court believe we're all lying in our affidavits in order to deprive ourselves of perfectly good money and give it to Jennifer instead, who has also managed to put the Human Resource Specialist under some amazing spell. They are trying to subvert our mother's wishes. We are determined to stand up for them.

5. I have no comment regarding the other points in Carolyn and Julie's Answers other than to say this isn't the first time my sisters have chosen to see conspiracies where absolutely none exist — except, in this case, the outrageous behavior of Metropolitan Life Insurance Company. Any claim other than Jennifer's is an attempt to capitalize on the scurrilous and erroneous assertions Metropolitan Life Insurance Company made to us.

6. Finally, it gives me no pleasure to have to make such statements against the veracity of my sisters, Carolyn and Julie. I know their hearts feel justified in the errors of fact they make. There is a painful history here but, without going into detail, I can assure them and the Court that my mother's decision to leave 100% of her life insurance proceeds to Jennifer was not due to lack of love for Carolyn, Julie, or the rest of us.

Respectfully submitted,

This ____ day of December, 2007.

Jamilla R Lankford
*Pro se*
5203 Woodlawn Place
Bellaire, TX 77401
Telephone: (713) 668 9936
jrlankford@earthlink.net

# WILLARD
## INTERCONTINENTAL.
### W A S H I N G T O N  D . C .

Jamilla Rhines Lankford

Membership No.
A/R Number
Group Code
Folio/Invoice No.        273791

| Room No. | **9182** |
|---|---|
| Arrival | 12/06/06 |
| Departure | 12/07/06 |

Page No.          1 of 1
Cashier No        1087
User ID           JMONTGOM

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| | | XXXXXXXXXX1004 | | 8,000.00 |
| 12/06/06 | American Express | | | |
| 12/06/06 | Banquet Food | #9059 : CHECK #2189  Banquet Posting  #9059=>Rhines Lankford Jamilla #9182 | 6,911.37 | |
| 12/07/06 | Audio Visual | AV # 54945 | 514.25 | |
| 12/07/06 | Audio Visual Tax | AV # 54945 | 29.57 | |
| 12/07/06 | American Express | XXXXXXXXXX1004 | | -544.81 |
| | **Total** | | **7,455.19** | **7,455.19** |
| | **Balance** | | **0.00** | |

**Guest Signature:** _____

I have received the goods and / or services in the amount shown heron. I agree that my liability for this bill is not waived and agree to be held personally liable in the event that the indicated person, company, or association fails to pay for any part or the full amount of these charges.

*WE KNOW WHAT IT TAKES.™*

_____

*1401 Pennsylvania Avenue, N. W., Washington, D.C. 20004-1010   Tel: (202) 628.9100   Fax: (202) 637.7326*
www.washington.intercontinental.com • washington@interconti.com
INTERCONTINENTAL HOTELS AND RESORTS • AMERICAS • EUROPE • MIDDLE EAST • AFRICA • ASIA PACIFIC

Dec-05-06    05:18pm    From-WILLARD CATERING DEPT    202 631 7430    T-566    P 005/007    F-944

# Willard InterContinental Washington

1401 Pennsylvania Ave, NW  Washington, DC USA 20004
Phone: 202-628-9100 • Fax: 202-637-7430

Check#: 21,189
Page: Page 1 of 2
Created: 12/5/2006

### Banquet Check

| | |
|---|---|
| **Account:** | 2006 Christina Inquiry |
| **Post As:** | Memorial Service for Mrs. Julia Watson Rhines Steptoe Ba |
| **Address:** | 5203 Woodlawn Place |
| | Bellaire, TX 77401 |
| **Booked By:** | Christina Canalez Presock |
| **Catering Rep:** | Christina Canalez Presock |

| | |
|---|---|
| **Event Date:** | Wednesday - December 6, 2006 |
| **Contact:** | Ms. Jamilla Rhines-Lankford |
| **Phone:** | 832-443-8420 |
| **Fax:** | |
| **On-Site:** | Ms. Jamilla Rhines-Lankford |
| **Phone:** | 832-443-8420 |

