UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **METROPOLITAN LIFE INSURANCE COMPANY,** )<br>)<br>)<br>Plaintiff )<br>V. )<br>)<br>**JENNIFER G. BARBOUR, et al.** )<br>)<br>Defendants. )<br>_____) | Case No. 1:07-cv-01665-CCK<br><br>**RECEIVED**<br>JAN 3 0 2008<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

REPLY TO AND MOTION TO DENY PLAINTIFF'S MOTION TO DISMISS THE
COUNTERCLAIM OF JAMILLA LANKFORD

I, JAMILLA LANKFORD, a named Defendant, submit the following reply to METROPOLITAN LIFE INSURANCE COMPANY'S Motion to Dismiss my counterclaim.

Metropolitan Life Insurance Company's arguments are based on the theory that I am a claimant to Decedent's life insurance policy. I am not and never have been. I am responding to Metropolitan Life Insurance Company's bad faith attempt to MAKE me a claimant against my will, luring me with false promises of quick payment, ignoring Decedent's beneficiary designation form and the affidavit I sent them.

More importantly, Metropolitan Life Insurance Company ignored the affidavit of Mary Lomax, the Human Resource Specialist who was responsible for accepting and certifying my mother's life insurance forms. These actions are decisive in establishing Metropolitan's bad faith because, as their own citations show, this is not the first time the company has been in Court over a FEGLI policy. The company knew full well that USC 5 8709 simply requires that a beneficiary designation be a signed and witnessed writing turned into Decedent's place of employment and they knew they were in possession of this from my mother. Metropolitan knew full well that USC 5 8709 does not require perfection in the

signed and witnessed writing. They knew it does not address trusts, trustees, or any title given to the named beneficiary and that MetLife's in-office forms do not rise to the level of law. They were well aware of the law supporting Jenny's claim and they were in possession of the one affidavit, Mary Lomax's, they could be certain would hold weight in court. Their choice to ignore this as well as our subsequent additional affidavits and actively seek other claims, was not due to any confusion about the law or how it applied to Decedent's claim. It was a conscious and deliberate attempt to avoid paying anyone anything for as long as possible, a practice apparently often engaged in by insurance companies. Nowhere in their responses has Metropolitan Life denied that they engaged in the deceptive inducements to solicit claims that we describe. They cannot, given the documents submitted to the Court.

This is a separate wrong not covered by USC 5 8709, which certainly does not give an insurance company permission to commit bad faith or illegal acts against people, then run and hide behind the statute. The laws that apply are, more rightly, those concerning common theft. Metropolitan Life's actions toward me were the same as if my sister, Jennifer Barbour, had walked up to me with a check for $10,846.83 and Metropolitan had summarily snatched it out of her hand, saying "I'll hold onto this until I feel like giving it back." USC 5 8709 does not absolve Metropolitan Life of culpability for such an act.

Finally, the Motion to Dismiss says that my simple assertion that "my life is altered" by the absence of $10,846.83 from my household budget for over a year now, does not establish that I was harmed. Incredible, and a new concept in American jurisprudence, I firmly believe. In most jurisdictions, according to my quick Google, the absence of a mere $1,000 against the owner's wishes, if due to the wrongful action of another party, constitutes Grand Theft. A person's right to possess his or her own money is a fundamental one established by the Constitution. The Founding Fathers intended for no one to have to explain how they would have used their money in order to prove harm from its unauthorized absence. At least, that's what I learned in school and I seriously doubt it has been changed.

I repeat that my mother's express wishes were that her final expenses, including associated costs, were to be paid from her insurance. She instructed Jenny to pay them and Jenny assured her that she would. Relying on this, I did not hesitate to provide up front costs for the funeral my mother desired. In deliberately subverting the Decedent's wishes by seeking counter claims to her insurance, Metropolitan Life interfered with reimbursement of money I didn't expect – and could not afford -- to go without all this time.

