UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **METROPOLITAN LIFE** <br> **INSURANCE COMPANY,** <br> <br> Plaintiff, <br> <br> v. <br> <br> **JENNIFER G. BARBOUR, et al.** <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )      Case No. 1: 07-cv-01665-CCK <br> ) <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFF'S REPLY TO DEFENDANTCAROLINE C. STEPTOE'S OPPOSITION TO PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

Plaintiff Metropolitan Life Insurance Company ("MetLife") by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submits this Reply to the Memorandum in Opposition to Plaintiff's Memorandum of Points and Authorities in Support of Motion to Dismiss ("Motion to Dismiss") filed by Interpleader Defendant Carolyn C. Steptoe ("Defendant")[1].

### I.   INTRODUCTION

As will be explained in detail below, Defendant's Memorandum in Opposition ("Opposition") fails to demonstrate that any of Defendant's Claims should survive MetLife's Motion to Dismiss. First and most importantly, all four of Defendant's Claims fail because they are preempted, and therefore barred, by 5 U.S.C. § 8709(d)(1), and Defendant provides no relevant or compelling argument to the contrary. Second, even assuming that Defendant's Claims are not barred by 5 U.S.C. § 8709(d)(1), her Claims still fail as a matter of law. Specifically, Defendant's Intentional Infliction of Emotional

---

[1] Interpleader Defendant incorrectly entitles herself "Plaintiff," and incorrectly entitles MetLife "Defendant," throughout her opposition.

Distress Claim fails because she fails to allege sufficient facts to support her cause of action and provides no relevant case law to support her Claim.  Instead, Defendant attempts to allege additional facts that were not part of her Counterclaim.  Defendant's Fraudulent Misrepresentation Claim likewise fails because she fails to allege sufficient facts to support her Claim and similarly attempts to bolster her argument by introducing additional facts that were not part of her Counterclaim.  Finally, Defendant's Tortuous Interference with and Breach of Contract, and Breach of Fiduciary Duty[2] Claims fail because she fails to allege sufficient facts to support her Claims and additionally, fails to provide any supporting case law.  Accordingly, this Court should rule in favor of MetLife and dismiss Claims I-IV with prejudice.

## II.    ARGUMENT

### A.    Claims I-IV Should Be Dismissed Because They are Preempted, and Therefore Barred, By 5 U.S.C. § 8709(d)(1).

Defendant's Opposition fails to provide any meaningful argument to refute MetLife's contention that her claims are preempted by 5 U.S.C. § 8709(d)(1).  As MetLife articulated in its Motion to Dismiss, FEGLIA provides for preemption of state law at 5 U.S.C. § 8709(d)(1) and states in relevant part:

> The provisions of any contract under this chapter which relate to the <u>nature or extent of coverage or benefits</u> (including payments with respect to benefits) shall <u>supersede and preempt any law of any State</u> or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1) (Emphasis added).  Moreover, it is clear that the FEGLI Policy terms themselves preempt state law.  See, e.g., Grooms v. Metro. Life Ins.

---

[2] Defendant combines Claims III and IV in her Opposition.

Co., 154 F.3d 181 (4th Cir. 1998) (holding FEGLIA preempts state law on the process for electing insurance coverage offered by FEGLIA); Metro. Life Ins. Co. v. Sullivan, 96 F.3d 18, 20 (2ndCir. 1996) (noting that the FEGLI policy explicitly preempted a New York state law); Matthews v. Matthews, 926 F. Supp. 650, 652 (N.D. Ohio 1996) (holding that "FEGLI policies preempt state law").

In Defendant's Opposition, Defendant advances several ineffective arguments to support her assertion that 5 U.S.C. § 8709(d)(1) does not preempt her state law Claims. First, Defendant asserts that her "state common law tort, contract, and fiduciary claims . . . relate to [MetLife's] misconduct rather than group life insurance, " and thus cannot be preempted. See Opposition at 2. Defendant cites to District of Columbia v. Greater Washington Board of Trade, 506 U.S. 125 (1992), to support her argument that her claims are not preempted, however, this reliance is misplaced. Notably, the state law at issue in Greater Washington related to workers' compensation benefits provided by an employer, and the policy at issue was ERISA. See id. at 126. Moreover, the Court found that the state law *was* preempted by ERISA and in so doing stated, "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans . . . even if the law is not specifically designed to affect such plans, or the effect is only indirect." See id. at 129, 130 (citing Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990))[3].

