UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>JENNIFER G. BARBOUR, *et al.*,<br><br>        Defendants. | Civil Action No. 07-1665 (CKK) |

**MEMORANDUM OPINION**
(May 19, 2008)

This cases involves adverse claims on the life insurance policy proceeds of Julia W. Barbour ("Decedent"), a retiree of the United States Department of Labor. As a federal employee, the Decedent received life insurance coverage pursuant to the Federal Employees' Group Life Insurance Act ("FEGLIA"), 5 U.S.C. § 8701 *et seq.*, under which the Government obtained a group life insurance policy from the Plaintiff, Metropolitan Life Insurance Company ("MetLife"). MetLife filed this interpleader action seeking to deposit the policy proceeds into the registry of the Court and to have the Court adjudicate the respective rights of the thirteen putative beneficiary Defendants (the twelve children of the Decedent and Jordan Funeral Service, Inc.). Two of the Defendants have opposed MetLife's request for interpleader relief on the grounds that it has acted in bad faith, and three of the Defendants have filed counterclaims against MetLife for tortious interference with and breach of contract, breach of fiduciary duty, fraudulent misrepresentations, and/or intentional infliction of emotional distress. Currently pending before the Court is MetLife's Motion for Interpleader Relief and MetLife's Motions to Dismiss the

counterclaims of Carolyn Steptoe, Julie Lee, and Jamilla Lankford. The Court acknowledges that many of the Decedent's children are frustrated with the lack of a resolution concerning their mother's life insurance proceeds to date, and much of that frustration is aimed directly at MetLife. Nevertheless, after the Court's thorough review of the Parties' submissions, applicable case law, statutory authority, and the record as a whole, the Court shall grant MetLife's [3] Motion for Interpleader Relief, grant MetLife's [34] Motion to Dismiss the Counterclaims of Defendant Carolyn Steptoe, grant MetLife's [35] Motion to Dismiss the Counterclaims of Defendant Julie Lee, and grant MetLife's [43] Motion to Dismiss the Counterclaim of Defendant Jamilla Lankford, for the reasons that follow.

## I. BACKGROUND

MetLife alleges the following facts in its Complaint for Interpleader Relief. The Federal Government purchased a policy of group life insurance from MetLife that provided life insurance coverage for the Decedent. Compl. ¶ 2. The Decedent passed away on December 2, 2006. *Id.* ¶ 23. Under the terms of the policy, MetLife became obligated to pay the proceeds–approximately $134,000–to the person or persons rightfully entitled to them. *Id.* ¶¶ 3, 23. MetLife examined the two beneficiary forms that the Decedent had allegedly prepared prior to her death. *Id.* ¶ 25. The most recent beneficiary designation, dated September 2, 1998, named Jennifer Barbour as the Decedent's sole beneficiary "in trust" for the full amount of the policy proceeds. *Id.*, Ex. B (September 1998 Beneficiary Designation Form). The other beneficiary designation, dated April 20, 1998, named each of the Decedent's 12 children as beneficiaries and allocated to each a percentage of the proceeds in amounts ranging from the highest of 46.7% (for Jennifer Barbour) to the lowest of 1.1% (for several of the children including Carolyn Steptoe and Julie Lee). *Id.*,

2

Ex. C (April 1998 Beneficiary Designation Form).

On December 5, 2006, Jennifer Barbour filed a claim for the entire amount of policy proceeds and completed a funeral assignment to Jordan Funeral Service, Inc. in the amount of $9,822.24. *Id.* ¶ 26. Although the September 1998 Beneficiary Designation Form indicated that the Decedent left the proceeds "in trust," Jennifer Barbour confirmed in subsequent correspondence with MetLife that a trust had never been created.[1] *Id.* ¶ 27. MetLife denied Jennifer Barbour's claim based on the absence of a trust and indicated its intention to pay all of the Decedent's children an equal share of the proceeds pursuant to the order of precedence contained in 5 U.S.C. § 8705(a). *Id.* ¶¶ 27-29. On March 5, 2007, Jennifer Barbour, through counsel, sent a letter to MetLife requesting disbursement of the proceeds and including an affidavit from Mary Lomax, a co-worker of the Decedent who witnessed the Decedent's completion of the September 1998 Beneficiary Form. *Id.* ¶ 30. Ms. Lomax attested that the Decedent intended Jennifer Barbour to receive the full amount of the policy proceeds. *Id.* Seven of the named Defendants submitted affidavits in support of Jennifer Barbour's claim, but several of the Defendants did not. *Id.*

