UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>JENNIFER G. BARBOUR, *et al.*,<br><br>Defendants. | Civil Action No. 07-1665 (CKK) |

**MEMORANDUM OPINION**
(May 14, 2009)

*So we beat on,*
*boats against the current,*
*borne back ceaselessly into the past.*[1]

This interpleader action involves adverse claims on the proceeds of Julia W. Barbour's (the "Decedent's") life insurance policy. On May 19, 2008, the Court granted a Motion for Interpleader relief filed by Metropolitan Life Insurance Company ("MetLife") to deposit the proceeds of the policy (approximately $134,000 plus interest) into the Registry of the Court.[2] What remains in this case is the determination of who among the Defendant-Claimants is the proper beneficiary or beneficiaries of the policy proceeds.

The Defendant-Claimants consist of ten children and one grandchild of the Decedent, as well as Jordan Funeral Service Inc. (as to which Jennifer Barbour, one of the Decedent's

---

[1] F. SCOTT FITZGERALD, THE GREAT GATSBY 188 (Penguin Books, 1994) (1926)

[2] The Court also granted MetLife's Motions to Dismiss several counterclaims raised by three of the Defendant-Claimants, and dismissed MetLife from further proceedings in this case. *See Metro. Life Ins. Co. v. Barbour*, 555 F. Supp. 2d 91 (D.D.C. 2008).

children, assigned a portion of the insurance proceeds).[3] The Court has allowed the parties a lengthy period of time and numerous opportunities to mediate the remaining issues in this case and reach an amicable resolution.[4] That effort has been decidedly unsuccessful. Accordingly, on December 19, 2008, the Court set a briefing schedule for the parties to file pleadings to resolve this case.

Pursuant to that schedule, the Court instructed Defendant-Claimant Jennifer Barbour, who is represented by counsel and who is claiming a 100% share of the proceeds, to file a motion in support of her claim. The Court instructed the other Defendant-Claimants, who are proceeding *pro se*, to file oppositions and/or their own motions to the extent they disagreed with Ms. Barbour's claim and were claiming their own share of the proceeds. Finally, the Court authorized–but did not require–all other Defendant-Claimants to file any pleadings that they deemed appropriate.

As a result of the parties' filings, the Court has before it three motions by Defendant-Claimants seeking a share of the proceeds: Ms. Barbour's [73] Motion for Summary Judgment, Julie Lee's [76] Consolidated Motion for Declaratory Judgment and Opposition to Ms. Barbour's Motion for Summary Judgment, and Carolyn Steptoe's [77] Consolidated Motion for Declaratory Judgment and Opposition to Ms. Barbour's Motion for Summary Judgment. Three of the other Defendant-Claimants filed pleadings in support of Jennifer Barbour's claim and in opposition to

---

[3] An eleventh child of the Decedent, Marsha S. Culler, did not file an Answer and was dismissed from this case on May 19, 2008. *See* Min. Order dated Dec. 10, 2007 (advising Ms. Culler that if she did not file an Answer, "the Court [would] assume that [she did] not assert any interest in the funds at issue"); Min. Order dated May 19, 2008 (dismissing Ms. Culler).

[4] The Court appointed counsel to represent two of the Defendant-Claimants for purposes of mediation. *See* [55] Order at 1 (June 25, 2008).

the claims of Ms. Lee and Ms. Steptoe.[5]

Having thoroughly considered the parties' submissions, relevant case law, statutory authority, and the record of the case as a whole, the Court finds that the Decedent designated Ms. Barbour as the sole beneficiary of her insurance policy pursuant to a validly executed beneficiary designation form. Accordingly, the Court shall GRANT Ms. Barbour's [73] Motion for Summary Judgment, DENY Ms. Lee's [76] Motion for Declaratory Judgment, and DENY Ms. Steptoe's [77] Motion for Declaratory Judgment, for the reasons that follow.

## I. BACKGROUND

The material facts underlying this case are not in dispute.[6] The Decedent was insured under a Federal Employees Group Life Insurance Act ("FEGLIA") insurance policy through MetLife that is valued in excess of $134,000. Barbour Stmt. ¶¶ 1, 3. Prior to her death on December 2, 2006, the Decedent had completed two beneficiary designation forms.