| Quantity | Food | Price | Amount |
|---|---|---|---|
| 50 | The Willard Deluxe Reception | 67.00 Per person | 3,350.00 |
| 50 | The Willard Viennese Table Modified | 12.00 Per person | 600.00 |
| | | Subtotal: | 3,950.00 |
| | | Service Charge %:  21.00 | 829.50 |
| | | Tax %:  10.00 | 477.95 |
| | | Total: | 5,257.45 |

| Quantity | Beverage | Price | Amount |
|---|---|---|---|
| 42 | Hosted Beer and Wine Bar | 22.00 Per person | 924.00 |
| 8 | Unlimited Kid's Beverages | 14.00 Per person | 112.00 |
| | | Subtotal: | 1,036.00 |
| | | Service Charge %:  21.00 | 217.56 |
| | | Tax %:  10.00 | 125.36 |
| | | Total: | 1,378.92 |

| Quantity | Miscellaneous | Price | Amount |
|---|---|---|---|
| 2 | Uniformed Chef | 125.00 | 250.00 |
| | | Subtotal: | 250.00 |
| | | Service Charge %:  0.00 | 0.00 |
| | | Tax %:  10.00 | 25.00 |
| | | Total: | 275.00 |

| Room Rental | | Price | Amount |
|---|---|---|---|
| **Room:** Buchanan | **Function:** RECP | | |
| **Room:** Buchanan | | | |
| | | Subtotal: | 0.00 |
| | | Room Rental Tax %:  0.00 | 0.00 |
| | | Total: | 0.00 |

_____        _____
Client Signature                                              Date

| | | Event Date: | Wednesday - December 6, 2006 |
| Account: | 2006 Christina Inquiry | Contact: | Ms. Jamilla Rhines-Lankford |
| Post-s: | Memorial Service for Mrs. Julia Watson Rhines Steptoe Ba | Phone: | 832-443-8420 |
| Address: | 5203 Woodlawn Place | Fax: | |
| | Bellaire, TX 77401 | On-Site: | Ms. Jamilla Rhines-Lankford |
| | | Phone: | 832-443-8420 |
| Booked By: | Christina Canalez Presock | | |
| Catering Rep: | Christina Canalez Presock | | |

| | |
| --- | --- |
| Grand Total: | 6,911.37 |
| Balance Due: | 6,911.37 |

Client Signature

Date

# PSAV
**PRESENTATION SERVICES**

**Rental Order: 54945-1368**

| | |
|---|---|
| Order Date: | 12/6/2006 |
| Local Office: | 1368 |
| Created On: | 12/6/2006 by 003445 |

Event:     Memorial Service for Mrs. Julia Watson Rhines Steptoe

**Memorial Service for Mrs. Julia Watson Rhines Steptoe**
5203 Woodlawn Place
Bellaire, TX. 77401
US

| | |
|---|---|
| Billing Method: | Hotel-Billed |
| Master Account Number: | |
| Contact 1: | Jamilla Rhines-Lankford |
| | 832 - -8420 |

| Description | Quantity | Rate | Hours | Days | Total |
|---|---|---|---|---|---|
| **Buchanan - Memorial Service for Mrs. Julia Watson Rhines Step (4:00 PM - 8:00 PM)** | | | | | |
| **Job: 28623** | **Banquet Event Order: 21189** | | Sales/Catering Initials: | | **Christina** |
| *Equipment* | | | | | |
| 4 Channel Mono Mixer | 1 | $60.00 | | 1 | $60.00 |
| CD Player | 1 | $65.00 | | 1 | $65.00 |
| Powered Speaker | 1 | $125.00 | | 1 | $125.00 |
| Wireless UHF HH Transmitter | 1 | $175.00 | | 1 | $175.00 |
| | | | SubTotal: | | $425.00 |

| | |
|---|---|
| Equipment Rental: | $425.00 |
| Service Charge: | $89.25 |
| SubTotal: | $514.25 |
| Tax: | $29.57 |
| **Total:** | **$543.82** |

Thank you for your business.

Signature _____

I hereby approve all charges, terms and conditions as contained in this document.

1