But for Metropolitan Life's lies to us, there would have been no counter claims. As proof, only one claim, Jennifer's, existed prior to April of 2007. Others arose only after MetLife's several different misrepresentations in its vigorous attempts to induce counter claims to Jenny's — promising payment though they knew with certainty that they would not and could not pay anyone, as long as Jenny maintained her claim, which they knew she would, given the correspondence they received from her attorney at the time. Without those counter claims, MetLife would have had to pay out $134,000 immediately. Thus they had a financial motive to induce counterclaims to avoid this. I cite paragraph 7 of MetLife's own Complaint in Interpleader as evidence they were aware that they were creating a double or multiple liability situation and that their promises of quick payment were knowingly false and made in complete bad faith.

As for emotional distress, it is as we have stated — angry words and communications between siblings, resulting in pronounced, prolonged anxiety and loss of sleep — great distress on my part when I found myself unable to help my grandson with his college fees as much as I'd planned. He joined the Marine Corps Reserves to pay his own way and is now facing deployment to Iraq next month. Perhaps he would have chosen to join the reserves anyway, since I couldn't have paid his full tuition, but I never had the chance to try to keep him in school using my own funds because they were absconded by Metropolitan Life. I could only afford to pay $500 toward his initial fees.

But for Metropolitan Life's self-serving and dishonest representations in an attempt to create conflicting claims among our mother's offspring, I would not have been out of pocket and this extraordinary distress would not have occurred — just the normal anxieties of life.

I cite no additional legal authorities because it was hard enough finding the first ones and I am not an attorney. I ask the Court's indulgence in this respect, since I am not in a financial position to retain legal counsel in the way Metropolitan Life, a multibillion dollar company can — replete with strategies to deflect or delay legitimate claims as long as possible.

Therefore I rely upon this good Court and ask that my counterclaim not be denied, but decided on its merits in amounts the Court deems just and right.

Metropolitan Life deserves both chastisement and a financial penalty for using its lucrative government contract to inflict misery on the families of deceased government employees — in this case, ignoring the wishes and statements of the mother I loved and Mary Lomax — two female career government employees with almost 80 years of combined federal service.

This 29th day of January, 2008.

Respectfully submitted,

Jamilla R. Lankford
Pro se
5203 Woodlawn Place
Bellaire, TX 77401
Telephone: (713) 668 9936
jrlankford@earthlink.net

## CERTIFICATE OF SERVICE

This case was filed under the United States District Court for the District of Columbia's ECF electronic file and serve system. Answers of defendant Jamilla R. Lankford were filed with such Court and served on all parties herein electronically through such ECF electronic file and serve system on November 16, 2007, December 6, 2007 and December 19, 2007. For parties who cannot access the ECF file and serve system, a copy of the Answers of Defendant Jamilla R. Lankford to the Complaint

have been emailed (if agreed by the party) or mailed first-class, postage prepaid to Julian P. Steptoe, 3010 Wilshire Boulevard, #299, Los Angeles, CA 90010; Veronica Vera, 5203 Woodlawn Place, Bellaire, TX 77401; Marsha S. Culler, 11519 Sequoia Lane, Beltsville, MD 20705; Julie S. Lee, 607 Bridle Lane, Birmingham, AL 35243; Carolyn C. Steptoe, 1257 Lawrence Street, NE, Washington, DC 20017; Jerome C. Rhines. 11048 Anietem Drive, Alta Loma, CA 91737; the Jordan Funeral Service, Inc., 5021 Illinois Avenue, NW, Washington, DC 20011; Adam A. D. Barbour, 901 – 6th Street, SW, #606A, Washington, DC 20024; Jacinto A, Rhines, 1764 W 24th Street, Los Angeles, CA 90018; John P. Rhines, 5233 North Capitol Street, NE, #312, Washington, DC 20011; and Jesse A. Rhines, 2122 Pico Boulevard #D, Santa Monica, CA 90405.