---

[3] Defendant also cites to Cipollone v. Ligget Group, Inc., 505 U.S. 504 (1992), which is similarly misplaced. First and foremost, the plaintiff in Cipollone brought an action against a cigarette manufacturer for breach of express warranties in advertising, and failure to warn consumers against the hazards of smoking under the Federal Cigarette Labeling and Advertising Act of 1965, and it subsequent counterparts. See id. at 508-509. Second, Cipolle actually supports MetLife's position because it holds, and Defendant acknowledges, that a state law is preempted when it is explicitly stated in the statute's language. See id. at 516. As noted above, 5 U.S.C. § 8709(d)(1) explicitly states, "The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits . . . shall supersede and preempt any law of any State." (emphasis added). Defendant has not, and indeed cannot, overcome the explicit preemption language of 5 U.S.C. § 8709(d)(1).

3

Next, Defendant argues that her state common law claims are not preempted because they "are not inconsistent with Amendment 70 . . . because, on its face, Amendment 70 does not relate to the nature or extent of coverage or benefits." See Opposition at 2, 3. Defendant's reading of Amendment 70 is completely inaccurate. As explained by MetLife in its Motion to Dismiss, Amendment 70 provides in relevant part:

> EXTRA-CONTRACT DAMAGES - In any action at law or in equity, the Beneficiary of record or claimant, as specified in Section 11 hereof, <u>shall be limited in the amount of recovery to the benefit claimed, plus reasonable attorney's fees as set by the court</u>. The term "benefit claimed" is limited to:
>
> 1. the amount of Life Insurance . . . in force hereunder on account of the Employee . . . at the date of the Employee's death; and
>
> 2. interest as specified in subsection C of section 4 hereof; and
>
> 3. post-judgment interest at the statutory rate allowed on judgments in the applicable state.

See Motion to Dismiss at 5.

Given the explicit language of Amendment 70, there can be no question that Amendment 70 relates to the nature or extent of coverage of benefits under the FEGLI Policy and therefore limits Defendant's recovery accordingly. Defendant also inaccurately cites to Kittner v. Metro. Life Ins. Co., No. 01-CV-0146E(Sr), 2001 U.S. Dist. LEXIS 4883, (W.D.N.Y. Apr. 13, 2001), for the proposition that her contract and fiduciary claims are not preempted because they relate to a "private contract." See Opposition at 4. Defendant clearly misunderstands the premise of Kittner, as the issue decided by the court was whether the court had federal question jurisdiction over plaintiff's state law claim for benefits under FEGLIA, not whether FEGLIA preempted

state law claims[4]. In concluding that it lacked federal question jurisdiction, the court held, "there is 'no policy of insurance between the government and the employee'; the policy of insurance exists merely between the policyholder and the insurance company. At the heart of the instant action, therefore, only a breach of contract action between private litigants lies, with obligation to perform thereunder being 'a creation of the state.'" Id. at * 5 (emphasis added). Clearly, Defendant's reliance on Kittner it not compelling as it has no relevance to the case at bar.

It is obvious that Defendant is grasping at straws in an attempt to avoid the obvious bar imposed by 5 U.S.C. § 8709(d)(1) and Amendment 70 to the FEGLI policy. For these reasons, and those stated in MetLife's Motion to Dismiss, this Court should dismiss Claims I-IV with prejudice.