MetLife filed the instant Complaint and [3] Motion for interpleader relief on September 20, 2007. The Court issued a Minute Order dated October 11, 2007, requiring MetLife to file proof of service on the docket as to all Defendants before the Court would consider MetLife's Motion for interpleader relief. *See* Fed. R. Civ. P. 4(l)(1). MetLife subsequently filed proof that

---

[1] Jennifer Barbour corresponded with the Office of Federal Employees' Group Life Insurance ("OFEGLI"), an administrative unit of MetLife which is responsible for administrating all FEGLI claims. Compl. ¶ 9. For ease of reference, the Court shall refer to MetLife and OFEGLI together as "MetLife."

all Defendants waived service of process, and the Defendants filed Answers or, in some instances, mailed letters to the Court which the Court allowed to be filed on the docket.[2]

On November 26, 2007, Carolyn Steptoe and Julie Lee filed separate–but materially identical–Answers with counterclaims against MetLife.[3]  According to their Answers, the Decedent told them that she would leave money for her children and grandchildren, and that she would name Jennifer Barbour as a conservator of the estate. Steptoe Answer at 1.  They further allege that MetLife told them that Jennifer Barbour's claim for the policy proceeds had been denied, and that MetLife intended to distribute the policy proceeds to all of the Decedent's children in equal shares. *Id.* at 2.  Carolyn Steptoe and Julie Lee then proceed to allege that MetLife is engaged in a fraudulent scheme.  They allege that MetLife "lured" them into a "false dispute" with their siblings by inviting them to submit claims for the proceeds. *Id.*  MetLife is also allegedly delaying distribution of the proceeds because Mary Lomax, a co-worker of the Decedent and witness to the Decedent's completion of the September 1998 Beneficiary Designation Form, breached contractual and fiduciary duties to MetLife, the Decedent, and all of the Decedent's future beneficiaries by submitting an affidavit in support of Jennifer Barbour's claim. *Id.* at 4.  On this theory, MetLife's request for interpleader relief is an attempt to "cover[] up and minimize[] Ms. Lomax' [sic] actions and its liability." *Id.*  Based on these allegations,

---

[2] The only Defendant who did not file an Answer or a letter was Marsha Culler.  On December 10, 2007, the Court issued a Minute Order requiring Marsha Culler to file an Answer or otherwise respond to MetLife's Complaint on or before December 31, 2007.  The Minute Order also stated that if the Court did not receive an Answer or response by that date, the Court would assume that Ms. Culler did not assert any interest in the funds at issue.  The Court did not receive a response, and accordingly, it shall dismiss Marsha Culler from this lawsuit.

[3] Because these Answers are identical, the Court shall cite to both as the "Steptoe Answer" for ease of reference.

Carolyn Steptoe and Julie Lee seek a denial of MetLife's Motion for interpleader relief, *id.* at 5, and $750,000 for each of them based on MetLife's intentional infliction of emotional distress, fraudulent misrepresentation(s), tortious interference with and breach of contract, and breach of fiduciary duty. *Id.* at 17.

On December 18, 2007, MetLife filed a [34] Motion to Dismiss the counterclaims of Carolyn Steptoe and a [35] Motion to Dismiss the counterclaims of Julie Lee. MetLife's Motions are identical in all material respects. On January 3, 2008, Jamilla Lankford requested and was granted leave of the Court to file an amendment to her answer, in which she asserts a counterclaim based on the emotional distress caused by MetLife's various misrepresentations. Lankford Answer at 1-2. Based on these misrepresentations, Jamilla Lankford requests damages in the amount of $1,200,000 to be divided among the Decedent's 12 children. *Id.* at 2.