The first designation form, completed on April 20, 1998, named as beneficiaries eleven children, one grandchild, and the Decedent's spouse. *See* Barbour Mot., Ex. 5 at 1 (4/20/98 Designation Form). Each beneficiary was assigned a specific percentage of the proceeds, with Ms. Barbour, a daughter of the Decedent, receiving the largest percentage at 46.7%. *Id.* The

---

[5] These filings include [70] Motions in support of Jennifer Barbour as sole beneficiary filed by John Rhines and Jacinto Rhines, a [71] Memorandum in support of Jennifer Barbour filed by Jamilla Lankford, a [78] Reply filed by Jamilla Lankford, a [80, 81] Reply and Response filed by John Rhines, and a [82] Response filed by Jacinto Rhines.

[6] The Court's December 19, 1998 Order explained that the Court "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *See* [69] Order at 2 (Dec. 19, 2008). Ms. Barbour submitted a Statement of Material Facts in connection with her Motion for Summary Judgment, and neither Ms. Lee nor Ms. Steptoe dispute the facts contained therein. *See* Lee Mot. at 1; Steptoe Mot. at 1.

lowest percentages were assigned to two of the Decedent's other daughters, Ms. Lee and Ms. Steptoe, who received 1.1% shares, respectively.[7] *Id.* at 3. The Designation Form also contained the Decedent's signature, as well as the signatures of two witnesses. *Id.* at 1-4. None of the parties have disputed the validity of this form or the signatures on the form.

The Decedent executed a superseding beneficiary designation form on September 2, 1998. *See* Barbour Mot., Ex. 2 at 1 (9/2/98 Designation Form). Whereas the Decedent had previously designated multiple beneficiaries, she now designated only Ms. Barbour as her beneficiary. *Id.* at 1. In doing so, the Decedent provided the following information in the form, as depicted herein:

| Type of print first name, middle initial, and last name of each beneficiary | Type or print address . . . of each beneficiary | Relationship | Percent or fraction to be paid to each beneficiary |
|---|---|---|---|
| Jennifer G. Barbour<br>Trustee | [Ms. Barbour's address] | Daughter | 100% |

*Id.*

The form also included the signature of the Decedent, the signatures of two witnesses, and a clause providing that, in the event the designation form were invalidated, the Decedent's previous designation form would be enforced in its place:

> I understand that this Designation of Beneficiary, if valid, will remain in full force and effect, unless or until canceled by me in writing, or until such time as it is automatically canceled . . . If this designation form is determined invalid for any reason, the next prior valid designation form will be given full force and effect.

*Id.*

---

[7] Three other beneficiaries were also assigned 1.1% shares. *See* Barbour's Mot., Ex. 5 at 3-4 (4/20/98 Designation Form).

The Decedent's inclusion of the word "trustee" underneath Ms. Barbour's name became a source of confusion for MetLife. When MetLife examined the September 2, 1998 beneficiary designation form after Decedent's death, it mistakenly read the form as identifying the beneficiary as Jennifer Barbour, "in trust." *See, e.g.*, MetLife Compl. ¶ 25 ("The most recent beneficiary designation, dated September 2, 1998, names Jennifer G. Barbour as the Decedent's beneficiary 'in trust' for the full amount of the FEGLI Proceeds."). Accordingly, MetLife concluded that it was required to distribute the funds to a trust that did not exist and had never existed, rather than to Ms. Barbour. *Id.* ¶ 27.

MetLife then proceeded to deny Ms. Barbour's claim for the proceeds and indicated that it would distribute the proceeds to all of the Decedent's children in equal shares (mistakenly ignoring the existence of the previous beneficiary designation form). *Id.* ¶¶ 27-29. After corresponding with numerous of the Defendant-Claimants and determining that it faced conflicting claims on the proceeds, MetLife filed the instant case.

## II. LEGAL STANDARD

FEGLIA was enacted "'to provide low-cost group life insurance to Federal employees.'" *Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 576 (7th Cir. 1992) (quoting H.R. Rep. No. 2579, 83d Cong., 2d Sess. (1954), *reprinted in* 1954 U.S.C.C.A.N. 3052). The provision of the Act that governs the designation of beneficiaries is found at 5 U.S.C. § 8705, which provides in relevant part:

> the amount of group life insurance . . . in force on an employee at the date of his death shall be paid, on the establishment of a valid claim . . . in the following order of precedence:
>
> First, to the beneficiary or beneficiaries designated by the employee in a signed

and witnessed writing received before death in the employing office . . .

Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.

5 U.S.C. § 8705(a).

Significantly, Congress amended FEGLIA in 1966 to eliminate inquiries into the intent of the insured when determining whether a beneficiary had been properly designated. As numerous courts have explained,

> [p]rior to [Congress' 1966 amendment], the statute simply required that the insured designate a beneficiary in a 'writing received in the employing office prior to death,' rather than a '*signed* and *witnessed* writing received before death.' FEGLIA was amended as a reaction to cases that looked to a decedent's 'manifest intent,' rather than to strict compliance with civil service regulations, in determining the proper beneficiary.