>    **B.    Claim I Should Also Be Dismissed Because Defendant Has Not Alleged Sufficient Facts to Establish A Claim for Intentional Infliction of Emotional Distress.**

In addition to the obvious bar imposed by 5 U.S.C. § 8709(d)(1), Defendant's Intentional Infliction of Emotional Distress Claim fails because Defendant fails to allege facts sufficient to establish extreme and outrageous conduct on behalf of MetLife or severe distress on behalf of Defendant. As explained by MetLife in its Motion to Dismiss, a claim for intentional infliction of emotional distress requires a claimant to prove: 1) extreme and outrageous conduct that; 2) intentionally or recklessly caused; 3) severe emotional distress to another. See Jung v. Jung, 791 A.2d 46, 50 (D.C. 2002). Defendant fails to meet the standard set out in Jung because she fails to allege that

---

[4] Defendant's citation to Metro. Life Ins. Co. v. White, 972 F.2d 122 (5th Cir. 1992) is completely irrelevant because it addresses, exclusively, whether the state homicide forfeiture rule was incorporated into the FEGLIA. Id. at 123-124.

5

MetLife engaged in extreme and outrageous conduct and also fails to allege severe emotional distress. See Motion to Dismiss at 6-7.

Defendant attempts to refute MetLife's argument but fails to cite any case law in support of her position. In fact, Defendant actually cites to Jung, acknowledging the elements of a cause of action for intentional infliction of emotional distress, but then curiously argues that Jung does not apply to the case at bar. See Opposition at 5.

Instead, Defendant attempts to evade the clear legal standard set out above by flooding this Court with additional, extraneous facts not included in her Counterclaim[5], and presenting unrelated arguments which have no bearing on her Claim for Intentional Infliction of Emotional Distress[6]. See id.

Clearly, Defendant's generic allegations that MetLife's conduct was "outrageous" and that she suffered "severe emotional distress," are not sufficient to meet the exacting standard applied by this Court to a claim for intentional infliction of emotional distress. For these reasons, and those stated in MetLife's Motion to Dismiss, this Court should dismiss Claim I with prejudice.

### C. Claim II Should Also Be Dismissed Because Defendant Has Not Alleged Sufficient Facts to Establish a Claim of Fraudulent Misrepresentation.

In addition to the obvious bar imposed by 5 U.S.C. § 8709(d)(1), Defendant's Fraudulent Misrepresentation Claim fails as a matter of law because Defendant fails to allege any material statement of present fact, MetLife's knowledge of its falsity, and reliance that resulted in provable damages. In order to prove fraudulent

---

[5] Defendant's argument, spanning three pages, is comprised almost entirely of facts that were not alleged in her Counterclaim and thus cannot be considered. See Opposition at 5-7.

[6] Defendant argues, "Interpleader relief is not intended as an avenue to relieve parties of their legal duty," and that "Defendant had two clear legal bases upon which to distribute," the FEGLI proceeds. See Opposition at 6.

6

misrepresentation, a claimant must prove: 1) a false representation; 2) in reference to a material fact; 3) made with knowledge of its falsity; 4) with the intent to deceive; and 5) action taken by the claimant in reliance upon the representation; 6) which consequently resulted in provable damages.  See Railan v. Katyal, 766 A.2d. 998, 1009 (D.C. 2001).

Defendant attempts to refute MetLife's argument by doing nothing more than reasserting the insufficient facts presented in her Counterclaim.  Notably, Defendant does not cite one single case in support of her argument nor does she attempt to distinguish the cases cited by MetLife in its Motion to Dismiss.  See Opposition at 7-8.  Indeed, Defendant does not refute MetLife's argument that her Claim is defeated because a cause of action for fraud does not apply to misrepresentations as to future promises or facts. See Shear v. Nat'l Rifle Ass'n of America, 606 F.2d 1251, 1259 (D.D.C. 1978).  Clearly, Defendant's Claim must fail as she does not allege a fraudulent misrepresentation as to a present or past fact, that MetLife knew the representation to be false when it was made, or that she suffered any resulting damage.  See generally Counterclaim.  Accordingly, this Court should dismiss Claim II with prejudice.