On January 23, 2008, MetLife filed a [43] Motion to Dismiss the counterclaim of Jamilla Lankford, which includes arguments that are similar to those contained in its previous two Motions to Dismiss. Carolyn Steptoe and Julie Lee filed identical Oppositions on January 26, 2008. Jamilla Lankford filed an Opposition on January 30, 2008. MetLife filed Replies to the Oppositions of Carolyn Steptoe and Julie Lee on February 8, 2008 (which are identical in all material respects), but did not file a Reply to Jamilla Lankford's Opposition.

## II.  LEGAL STANDARDS

### A.     Motion to Dismiss

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citations omitted).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). Where, as here, a claim is asserted by a *pro se* plaintiff, the Court must take particular care to construe the plaintiff's filings liberally for such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines*, 404 U.S. at 520-21. *See also Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Nevertheless, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (quoting *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

### B. Interpleader

The Federal Interpleader Statute, 28 U.S.C. § 1335, permits a party who is exposed to multiple claims on a single obligation, and who wants to obtain adjudication of the claims in a single proceeding, to bring an action in interpleader. *See Comm'l Union Ins. Co. v. United States*, 999 F.2d 581, 583 (D.C. Cir. 1993). A court may exercise jurisdiction over an interpleader action if: (1) the plaintiff has custody of the disputed property, which exceeds $500; (2) the plaintiff deposits the disputed property into the registry of the court; and (3) two or more adverse claimants of diverse citizenship claim or may claim an interest in the disputed property. 28 U.S.C. § 1335; *Star Ins. Co. v. Cedar Valley Express, LLC*, 273 F. Supp. 2d 38, 41 (D.D.C. 2002). A court has broad discretion to order interpleader relief as an equitable remedy designed to achieve an orderly distribution of a limited fund. *See Star Ins. Co.*, 273 F. Supp. 2d at 40. Where a court grants interpleader relief, the plaintiff may be discharged from further court proceedings, provided the plaintiff does not assert an interest in the distribution of the disputed property. 28 U.S.C. § 2361. In such instances, the court undertakes additional proceedings to determine the respective rights of the claimants to the disputed property. *See, e.g.*, *New York Life Ins. Co. v. Connecticut Dev. Auth.*, 700 F.2d 91, 95 (2d Cir. 1983).

### C. Choice of Law

MetLife and each of the counterclaimants have assumed without discussion that the substantive law of the District of Columbia applies to this action. Where, as here, jurisdiction is based on diversity, the court must apply the conflicts of law rules of the state in which it sits. *See Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491 (1941). Thus, this Court applies the District of Columbia's choice of law analysis. *See YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C.

Cir. 2002). In cases involving policies of insurance, "where the insured is a D.C. citizen and the underlying events took place in the District of Columbia, courts [applying the choice of law rules of the District of Columbia] have held that D.C. law applies." *Council for Responsible Nutrition v. Hartford Cas. Ins. Co.*, Civ. A. No. 06-1590, 2007 U.S. Dist. LEXIS 49963 at *8 (D.D.C. July 12, 2007). In the present case, the Decedent was a resident of the District of Columbia at the time that she completed her beneficiary designation forms, *see* Compl., Exs. C, D (Beneficiary Designation Forms), as are many of the Defendants currently, and no party has identified any events outside of the District of Columbia that require application of a different jurisdiction's law. Accordingly, the Court shall apply the substantive law of the District of Columbia.

### III. DISCUSSION

The Court shall first consider the three pending Motions to Dismiss. Because Carolyn Steptoe and Julie Lee have submitted Answers and briefs that are identical in all material respects, the Court shall consider Metlife's Motions to Dismiss their counterclaims together. The Court shall then address MetLife's Motion to Dismiss Jamilla Lankford's counterclaim, and finally, MetLife's Motion for interpleader relief.