*Terry v. Metro. Life Ins. Co.*, 354 F.3d 527, 531 (6th Cir. 2004) (internal citations omitted). Accordingly, "Congress, on administrative efficiency grounds, abolished the manifest intent test." *Id.* at 532. In determining whether an insured has properly designated a beneficiary, courts must therefore consider whether the designation meets the requirements set forth in the statute for naming a beneficiary. *See* 5 C.F.R. § 870.802(b) ("[a] designation of beneficiary must be in writing, signed by the insured individual, and witnessed and signed by 2 people").

### III. DISCUSSION

The sole dispute in this case is whether the Decedent executed a valid designation form naming Ms. Barbour as the sole beneficiary, and specifically, whether the inclusion of the word "trustee" underneath Ms. Barbour's name renders the designation form invalid. Ms. Barbour

argues that "[t]he word 'trustee' . . . has no legal significance or effect on who is entitled to the insurance proceeds." Barbour Mot. at 1. According to Ms. Barbour, there is no confusion as to whom the Decedent designated as a beneficiary because "under the category 'Name' is 'Jennifer G. Barbour Trustee' and under the category 'Relationship' appears 'Daughter.'" *Id.* at 8. Ms. Barbour explains that MetLife "caused . . . confusion to enter the picture" by misreading the designation form to insert the words "in trust" for "trustee," and that this initial confusion does not invalidate the designation form.

The motions filed by Ms. Lee and Ms. Steptoe advocate a different interpretation of the designation form, but rely on nothing more than a parroting of MetLife's mistaken belief that the proceeds were left "in trust."[8] *See* Lee Mot. at 1-4. They argue:

> Where, as here, [the Decedent] designated Jennifer Barbour to take 100 percent of the insurance proceeds *in trust*, but did not set up or maintain a trust, the Court should order an equal distribution of proceeds between Julia Barbour's twelve (12) children.

*Id.* at 4 (emphasis added). *See also id.* at 3 (relying on a FEGLI Handbook and arguing that the distribution of proceeds should be paid in the statutory order of precedence where the designation form "[n]ames a trust that was never established (and no other beneficiaries were named").[9]

---

[8] These motions are nearly identical. For ease of reference, the Court shall cite only to Ms. Lee's motion.

[9] Ms. Lee and Ms. Steptoe each offer to take more than a 1/12 share of the proceeds as well. Because some of the Defendant-Claimants have not sought to become beneficiaries of the policy, Ms. Lee and Ms. Steptoe propose, among other possibilities, that the shares associated with these Defendant-Claimants "be divided between Lee, Steptoe and Barbour." Lee Mot. at 3 n.3. In the event that her motion is denied, Ms. Lee also indicates that the Court should enforce a settlement agreement between Ms. Lee and unspecified other parties – a settlement agreement that has not been presented to the Court and as to which Ms. Barbour denies its existence. *See* Barbour Reply at 3 n.1. The Court declines to enforce a settlement agreement that has not been presented to it.

Appearing to equate the word "trustee," with the word "trust," Ms. Lee and Ms. Steptoe argue that the Decedent's "intent [was] to set up a trust."[10] *Id.* at 3 n.6.

The position advocated by Ms. Lee and Ms. Steptoe is simply untenable. Beginning with the obvious, the September 2, 1998 designation form did *not* leave the proceeds of the policy to a trust, but rather to Jennifer G. Barbour, Trustee. A "trustee" is not the same as a "trust," and one cannot legally exist in the absence of the other. *See, e.g., Manor Trust v. Plante*, No. 05-1093, 2005 Mass. Super. LEXIS 340 at *3 (Mass. Supp. Jul. 6, 2005) ("[a] trust without a trustee is a non-entity"); *Evans v. Abney*, 165 S.E.2d 160, 166 (Ga. 1968) ("there can be no trustee without a trust to administer"). Ms. Barbour also indicates that she has never been a trustee of a trust. *See* Barbour Mot. at 8.