**D.     Claim III and IV Should Also Be Dismissed Because Defendant Fails to Allege Facts Sufficient to State a Cause of Action for Tortuous Interference With And Breach of Contract, and Defendant Fails to Allege Facts Sufficient to State a Cause of Action for Breach of Fiduciary Duty[7].**

In addition to the obvious preemption of her claim imposed by 5 U.S.C. § 8709(d)(1), Defendant's Tortuous Interference with and Breach of Contract Claim fails because Defendant fails to allege the existence of a contract between her and MetLife. To establish a claim for tortuous interference with and breach of contract, a claimant must prove: 1) existence of a contract; 2) knowledge of a contract; 3) intentional

---

[7] Defendant addresses Claims III and IV together in Section IV of her Opposition.

procurement of its breach by the defendant; and 4) damages resulting from the breach. See Sturdza v. U.A.E., 281 F.3d 1287, 1305 (D.C. Cir. 2002) (citing Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc., 565 A.2d 285, 289 (D.C. 1989)). Additionally, Defendant's Breach of Fiduciary Duty Claim fails because Defendant does not allege facts sufficient to establish that she was in a fiduciary relationship with MetLife.  A fiduciary relationship results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control." C&E Servs., Inc. v. Ashland, 498 F. Supp. 2d. 242, 264 (D.D.C. 2007) (citing Lott v. Burning Tree Club, 516 F. Supp. 913, 917 (D.D.C. 1980)).

In support of her Claims, Defendant presents nothing more than a one paragraph summary of the inadequate factual allegations set forth in her Counterclaim.  Notably, Defendant does cite any case law in support of her position and similarly fails to refute the clear legal standard for her Claims as presented in MetLife's Motion to Dismiss and reiterated above.  Defendant does not assert, as she cannot, that she was engaged in a contractual relationship with MetLife, and similarly fails to allege that she and MetLife were engaged in a fiduciary relationship.  For these reasons, and those stated in MetLife's Motion to Dismiss, this Court should dismiss Claim III and IV with prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, and those stated in MetLife's Motion to Dismiss, MetLife respectfully requests that this Court dismiss Defendant's Counterclaim with prejudice in its entirety, deny Defendant leave to amend and grant MetLife such other relief as the Court may deem just.

Respectfully submitted this 8th day of February, 2008.

        /s/ Ronda B. Esaw
Ronda Brown Esaw, Esq. (D.C. Bar No. 494516)
McGUIREWOODS LLP
1750 Tysons Boulevard, Suite 1800
McLean, Virginia 22102-4215
Telephone: (703) 712-5392
Facsimile: (703) 712-5251
resaw@mcguirewoods.com
Attorney for Plaintiff, Metropolitan Life
Insurance Company

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of February, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

Johnny M. Howard
1001 Connecticut Avenue, NW
Suite 402
Washington, D.C.  20036
*Attorney for Defendant Jennifer G. Barbour*

Barry M. Tapp
14662 Cambridge Circle
Laurel, Maryland  20707
*Attorney for Jordan Funeral Service, Inc.*

And I hereby certify that I will mail the document by U.S. mail to the following non-filer user(s):

| | | |
|---|---|---|
| Julian P. Steptoe<br>3010 Wilshire Boulevard, #299<br>Los Angeles, CA  90010 | Jamilla R. Lankford<br>5203 Woodlawn Place<br>Bellaire, TX  77401 | Adam A.D. Barbour<br>901 6th Street, S.W., #606<br>Washington, D.C.  20024 |
| Jacinto A. Rhines<br>1764 W. 24th Street<br>Los Angeles, CA  90018 | John P. Rhines<br>5233 N. Capital Street, N.E., #312<br>Washington, D.C.  20011 | Jesse A. Rhines<br>Apartment M107<br>810 S. Flower Street<br>Los Angeles, CA  90017 |
| Jerome C. Rhines<br>11048 Antietem Drive<br>Alta Loma, CA  91737 | Carolyn C. Steptoe<br>1257 Lawrence Street, N.E.<br>Washington, D.C.  20017 | Julie S. Lee<br>607 Bridle Lane<br>Birmingham, AL  35243 |
| Marsha S. Culler<br>11519 Sequoia Lane<br>Beltsville, MD  20705 | Veronica Vera<br>8581 Santa Monica Blvd., #209<br>West Hollywood, CA  90069 | |

                                           /s/ Ronda B. Esaw

\5054912.1