**A.    Motions to Dismiss the Counterclaims of Carolyn Steptoe and Julie Lee**

Carolyn Steptoe and Julie Lee (for purposes of this section, "counterclaimants") have asserted four grounds for relief: (1) tortious interference with and breach of contract, (2) breach of fiduciary duty, (3) fraudulent misrepresentation, and (4) intentional infliction of emotional distress. MetLife argues, as a preliminary matter, that all of these claims are preempted by FEGLIA, which contains a provision preempting any state law claims relating to the nature or extent of coverage or benefits to the extent it is contrary to the provisions of FEGLIA:

> the provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1). Because FEGLIA expressly dictates to whom insurance proceeds should be paid when there is a completed Beneficiary Designation Form or otherwise, courts have held that claims requiring an alternative distribution are preempted. *See, e.g.*, *Metropolitan Life Ins. Co. v. Zaldivar*, 337 F. Supp. 2d 343, 347 (D. Mass. 2004) (holding that FEGLIA preempts a claim for a constructive trust because "[a] constructive trust would require that the proceeds of the policy be distributed to someone other than the beneficiary, who, pursuant to FEGLIA's order of preference, is the person who 'shall be paid'") (quoting 5 U.S.C. § 8705(a)).

Three of the claims brought by the counterclaimants–breach of fiduciary duty, intentional infliction of emotional distress, and fraudulent misrepresentation–do not relate to the extent of coverage or benefits because they are asserted independent of any determination by MetLife as to the rightful beneficiary of the policy proceeds, and the claims do not seek the policy proceeds as damages. Although the D.C. Circuit has not opined on the application of the FEGLIA preemption provision, this Court agrees with the Second Circuit that claims with these characteristics fall outside of FEGLIA's preemption clause. *See Devlin v. United States*, 352 F.3d 525, 544 (2d Cir. 2003) (rejecting the argument that the plaintiff's negligence claim was preempted by FEGLIA because it "does not seek to function as an alternative enforcement mechanism to obtain benefits under a FEGLIA policy . . . Plaintiff is not asking to be paid benefits under a FEGLIA policy . . . [s]he is seeking to be compensated for [] negligence"). As for the counterclaimants' tortious interference with and breach of contract claim, this claim does

9

not appear to be premised on receiving the policy proceeds based on MetLife's beneficiary determination, and accordingly, it would likewise fall outside the scope of FEGLIA's preemption provision. Because the counterclaims are not preempted by FEGLIA, the Court shall proceed to examine them on the merits.

          1.      <u>Tortious Interference with and Breach of Contract</u>

The counterclaimants allege that MetLife breached or interfered with a contract, but fail to specify the contract to which they are referring. Instead, the counterclaimants allege (without factual support) that Mary Lomax, a co-worker of the Decedent at the Department of Labor, was MetLife's agent and that she breached a contractual obligation for which MetLife should be held liable. Specifically, the allegation is that

> [MetLife], through its employee and/or agent negligently and/or intentionally breached its contractual and fiduciary duty to [Decedent] and me (one of her actual or natural beneficiaries), and violated the FEGLI statute to my detriment, by acting as a witness to [Decedent's] beneficiary designation and acting as an agent for a person with a direct financial interest in payment under the policy.

Steptoe Answer at 15.

This argument is unavailing because the counterclaimants do not allege any facts suggesting that Ms. Lomax could be considered an agent for any of the Parties. *See Bell Atl. Corp.*, 127 S. Ct. at 1964-65 (holding that a complaint must furnish more than "labels" or "conclusions"). Ms. Lomax's affidavit states that she worked at the United States Department of Labor in the Office of the Solicitor for over thirty years as the Human Resources Specialist, and in that position, certified all FEGLI forms. Compl., Ex. G. Nothing about her position suggests that any Party held the requisite control over her discretionary activities so as to create an agency relationship. *See Judah v. Reiner*, 744 A.2d 1037, 1040 (D.C. 2000)) (finding that an agency

relationship exists where "the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done"). Further, even if the counterclaimants had pled facts establishing the existence of an agency relationship, they have also failed to identify any contract that MetLife or its agents allegedly breached or with which they interfered. Identification of a contract is an essential element of any claim for tortious interference with or breach of contract. *See, e.g.*, *Sturduza v. United Arab Emirates*, 281 F.3d 1287, 1305 (D.C. Cir. 2002) (identifying "existence of a contract" as an essential element of a claim for tortious interference with a contract) (citing *Sorrells v. Garfinckel's*, 565 A.2d 285, 289 (D.C. 1989)).