While the Decedent certainly created some initial confusion by ascribing the title of trustee to Ms. Barbour (confusion that was magnified by MetLife), the inclusion of an improper title in connection with the name of a beneficiary does not *ipso facto* result in the invalidation of the designation form. Rather, the material inquiry is whether the designation form sufficiently identifies the beneficiary in accordance with the statutory requirements set forth in FEGLIA. *See Terry v. Metro. Life Ins. Co.*, 354 F.3d 527, 532-33 (6th Cir. 2004) (finding a designation form to be valid even though the insured signed it with the "admittedly unusual" name "Earline," rather than using a full legal name, because the statutory requirements imposed by FEGLIA were not

---

[10] In support of this argument, Ms. Lee and Ms. Steptoe cite to a letter sent by Jennifer Barbour to Metlife on February 6, 2007 (apparently at MetLife's request) indicating that "there is not a trust anymore." *See* MetLife Compl., Ex. E at 1 (Letter from J. Barbour to "Ms. Linda at FEGLI"). Although the Decedent's intent is not relevant to determining the validity of the designation form, it defies logic to suggest that a statement written by one of the Defendant-Claimants after the death of the Decedent could be viewed as proving the *Decedent's* intent.

implicated by an incomplete signature); *Metro. Life Ins. Co. v. Hurford*, 983 F. Supp. 1045, 1046-48 (finding a designation form to be valid despite the insured's designation that purported to assign 200% of the policy proceeds among five named beneficiaries because "[t]here is no statutory requirement that the designation be unambiguous").

Were this rule otherwise, it would impose an exactitude never contemplated nor imposed by Congress. For example, suppose a hypothetical insured properly completed a designation form assigning all proceeds of a policy to her eldest daughter, who at the time was studying to become a lawyer. Suppose further that the insured entered her daughter's name on the form along with the title "esquire," on the assumption that the daughter would become an attorney. Finally, suppose that the daughter decided to subsequently leave law school to attend medical school. When the proceeds of the policy are eventually disbursed, the statutory requirements imposed by FEGLIA are not implicated – and therefore do not invalidate – the insured's designation simply because the daughter's actual title may be "M.D." instead of "esquire." In this circumstance, the beneficiary is still readily identifiable in an otherwise properly executed beneficiary designation form.

The same analysis controls in this case. FEGLIA requires that a beneficiary designation be in writing, signed by the insured, and witnessed and signed by two people. 5 U.S.C. § 8705(a); 5 C.F.R. § 870.802(b). Those requirements have been met here. The September 2, 1998 designation form was in writing, signed by the Decedent, and witnessed and signed by two witnesses. There is no question as to the identity of the person designated – despite the introduction of an improper title – because Ms. Barbour was identified by name ("Jennifer G. Barbour"), address, and relationship to the Decedent ("daughter"). While the Court makes no

finding concerning what the Decedent may have intended by ascribing to Ms. Barbour the title of "trustee," it is apparent that Jennifer Barbour was identified as the sole beneficiary of the Decedent's properly executed September 2, 1998 designation form. The Court therefore finds that Ms. Barbour is entitled to the relief sought in her motion.

As a final matter, the Court briefly rejects as meritless the suggestion by Ms. Lee and Ms. Steptoe that the proceeds of the policy should be distributed to the Decedent's children in equal shares. Ms. Lee and Ms. Steptoe have blinded themselves to the language in the Decedent's September 2, 1998 designation form, which provides that the invalidation of the designation form "for any reason" results in the enforcement of "the next prior valid designation form." *See* Barbour Mot., Ex. 5 at 1 (4/20/98 Designation Form). In this case, the next valid designation form is the Decedent's April 20, 1998 form, which assigns Ms. Lee and Ms. Steptoe 1.1% of the policy proceeds, respectively. *See* Barbour Mot., Ex. 5 at 1 (4/20/98 Designation Form). Therefore, under no circumstance would Ms. Lee and Ms. Steptoe be entitled to the relief sought in their motions.

## IV. CONCLUSION

For the reasons set forth above, the Court shall GRANT Ms. Barbour's [73] Motion for Summary Judgment, DENY Ms. Lee's [76] Motion for Declaratory Judgment, and DENY Ms. Steptoe's [77] Motion for Declaratory Judgment. The Court shall issue an Order authorizing Jennifer G. Barbour to withdraw the funds maintained in the Registry of the Court in connection with this case, except for $9,822.24, which Ms. Barbour requests in her Motion be made

available to Jordan Funeral Service, Inc.[11]

Date: May 14, 2009

/s/ *Colleen Kollar-Kotelly*
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

---

[11] Ms. Barbour has attached a copy of the $9,822.24 assignment that she executed in favor of Jordan Funeral Service, Inc. *See* Barbour Mot., Ex. 3 (12/5/06 Assignment of Proceeds of Insurance).