Setting aside the counterclaimants' arguments in support of its contract claims, if the counterclaimants intended to seek recovery of the insurance policy proceeds under a theory that MetLife is contractually obligated to distribute the funds to them (as opposed to a different beneficiary), the Court would note that MetLife claims no interest in the funds, has not yet made any distribution, and that an interpleader action is an appropriate forum for this type of claim. *See Butler v. Metropolitan Life Ins. Co.*, 500 F. Supp. 661, 664 (D.D.C. 1980) ("[w]henever conflicting claims are presented that promote uncertainty, [MetLife] can pay the proceeds into the registry of the Court and file an action in interpleader"). For these reasons, the Court shall grant MetLife's Motion to Dismiss this claim.

    2.    <u>Breach of Fiduciary Duty</u>

The counterclaimants also assert a breach of fiduciary duty claim against MetLife on the same theory as their contractual claims, essentially arguing that Ms. Lomax was a fiduciary of MetLife, the Decedent, and the Decedent's beneficiaries, and that she breached her fiduciary

duties by acting as an official and witness on the Decedent's Beneficiary Designation Form and by submitting an affidavit in the present matter. Steptoe Answer at 15. According to the counterclaimants, MetLife is seeking interpleader relief "to extricate itself from liability for the negligent and/or intentionally wrongful actions of its employee and/or agent, Mary Lomax." *Id.* at 16.

This claim must be dismissed because the counterclaimants have failed to allege any facts supporting the existence of a fiduciary relationship. A fiduciary relationship is the result of "the manifestation of consent by one person to another that the other shall act on his behalf and subject to this control." *C & E Servs., Inc. v. Ashland*, 498 F. Supp. 2d 242, 264 (D.D.C. 2007) (quoting *Lott v. Burning Tree Club*, 516 F. Supp. 913, 917 (D.D.C. 1980)). In the present matter, there is no allegation that MetLife, the Decedent, or the Decedent's beneficiaries had any authority over Ms. Lomax in September 1998 (when the Decedent completed her beneficiary designation form), nor is there any suggestion as to what functions MetLife, the Decedent, or the Decedent's beneficiaries would have directed. Because the record lacks any facts supporting the existence of a fiduciary relationship, the Court shall grant MetLife's Motion to Dismiss this claim.

       3.      <u>Fraudulent Misrepresentation</u>

The counterclaimants next argue that MetLife "assured [them] that [they] would be paid in the 'order of precedence' set out in the FEGLI statute." Steptoe Answer at 16. The Counterclaimants further argue that "[f]rom that point until the instant complaint was filed, [MetLife] . . . knowingly, intentionally, willfully, maliciously and recklessly misled me into thinking they [sic] Defendant would pay [the counterclaimants their] share of the insurance

proceeds." *Id.* Both counterclaimants also attach approximately 23 pages of correspondence with MetLife in support of their claims against MetLife. *See* Steptoe Answer, Ex. 1 at 1-23.

In order to prevail on a claim for a fraudulent misrepresentation under the law of the District of Columbia, a plaintiff must prove: "'(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with intent to deceive, and (5) action taken . . . in reliance upon the representation, (6) which consequently resulted in provable damages.'" *Railan v. Katyal*, 766 A.2d 998, 1009 (D.C. 2001) (quoting *Dresser v. Sunderland Apartments Tenants Ass'n, Inc.*, 465 A.2d 835, 839 (D.C. 1983)). The representation must relate to a "presently existing or past fact." *ABB Daimler-Benz Transp. v. AMTRAK*, 14 F. Supp. 2d 75, 86 (D.D.C. 1998) (applying D.C. law).

The counterclaimants' fraudulent misrepresentation claims must be dismissed because they relate to MetLife's promises of future conduct; i.e., MetLife promised it would distribute the proceeds to the counterclaimants and then did not do so. The materials attached by the counterclaimants to their Answers only underscore this conclusion. *See, e.g.*, Steptoe Answer, Ex. 1 at 21 (Email from MetLife to J. Rhines dated June 13, 2007) ("As soon [as] I receive at least 7 claim forms, I will start to process this claim"); *Id.* at 10 (Email from MetLife to C. Steptoe dated July 5, 2007) ("we will not start releasing payments to children and descendants of deceased children until we are sure who is entitled [to the funds]. As a general rule we await the majority of the claim forms to be received before we begin making any payments to ensure proper distribution . . . Unfortunately in your particular case we do not have consistent information yet. We have received 4 claim forms"). The counterclaimants have failed to identify any false representations of past or existing fact that could form the basis of this claim.

Accordingly, the Court shall grant MetLife's Motion to Dismiss this claim.

### 4. Intentional Infliction of Emotional Distress

The counterclaimants allege that MetLife "lured" them into a false dispute with their siblings by inviting them to file claims it never intended to pay. Steptoe Answer at 16. Under District of Columbia law, a claim of intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct that (2) intentionally or recklessly (3) causes severe emotional distress. *See Darrow v. Dillingham & Murphy, LLP*, 902 A.2d 135, 139 (D.C. 2006). Whether conduct is "extreme and outrageous" depends on "applicable contemporary standards of offensiveness and decency, and [] the specific context in which the conduct took place." *King v. Kidd*, 640 A.2d 656, 668 (D.C. 1993). To be actionable, the conduct must be "atrocious" and "utterly intolerable," *Khan v. Parsons Global Servs.*, 2008 U.S. App. LEXIS 7756 at * 18 (D.C. Cir. 2008), and "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," *Weaver v. Grafio*, 595 A.2d 983, 991 (D.C. 1991) (quoting *Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984) (internal quotation marks omitted)).

The counterclaimants' arguments that MetLife is liable for luring the siblings into a false dispute fails both factually and legally. Both counterclaimants do, in fact, claim a share of the proceeds, so in no sense could the dispute be considered false. *See, e.g.*, Steptoe Answer at 12 (alleging that MetLife "colluded with others to deprive me of my entitlement to my share of my mother's life insurance proceeds"). The materials attached by the counterclaimants to their Answers also make it indisputable that the counterclaimants (in addition to MetLife) were asking the siblings to submit claims for the proceeds, so in no sense did MetLife lure their siblings into a

dispute, false or otherwise. *Id.*, Ex. 1 at 23 (Email from J. Lee to J. Rhines, *et al.* dated April 27, 2007) ("Anyone wishing to can file a claim . . . If anyone wants me to provide [MetLife] with his or her address, please lend me your address by private email and I will do that. Otherwise, you can contact [MetLife] yourself"). Based on a review of the well-pleaded allegations in the counterclaimants' Answers, the Court also finds that the counterclaims fail to plead any conduct by MetLife that could be considered "atrocious" and "utterly intolerable." *Weaver*, 595 A.2d at 983. Accordingly, the Court shall also grant MetLife's Motion to Dismiss this claim.

**B.     Motion to Dismiss the Counterclaim of Jamilla Lankford**

Ms. Lankford's Answer contains a hybrid claim for intentional infliction of emotional distress based on misrepresentations made by MetLife to various of the Decedent's children. Answer at 1-2. The Court notes, as an initial matter, that Ms. Lankford's counterclaim appears to seek damages, in part, on behalf of her siblings. Ms. Lankford may only recover on behalf of herself, so the Court shall not rely on the allegations in Ms. Landford's counterclaim to the extent they relate only to her siblings. Based on the Court's review of her counterclaim, Ms. Lankford makes the following allegations: (1) MetLife told her that if she "signed releases they would send Jennifer 1/12 of each of our 'shares' when they knew she had claimed the full amount and they were liable to suit from her if they didn't pay her without a Court judgment stating otherwise," (2) MetLife induced her "to sign a release that would absolve [MetLife] of any claim by the signing person, though that wording was not unequivocally tied to having paid Jennifer a dime," and (3) MetLife made "false inducements and representations via mail, telephone and email to all of [her] siblings" to delay any distribution of the funds. Lankford Answer at 3.

For the same reasons stated above, these allegations are insufficient to state a cause of

15

action against MetLife. The first allegation relates to future conduct, which is not actionable as a misrepresentation. *See ABB Daimler-Benz Transp.*, 14 F. Supp. 2d at 86 (holding that the representation must relate to past or existing facts, and may not relate to future intentions). The second and third allegations do not allege facts with sufficient specificity; i.e., how MetLife "induced" the signature on the release or what "false inducements" arrived via mail, telephone and email. *See Bell Atl. Corp.*, 127 S. Ct. at 1964-65 (holding that a complaint must furnish more than "labels" or "conclusions"). Nor can these allegations, if considered to be true, constitute "atrocious" and "utterly intolerable" conduct for purposes of an intentional infliction of emotional distress claim. *See Weaver*, 595 A.2d at 983.

In Opposition, Ms. Lankford suggests that MetLife's conduct represents a "conscious and deliberate attempt to avoid paying anyone anything for as long as possible, a practice apparently often engaged in by insurance companies" and that "[a] person's right to possess his or her own money is a fundamental one established by the Constitution." Lankford Reply at 2. As discussed below, however, MetLife is permitted to invoke the procedures of the federal interpleader statute when faced with conflicting claims on the same proceeds, and doing so cannot be considered extreme or outrageous conduct giving rise to an intentional infliction of emotional distress claim. *See Butler*, 500 F. Supp. at 664 ("[w]henever conflicting claims are presented that promote uncertainty, [MetLife] can pay the proceeds into the registry of the Court and file an action in interpleader"). Accordingly, the Court shall grant MetLife's Motion to Dismiss Ms. Lankford's counterclaim.

      **C.**    **Motion for Interpleader Relief**

MetLife has alleged facts supporting this Court's jurisdiction under the Federal

Interpleader Statute, 28 U.S.C. § 1335. MetLife has in its possession the proceeds from Decedent's insurance policy valued at more than $500. MetLife claims no interest in the proceeds, and seeks to deposit the disputed funds into the registry of the Court. MetLife faces conflicting claims on the proceeds from, at a minimum, Jennifer Barbour, Carolyne Steptoe, and Julie Lee. Jennifer Barbour is a resident of Washington, D.C., and Julie Lee is a resident of Birmingham, Alabama. Only minimal (and not complete diversity) among claimants is required under this statute. *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967).

Although Carolyn Steptoe, Julie Lee, and Jamilla Lankford suggest that interpleader relief should be denied to MetLife because it has acted in bad faith, the Court has dismissed all of their counterclaims above. When faced with conflicting claims under the circumstances described above, MetLife does not act in bad faith by seeking interpleader relief rather than be making distributions prior to the determination of the rights of the putative beneficiaries. *See Butler*, 500 F. Supp. at 664. The Court finds, in its discretion, that interpleader relief in this case would achieve a desirable and orderly distribution of the limited fund. Accordingly, the Court shall grant MetLife's request for interpleader relief. The Court shall also dismiss MetLife from any further proceedings in this action, and shall hold further proceedings among the claimants to determine their respective rights to the policy proceeds.

## IV. CONCLUSION

For the reasons set forth above, the Court shall grant MetLife's [3] Motion for Interpleader Relief, grant MetLife's [34] Motion to Dismiss the Counterclaims of Defendant Carolyn Steptoe, grant MetLife's [35] Motion to Dismiss the Counterclaims of Defendant Julie Lee, and grant MetLife's [43] Motion to Dismiss the Counterclaims of Defendant Jamilla

Lankford.  An appropriate Order accompanies this Memorandum Opinion.


Date: May 19, 2008


                                                     /s/
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge